UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KATHRYN KNOWLTON, and

DANA McCORMICK,

                                                                                    Case No.

    Plaintiffs,

    v.

CITY OF WAUWATOSA, BARRY WEBER,
in his official capacity as Chief of Police, and
DENNIS MCBRIDE, in his official capacity
as Mayor of Wauwatosa.

    Defendants.

---

## COMPLAINT

---

Plaintiffs Kathryn Knowlton and Dana McCormick, by their undersigned attorneys, hereby allege as follows:

### NATURE OF ACTION

1. This is a civil action brought pursuant to 42 U.S.C. §1983. Plaintiffs seek damages for injuries sustained by Plaintiffs as a result of Defendants' violation of their constitutional rights. Plaintiffs also seek to enjoin the City of Wauwatosa and Wauwatosa Mayor Dennis McBride from issuing unlawful emergency orders and Police Chief Barry Weber from

issuing and enforcing unlawful polices including dispersal orders to peaceful passersby based on alleged unlawful assembly or other group misconduct by others.

2. This case arises from the City of Wauwatosa's Emergency Order unilaterally made by the Mayor, Dennis McBride, on September 30, 2020 in anticipation of civil unrest following the release of the Milwaukee County District Attorney's findings in the matter of Wauwatosa Police Officer Joseph Mensah's killing of Alvin Cole. The Mayor's Order gave rise to the Wauwatosa Police Department's response which included mobilization of over 20 additional law enforcement agencies, as well as the Wisconsin National Guard.

3. On October 10, 2020, police and military personnel mobilized en masse in the streets surrounding Wauwatosa City Hall located at the southwest corner of 76th Street and North Avenue, making those streets impassable. A crowd of less than approximately 50 people had previously formed and then dispersed eastward and beyond the intersection, such that there were no persons in the area other than the Plaintiffs, who were sitting on the lawn of City Hall. Plaintiffs were nonetheless ordered to disperse without cause and forcibly arrested without the ability to comply with the dispersal order, in violation of their Fourth Amendment rights to be free from unreasonable seizures. Plaintiffs were then detained and interrogated before being given citations for a City ordinance (curfew) violation.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343(a)(3) and (4) (civil rights jurisdiction), 28 U.S.C. §§2201,

2202 (declaratory judgment jurisdiction), and 28 U.S.C. §1367 (supplemental jurisdiction).

5. Venue is proper in the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. §1391(b)(1) and (2) because defendants (including entities) are therein located, and because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

## THE PARTIES TO THIS COMPLAINT

6. Plaintiff Kathryn Knowlton resides at 7006 Milwaukee Avenue, Wauwatosa, WI 53213, in Milwaukee County, State of Wisconsin.

7. Plaintiff Dana McCormick resides at 1734 North 69th Street, Wauwatosa, WI 53213, in Milwaukee County, State of Wisconsin.

8. Defendant City of Wauwatosa is a Wisconsin municipality.

9. Defendant Barry Weber, Chief of Police, Wauwatosa Police Department located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and an email of bweber@wauwatosa.net, and is, on information and belief an adult resident of the State of Wisconsin residing in Washington County, within the Eastern District of Wisconsin. Defendant Weber is the Chief of Police for Wauwatosa and in that capacity has final responsibility for establishing the rules of engagement for police deployments responding to protests and civil unrest and as directed by the Mayor. Chief Weber is named in his official capacity for declaratory and injunctive relief only. At all times pertinent and material to this

Complaint, Defendant Weber was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin.

10. Defendant Dennis McBride, Mayor of Wauwatosa, Wauwatosa City Hall located at 7725 West North Avenue, Wauwatosa, WI 53213, County of Milwaukee, State of Wisconsin, with a phone number of 414-479-8917 and an email of dmcbride@wauwatosa.net, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin.  Defendant McBride is the Mayor of Wauwatosa, and in that capacity is chief executive officer, responsible to direct the Chief of Police. Mayor McBride is named in his official capacity for declaratory and injunctive relief only.  At all times pertinent and material to this Complaint, Defendant McBride was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin.

## ALLEGATIONS OF FACT

11. Following the George Floyd killing in Minneapolis on May 25, 2020, Wauwatosa (along with other cities across the country) began to experience protests calling for police reform.  The focus of these protests in Wauwatosa was an officer-involved shooting that occurred in February, 2020.  As of September 30, 2020, Wauwatosa had been the center of such protests for more than 120 consecutive days, and the officer-involved shooting was under review by the Milwaukee County District Attorney's office.

