UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KATHRYN KNOWLTON, and
DANA McCORMICK, et al,

      Plaintiffs,

v.

Case No. 20-CV-1660

CITY OF WAUWATOSA, BARRY WEBER,
in his official capacity as Chief of Police, and
DENNIS MCBRIDE, in his official capacity
as Mayor of Wauwatosa, et al,

      Defendants.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

### I. INTRODUCTION

Protective orders in federal litigation may only be granted upon a showing of good cause. Good cause, in this context, requires the Defendant to show that it will suffer harm or prejudice if no protective order is issued. The Seventh Circuit has explicitly stated that, if good cause is not shown, the materials in question should not receive judicial protection. *Jepson, Inc. v. Makita Elec. Works*, 30 F.3d 854, 858 (7th Cir. 1994).

In determining whether good cause exists to enter a protective order, a district court "must balance the interests involved: the harm to the party seeking the protective order and the importance of disclosure to the public." *Wiggins v. Burge*, 173 F.R.D. 226 at 229 (N.D. Ill. 1997). In doing so, the court should consider factors such as: the public interest in the information,

1

whether the information is important to public health and safety, and whether the party benefitting from the protective order is a public official. *Id.*

Here, in a Civil Rights case, Defendants, all under the mantle of state authority, seek sweeping protection and secrecy from the public based on unspecified burdens, inapplicable precedent and mis-stated circumstances. Put simply, Defendants seek to obstruct Plaintiffs' discovery efforts, thwart precedent and the judicial efficiency constructed by the Federal Rules of Civil Procedure and case law, without any demonstration that harm or prejudice will result from compliance with proper discovery demands by Plaintiffs.

The issue before this Court is whether Defendants may obtain a protective order for material directly implicating the ultimate question before this Court, and repeatedly and definitively delay discovery in this matter without meeting the requisite burden required for the issuance of such sweeping, prohibitive relief.

Plaintiffs oppose Defendants' motion for a protective order (ECF # 43), and respectfully request an order: (1) compelling Defendants to immediately, fully and completely comply with all discovery requests, and (2) ordering Defendants to pay Plaintiffs' fees and costs pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5).

## II. BACKGROUND

This case is a Civil Rights case, particular to state actors and their decision-making and activities already taken against the public citizenry. The issues of this case implicate free assembly, free speech and state-sponsored law enforcement practices and activities. There are no issues of proprietary commercial value, and Defendants raise no protection claims based upon those grounds. Rather, Defendants make two discrete claims for protection: 1) identity of confidential informants; and 2) law enforcement "tactics and/or operational planning… prior to

2

any interaction with the public." (ECF #43 at p.1)

Even if these two rationales were acceptable in this case, which they are not, Defendants fail to provide any factual nexus to the undisputed and actual circumstances, nor meet the applicable standards.

On the face of Defendants' motion alone, this Court already has authority to consider the lack of proffered specificity by the Defendants as in and of itself, enough to deny the motion and merit allocation of costs and fees to Plaintiffs. Your Honor has already provided generous bites at the apple in both time and substantive assistance on at least three occasions, such that all Counsel are aware of the standards and factual requirements to seek such a draconian order. Yet Defendants persist in over-generalizing, ignoring standards and failing to connect their request to available remedies. This is simply unacceptable, obstructive and abusive of the pleading and discovery process. Defendants must be taken in hand to stem this continued delay and to refocus on proper procedure, and Plaintiffs are entitled to relief via costs and fees.