12. These protests were largely peaceful, although some people disturbed neighbors at night and a few engaged in illegal acts.

13. On September 30, 2020, Mayor McBride signed a "Proclamation of Emergency" for the City of Wauwatosa which enacted a curfew restricting "pedestrian and vehicular traffic

on Wauwatosa streets" from 7pm to 6am, to commence on October 7 and continue to October 12, 2020.

14. On October 7, 2020, a full week after the execution of the Order, Mayor McBride made this proclamation public. Wauwatosa Common Council had not been advised or notified in any way of this Order, even though the Council was able to, and did in fact meet twice between September 30 and October 7, 2020.

15. On October 10, 2020, at approximately 6:50pm, Plaintiffs were sitting and reading books on the Northeast lawn of the Wauwatosa City Hall on a red floral picnic blanket. Plaintiffs were under a tree, on no street or thoroughfare and blocking no entrance or exit. There were no other persons within approximately 50 to 100 yards of the plaintiffs.

16. At approximately 7:15pm, armored vehicles and lines of armed military-style personnel in riot gear including helmets and shields, entirely blocked both North Avenue westbound, and 76th Street southbound from the intersection of 76th Street and North Avenue, making those streets completely impassible.

17. At approximately 7:30pm, flood lights were trained on the lawn, and directly into the eyes of the Plaintiffs from the line of armed military personnel and vehicles from North Avenue. Knowlton stood up and requested to speak to a Wauwatosa police officer.

18. A bull horn announcement stated that Plaintiffs were in violation of Wisconsin Statute 947.06 for unlawful assembly, and if they did not disperse, they would be subject to arrest. Knowlton stated that there were only 2 people on the lawn, and that the statute required 3 or more people, and again requested to speak to a Wauwatosa police officer. There was no response.

19. Knowlton asked another time in the direction of North Avenue for a Wauwatosa police officer, and then turned around. Knowlton saw that the line of personnel and vehicles spanning across the entire Southbound 76th Street had expanded into and across the lawn of City Hall to the wall of the actual building, and was approximately 20-30 yards away from Plaintiffs' picnic blanket. The line was "shoulder to shoulder" and provided no egress to Plaintiffs.

20. Knowlton called out towards that line requesting to speak with a Wauwatosa police officer. The line continued to move steadily towards North Avenue, blocking any exit. A bull horn from the direction of Southbound 76th Street then yelled something unintelligible to Plaintiffs. Knowlton called out that she could not understand what was said. Knowlton stated that if she needed to leave, her home was South and she needed to go in that direction, and asked again for a Wauwatosa police officer. There was no response.

21. The line continued to move toward the Plaintiffs. Knowlton again asked for a Wauwatosa police officer as the line approached Knowlton. At least 4 armed personnel without any identifying insignia grabbed both of her arms and forcibly pulled her through the line of personnel toward the South parking lot of the City Hall. Knowlton asked what was going on and asked again for a Wauwatosa police officer. There was no response.

22. McCormick was following Knowlton and stated, "I'm going home, it's that way" and pointed South. Unidentifiable personnel in riot gear responded to her, "Oh no you're not" without providing any further information.

23. Two other riot-geared personnel pulled McCormick's arms behind her back and forcibly moved her forward going in the same direction as Knowlton.

24. Knowlton continued to ask at least three more times for a Wauwatosa police officer and asked "what is going on?" No response was provided.

25. Knowlton was brought to the back of a Wauwatosa police truck, told to separate her feet, her book was taken out of her hand, her arms were pulled and held behind her back and she was handcuffed with plastic zip-ties. She was patted down.

26. A Wauwatosa police officer behind Knowlton asked whether she had anything that could be dangerous in her pockets. Knowlton stated, "not on purpose" to which he responded, "not on purpose? So you do have something that could hurt me?" to which Knowlton responded in the negative.

27. Knowlton's back pockets were searched and her cell phone taken.

28. Knowlton was asked her name and birthdate, which she provided.

29. The police officer directed her to get into the back of the truck. Knowlton asked why she had been arrested and was told, "unlawful assembly." Knowlton responded that there were only 2 people on the lawn and this was an unlawful arrest.