### III. ARGUMENT

1. **Defendants fail to provide substantive grounds and/or precedent to justify requested relief for protection of "confidential informant or source."**

Specifically, Defendants first request for a protective order references "[i]nformation derived from a registered confidential informant or source[1]." However, Defendants fail to reference any requests which would jeopardize any personal safety or compromise officer/informant personally

---

[11] We are unclear as to why Defendants cite to *Dellwood Farms, Inc. v. Cargill Inc.*, 128 F.3rd 1122, 1124 (7th Cir. 1997), as it is fully distinguished factually from the instant case. Defendants seemingly attempt to make parallel an FBI wiretapping situation where probable cause already existed to investigate (in *Dellwood*) to the fabricated social media profiles of this instant case ostensibly created to operate in the fully public realm, without any specified probable cause. It is incomparable and inapplicable. In fact, *Dellwood* confirms, "[t]he law enforcement investigatory privilege is not absolute. It can be overridden in appropriate cases by the need for the privileged materials. *Tuite v. Henry*, 98 F.3d 1411, 1417-18 (D.C. Cir. 1996)." *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997).

3

identifying information or security.

Plaintiffs concede and respect that information regarding identity of confidential informants is worthy of protection when it pertains to her/his identity to ensure an informant's personal safety. This comports with the current and applicable standards articulated by the U.S. Supreme Court in *Roviaro v. United States*, 353 U.S. 53 (1957). The *Roviaro* Court and its progeny specifically defines:

> [t]he purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Id*. at 60.

However, this standard is distinguished in the instant case because here, the clandestine use of fake social media accounts does not meet the applicable definition, nor any safety threshold. In fact, contrary to a citizen "communicating their knowledge of a commission of crimes," the social media handles/profiles proactively solicit communication at the initiation by law enforcement. Thus, this "source" (handle/social media profile) is not subject to the same balancing test as applied to an officer and/or human informant's physical safety or disclosure of a crime. Instead, Defendants argue in favor of sheer convenience for law enforcement, and even then, in a public realm: online. Certainly the benefit of truth and accuracy of fact-finding in this case outweighs the potential additional work that only *may* be necessary for law enforcement in having to create new online (fake) profiles.

Importantly, *Roviaro* explicitly requires a strict fact-intensive analysis by the Court in weighing the totality of specific circumstances against non-disclosure, which remains anathema to the healthy course of procedural justice. *State v. Griffin*, 984 So. 2d 97, 114 (1st Cir. 2008). This is

4

especially intense and critical in a Civil Rights case implicating rights and liberties of citizens against state action, and specifically against secret law enforcement authority and activities.

Defendants ignore the applicable standard and instead rely upon the "confidential" definition applied in *Hicklin Engineering, LLC v. Bartell*, 439 F.3d 346, 348(7th Cir. 2006). However, *Hicklin* only discusses commercial trade secrets and in essence, an independent contractor's non-compete claim, while only mentioning in passing the confidential informant "privilege" as articulated in *Roviaro*.

Clearly Defendants wish to avoid the applicable standard because a social media handle/profile "tool" (ECF #43 at p. 3) is merely a fishing expedition for law enforcement and does not reveal any identity of any actual informer. It is troubling and disingenuous that Defendants argument for this most severe type of secrecy, a protective order to lock out the public, references interference which could only occur "online," and which by their own description, could undermine a law enforcement "tool," not a person or security. At worst, law enforcement may have to reset some logins and passwords. The foundational principles of this case are Constitutional. Law enforcement is accountable to full scrutiny in its treatment of the citizenry. Thus, no privilege can attach and Defendants' motion must be denied.

**2. Defendants fail to identify with specificity any sensitive "tactics and/or operational planning," nor any material that meets the applicable standard for protection from disclosure.**

Defendants' second request for a protective order references information "which contains law enforcement tactics and/or operational planning, including aerial surveillance (drone) footage which depicts law enforcement staging, positions, and movement prior to any interaction with the public." (ECF #43 at p. 3).

5

Again, this Court may clearly deny this request simply as it is overly vague and broad, inevitably leading to claims for almost any/all discovery as falling into this category. Rather than following Your Honor's advice to properly restrict the motion to a specific item (e.g. "drone footage dated x/x/xx from time stamp xx:xx to xx:xx"), Defendants have instead collected the entirety of law enforcement "operational planning."