30. Knowlton stated that she wanted to speak to an attorney immediately. The police officer responded, "it doesn't work that way, you can talk to an attorney after you are released." Knowlton stated, "I am an attorney and I want to speak to my attorney right now." No one responded or said anything else.

31. McCormick was asked if she had anything sharp or dangerous in her possession. She shook her head in the negative. Her arms were already behind her back being held by two officers. She was handcuffed with plastic zip-ties.

32. McCormick was patted down and her property was taken, including her library book.

33. McCormick was directed to get into the truck without any further explanation or questions.

7

34. At no time was McCormick asked her name or any other identifying information.

35. At no time was either Plaintiff advised of any of their rights.

36. The Plaintiffs asked where they were being taken and were told, "you'll find out when you get there."

37. The truck drove away for some time, and then stopped to pick up an additional person, who was loaded into the truck in handcuffs, crying and asking why she had been arrested and where the truck was going. Again, law enforcement did not respond, or stated that they would not disclose any location.

38. The truck drove on for another 10-15 minutes, and stopped again in a dark and quiet parking lot. Law enforcement opened the back of the truck and stated that another vehicle would be transporting Plaintiffs and the additional person to yet another location which they would not disclose.

39. A Brookfield police truck arrived and at that point, for the first time, McCormick was asked her name by a Brookfield police officer who wrote it on his notebook. Then Plaintiffs and the additional person were loaded into the Brookfield police truck which only had two seatbelts. Knowlton called this to the attention of law enforcement and another vehicle was called to transport so that all detainees had seatbelts.

40. McCormick was then separated from Knowlton and the additional person and put into the back of a police squad car alone and seat-belted. She was not advised any further, but she was then able to identify that location as Our Redeemer Lutheran Church on North Avenue in Wauwatosa. McCormick was then able to observe the direction and location of both vehicles.

41. After another transport of about 10 minutes, Plaintiffs and the additional person were brought into what appeared to be a police processing room. There were no identifying signs as to where or what this location was.

42. Four Wauwatosa-uniformed officers proceeded with an additional search, including under the clothes, and seized other property missed in the first search. Plaintiffs' shoes and handcuffs were removed.

43. Two agents who identified themselves and provided credentials for the United States Federal Bureau of Investigation asked for interviews.

44. The Wauwatosa police officers then asked for social security numbers, about employment, family history, and if Plaintiffs were members in "antifa" and "the People's Revolution" in addition to other questions.

45. Plaintiffs and the additional person were photographed.

46. At no time were Plaintiffs advised of their Constitutional rights.

47. After another hour or so, Plaintiffs and the additional person were issued curfew violation citations and told that was the end of the matter, and further instructions for addressing the citation were included therein.

48. McCormick inquired as to why an arrest was made for an ordinance violation. The officer responded that it is "policy" to "always" bring in parties who had violated municipal ordinances.

49. Law enforcement then told all three detainees that they would be leaving in a police van and dropped off at a point of law enforcement's choosing. The additional person became upset and asked why she was not free to leave on her own. Law enforcement then stated

that "policy" required law enforcement transport as a "courtesy." Law enforcement further stated that Defendant Weber did not want people gathering at the police station.

50. When the additional person cried and expressed fear and claustrophobia in having to get back into a police transport, she was told that she was risking additional arrest for a curfew violation, and it would be "safer" to take the law enforcement "courtesy" transport.

51. McCormick then asked to be taken to our homes (to avoid risk of arrest because of curfew violation), she was told "no, we will drop you off in Wauwatosa."

52. Plaintiffs were then told to leave the building with two Brookfield law enforcement officers who would do the transporting. The additional person was walked out of the parking lot accompanied by a police officer.

53. Plaintiffs' property was given to the Brookfield officers. Once outside, one of the Brookfield officers said he was going to use handcuffs again, and stated that it was required "policy." McCormick stated Plaintiffs would rather walk. The other Brookfield officer then stated something like "forget it, let it go," and Plaintiffs were told to get into the back of the truck. The officers then discussed how to get to the intersection of 76th Street and Milwaukee Avenue. Knowlton stated that Wauwatosa East High School was located there and they could use google maps.

54. Plaintiffs were dropped off at that intersection where Wauwatosa East High School is located, and told they could still be arrested for curfew violation. Plaintiffs' belongings were then returned and Plaintiffs walked to their respective homes.

55. Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, and significant emotional distress and

trauma, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

56. Plaintiffs continue to experience post-traumatic stress, and fear on-going retaliation.

57. At no time were either of the Plaintiffs provided *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention and interrogation.

58. Knowlton was specifically denied her right to Counsel though she had specifically invoked. Further, her Counsel had identified himself to law enforcement and attempted in person to speak with Knowlton before the vehicle left the initial incident location or be advised as to her location. This was denied. Knowlton was never advised of these attempts.

59. McCormick was never identified by or to law enforcement prior to her being handcuffed, detained and removed from the initial incident location. That is, she did not have any identification, and law enforcement did not ask even her name until a different transport occurred.

**FIRST CLAIM FOR RELIEF**
**(Violation of Plaintiffs' Fourth Amendment Rights to be Free from Unlawful Arrest)**

60. All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

61. Law enforcement's arrest and detention of Plaintiffs Knowlton and McCormick were unjustified and unreasonable seizures of their persons.

62. Law enforcement actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

11

63. While acting under color of state law, law enforcement deprived Plaintiffs of their Fourth Amendment rights for which Plaintiffs are entitled to damages proximately caused thereby.

**SECOND CLAIM FOR RELIEF**
**(Violation of Plaintiffs' Fourth Amendment Rights to be Free from Excessive Force)**

64. All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

65. Law enforcement's use of force to effectuate the arrests and detention of Plaintiffs Knowlton and McCormick was unjustified and unreasonable.

66. Law enforcement actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

67. While acting under color of state law, law enforcement deprived Plaintiffs of their Fourth Amendment rights for which Plaintiffs are entitled to damages proximately caused thereby.

**THIRD CLAIM FOR RELIEF**
**(Violation of Plaintiffs' Sixth Amendment Right to Counsel)**

68. All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

69. Law enforcement interrogation of Plaintiffs despite explicit notice that Knowlton had Counsel, and in addition to her specific and explicit invocation of her right to Counsel, is a violation of the Sixth Amendment.

70. Law enforcement actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

71. While acting under color of state law, law enforcement deprived Plaintiffs of their Sixth Amendment rights for which Plaintiffs are entitled to damages proximately caused thereby.

**FOURTH CLAIM FOR RELIEF**
**(Policy and Practice of Arrests for Unlawful Assembly in Violation of First and Fourth Amendment Rights)**

72. All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

73. The policy and practice of Defendants City of Wauwatosa, Weber and McBride of directing and ordering the emergency curfew and dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those, who through law enforcement obstructive and excessive force action are made unable to comply, is unreasonable and unjustified and interfered with Plaintiffs' First Amendment rights of association and ability to observe, record and report their observations.

74. Defendants City of Wauwatosa, Weber and McBride, in implementing the policy and practice of ordering the emergency curfew and dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those, who through law enforcement obstructive and excessive force action are made unable to comply, place Plaintiffs, and others similarly situated, at continuing and foreseeable risk of being arrested for exercising their First Amendment right of association and Fourth Amendment right to be free from excessive force and will not cease without injunctive relief.

75. Defendants' actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

76. While acting under color of state law, Defendants City of Wauwatosa, Weber and McBride deprived Plaintiffs of their First and Fourth Amendment rights for which Plaintiffs are entitled a declaration that the policy and practice is unlawful and an injunction against that policy and/or practice.

WHEREFORE, Plaintiffs respectfully demand judgment as follows:

A. Compensatory and/or nominal damages in an amount to be determined at trial;

B. Punitive damages in an amount to be determined at trial;

C. A declaration that the City's policy and/or practice of declaring unlawful assemblies and ordering dispersal of persons not participating in unlawful activity violates the First and Fourth Amendments;

D. An order enjoining Defendants City of Wauwatosa, and Weber from enforcing a policy ordering dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those who through law enforcement obstructive and excessive force action are unable to comply;

E. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. sec. 1983 and 1988; and

F. All other relief the Court deems just.

PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL CLAIMS.

Dated this 2nd day of November, 2020.

**KNOWLTON LAW GROUP, LLC**
Counsel for Plaintiffs,

By: */s/ Kathryn L. Knowlton*
Kathryn L. Knowlton, State Bar No.: 1032814
Knowlton Law Group, LLC
7219 West Center Street
Wauwatosa, WI 53210
Phone: 414-202-2444
Facsimile:414-939-8830
Email: kate@knowltonlawgroup.com