Defendants seem to make a half-hearted attempt to restrict, yet again disingenuously, by stating, "[t]o be clear, we are only seeking a protective order on the parts of the drone footage that show police staging, movement, and positioning prior to any officer interacting with any member of the public." (ECF #43 at p.3).

In addition to the utter subjectivity that statement inspires, it also is negated by the reality that all the law enforcement positioning and movement captured by drone recording was occurring outside, on public streets, sidewalks, city hall and public school property, in front of citizen's homes and churches and in small business parking lots.

Defendants attempt to rationalize by stating that such disclosure risks "undermining important police investigatory procedures…." (ECF #43 at p.4). But if the protection is necessary for footage "*prior* to any officer interacting…" then what investigation could be undermined? This seems a transparent attempt to bootstrap what the Honorable Chief Judge Posner dubs the "'law enforcement investigatory privilege,' a judge-fashioned evidentiary privilege" in *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1123 (7th Cir. 1997). It is inapplicable, because 1) the footage referenced is not purported to be capturing any suspected criminal activity (subject to/of any police investigation), and 2) courts have consistently and persuasively held that transparency and accountability is vital in evaluating law enforcement's actions toward, and treatment of the public.

6

Significantly, as quoted in *Wiggins v. Burge*, 173 F.R.D. 226 (N.D. Ill. 1997), the court in *Mercy v. County of Suffolk*, 93 F.R.D. 520 (E.D.N.Y.1982) specifically confirms that:

> No legitimate purpose is served by conducting [police internal] investigations under a veil of near-total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court, may examine the file in the event of civil litigation may serve to ensure that these investigations are carried out in an even-handed fashion that the statements are carefully and accurately taken, and that the true facts came to light, whether they reflect favorably or unfavorably on the individual police officers involved or on the department as a whole.

*Id.* at 522.

Again, Defendants cite only one, and a fully distinguishable case, with *In re the City of New York*, 607 F.3d 923 (2nd Cir. 2010). In that case, the Republican National Convention in New York City brought upwards of 800,000 people to the city, and multiple terrorist threats from international venues. At issue was protection of advanced field reports which were actual work product created by undercover officers (people). By contrast, in this case, the material at issue is real time recording of real time action, literally capturing on video what actually is occurring on those evenings - outside - and specific to that time and place.

Neither Plaintiffs nor this Honorable Court are required to do the work of the Defendants in identifying with the required specificity what items might qualify for protection – as well as articulating a proper basis for which protection might apply. Defendants' second request smacks of disrespect not only in its overreach, but especially when coupled with the inapplicability of one cited case, and the Constitutional claims demanding "… that the allegations of police misconduct contained in the disputed files must be exposed to the light of human conscience and the air of natural opinion." *Wiggins v. Burge*, 173 F.R.D. 226, 230 (N.D. Ill. 1997).

7

## CONCLUSION

In brief, Defendants' motion for a blanket protective order fails to address with specificity even appropriate subject matter for evaluation, much less apply the legal standard required of parties seeking such an order. Defendants fail to support their motion with any facts and law required to cause this Court to grant such a prohibitive and disfavored order. Thus, the motion must be denied and costs and fees appropriately awarded to Plaintiffs pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5).

Respectfully submitted this 10th day of August, 2021.

By: ____/s/Kathryn L. Knowlton_____
Kathryn L. Knowlton
WI State Bar No. 1032814
Knowlton Law Group, LLC
7219 West Center Street
Wauwatosa, Wisconsin 53210
Phone : 414-202-2444
Fax : 414-939-8830
Email : kate@knowltonlawgroup.com
Kimberley Cy. Motley, Esq.
WI State Bar No. 1047193
Motley Legal Services
Email: kmotley@motleylegal.com
Milo Schwab, Esq.
Ascend Counsel
Email: milo@ascendcounsel.co

*Attorneys for Plaintiffs*