# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

TRACY COLE, TALEAVIA COLE, TAHUDAH COLE, TRISTIANA WALLS, KATHRYN KNOWLTON, DANA McCORMICK, ANDREW AARON, KAMILA AHMED, ROBERT AGNEW, ISIAH BALDWIN, JACQUELINE BOGENBERGER, LAVITA BOOKER, REBECCA BURRELL, RAINE CICH, KHALIL COLEMAN, STEVEN CONKLIN, LAURYN CROSS, RACHEL DULAY, ANNE DELESSIO-PARSON, ERIK FANNING, JESSICA FENNER, JILL FERGUSON, BREON FOSTER, JOANNA GEISLER, CHRISTINE GROPPI, GAIGE GROSSKREUTZ, JOSEPH HAYES, PERCY HAYES, DESTINEY JONES, ADANTE JORDAN, MARY KACHELSKI, SEAN KAFER, JOEY KOEPP, JOHN LARRY, ALEX LARSON, SONORA LARSON, HOLLY LAVORA, LAZARITO MATHEU, VAUN MAYES, MOLLY NILSSEN, SHAWN PAGE, CARMEN PALMER, (JUVENILE) PALMER 1, (JUVENILE) PALMER 2, LEAH PORTER, AIDALI RIVERA, WILLIAM RIVERA, HECTOR RODRIGUEZ, JOSE HERNANDEZ RAMIREZ, OSCAR CONCEPCION RODRIGUEZ, ROSALIND ROGERS, NATHAN SABEL, WILLIAM SCHROEDER, MADELIENE SCHWEITZER, MARIAH SMITH, PETER SPARKS, TIFFANY STARK, ANGEL VEGA, CHRISTINA VITOLO-HADDAD, GABRIELLA VITUCCI, OSCAR WALTON, JAYDEN WELCH, BRITTA WELCH, SUZANNE WELLS, BRANDON WILBORN, TRISHA WILSON, KATELYN WOJNAR, SONJA WORTHY, and MEMBERS OF THE PEOPLE'S REVOLUTION, AN UNINCORPORATED ENTITY, hereinafter referred to as (TPR), on behalf of themselves and all others similarly situated,

      Plaintiffs.

      v.                      Case No. 20 CV 01660

CITY OF WAUWATOSA, CITY OF WAUWATOSA CHIEF OF POLICE BARRY WEBER, in his official capacity, DENNIS McBRIDE, in his official and individual capacity, DOMINICK RATKOWSKI, in his official capacity, GEORGE SCHIMMEL, in his official capacity, LUKE VETTER in his official capacity, JEFFREY FARINA, in his official capacity, JOSEPH ROY, in his official capacity, JOSEPH LEWANDOWSKI, in his official capacity, MARTIN KECK, in his official capacity, SHANE WRUCKE, in his official capacity, KATHY CAUSIER, in her official capacity,
AND JOHN DOES OFFICERS in their official capacities,

      Defendants.

---

## THIRD AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

---

1

Plaintiffs, by their undersigned attorneys of record, allege as follows:

## I. <u>INTRODUCTION</u>

1. Throughout the summer of 2020, the United States was immersed in the largest social justice movement in history. In a repudiation of anti-Black racism, white supremacy, police violence, mass criminalization, and mass incarceration, millions joined demonstrations around the globe in solidarity against police violence which was inspired by the tragic deaths of persons like George Floyd, Breonna Taylor, Alvin Cole, Sandra Bland, Jay Anderson, Dontre Hamilton, Elijah McClain, and far too many other black Americans killed at the hands of police.

2. Many of the Plaintiffs as well as thousands of other organizers, activists, and community leaders throughout the State of Wisconsin - multi-racial, varying gender orientations, and intergenerational in composition - engaged in a wide variety of actions throughout the summer and fall of 2020, which included rallies, marches, and other creative protests that consistently opposed police violence and demanded police accountability within the criminal justice system.

3. One political protest movement emerged in Wisconsin after the murder of George Floyd on May 25, 2020 called The People's Revolution, hereinafter referred to as "TPR."

4. TPR started protesting in Wisconsin inspired by the tragic murder of George Floyd, Alvin Cole, Jay Anderson, and many others who were killed at the hands of law enforcement officers.

5. This is a civil action brought pursuant to 42 U.S.C. §1983. Plaintiffs seek damages for injuries sustained by Plaintiffs as a result of Defendants' violation of their constitutional rights. Plaintiffs also seek to enjoin the City of Wauwatosa and Wauwatosa Mayor Dennis

2

McBride from issuing unlawful emergency orders and Police Chief Barry Weber and other Wauwatosa Police Officers from issuing and enforcing unlawful policies including dispersal orders to peaceful citizens based on alleged unlawful assembly or other group misconduct by others.

6.     Plaintiffs are citizens of the U.S. who were ticketed, arrested, and/or targeted in the City of Wauwatosa for being physically present or engaging in peaceful protests in the wake of the homicides of George Floyd, Alvin Cole, and the shooting of Jacob Blake, as well as peacefully protesting the inequitable treatment imposed upon persons of color who have been severely hurt or killed by police officers.

7.     This case primarily arises from the City of Wauwatosa's Emergency Order unlawfully and unilaterally passed and signed by the Mayor Dennis McBride, on September 30, 2020 anticipating civil unrest following the release of the Milwaukee County District Attorney's findings in the matter of Wauwatosa Police Officer Joseph Mensah's killing of Alvin Cole on February 2, 2020. The Mayor's Order gave rise to the Wauwatosa Police Department's response which included the mobilization of over forty-five (45) regional, state and federal operational partners, including but not limited to the Wisconsin Department of Justice, the FBI (Federal Bureau of Investigations), the ATF (the Bureau of Arms, Tobacco, Firearms and Explosives), the Wisconsin National Guard, the United States Marshalls, etc., (see **Exhibit #1 -** DA Announcement Civil Unrest Operational Plan Approved 10/06/20 by Captain Vetter).

8.     The WPD, other Wauwatosa City Agencies, and other operational partners responded to the demonstrations with unconstitutional tactics that were clearly intended to injure, silence, and intimidate Plaintiffs as well as all citizens. These abusive tactics included

3

violently beating protestors, engaging in false arrests, the creation of false arrest records, use of chemical agents, and kettling protestors in enclosed areas.

9. The WPD targeted nonviolent protesters, medics, journalists, and individuals recording the demonstrations with retaliatory and unlawful police tactics.

10. The actions of the WPD have gone unchecked by the City of Wauwatosa. In particular the Mayor of Wauwatosa and its Police and Fire Commissioners have done little to nothing to address the decades of inequitable policing to persons of color and violence against protestors.

11. In fact, Wauwatosa's Police and Fire Commission in the Fall of 2020 unanimously voted to change the time limit for persons filing citizen complaints against Wauwatosa Police Officers to within 120 days of the incident when prior to this there was no time limit.

12. On January 7, 2021 one day after the U.S. Capitol attempted insurrection, the WPD, through Defendant WPD Lt. Joseph Roy, released numerous unredacted open records to journalists and private citizens which included personally identifying and highly restricted information. (See **Exhibit #2** Joseph Roy Email of January 7, 2021 releasing unredacted documents).

13. On June 23, 2021 it was revealed by Defendant Dominick Ratkowski that he created a "protestor list" (also referred to by WPD and others as "TPR List" and "TPR Target List") on or around June 5, 2020 for the purpose of monitoring and targeting persons whom the WPD perceived to be members of, or in sympathy with expressed ideas by TPR, including members of the public who were simply physically at a gathering.

## II.    <u>JURISDICTION AND VENUE</u>

14. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §1331

4

(federal question), 28 U.S.C. §1343(a)(3) and (4) (civil rights jurisdiction), 28 U.S.C. §§2201, 2202 (declaratory judgment jurisdiction), and 28 U.S.C. §1367 (supplemental jurisdiction).

15.    Venue is proper in the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. §1391(b)(1) and (2) because defendants (including entities) are therein located, and because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

### III.    THE PARTIES TO THIS COMPLAINT

16.    Plaintiff Andrew Aaron resides in the City of Milwaukee, State of Wisconsin.  Plaintiff uses he/him pronouns and attended a protest in Wauwatosa on August 14, 2020.  Plaintiff was put on the TPR Target List on or around June 5, 2020.

17.    Plaintiff Robert Agnew resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and attended a protest in Wauwatosa in 2020.  Plaintiff was put on the TPR Target List on or around June 5, 2020.

18.    Plaintiff Kamila Ahmed resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and attended a protest in Wauwatosa on August 14, 2020 and August 30, 2020.  Plaintiff was put on the TPR Target List on or around June 5, 2020.

19.    Plaintiff Isiah Baldwin resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and attended protests on August 14, September 6, and October 10, in Wauwatosa.  Plaintiff was put on the TPR Target List on or around June 5, 2020.

20.    Plaintiff Jacqueline Bogenberger resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and attended a protest in Wauwatosa on September 30, 2020.  On October 9, 2020, plaintiff was arrested in the city of Milwaukee after leaving a protest in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

5

21. Plaintiff Lavita Booker resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

22. Plaintiff Rebecca Burrell resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

23. Plaintiff Raine Cich resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 9, 2020 was arrested in the city of Milwaukee after leaving a protest in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

24. Plaintiff Tracy Cole resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 was arrested while trying to leave a protest in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

25. Plaintiff Taleavia Cole resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 was arrested while trying to leave a protest in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

26. Plaintiff Tahudah Cole resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 was arrested while trying to leave a protest in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

27. Plaintiff Khalil Coleman resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on August 13, 2020 was protesting, and later issued a citation. Plaintiff was put on the TPR Target List on or around June 5, 2020.

28. Plaintiff Oscar Concepcion Rodriguez resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 7, 2020 plaintiff was

6

arrested while he was working in Wauwatosa.  Plaintiff was put on the TPR Target List on or around June 5, 2020.

29.     Plaintiff Steven Conklin resides in the City of Watertown, State of Wisconsin. Plaintiff uses he/him pronouns and on September 30, 2020 plaintiff received a ticket by mail weeks    after protesting in Wauwatosa.  Plaintiff was put on the TPR Target List on or around June 5, 2020.

30.     Plaintiff Lauryn Cross resides in the City of Milwaukee, State of Wisconsin.  Plaintiff uses she/her pronouns and attended a protest in Wauwatosa in 2020.  Plaintiff was put on the TPR Target List on or around June 5, 2020.

31.     Plaintiff Anne Delessio-Parson resides in the City of Milwaukee, State of Wisconsin.  Plaintiff uses she/her pronouns and on October 9, 2020 was arrested while protesting in Wauwatosa.

32.     Plaintiff Rachel Dulay resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 was arrested while protesting in Wauwatosa.

33.     Plaintiff Erik Fanning resides in the City of Wauwatosa, State of Wisconsin. Plaintiff uses he/him pronouns and on October 8, 2020 was arrested while trying to leave a protest in Wauwatosa.  Plaintiff was put on the TPR Target List on or around June 5, 2020.

34.     Plaintiff Jill Ferguson resides in the City of West Allis, State of Wisconsin. Plaintiff uses she/her pronouns and on October 11, 2020 was arrested while protesting in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

35.     Plaintiff Breon Foster resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 9, 2020 was arrested while protesting in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

7

36. Plaintiff Joanna Geisler resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 9, 2020 was arrested while protesting in Wauwatosa before the curfew began.

37. Plaintiff Christine Groppi resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on July 21, 2020 attended a listening session sponsored by the Wauwatosa City Government in the City of Wauwatosa and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

38. Plaintiff Gaige Grosskreutz resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and attended protests in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

39. Plaintiff Christina Vitolo-Haddad resides in the City of Madison, State of Wisconsin. Plaintiff uses they/them/he pronouns and on October 9, 2020 was arrested while leaving a protest in Wauwatosa.

40. Plaintiff Joseph Hayes resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on August 14, 2020, October 8, 2020, and October 9, 2020 was arrested while protesting in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

41. Plaintiff Percy Hayes resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and was told that he had a ticket for Carotid / Neck Restraint from Wauwatosa Police which he has never received. Plaintiff believes that he received a ticket because he was protesting in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

42. Plaintiff Jose Hernandez Ramirez resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 8, 2020 was arrested while trying to leave a protest in Wauwatosa.

43. Plaintiff Destiney Jones resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 plaintiff was arrested while trying to leave a protest in Wauwatosa.

44. Plaintiff Mary Kachelski resides in the City of Wauwatosa, State of Wisconsin. Plaintiff uses she/her pronouns and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

45. Plaintiff Sean Kafer resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on August 14, 2020 Plaintiff filming a protest in Wauwatosa, and later mailed a citation. Plaintiff was put on the TPR Target List on or around June 5, 2020.

46. Plaintiff Kathryn Knowlton resides in the City of Wauwatosa, State of Wisconsin. Plaintiff uses she/her pronouns and on October 10, 2020 was arrested in Wauwatosa.

47. Plaintiff Joey Koepp resides in the City of Greenfield, State of Wisconsin. Plaintiff uses he/him pronouns and on September 3, 2020 plaintiff was arrested while protesting in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

48. Plaintiff John Larry resides in the City of Wauwatosa, State of Wisconsin. Plaintiff uses he/him pronouns and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

49. Plaintiff Alex Larson resides in the City of Wauwatosa, State of Wisconsin. Plaintiff uses he/him pronouns and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

50. Plaintiff Sonora Larson resides in the City of Milwaukee the State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 was arrested while trying to leave a protest in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

51. Plaintiff Holly Lavora resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 was arrested while trying to leave a protest in Wauwatosa.

52. Plaintiff Math Lazarito Matheu resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 9, 2020 was arrested while in Wauwatosa.

53. Plaintiff Vaun Mayes resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

54. Plaintiff Dana McCormick resides in the City of Wauwatosa, State of Wisconsin. Plaintiff uses she/her pronouns and on October 10, 2020 was arrested while in Wauwatosa.

55. Plaintiff Molly Nilssen resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 10, 2020 was arrested while in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

56. Plaintiff Carmen Palmer resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 was arrested while protesting in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

57. Plaintiff (Juvenile) Palmer #1 resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 was arrested while with her parent in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

58. Plaintiff (Juvenile) Palmer #2 resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 8, 2020 plaintiff was arrested while she was with her parent in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

59. Plaintiff Leah Porter resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 9, 2020 was arrested while leaving a protest in Wauwatosa.

60. Plaintiff Aidali Rivera resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 9, 2020 was arrested while in Wauwatosa.

61. Plaintiff William Rivera resides in the City of Wauwatosa, State of Wisconsin. Plaintiff uses he/him pronouns and on October 9, 2020 was arrested while in Wauwatosa.

62. Plaintiff Hector Rodriguez resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 9, 2020 was arrested while in Wauwatosa.

63. Plaintiff Rosalind Rogers resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on September 6, 2020 was arrested while protesting in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

64. Plaintiff Nathan Sabel resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 8, 2020 was arrested while trying to leave a protest in Wauwatosa.

65. Plaintiff William Schroeder resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 9, 2020 plaintiff was arrested while protesting in Wauwatosa before the curfew began.

66. Plaintiff Madeline Schweitzer resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and attended a protest in Wauwatosa in 2020. Plaintiff

11

was put on the TPR Target List on or around June 5, 2020.

67. Plaintiff Mariah Smith resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on August 13, 2020 and September 5, 2020 was protesting in Wauwatosa and was later mailed a ticket. Plaintiff was put on the TPR Target List on or around June 5, 2020.

68. Plaintiff Peter Sparks resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 10, 2020 was in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

69. Plaintiff Tiffany Stark resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

70. Plaintiff Angel Vega resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on October 9, 2020 was in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

71. Plaintiff Gabriella Vitucci resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on August 13, 2020 and August 14, 2020 was protesting in Wauwatosa and was later mailed a ticket. On October 9, 2020 Plaintiff was arrested in the city of Milwaukee after leaving a protest in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

72. Tristiana Walls resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 was detained while trying to leave a protest in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

73. Plaintiff Oscar Walton resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

74. Plaintiff Suzanne Wells resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and on October 8, 2020 plaintiff was arrested while trying to leave a protest in Wauwatosa.

75. Plaintiff Brandon Wilborn resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses he/him pronouns and on August 14, 2020 and September 30, 2020 was in Wauwatosa protesting. Plaintiff was put on the TPR Target List on or around June 5, 2020.

76. Plaintiff Trisha Wilson resides in the City of Milwaukee, State of Wisconsin. Plaintiff uses she/her pronouns and attended a protest in Wauwatosa in 2020. Plaintiff was put on the TPR Target List on or around June 5, 2020.

77. Plaintiff Katelyn Wojnar resides in the City of Stevens Point, State of Wisconsin. Plaintiff uses she/her pronouns and on October 9, 2020 was arrested in the City of Milwaukee after leaving a protest in Wauwatosa. Plaintiff was put on the TPR Target List on or around June 5, 2020.

78. Plaintiff Sonja Worthy resides in the City of Madison, State of Wisconsin. Plaintiff uses she/her pronouns and on October 9, 2020 was arrested while leaving a protest in Wauwatosa.

79. Plaintiffs the People's Revolution (TPR) is an unincorporated entity consisting of a group of individuals who participated in various actions throughout the State of Wisconsin during the summer and fall of 2020 which originated in Milwaukee, Wisconsin created after the George Floyd killing which took place on May 25, 2020.

13

80.     Defendant City of Wauwatosa is a municipality incorporated in the State of Wisconsin.

81.     Defendant Barry Weber was the Chief of Police during all the dates in question for the Wauwatosa Police Department (hereinafter referred to as "WPD") located at 1700 North 16th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and an email of bweber@wauwatosa.net, and is, on information and belief an adult resident of the State of Wisconsin residing in Washington County, within the Eastern District of Wisconsin. Defendant Weber was the Chief of Police for Wauwatosa and in that capacity had final responsibility for establishing the rules of engagement for police deployments responding to protests and civil unrest and as directed by the Mayor. Chief Weber is named in his official capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Weber was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

82.     Defendant Dennis McBride is the Mayor of Wauwatosa, located at the Wauwatosa City Hall at 7725 West North Avenue, Wauwatosa, WI 53213, County of Milwaukee, State of Wisconsin, with a phone number of 414-479-8917 and an email of dmcbride@wauwatosa.net, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant McBride is the Mayor of Wauwatosa, and in that capacity is chief executive officer, responsible to direct the Chief of Police. Mayor McBride is named in his official capacity for declaratory and injunctive relief only and in his individual capacity for punitive damages. At all times pertinent and material to this Complaint, Defendant McBride was acting within the scope of his position and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

83. Defendant Dominick Ratkowski is an employee of the City of Wauwatosa who worked at the WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and an email of dratkowski@wauwatosa.net , and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Ratkowski is named in his official capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Ratkowski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

84. Defendant Kathy Causier is the President of Wauwatosa's Common Council located at the Wauwatosa City Hall at 7725 West North Avenue, Wauwatosa, WI 53213, County of Milwaukee, State of Wisconsin, with a phone number of 414-771-0123 and an email of kCausier@wauwatosa.net, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Causier is the President of the Common Council and named in her official capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Causier was acting within the scope of her position and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

85. Defendant George Schimmel is the contracted Attorney for the City of Wauwatosa located at the Wauwatosa City Hall at 7725 West North Avenue, Wauwatosa, WI 53213, County of Milwaukee, State of Wisconsin, with a phone number of 414-881-8559 and an email of gschimmel@schimmel-law.com, and is, on information and belief, an adult

resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Schimmel is named in his official capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Schimmel was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

86. Defendant Martin Keck was an officer with the WPD located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Keck is named in his official capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Keck was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

87. Defendant Joseph Lewandowski is an officer with WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Lewandowski is named in his official capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Lewandowski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

16

88. Defendant Joseph Roy is a law enforcement officer with WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Roy is named in his official capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Roy was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

89. Defendant Luke Vetter is a Captain with the WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Vetter is named in his official capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Vetter was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

90. Defendant Shane Wrucke is a law enforcement officer with the WPD located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and an email of, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Wrucke is named in his official capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant

Wrucke was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

91.    John Does 1-100 are individual police officers and employees of the City of Wauwatosa, who enabled, supported and/or effectuated arrests, caused bodily harm, created false arrest records, and/or ticketed individuals at issue in this case. Their identities are currently unknown to Plaintiffs but are known to Defendant City of Wauwatosa. They are each public employees of Wauwatosa who were operating under the color of state law. When their identities are determined, this Complaint will be amended to name each individual officer to the extent that they violated the rights contemplated in this suit.

### IV.    HISTORICAL BACKGROUND OF RACIAL ISSUES IN WAUWATOSA AND THE WAUWATOSA POLICE DEPARTMENT

92.    From 1920 through at least the 1950's Wauwatosa was known as a restrictive zoning city in which African Americans were not welcome.[1] Even well into the 1960s it was not uncommon to see signs in Wauwatosa excluding black people or seeing property deeds which explicitly "excluded non-whites from purchasing, owning, leasing or occupying."[2]

93.    In 1989 the City of Wauwatosa hired Franklin M. Kimmel of the Consortium of Governmental Counselors, Inc., an outside research firm, to conduct a comprehensive study of the Wauwatosa Police Department.

94.    As a result of the study, it was recommended that seventeen police officer positions be eliminated within four-years . As far as we know this did not happen.

---

1 https://www.jsonline.com/story/news/solutions/2019/06/18/centuries-old-racism-haunts-efforts-treat-milwaukee-trauma-epidemic/2580146002/

2 Id.

95. Researchers also noted that the Wauwatosa Police Department "is overstaffed, over-specialized, deficient in supervision, operational planning, and case handling."

96. The study also concluded that there was an "inadequacy of leadership," as well as "inefficient training of officers and misallocation of personnel." Additionally, it was noted that the police non-supervisory union was too powerful. The study advised the union should relinquish some of its power and called for the City of Wauwatosa to expedite the removal of then police chief Roy Wellnitz, who had held this position since 1975. The Wauwatosa Police Department Peace Officers Union disputed that the department needed to reduce its staff. See Wauwatosa Times Article January 12, 1989. (Please note Wauwatosa Times publication is no longer in existence; the below articles are archived at the Wauwatosa Public Library.)



97. Police Chief Wellnitz was forced to leave in August 1989, because, according to news reports, he violated the department's residency requirement when he moved out of Wauwatosa. Chief Wellnitz left the Wauwatosa Police Department amid controversy in the community for racially insensitive actions by officers working within the police force.

98. Interim Chief Fred Basting replaced Wellnitz and served in that role from August 1989 through May 1990.

19

99. Around this time, a civilian clerk named John Kutz reported to the Wauwatosa's Police and Fire Commission that Wauwatosa Police officers were hosting and attending racist events labeled Martin Luther King Parties or "MLK parties."

100. According to Mr. Kutz, these parties were racially themed and held in 1988 and 1989 at the house of then Police Sergeant John Bozevich. Mr. Kutz reported that officers wore nametags bearing the name of minority persons, they advertised the parties using pictures of minorities who had been arrested, and he alleged that Ku Klux Klan materials and Confederate flags were displayed at the parties. Wauwatosa Times 03/29/90



101. There was no dispute that the parties occurred. The crux of the officers' argument was that under the First Amendment they had the right to participate in such gatherings regardless of their role in protecting the civil rights of citizens of Wauwatosa.

102. Wauwatosa's Common Council and the Police and Fire Commission from 1990 – 1991 continued investigations regarding the MLK Parties while also conducting a nationwide search for a police chief.

103. Although the MLK parties were allegedly held while officers were off duty, many participants were disciplined by then interim Chief Basting and suspended for several days without pay.

104. Sqt. Bozevich was given a twenty-day suspension and James Zalewski was given a thirty-day suspension while the matter was being investigated. Wauwatosa Times April 19, 1990.

105. Contemporary news articles suggest a public perception that policing in Wauwatosa was racially motivated and discriminatory.



106. Amid this controversy, the City of Wauwatosa continued its nationwide search to replace police Chief Wellnitz and Chief Barry Weber was hired in May 1990 and was the chief of the Wauwatosa Police Department at all times that are subject of this suit, and until June 1, 2021.

107. Mr. Weber, as Chief of Police, protected and promoted those involved with the racist MLK parties.

108. The investigation into the MLK parties was closed and then reopened; while the investigation was taking place, Chief Weber promoted Sqt. Bozevich, who hosted Martin Luther King Parties in 1989 and 1990. Sqt. Bozevich ultimately became the second in command with the WPD for a number of years. Chief Weber also promoted and protected many of the other officers who were a part of the MLK parties and who were harassing John Kutz, the civilian clerk, during the investigation.

109. In 1991 Kutz felt threatened and testified to the Police and Fire Commission that an officer Howard Bacon "fired a revolver at him later to learn it was loaded with blanks." This occurred indoors next to Kutz's desk while he was working at the Police Department. Kutz reported being harassed by Chief Weber at the time and felt in fear for his safety.

110. The Police and Fire Commission determined that the thirteen officers involved had a constitutionally protected right to participate in and host the MLK parties. All suspensions were reversed, and it appears officers were given back pay.

111. Chief Weber promoted several officers, including the officer who hosted at least two of these events while the investigation was on-going.



**Police clerk's testimony charges harassment, fear**

By Mary Hoehne

112. In September 1990 and January 1991, John Kutz filed a complaint against newly hired Chief Weber and others, claiming that Weber harassed him. Kutz's complaint expressed surprise that Chief Weber promoted officers, including John Bozevich and others who attended the parties, while the investigation into the events were ongoing with the Police and Fire Commission.

Wauwatosa Times 09/13/90

23




113.    According to the latest U.S. census of Wauwatosa as of August 13, 2021, Wauwatosa

        has a population of approximately 48,387 and is a little over 13 square miles in area.

114.    Since April 2010 the population has stayed relatively constant, with about a 3.6%

        increase over the ten-year period.  Ethnically, the population is 84.4% white, 5.3% black,

        4.1% Asian, 2.9% Hispanic, with the remaining 3.3% identifying with two or more races.[3]

115.    According to the arrest data, 83% of the arrests in Wauwatosa in 2018 were of African

        Americans, 16% were of whites, and 1% were other.

---

[3] https://www.census.gov/quickfacts/fact/table/wauwatosacitywisconsin,US/RHI225219



116. In Wauwatosa, white drivers are stopped an average of 13 minutes and 17 seconds while black drivers are stopped on average 15 minutes and 26 seconds.

117. From 2015 – 2017, of those stops where racial data was recorded, 64% of people stopped by officers in the WPD were African Americans. See graphs below.



118. Mayor McBride on October 29, 2020 stated that "The Wauwatosa of today is not a racist community. Wauwatosa is a welcoming community. There are lots of nice people. We are facing a difficult time here. But it's a place where people want to come."[4]

## V.  BACKGROUND

119. Following the George Floyd killing in Minneapolis on May 25, 2020, the city of Wauwatosa, along with cities across the country, began to experience protests calling for police reform.

120. On Sunday, August 23, 2020, Jacob Blake was repeatedly shot in the back by a police officer in Kenosha, Wisconsin. The shooting of Mr. Blake was captured on video by a bystander and amplified the national debate on systemic racism and police brutality directed at Black Americans.

121. Additionally, Wauwatosa has seen multiple police killings recently, including the killings of three young Black men by the same Wauwatosa officer in just the past five years.

122. On February 2, 2020, former Wauwatosa Police Department ("WPD") Officer Joseph Mensah shot and killed 17-year-old Alvin Cole at Mayfair Mall.

123. Prior to this, but still while employed as an officer for WPD, Officer Mensah killed Jay Anderson, Jr. on June 23, 2016, and Antonio Gonzales on July 15, 2015.

---

[4] https://www.wpr.org/wauwatosa-latest-wisconsin-city-grapple-policing-racism



124. From February 2, 2020 through October 7, 2020 the Milwaukee Police Department and the Milwaukee County District Attorney were engaged in an investigation into the death of Alvin Cole.

125. On June 1, 2020 (after the killing of George Floyd on May 25, 2020), the public was made aware of Officer Mensah's identity and role in the shooting of Alvin Cole.

126. Since June 1, 2020 Wauwatosa has been the center of several protests while the Alvin Cole shooting was under review by the Milwaukee County District Attorney's office.

127. The protests in Wauwatosa were largely peaceful.

128. Among the police responses to protests have been unlawful surveillance, monitoring, and targeting of protestors, particularly those associated with The People's Revolution (also referred to as "TPR"). Violating Constitutional rights of assembly, association, and expression, the WPD has created, and continues to update, a list of "known and suspected Protesters." (See **Exhibit 3:** Ratkowski Email, TPR Target List July 14, 2020).

129. WPD circulated this list as early as June 5, 2020, both inside and outside of WPD, including to the FBI.

130. On July 12, 2020 former Wauwatosa Common Council Member Heather Kuhl issued the first call from the Common Council for former WPD Officer Joseph Mensah to be fired. https://wisconsinexaminer.com/brief/tosa-alderwoman-becomes-first-to-call-for-firing-of-officer-mensah/



131. On July 14, 2020 Wauwatosa's Common Council held a special meeting in which a resolution was voted on calling for the "City to facilitate the transition of Officer Joseph Mensah from employment by the Wauwatosa Police Department."

132. Officer Joseph Mensah was suspended with pay on July 15, 2020.

133. On July 15, 2020 Wauwatosa Police and Fire Commission suspended Officer Joseph Mensah with pay.

134. Law enforcement responded with even more explicit and direct action against protesters. Stg. Svatek of the WPD sent the following in an email to the Milwaukee District Attorney's Office September 9, 2020, "Not sure if you would agree or not since the jail takes only felonies, and this group continues to bring lawlessness to the City of Wauwatosa. We are trying to take any opportunity we get to send offenders down on felonies."

28



### V. CITY OF WAUWATOSA's Curfew From October 7 - 12, 2020

### A. BACKGROUND

135. On October 7, 2020 Milwaukee County DA John Chisholm announced that he was not going to criminally charge Joseph Mensah for the shooting of Alvin Cole on February 2, 2020.

136. On September 30, 2020, Mayor McBride signed a "Proclamation of Emergency" for the City of Wauwatosa which enacted a curfew restricting "pedestrian and vehicular traffic on Wauwatosa streets" from 7pm to 6am, to commence on October 7 and continue until October 12, 2020. (**See Exhibit 4:** September 30, 2020 Proclamation of Emergency, signed by Mayor McBride).

137. Defendant Mayor McBride alone signed and declared the curfew without the knowledge or approval of the Common Council (Admission by Defendant on 4/16/21).

138. At the time that Mayor McBride signed the emergency declaration there were not any credible threats to the City of Wauwatosa.

29

139. Per Defendant Weber's deposition testimony on May 13, 2021, Defendant McBride never communicated to Defendant Weber the existence of any credible threats in Wauwatosa on September 30, 2020..

140. Defendant Weber testified that the emergency proclamation was recommended by the WPD to the Defendant McBride because of the Alvin Cole decision that was going to come down from the DA's office, and also based on the incidents in Kenosha in August 23, 2020 after Jacob Blake was shot in the back, and also because of public reactions to the murder of George Floyd in Minneapolis on May 25, 2020.

141. Defendant Weber testified that the curfew from October 7 – 12, 2020 was based on his recommendation to Defendant McBride.

142. Defendant Weber testified that he is the chief policymaker of the WPD, he speaks for the WPD, and that the "buck stops with him" when it comes to statements and policy decisions.

143. Under Wisconsin statute, Defendant McBride lacked the legal authority to unilaterally authorize a curfew in Wauwatosa as promulgated in the Proclamation of Emergency as signed on September 30, 2020.

144. Under Wis. Stat. 323.11, an emergency order may only be declared under two circumstances. The primary circumstance provides that:

> "The governing body of any local unit of government may declare, by ordinance or resolution, an emergency existing within the local unit of government whenever conditions arise by reason of a riot or civil commotion. The period of the emergency shall be limited by the ordinance or resolution to the time during which the emergency conditions exist or are likely to exist."

145. As admitted by Defendants, there were no emergencies existing in Wauwatosa by reason of riot of civil commotion that prevented the Common Council from making such a declaration by ordinance or resolution from September 30, 2020 through October 7,

30

2020.

146. At no time did Defendant McBride attempt to meet with the Common Council to discuss a curfew.

147. Defendant McBride testified that he started planning for the October 7 – 12, 2020 curfew sometime in July 2020.

148. Defendant McBride testified and claimed that the decision to have the curfew in Wauwatosa from October 7 – 12, 2020 came from him and Governor Evers jointly.

149. Defendant McBride testified that he never spoke to Governor Evers until the second day, October 8, 2020, of the curfew.

150. Wis. Stat. §323.14(4)b also provides an emergency exception that permits an executive to declare an emergency *only where the emergency necessitating the proclamation prevents the governing body from meeting*. *(emphasis added).*

151. As testified to by Defendant McBride on July 23, 2021, no emergency conditions existed in Wauwatosa from September 15, 2020 through October 6, 2020 which prevented the Common Council from meeting.

152. As testified by Defendant McBride, he intentionally did not tell the Common Council about the curfew because, "loose lips sink ships."

153. Defendant McBride did share information about the curfew and the emergency proclamation with Milwaukee Mayor Tom Barrett on October 6, 2020.

31



From:       Dennis McBride <dmcbride@wauwatosa.net>
Sent:       Tuesday, October 6, 2020 5:58 PM
To:         mayor@milwaukee.gov
Subject:    CONFIDENTIAL:  Emergency Declaration
Attachments: City - Emergency Declaration.10-7-20.pdf

Tom:

As promised, my Emergency Declaration is attached.  It will be issued tomorrow following the DA's announcement.

Dennis R. McBride
Mayor, City of Wauwatosa
7725 West North Avenue
Wauwatosa, WI 53213
mayor@wauwatosa.net
(414) 479-8915

154.    Under Wis. Stat. §323.14(4)b, when an executive issues such an emergency order, a meeting of the governing body must be called as soon as possible.

155.    No meeting of the Wauwatosa Common Council was called until the regularly scheduled meeting of October 6, 2020,

156.    The conditions required under Wisconsin law which permit an executive in narrow circumstances to declare a state of emergency did not exist in Wauwatosa on September 30 or thereafter.

157.    On October 6, 2020, one week after Defendant McBride's signing of his executive order, the Wauwatosa Common Council held a normal meeting.

158.    At the October 6 meeting of the Common Council, Defendant McBride did not share with the Council members any information regarding the executive order or planned curfew.



*al*

159. On September 21, 2020, Chief Weber was interviewed by Wauwatosa's Police and Fire Commission Special Investigators Attorney Steven Biskupic and Attorney Michelle Jacobs who were hired in relation to the citizen complaint brought forward by Jay Anderson, Jr's Family against former Wauwatosa Police Officer Joseph Mensah. (**See Exhibit 5**: Transcript of interview with Chief Barry Weber and Wauwatosa's Police and Fire Commission Investigator Attorney Steven Biskupic September 21, 2020, p.102).

160. Defendant Weber has acknowledged that he has a legal obligation not to follow illegal orders: In the interview of 09/21/20, Chief Weber was instructed by the Police and Fire Commission on July 15, 2020 that Officer Joseph Mensah was suspended with pay. Weber indicated that he was not happy with this decision and referred to it as an "illegal order." Specifically, Weber stated,

> When the city put him on the --- you know, they gave me the order the day before the police and fire commission meeting and said, you and the city administrator are ordered to make this guy' employment change or whatever. I told the city, 'That's an illegal order. I'm not following it.' Because by law I have to follow lawful written orders of the police –mayor and/or common council, and that's an illegal order.
> **See Exhibit 5**, p. 102.

33

161. Chief Weber knew that the Common Council was not aware of and did not issue the Proclamation of Emergency, making it an illegal order.

162. Video footage from October 7 through October 12 2020 shows the scale and scope of the police presence and means of force deployed in the streets of Wauwatosa against protesters, including rubber bullets, chemical agents, police vehicles, and full body contact. (**See Exhibit 6**: Video of the Wauwatosa Protests 100720 – 101220 https://www.youtube.com/watch?v=5Cb6CTcNVOc).

## B. PLAINTIFFS' ALLEGATIONS as to the Curfew in Wauwatosa from October 7, 2020 – October 12, 2020



### i. Plaintiffs Kate Knowlton and Dana McCormick - October 10, 2020

163. On the evening of October 10, 2020, Plaintiffs Kate Knowlton and Dana McCormick went to downtown Wauwatosa to protest police misconduct and police violence.

34

164.   At approximately 7:15pm, armored vehicles and lines of armed military-style personnel wearing riot gear, helmets, and shields, blocked both North Avenue westbound, and 76th Street southbound from the intersection of 76th Street and North Avenue, making those streets completely impassible.

165.   A crowd of fewer than 50 people had previously formed and then dispersed eastward and beyond the intersection, such that there were no persons in the area other than Plaintiffs Knowlton and McCormick, who were sitting on the lawn of City Hall.

166.   Plaintiffs were nonetheless ordered to disperse without cause and forcibly arrested without the ability to comply with the dispersal order, in violation of their Fourth Amendment rights to be free from unreasonable seizures. Plaintiffs were then detained and interrogated before being given citations for a City ordinance (curfew) violation.



167.   At approximately 7:30pm, flood lights were trained on the lawn, and directly into the eyes of the Plaintiffs from the line of armed military personnel and vehicles from North Avenue. Knowlton stood up and requested to speak to a Wauwatosa police officer.



168. A bull horn announcement stated that Plaintiffs were in violation of Wisconsin Statute 947.06 for unlawful assembly, and if they did not disperse, they would be subject to arrest. Knowlton stated that there were only 2 people on the lawn, and that the statute required three or more people, and again requested to speak to a Wauwatosa police officer. There was no response.

169. At this time, no crime was being or about to be committed by either Plaintiff nor by anyone else in the area.

170. There was no threat to any person and no property was at risk of being destroyed.

171. Knowlton again asked about the lack of 3 people as required under state law and then turned around. Knowlton saw that the line of personnel and vehicles spanning across the entire Southbound 76th Street had expanded into and across the lawn of City Hall to the wall of the actual building and was approximately 20-30 yards away from Plaintiffs' picnic blanket. The line was "shoulder to shoulder" and provided no egress to Plaintiffs.

172. Knowlton called out towards that line again requesting to speak with a Wauwatosa police officer. The line continued to move steadily towards North Avenue, blocking any exit. A bull horn from the direction of Southbound 76th Street then yelled something unintelligible

36

to Plaintiffs. Knowlton called out that she could not understand what was said. Knowlton stated that if she needed to leave, her home was South and she needed to go in that direction and asked again for a Wauwatosa police officer's assistance. There was no response.

173. The line continued to move toward the Plaintiffs. Knowlton again asked for a Wauwatosa police officer as the line approached Knowlton. At least four armed personnel without any identifying insignia grabbed both of her arms and forcibly pulled her through the line of personnel toward the South parking lot of the City Hall. Knowlton asked what was going on and asked again for a Wauwatosa police officer. There was no response.

174. McCormick was following Knowlton and stated to the police, "I'm going home, it's that way" and pointed South. Unidentifiable personnel in riot gear responded to her, "Oh no you're not" without providing any further information.

175. Two other riot-geared personnel pulled McCormick's arms behind her back and forcibly moved her forward going in the same direction as Knowlton.

176. Knowlton continued to ask at least three more times for a Wauwatosa police officer and asked "What is going on?" No response was provided.

177. Throughout this entire episode, there were no acts by Plaintiffs Knowlton nor McCormick, nor acts by any other people that they witnessed, which could constitute non-peaceable assembly.

178. Knowlton was brought to the back of a Wauwatosa police truck, told to separate her feet, her book was taken out of her hand, her arms were pulled and held behind her back, she was handcuffed with plastic zip-ties, and patted down.

179. Knowlton's back pockets were searched and her cell phone was taken.

180. Knowlton was asked her name and birthdate, which she provided.

181. The police officer directed her to get in the back of the truck. Knowlton asked why she had been arrested and was told, "unlawful assembly." Knowlton responded that there were only two people on the lawn and this was an unlawful arrest.

182. Knowlton stated that she wanted to speak to an attorney immediately. The police officer responded, "it doesn't work that way, you can talk to an attorney after you are released." Knowlton stated, "I am an attorney and I want to speak to my attorney right now." No one responded or said anything else.

183. McCormick was told to separate her feet, her library book was taken out of her hand and property out of her pockets, her arms were pulled, twisted, and held behind her back, she was handcuffed with plastic zip-ties, and patted down.

184. McCormick was directed to get into the truck without any further explanation or questions.

185. At no time was McCormick asked her name or any other identifying information.

186. At no time was either Plaintiff advised of any of their rights.

187. The Plaintiffs asked where they were being taken and were told, "you'll find out when you get there."

188. The truck drove around for some time, and then stopped to pick up an additional person, who was loaded into the truck in handcuffs, crying and asking why she had been arrested and where the truck was going. Again, law enforcement did not respond and stated that they would not disclose any location.

189. The truck drove on for another 10-15 minutes and stopped again in a dark and quiet parking lot. Law enforcement opened the back of the truck and stated that another vehicle would be transporting Plaintiffs and the additional person to yet another location which they would not disclose.

190. A Brookfield police truck arrived and at that point, for the first time, McCormick was asked her name by a Brookfield police officer who wrote it in his notebook. Then Plaintiffs and the additional person were loaded into the Brookfield police truck which only had two seatbelts. Knowlton called this to the attention of law enforcement and another vehicle was called to transport so that all detainees had seatbelts.

191. McCormick was then separated from Knowlton and the additional person and put into the back of a police squad car alone and seat belted. She was not advised any further, but she was then able to identify that location as Our Redeemer Lutheran Church on North Avenue in Wauwatosa. McCormick was then able to observe the direction and location of both vehicles.

192. After another transport of about 10 minutes, Plaintiffs and the additional person were brought into what appeared to be a police processing room. There were no identifying signs as to where or what this location was.

193. Four Wauwatosa-uniformed officers proceeded with an additional search, including under the clothes, and seized other property missed in the first search. Plaintiffs' shoes and handcuffs were removed.

194. Two agents who identified themselves and provided credentials for the United States Federal Bureau of Investigation asked for interviews.

195. The Wauwatosa police officers then asked for social security numbers, about employment, family history, and if Plaintiffs were members in "Antifa" and "the People's Revolution" in addition to other questions.

196. Plaintiffs and the additional person were photographed.

197. At no time were Plaintiffs advised of their Constitutional rights.

39

198. After another hour or so, Plaintiffs and the additional person were each issued tickets for being in violation of an emergency order with the name of Lt. Jeffrey Farina and a listed forfeiture of $1321.

199. Defendant George Schimmel, independent contractor for Defendant City, later prosecuted Plaintiffs for violation of an emergency order pursuant to Wis. Stat. 323.14.

200. Defendant Schimmel acknowledged that Wis. Stat. 323.28 controls penalties as the referenced municipal authority for alleged violations, which reads, "323.28   Penalties. Whoever intentionally fails to comply with an order issued by an agent of the state or of a local unit of government who is engaged in emergency management activities under this chapter, including training exercises, is subject to a forfeiture of not more than $200."

201. Defendant Schimmel did not, and to date has not corrected for Plaintiffs nor the Court this statutory error.

202. The Municipal Court Clerk, Robyn Bloczynski, has corrected and/or directly engaged, in fact initiated, correspondence with law enforcement on behalf of Defendant Schimmel to correct other errors, as seen below.



**From:** Robin Bloczynski
**Sent:** Friday, December 11, 2020 10:17:40 AM
**To:** Jeff Farina
**Subject:** Court - protesters

Lt. Farina,

Thanks for all the help you and the other officers provided last night.  We all very much appreciated it.

I talked to George this morning, as part of his arguments to Attorney Motley, he would like to make sure that all the Emergency Order tickets that were issued with the wrong time were VOIDED (see list below).  I received all the reissued/corrected citations but I couldn't confirm that the old ones were voided because they are still "issued" in TracS.  Can you, or someone else, please let me know when they have been voided?  Or if they cannot be voided let me know that too?

| | |
|---|---|
| 1R81AK4FHD | Tahudah Cole |
| 1R83GX53M | Taleavia Cole |
| 1R81AK4FHJ | Rachel Dulay |
| 1R81GX53F | Erik Fanning |
| 1R81AK4FHH | Mark Fraley (5:00PM) |
| 1R83GX53J | Brendan Gutenschwager |
| 1R81AK4FHG | Joseph Hayes |
| 1R81AK4FH9 | Tiffany Henry |
| 1R81GX53H | Jose Alfredo Hernandez Ramirez |
| 1R81AK4FHK | Rahniyah Ingram |
| 1R81GX53K | Destiney Jones |
| 1R83GX53L | Sonora Larson |
| 1R81AK4FHB | Holly Lavora |
| 1R81GX53G | Blair Nelson |
| 1R81AK4FHF | Daija Newman |
| 1R81AK4FH8 | Nathan Sabel |
| 1R81AK4FHC | Teri Tobias |
| 1R81AK4FHL | Alissa Vance |
| 1R81AK4FH7 | Suzanne Wells |

Thank you,

*Robin Bloczynski*
Wauwatosa Municipal Court
7725 W North Avenue
Wauwatosa, WI 53213
414-471-8480

203. McCormick inquired as to why an arrest was made for an ordinance violation. The officer responded that it is "policy" to "always" bring in parties who had violated municipal ordinances.

204. Law enforcement then told all three detainees that they would be leaving in a police van and dropped off at a point of law enforcement's choosing. The additional person became upset and asked why she was not free to leave on her own. Law enforcement then stated that "policy" required law enforcement transport as a "courtesy." Law enforcement further stated that Defendant Weber did not want people gathering at the police station.

205. When the additional person cried and expressed fear and claustrophobia in having to get back into a police transport, she was told that she was risking additional arrest for a curfew violation, and it would be "safer" to take the law enforcement "courtesy" transport.

206. After seeing the hostility of the officers towards this third party, Plaintiffs understood that they were not free to go and feared that challenging the police would lead to further risk of another arrest.

207. McCormick then asked to be taken to "our homes" (to avoid risk of arrest because of curfew violation), she was told "no, we will drop you off in Wauwatosa."

208. Plaintiffs were then given their shoes and told to leave the building with two Brookfield law enforcement officers who would do the transporting. The additional person was walked out of the parking lot accompanied by a police officer.

209. Plaintiffs' property was given to the Brookfield officers. Once outside, one of the Brookfield officers said he was going to use handcuffs again and stated that it was required "policy." McCormick stated Plaintiffs would rather walk. The other Brookfield officer then stated something like "forget it, let it go," and Plaintiffs were told to get into the back of the truck. The officers then discussed how to get to the intersection of 76th

41

Street and Milwaukee Avenue. Knowlton stated that Wauwatosa East High School was located there and they could use google maps.

210. Plaintiffs were dropped off at that intersection where Wauwatosa East High School is located and told they could still be arrested for curfew violation.

211. Once Plaintiffs were let out of the truck and on the sidewalk, Officers returned their belongings and Plaintiffs were advised they should walk home. Plaintiffs followed this directive.

212. Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, and significant emotional distress and trauma, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

213. Plaintiffs continue to experience post-traumatic stress and fear on-going retaliation.

214. At no time were either of the Plaintiffs provided *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention, and interrogation.

215. At no time did the Wauwatosa Police have reasonable suspicion to search Plaintiffs.

216. Knowlton was specifically denied her right to Counsel though she had specifically invoked. Further, her Counsel had identified himself to law enforcement and attempted in person to speak with Knowlton before the vehicle left the initial incident location or be advised as to her location. This was denied. Knowlton was never advised of these attempts.

217. McCormick was never identified by or to law enforcement prior to her being handcuffed, detained, and removed from the initial incident location. That is, she did not have any

identification, and law enforcement did not ask even her name until a different transport occurred.

ii. **Plaintiffs Tahudah Cole, Taleavia Cole, Tristiana Griggs, & Tracy Cole - October 8, 2020**

218. On October 8, 2020 Plaintiffs Taleavia Cole, Tahudah Cole, Tristiana Griggs, and Tracy Cole were protesting in Wauwatosa, Wisconsin.

219. Tracy Cole is the mother of Alvin Cole.



220. Tahudah Cole, Taleavia Cole, and Tristiana Griggs are the sisters to Alvin Cole.

221. Alvin Cole was a seventeen-year-old Black man who was shot and killed by former Wauwatosa Police Officer Joseph Mensah. Alvin was the third person whom Joseph Mensah killed within five years of being an officer with the WPD.

222. Both Tahudah and Taleavia Cole were driving in one car and Tracy Cole and Tristiana Griggs were driving in a separate car on October 8, 2020 in Wauwatosa.

223. After 7:00p.m. armored vehicles and lines of armored military-style personnel wearing riot gear, helmets, shields, without identifying badges or names on their

43

uniform entirely blocked the streets of Wauwatosa where peaceful protestors were outside.



224. At approximately 8 p.m. Plaintiffs attempted to leave Wauwatosa. Tracy Cole is an advocate against the type of police violence that killed her son and frequently goes to protests to support her desired political change.

225. That evening, she, along with Jacob Blake's father, had spoken to the crowd about the need for change to protect Black men from police shootings and killings.

226. While all four Plaintiffs were trying to leave Wauwatosa the cars that they were traveling in were being "kettled" by numerous, unidentifiable law enforcement vehicles. Stop sticks were placed on the ground in front of their cars, forcing the cars to arrive at a predetermined destination and preventing them from safely driving away.

227. Plaintiffs were stopped by unidentified police officers and persons whom they believe were with the National Guard.

228. Several law enforcement officers yelled at Tracy, Tahudah, Tristiana, and Tracy "Get out the fucking car before I bust your windows!"

229. Plaintiff Taleavia Cole was pulled out of her vehicle by one police officer while another officer pointed a gun at her head.. She was then thrown to the ground.

44

230. While Taleavia Cole was laying on the ground and in front of several witnesses, a police officer put her knee in the back of Taleavia's neck.

231. Plaintiff Tahudah Cole was forced out of the car and told to lay down on the ground.

232. Plaintiff Tristiana Griggs was also forced to the ground by the officers.

233. Plaintiff Tracy Cole was pulled out of the car by several officers.

234. In addition to pulling Tracy Cole's hair, several officers punched Tracy Cole in the face while she was yelling, "I'm Alvin Cole's mother. You killed my baby and now you are trying to kill me!"

235. Plaintiff Tracy Cole is disabled and walks with a cane. She had never previously been arrested.

236. Tracy Cole screamed her name at least four times and officers claimed they did not know who she was. At one point she screams, ""I can't believe y'all did this to me. Y'all killed my son."

237. About a minute later, Tracy Cole can be heard on video saying: "He hit me in my head and pulled my hair. One of these cops over here. My head is bleeding."

238. The officer who was previously heard giving Cole orders responded with, "Well, that's too bad."

239. While Tracy Cole was on the ground, with at least one officer on her back she repeatedly yelled that she couldn't breathe. The officers did not respond to this.

240. Over the course of her arrest, officers also tased Tracy Cole and put handcuffs on her extremely tightly to the point that she thought her arm was broken.

241. While officers were taking these actions they repeatedly yelled to Tracy Cole, "stop resisting."

242. At no time was Tracy Cole resisting arrest.

243. Taleavia Cole was recording on her phone the immediate interactions with the police until police took her phone away.

244. Plaintiffs at no time were a risk to others nor were they engaged in property destruction.

245. After Tracy Cole's arrest she was approached by Wauwatosa Police Lt. Jeffrey Farina whom her daughters summoned over to assist her.

246. Lt. Farina did not participate in Tracy Cole's assault by other law enforcement Officers, and helped Tracy Cole after the arrest of her daughters, Tahudah and Taleavia Cole.

247. Lt. Farina walked Tracy Cole to a bench and said that he was taking "full responsibility" for her and called an ambulance for her.

248. Tracy Cole sustained several visible injuries captured by multiple journalists who were at the scene that night while she was being carried on a stretcher in an ambulance to Froedtert.



(Tracy Cole on a stretcher taken by a TMJ4 photographer)

https://www.tmj4.com/news/local-news/alvin-coles-mother-arrested-during-protes t-in-wauwatosa)

46

249. Tracy Cole and Tristiana Griggs went to Froedtert Hospital late in the evening of October 8, 2020 where Tracy Cole was treated for multiple injuries she sustained as a result of police contact.

250. Tracy Cole's injuries included a concussion, cuts to her face, swelling of her forehead, and a sprained arm.

251. In addition to the excessive force physical injuries, Tracy Cole is also still seeking medical assistance for the extreme mental trauma that she experienced at the hands of the police on October 8, 2020.

252. Plaintiff Taleavia Cole was arrested by police and the U.S. Marshalls. She was then placed in a van with several other persons and was eventually driven to Waukesha.

253. While she was searched, the then unidentified officer seized Taleavia Cole's phone. Taleavia Cole never gave consent to search her phone.

254. Taleavia Cole and others tried to identify police officers but none of the officers had name badges on.

255. Taleavia Cole's hand restraints were extremely tight. She asked repeatedly that they be loosened; her request was denied.

256. Taleavia Cole repeatedly asked the officers why she was under arrest and was not answered. She also stated that she wanted to talk to her attorney, Kimberley Motley, but was denied.

257. Taleavia Cole was taken in a van with others to somewhere on Mayfair Road, where the police van parked for about an hour.

258. Taleavia Cole and others were then taken to the Waukesha County Jail where they sat in the van for another hour.

259. While they were in the van at Waukesha their pictures were taken.

47

260.	Plaintiff Taleavia Cole was eventually taken inside the Waukesha County Jail building where she was forced to change into an orange jail uniform. An officer was in the room watching her remove all of her clothes. Taleavia was told by the officer that it was protocol to require and observe removal of all clothing for a potential violation of a noncriminal municipal ordinance.

261.	Taleavia Cole repeatedly said that she wanted to talk to her attorney, Kimberley Motley, and repeatedly asked why she was under arrest.

262.	Taleavia Cole was told that she had to talk to the FBI. She repeatedly told the police and the FBI that she wanted to talk to her attorney Kimberley Motley.

263.	Despite Taleavia Cole's repeated assertion of her rights to remain silent and to an attorney whom she specifically named, the FBI agents continued to ask her questions.

264.	The FBI asked several questions including what happened; why was she protesting; why did the Wauwatosa Police Department want her phone; and was she with TPR.

265.	The FBI agents voluntarily shared with Taleavia Cole that the Wauwatosa Police were coming to get her phone.

266.	Lt. Shane Wrucke came to the Waukesha County Jail and seized Taleavia Cole's phone without her permission and without any probable cause that she had committed any crimes.

267.	No warrant was ever issued for Taleavia Cole's phone.

268.	Taleavia Cole was released from the jail after midnight and Lt. Wrucke kept her phone with no explanation.

269.	Before leaving the Waukesha County Jail, about four hours after she had been arrested, Taleavia Cole was given a municipal ticket for Violation of an Emergency Order.

270.	Taleavia Cole went back to the area where her car was and discovered that it had been towed.

48

271.	The towing of Taleavia Cole's car was in violation of WPD's towing policy.

272.	At no time was Taleavia Cole advised of her Constitutional rights.

273.	The Wauwatosa Police Department kept Taleavia Cole's phone for twenty-two days without legal basis.

274.	Plaintiff Taleavia Cole did not give consent for the Wauwatosa Police Department to seize, retain or search her phone.

274.	No warrant for Taleavia Cole's phone was ever issued. Upon information and belief, no warrant was ever even requested.

275.	Taleavia Cole, through her lawyers, requested the return of the phone on October 9, 12, 13, 14, & 15th and was advised by the Wauwatosa Police Department that they would not return the phone.

276.	While Plaintiff Taleavia Cole's phone was in the Wauwatosa Police Department's Possession, her Facebook and Instagram accounts disappeared. Her iCloud account which has photos, many attorney-client privileged documents, and other pertinent information of which she has never consented to a search has been tampered with.

277.	On October 15, 2020 undersigned counsel asked the WPD to produce a search warrant for the phone and/or probable cause to keep the phone, neither of which the WPD produced. A search warrant is generally required before search of a cell phone *Riley v. California*, 573 US 373 (2014).

278.	As a result of the Wauwatosa Police Department refusal to return her phone, Plaintiff Taleavia Cole, through her counsel, filed a motion to return her property with the Milwaukee County District Court Judge Pocan's Court 20 CV 6184.

279.	On October 30, 2020 Milwaukee Circuit Court Judge Pocan ordered the City of Wauwatosa's Police Department to immediately return Plaintiff Taleavia Cole's phone.

49

280. Taleavia Cole, through her counsel, argued to the court that due to the abuse of power by the WPD, they should pay costs at the maximum amount allowed by statute.

281. In case 20 CV 6184, on December 22, 2020 Judge Pocan agreed and imposed the maximum $300 sanction as allowed by law to be awarded to Taleavia Cole.

282. When Taleavia Cole finally received her phone, a professional inspection determined that the police had tampered with her phone.

283. Plaintiff Tahudah Cole was arrested by the police for violation of an emergency order and taken to the West Allis Jail by officers who refused to identify themselves.

284. Tahudah Cole and others tried to identify police officers but none of the officers had name badges on.

285. Tahudah Cole's hand restraints were extremely tight. She asked repeatedly that they be loosened; her request was denied

286. Tahudah Cole repeatedly asked the officers why she was under arrest and to speak to her attorney who she specifically named as Kimberley Motley. She received no response from any officers.

287. Tahudah Cole and others were taken to the West Allis Jail.

288. Tahudah Cole was told that she had to talk to the FBI. She repeatedly told the police and the FBI that she wanted to talk to her attorney.

289. Despite Tahudah Cole's repeated assertion of her rights to remain silent and to an attorney whom she specifically named, the FBI agents continued to ask her questions, including what happened; why was she protesting; and was she with TPR.

290. Before leaving the West Allis County Jail, a few hours after her arrest, Tahudah Cole was given a municipal ticket for Violation of an Emergency Order.

291. Plaintiff Tahudah Cole went back to the area where she left her car and discovered that it had been towed.

292. Towing of Tahudah's car was a violation of Wauwatosa's Towing policy.

293. At no time was Tahudah advised of her Constitutional rights.

294. Plaintiffs Teleavia Cole, Tehudah Cole, Tracy Cole, and Tristiana Griggs suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, head trauma, and significant emotional distress and trauma, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

295. Plaintiffs continue to experience post-traumatic stress and fear of on-going retaliation.

296. Tracy Cole was not given any tickets or citations on the evening of October 8, 2020.

297. On December 10, 2020, unbeknownst to her, Tracy Cole was placed on the Wauwatosa municipal court docket for violating an emergency order and resisting or obstructing.

298. Tahudah and Taleavia Cole were given noncriminal tickets for violating an emergency order and appeared in Wauwatosa Municipal Court on December 10, 2020.

299. On December 10, 2020 Tracy Cole and counsel went to court and asked the court to dismiss the ticket on its face for its failure to establish probable cause that an offense had been committed within the four corners of the ticket.

300. Counsel also asked the City Attorney for notification of when Tracy Cole was given the ticket. He claimed it was mailed to her but provided no proof.

301. Plaintiff Tracy Cole was never notified that she received a Violation of Emergency Order Ticket in the amount of $1,321.00.

302. Plaintiffs Tracy Cole, Taleavia Cole, and Tahudah Cole each eventually were given tickets to which the WPD assigned the forfeiture of $1321for being in violation of an emergency order. Lt. Jeffrey Farina was named as the assigning officer on the tickets.

303. Defendant George Schimmel, independent contractor for Defendant City, prosecuted Plaintiffs for violation of an emergency order pursuant to Wis. Stat. 323.14.

304. Defendant Schimmel acknowledged that Wis. Stat. 323.28 controls penalties as the referenced municipal authority for alleged violations, which reads, "323.28   Penalties. Whoever intentionally fails to comply with an order issued by an agent of the state or of a local unit of government who is engaged in emergency management activities under this chapter, including training exercises, is subject to a forfeiture of not more than $200."

305. Defendant Schimmel did not, and to date has not corrected for Plaintiffs nor the Court this statutory error.

306. At no time were Tracy, Tristiana, Taleavia, or Tahudah Cole provided *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention, and interrogation.

307. Taleavia and Tahudah Cole were specifically denied their right to Counsel though they both specifically invoked this right and specifically named their attorney.

308. Taleavia and Tahudah Cole were specifically denied their right to remain silent though they both specifically invoked this right.

### iii.    William Rivera, Aidali Rivera, Hector Rodriguez, and Lazarito Matheu - October 9, 2020

309. On October 9, 2020, William Rivera, Aidali Rivera, Hector Rodriguez, and Lazarito Mathew were driving home from work in the City of Wauwatosa.

310. William Rivera worked as a security guard at Cricket on 6th and Mitchell and had

just finished a shift at 7:00 P.M.

311. After work, William Rivera was picked up by his mother Aidali Rivera, her

     Boyfriend, Lazarito, and his friend Hector Rodriguez.

312. William Rivera lives on 80th North Avenue in Wauwatosa, and getting to his home

     required that they drive on North Avenue.

313. While Plaintiffs were driving on North Avenue, a crowd of people started running

     towards them.

314. Not wanting to hurt anyone, Lazarito stopped the car and believes the National Guard

     started approaching their vehicle.

315. There were people on foot in front of and behind Plaintiffs' car.

316. Lazarito, who was driving, slowly tried to back his vehicle up.

317. An armored vehicle rammed the back of Plaintiffs' car.

318. The police surrounded the car, pointing guns at the four Plaintiff occupants who all put

     their hands outside of the windows.

319. William Rivera, Aidali Rivera, Hector Rodriguez, and Lazarito were all

     unaware of the curfew in Wauwatosa.

320. Because the car was rammed on the back passenger side, the car was so damaged that

     William Rivera had to get out on the driver's side rear and Aidali Rivera who was sitting

     in the front passenger seat had to get out on the driver's side.

321. The National Guard threatened to shoot Plaintiffs in the car.

322. Once out of the car, Plaintiffs all repeatedly told the officers that they were dropping

     William Rivera off at home.

323. Plaintiffs individually and collectively tried to explain to the National Guard and the law

enforcement officers that they were not participating in any protest, but were taking William Rivera home, giving the officers his Wauwatosa address.

324. As can be seen below, William Rivera (seated farthest left), still in his security guard uniform, is on the left and Hector Rodriguez on the far right.



325. William Rivera told one of the arresting officers, pictured below and filmed by CBS58 News, that he was on his way home from work. In response, the officer, defendant Detective Timothy Warren, said to Mr. Rivera "at this time it doesn't matter because you are black."



326.    The police put zip ties on Plaintiffs' wrists extremely tightly, causing bruising as can be

seen in the photo below.



327.    All four Plaintiffs complained repeatedly about the wrist ties being too tight to law

enforcement and were ignored.

328.    Several television news crews, including CBS 58 News, were there and filmed

the interaction.

55

329. The police put Aidali Rivera, Mathew Lazarito, and Hector Rodriguez on one side of the street, while William Rivera was put on the other side of the street.

330. Aidali Rivera suffered significant injuries as a result of the car being intentionally rammed by the armored vehicle. Police called an ambulance to take her to Froedtert Hospital.

331. While waiting for the ambulance, Aidali Rivera saw a person who she believed was with the National Guard get in her car and drive it to a nearby parking lot.

332. Plaintiff Aidali Rivera went back the next day to the area where she had last seen her car and discovered that it had been towed.

333. The towing of Plaintiff's car was in violation of WPD's towing policy.



334. Plaintiff Aidali Rivera was put into a paddy wagon. She was in extreme pain due to the car crash and the extremely tight wrist ties.

335. A young woman in the paddy wagon yelled for police and firefighters to help Aidali Rivera and asserted that she needed medical attention.

56

336.   Plaintiff Aidali Rivera was taken to Froedtert in an ambulance by herself and was never given a ticket by any officers.

337.   Plaintiffs William Rivera, Mathew Lazarito, and Hector Rodriguez were placed under arrest and put into a van by an unidentified officer.

338.   William Rivera continued to tell the officer that he just got off work, was wearing his work uniform, and was trying to go home.

339.   The emergency proclamation specifically exempted anyone returning from work.

340.   Once Rivera, Rodriguez, and Lazarito arrived at the Wauwatosa Police Department, the tight wrist ties were cut loose.

341.   Rivera, Rodriguez, and Lazarito continued to state that they were just taking Rivera home from work.

342.   The Wauwatosa Police Officers stated that they were arrested for violating curfew.

343.   Wauwatosa Police Officers seized Plaintiffs' cell phones.

344.   Plaintiffs all gave the Wauwatosa Police Officers their home addresses.

345.   Despite William Rivera's current Wauwatosa address, his record was noted with a Milwaukee address.

346.   Plaintiffs were all forced to talk with the FBI individually.

347.   Before walking into the interrogation room, William Rivera, who was wearing his work uniform, was told by a Wauwatosa Police Officer to remove his security guard shirt before talking to the FBI.

348.   When Rivera, Rodriguez, and Lazarito got into the interrogation room they each said that they wanted a lawyer.

349.   Rivera, Rodriguez, and Lazarito were all asked by the FBI if they were a part of

the People's Revolution and why they were out there.

350. Plaintiff William Rivera explained again to the FBI that he had worked a ten-hour shift and was trying to get home.

351. Plaintiffs Rodriguez and Lazarito told the FBI that they had picked Plaintiff William Rivera up from work and were taking him home.

352. Rivera, Rodriguez, and Lazarito were forced to wait in the Wauwatosa Police Station until around 3 a.m.

353. Plaintiffs all asked for their cellphones back and were denied.

354. William, Hector, and Lazarito were all given a ticket by Officer Dexter Schleis for Violating an Emergency Order.

355. Rivera, Rodriguez, and Lazarito asked to use the police phone so they could call for a ride and were all denied a phone call.

356. Rivera, Rodriguez, and Lazarito all wanted to walk out of the Wauwatosa police Station to walk home. As with other Plaintiffs and protesters throughout the night, even though their detention was apparently over, the police continued to detain them and restricted their freedom of movement.

357. The Wauwatosa Police forced Plaintiffs to get back in the car with the police, detaining them for a second time.

358. Rivera, Rodriguez, and Lazarito did not want to get in the police car but were told they did not have a choice.

359. The Wauwatosa Police Officer told Rivera, Rodriguez, and Lazarito that he would take them home.

360. Rivera, Rodriguez, and Lazarito, believing they had no choice, got into the police car.

58

361. The officers took Rivera, Rodriguez, and Lazarito to 35th and Kilbourn in Milwaukee at 3 a.m. This intersection is a high crime area, far from their homes. They were told by the police to find their own ways home from there.

362. The next day Aidali Rivera and Lazarito Matthew went to where they were originally arrested and discovered that their car had been towed.

363. When they went to Dennis Transportation Service tow lot they were told that they would need to pay $299.25 to get their car out of the tow lot and could not view the car before they paid.



364. After paying $299.25 for the car, they were told that the car came in without a key and that the police lost it.

365. They were told the car was in the tow lot because it had crashed into a fence.

366. Aidali and Lazarito went to the car and saw that it had a flat tire, money missing from inside, and even more damage than when they left it following its being rammed by an armored vehicle.




367.   They asked the tow lot manager what happened, and the tow lot manager threatened Plaintiff Lazarito, calling him the "n" word and pulling out his gun.

368.   Aidali and Lazarito immediately left the tow lot and have not been back since.

369.   The City of Wauwatosa Police Department never contacted Plaintiffs to return their phones.

370.   Hector Rivera and William Rodriguez called WPD and their phones were returned a few weeks later.

371.   Plaintiff Lazarito was not able to get his phone back until January 2021.

372.   Plaintiffs were all denied their right to an attorney and their right to remain silent.

373.   Plaintiffs suffered physical discomfort and injury, including soreness and bruising from being hit by an armored vehicle and having their arms handcuffed behind their backs, head trauma, and significant emotional distress and trauma, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

374.   Plaintiffs continue to experience post-traumatic stress and fear on-going retaliation.

375. At no time were William Rivera, Aidali Rivera, Hector Rodriguez, and Mathew Lazarito provided *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention, and interrogation.

iv. **Jackie Bogenberger, Raine Cich, Gabriella Vitucci, Angel Vega, & Katelyn Wojnar October 9, 2020**

376. Jackie Bogenberger, Raine Cich, Gabriella Vitucci, Angel Vega, and Katelyn Wojnar were all in the City of Wauwatosa on October 9, 2020.

377. While they were in Wauwatosa after 7 p.m. they witnessed the police deploying tear gas against people located at 76th and North Avenue near City Hall. People started running east on North Avenue towards Milwaukee.

378. Plaintiffs all decided to leave Wauwatosa and walk to Cich's house because they did not have vehicle transportation and the police were not allowing cars to drive in the area.

379. While walking, Plaintiffs were followed by an unmarked four door truck. A woman in a red car pulled up to ask if they were all ok.

380. Vitucci and Bogenberger were together when officers approached them. The officers did not identify themselves and did not have a badge or a name plate.

381. Officer Stephen Schmidt arrested Vitucci and Officer Dan Mitchell arrested Bogenberger.

382. Officer Mitchell threw Bogenberger to the ground and kneeled on her back. Officer Schmidt threw Vitucci to the ground and kneeled on her back.

383. While they were on the ground an elderly couple came out of their home and asked the officers why they were being so aggressive with the Plaintiffs.

384. The officers brought the elderly woman to the ground.

385. The husband yelled at the police for tackling his wife and they then arrested him in front of his home.

386. This couple had violated no law and could not be understood to have violated any curfew order.

387. Officer Schmidt put wrist restraints on Plaintiff Vitucci, which were tight to the point that her hands were turning purple. Officer Schmidt also put wrist restraints on Plaintiff Cich which were tight to the point that her hands were turning purple.

388. Jackie, Raine, and Gabriella immediately complained about the restraints being extremely tight but were told that they could not switch out the restraints.

389. While both Jackie and Gabriella were on the ground, an officer took their picture.

390. Gabriella was carrying a backpack which contained her phone and Detective Warren searched her backpack without her permission.

391. Detective Warren was teasing Gabriella and Jackie saying, "oh you thought you were going to get away." Officer Mitchell and Officer Schmidt took both Jackie and Gabriella's ids and compared them, saying "look who we got".

392. Jackie's phone was taken away from her. At no time did she give anyone permission to search her phone.

393. Both Jackie and Gabriella asked the officers why they were being arrested and none of the officer answered.

394. Both Jackie and Gabriella asked for a lawyer.

395. Raine Cich and Katelyn Wojnar were also arrested.

396. Raine recalled Detective Warren as the one who took everyone's identification cards and their phones.

397. At one point, in an effort of disclosure, Gabriella told the arresting officers she had

62

a pocketknife in her bag.

398. An officer told Gabriella if she had her pocket knife out he was trained to shoot her in the head.

399. Eventually the plaintiffs were put in separate vans and taken away. In one van was Raine, Gabriella, Katelyn, and the elderly women. The elderly women clearly needed medical attention but did not get any until an hour or so later.

400. Raine, Gabriella, and Katelyn were driven by the officers to the parking lot at the Wauwatosa Police Department where they sat for a couple of hours.

401. Eventually Raine, Gabriella, and Katelyn were booked at the Wauwatosa Police Department where they had their pictures and fingerprints taken. When fingerprinting Gabriella and Raine the officer doing the finger printing started to make fun of the protesters trying to provoke a reaction by bragging about the non-prosecution of Joseph Mensah as it related to the Alvin Cole case, and talking poorly about the 3 victims saying he would have reacted the same way Mensah did. Gabriella and Raine ignored him.

402. While at the Wauwatosa Police Department Raine, Gabriella, and Katelyn were all made to talk to the FBI.

403. All three told the agents that they wanted an attorney and that they did not want to answer any questions.

404. Despite their invoking their right to remain silent and their right to an attorney they still tried to ask them questions. They were asked why are you protesting? Are you a member of TPR?

405. Before they left the police station they were given tickets for violation of an emergency order in the amount of $1,321.

63

406.    According to Wis. Stat. 323.28 the maximum forfeiture for Violation of an Emergency Order municipal citation that can be given is $200.

407.    After Jackie was arrested, she was placed in a van and asked the police why they arrested her.

408.    The officer driving the van identified himself as a Waukesha Officer and that the Officer did not know what was going on and drove the arrested persons to a parking lot located on 101st and North Avenue at Our Redeemer Church and School.

409.    Wauwatosa squad cars arrived and took them to Mayfair Mall by the Cheesecake Factory where they are driven around.

410.    They were taken to the loading dock in Mayfair Mall where there appeared to be a makeshift police station that was setup.

411.    Before the car pulled into the underground shipping garage at Mayfair Mall a code was required to get in.

412.    The elderly woman who had been arrested became unresponsive. Angel screamed at the police to do something, which they ignored him and the unresponsive man for about five minutes. Eventually they did something.

413.    Once they were let out of the van and went through the booking process at Mayfair Mall, they then took their wrist restraints off.

414.    While at Mayfair Mall Jackie and Angel had their pictures and fingerprints taken.

415.    While at the Mayfair Mall Jackie and Angel were made to talk to the FBI.

416.    Jackie and Angel both told the agents that they wanted an attorney and that they did not want to answer any questions.

417.    Despite their invoking their right to remain silent and their right to an attorney the FBI still tried to ask them questions.

64

418. At the end of the booking Jackie and Angel were not given their phones back.

419. Angel and Jackie were both given the below municipal tickets by Patrolman Hodgson.

420. After they were told that they could leave the police refused to allow them to call for a ride.

421. Jackie and Angel wanted to leave the makeshift Mayfair police station but were told that they had to take a ride back by the police who were directed by the Wauwatosa Police Department that they had to accept the ride.

422. Jackie and Angel did not want a ride from the police and were fine to leave the makeshift police station at Mayfair on their own.

423. Jackie and Angel were told by the police that they were going to be driven back to where they were arrested which was around 67th and North Avenue.

424. Despite Jackie and Angel's objections the police made them get back in the police car again detaining them without probable cause.

425. Angel and Jackie did not have a choice and were forced to accept the ride from the two police officers.

426. The officers dropped Angel and Jackie off with no cell phones around 3rd and Locust which is approximately 7.3 miles away from where they were arrested and is a very dangerous neighborhood in Milwaukee especially at midnight on any given day.

427. At no time were Plaintiffs advised of their Constitutional rights.

428. Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, and significant emotional distress and trauma, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

65

429. Plaintiffs continue to experience post-traumatic stress and fear on-going retaliation.

430. Plaintiffs Bogenberger, Ciche, Wojnar, and Vitucci have had negative physical reactions/issues as result of the trauma and chemical agents which law enforcement used.

431. At no time were either of the Plaintiffs provided *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention, and interrogation..

**v.    Joanna Geisler and William Schroeder  - October 9, 2020**

432. Plaintiffs Joanna Geisler and William Schroeder are members of the Milwaukee Alliance who were together in Wauwatosa on October 9, 2020 at around 6:00p.m.

433. While they were protesting peacefully Plaintiffs were both holding banners which read, "Stop Police Crimes Now".

434. At approximately 6:38 p.m., while walking in the crosswalk, Plaintiffs were arrested by Officer Ralph Salyers and Officer Gee.

435. Plaintiffs asked what they were being arrested for and were told rioting.

436. Police seized Plaintiffs' phones.

437. Plaintiffs were not committing any crimes nor violating any ordinances.

438. Plaintiffs were transported to the WPD where they were photographed and fingerprinted.

439. While at the Wauwatosa Police Department, Plaintiffs were made to talk to the FBI.

66

440. The FBI agent continued to ask Plaintiff Geisler questions, despite her asserting her right to remain silent.

441. At the conclusion of their detention, Plaintiffs wanted to leave the police station on their own but were told that they must take a ride from the police, who were going to take them to their car.

442. The Officers refused to return Plaintiffs' phones.

443. Plaintiffs did not want a ride from the police and told that them that they could leave the police station on their own.

444. Once Plaintiffs were in the police car, the unidentified officer in the car said, "Don't be mad but my lieutenant said we have to drop you off on 35th and Kilbourne."

445. Plaintiff Schroeder was given a municipal ticket in the amount of $1,321 for Disobeying A Lawful Order signed by Lt. Jeffrey Farina.

446. Plaintiff Geisler was given a ticket for Violation of an Emergency Order in the Amount of $1,321. She was arrested at 6:32p.m.; the curfew started at 7:00p.m.

447. According to Wis. Stat. 323.28 the maximum forfeiture that can be given is $200.

448. Defendant George Schimmel, independent contractor for Defendant City, later prosecuted Plaintiffs for violation of an emergency order pursuant to Wis. Stat. 323.14.

449. Defendant Schimmel acknowledged that Wis. Stat. 323.28 controls penalties as the referenced municipal authority for alleged violations, which reads, "323.28    Penalties. Whoever intentionally fails to comply with an order issued by an agent of the state or of a local unit of government who is engaged in emergency management activities under this chapter, including training exercises, is subject to a forfeiture of not more than $200."

67

450. Defendant Schimmel did not, and to date has not corrected for Plaintiffs nor the Court this statutory error.

451. Plaintiffs suffered physical discomfort and significant emotional distress and trauma, including the fear about where they would be taken and what would be done to them while being unlawfully arrested and detained.

452. Plaintiffs continue to experience post-traumatic stress and fear of on-going retaliation.

453. At no time were plaintiffs provided *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention and interrogation.

### vi. Anne Delessio-Parson - October 9, 2020

454. Plaintiff Anne Delessio-Parson was in Wauwatosa on October 9, 2020 at around 6:30p.m.

455. She noticed National Guard and police presence in collaboration with other law enforcement agencies.

456. While in Wauwatosa, Delessio-Parson witnessed the National Guard and officers dressed in military-style fatigues forming a line on 76th Street across North Avenue.

457. Delessio-Parson talked to a few of the officers, who did not have visible badges or name plates.

458. While talking with the officers, another officer came from behind the shields and arrested Plaintiff Delessio-Parson.

459. After officers put wrist restraints on Plaintiff, she was put in the back of the van with two other occupants.

460. Plaintiff and two other occupants asked the officers to keep the door open for air

but the officers refused.

461. At no time was Plaintiff given her *Miranda* rights or told why she was being arrested.

462. Plaintiff and the other van occupants were told that they would move the van once it was "filled up", presumably by other persons whom the police were going arrest.

463. While they were in the van an elderly woman with a walker was also arrested and put inside the van.

464. The elderly woman with the walker asked the officers for medical assistance. She was denied.

465. The officers drove the van to another location.

466. When the van stopped, police shoved several males of color into the back of the van. One of the young men was very upset and was wearing what appeared to be a uniform.

467. The wrist restraints on the men were very tight. Police declined to loosen the restraints.

468. The men's' hands turned bluish/purple became cold to the touch.

469. One of the men was having an anxiety attack. Police did not provide medical assistance.

470. The van arrived at the Wauwatosa Police Department. Occupants were told that they were required to talk to the FBI.

471. Plaintiff Delessio-Parson was photographed, fingerprinted, and made to talk with an FBI agent who stated his name was "Brett."

472. The FBI agent asked questions. Plaintiff told him she wanted a lawyer and that she did not want to answer any questions.

473. Delessio-Parson was given a ticket by Officer Dexter Schleis for Violating an Emergency Order.

69

474. Plaintiff, having been told she was released, asked to use the police phone to call for a ride and was denied a phone call.

475. Plaintiff wanted to walk home but was told that she did not have a choice.

476. The Wauwatosa Police forced her to get back in the car with the police, thus detaining Plaintiff for a second time.

477. The Wauwatosa Police Officer told Delessio-Parson that they would take her home.

478. The officers dropped Plaintiff off at around 35th and Kilbourn, not her home nor near her home. This intersection is in an area of high crime particularly during the night. Plaintiff was told to find her way home.

479. Plaintiff suffered physical discomfort and significant emotional distress and trauma, including the fear about where she would be taken and what would be done to her while she was being unlawfully arrested and detained.

480. Plaintiff continues to experience post-traumatic stress and fear of on-going retaliation.

481. At no time was Anne provided *Miranda* warning, or informed in any way of any legal rights she had incident to an arrest, search, seizure, detention and interrogation.

### vii.    Holly Lavora and Nathan Sabel - October 8, 2020

482. Plaintiffs Nathan Sabel and Holly Lavora were in the city of Wauwatosa on October 8, 2020 at around 6:30p.m.

483. While they were driving on North Avenue out of the area they were blocked in by an unmarked police car.

484. They were told to get out of the car, which they did, and were then arrested.

485. The police officers who approached the car did not have visible name tags or badges.

486. The police searched Lavora's car while they were arrested.

487. Plaintiff Lavora did not give them permission to search her car.

488. While Plaintiff was under arrest she saw another officer drive her car, which was legally parked, to Wauwatosa's City Hall.

489. Plaintiff's car was then towed from Wauwatosa's City Hall.

490. Plaintiff Lavora had to pay $157.50 to get her car from the tow lot.

491. The towing of Plaintiff's car was in violation of WPD's towing policy.

492. The police put extremely tight wrist restraints on Plaintiffs Sabel and Lavora.

493. The police seized Lavora's cell phone.

494. At no time did Lavora give police permission to search her cell phone.

495. Plaintiffs were told to stand on the grass, which they did, while they waited for transport to the site of their detention.

496. Plaintiffs were driven in a police van to the parking lot of what they believed was a school.

497. Plaintiffs were ordered out of the van and were then placed into another car. Plaintiffs were not told where they were being taken. The officers who transported them did not identify themselves.

498. Plaintiffs were taken to the West Allis police station.

499. Officers at the West Allis police station complained that Wauwatosa Police did not provide information on the procedures and were "taking too long."

500. The officer who helped to book Plaintiffs had tape covering his name badge.

501. Despite the lack of probable cause for state and federal crimes, Plaintiffs Lavora and Sabel were both forced to sit and talk to FBI agents.

502. The FBI agents questioned Plaintiffs. Plaintiffs stated that they did not want to

answer any questions.

503. Lavora and Sabel were released by the West Allis police department.

504. Before leaving the West Allis police station, Lavora asked for her phone. Police refused.

505. When Lavora repeatedly tried to get her phone back from the WPD in the ensuing days and was denied.

506. Plaintiff Lavora was told that WPD could keep her phone as long as they wanted. WPD never obtained a warrant for Lavora's phone.

507. When Lavora 's phone was finally returned it appeared to have been tampered with. Several months of information had been erased, including pictures Plaintiff had taken of the police.

508. When they were released from West Allis, Lavora and Sabel were given tickets written by Wauwatosa Police Lt. Jeffrey Farina.

509. The tickets accurately note that Sabel and Lavora were both arrested at 6:32p.m.

510. Plaintiffs were denied their right to an attorney and their right to remain silent.

511. Plaintiffs suffered physical discomfort and injury, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

512. Plaintiffs continue to experience post-traumatic stress and fear of on-going retaliation.

513. At no time were Plaintiffs provided with their *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention and interrogation.

514. Plaintiffs suffered physical discomfort and injury, including soreness and bruising

from having their arms handcuffed behind their backs, significant emotional distress, and trauma, including fear of where they would be taken and what would be done to them, from their unlawful arrest and detention.

### viii.  Rachel Dulay and Jose Hernandez Ramirez - October 8, 2020

515. Plaintiffs Rachel Dulay and Jose Hernandez were driving in Wauwatosa on October 8, 2020.

516. While at a stop sign, the police surrounded their car, placing "stop sticks" underneath the wheels preventing them from leaving.

517. Officer Cory Wex and Detective Joseph Lewandowski arrested Plaintiffs Dulay and Hernandez.

518. While stopped, the officers asked Plaintiff Hernandez to take the keys out of the car, which he immediately did. Detective Lewandowski forcefully pulled Hernandez out of the car ripping his shirt while yelling 'stop resisting' which plaintiff was not doing.

519. Detective Lewandowski continually yelled 'stop resisting'; Plaintiffs never resisted.

520. After Detective Lewandowski forcefully pulled Hernandez out of the car, he pointed his gun at Plaintiff Dulay.

521. Plaintiff Dulay was trying to record the interaction on her phone. Detective Lewandowski said not to record.

522. Officers seized Plaintiffs' phones. At no time did Plaintiffs give permission to search their phones.

523. Detective Lewandowski later claimed that he thought Plaintiff Dulay had a gun, which she did not. Detective Lewandowski had no reasonable basis for that claim.

524. Plaintiff Dulay got out of the car. Officers threw her to the ground.

73

525. Plaintiff Dulay was never told why she was being arrested and the officers refused to identify themselves.

526. Plaintiffs were told not to speak.

527. Plaintiffs' hands were bound for hours with wrist restraints which were extremely tight.

528. Plaintiffs asked the police to loosen the restraints and were denied.

529. Plaintiffs were forced into a van and were not told where they were being taken.

530. Plaintiff Dulay's car was searched. Dulay did not give permission to search her car.

531. While Plaintiff was under arrest her car was towed.

532. The towing of Plaintiff's car was in violation of WPD's towing policy.

533. Plaintiffs were taken to West Allis Police Department.

534. While at the West Allis Police Department, Plaintiffs were required to talk to the FBI.

535. The FBI asked Plaintiffs individually if they were "members of a terrorist group like TPR, BLM, or Antifa."

536. Plaintiff Dulay laughed when told that TPR is a terrorist organization. The FBI agent replied that TPR was a terrorist gang because they went to Mensah's house.

537. Plaintiff Dulay asked for a phone call and was denied.

538. Plaintiffs were given tickets and left the police station.

539. Officers told Plaintiff multiple times that her car had not been towed.

540. The next day, Plaintiff went to N & S Towing, Inc. and was told that the WPD had called to get her car towed.

74



541.    Plaintiff had to pay $121.33 to get her car out of the tow lot.

542.    At no point while Plaintiffs were under arrest were they read *Miranda* rights.

543.    Plaintiffs continue to experience post-traumatic stress and fear on-going

        retaliation.

544.    Plaintiffs suffered physical discomfort and injury, including soreness and bruising

        from having their arms tied behind their backs, and significant emotional distress and

        trauma, including fear about where they would be taken and what would be done to them

        from his unlawful arrest and detention.

545.    Plaintiffs were given a municipal ticket in the amount of $1,321 for Violation of an

        Emergency Order signed by Lt. Jeffrey Farina.

546.    According to Wis. Stat. 323.28 the maximum forfeiture that can be given is $200.

547.    Defendant George Schimmel, independent contractor for Defendant City, later

        prosecuted Plaintiffs for violation of an emergency order pursuant to Wis. Stat. 323.14.

548.    Defendant Schimmel acknowledged that Wis. Stat. 323.28 controls penalties as the

        referenced municipal authority for alleged violations, which reads, "323.28    Penalties.

Whoever intentionally fails to comply with an order issued by an agent of the state or of a local unit of government who is engaged in emergency management activities under this chapter, including training exercises, is subject to a forfeiture of not more than $200."

549.　Defendant Schimmel did not, and to date has not corrected for Plaintiffs nor the Court this statutory error.

### ix.　Oscar Concepcion - October 7, 2020

550.　Plaintiff Oscar Concepcion was in Wauwatosa working as an Uber driver on October 7, 2020.

551.　At around 9p.m. Plaintiff picked up a passenger at McDonald's located at 98th and Lisbon.

552.　While he was on 101st and Lisbon Concepcion saw National Guard, police dressed in military-style fatigues, and citizens in the streets.

553.　In the course of his job as an Uber driver, Plaintiff tried to leave the area but was trapped by the National Guard.

554.　The National Guard started throwing tear gas at the crowd.

555.　Immediately after tear gas was thrown at the crowd unidentified National Guard members ran to Plaintiff's car, demanded that he get out immediately, and threatened to break the car windows.

556.　As Concepcion tried to get out of the car he was dragged out by officers thrown on the ground.

557.　After Plaintiff was thrown to the ground, he was put in extremely tight handcuffs.

558.　He explained to the National Guard and the officers that he was working, and received no response.

559.　He complained about his handcuffs being extremely tight and received no response.

76

560. Lt. Farina of the Wauwatosa Police Department approached him and said, "He's one of the leaders."

561. Concepcion tried to identify other officers but he noticed that they had black tape over their names.

562. Plaintiff asked why he was being arrested and did not receive an answer.

563. Plaintiff observed that police were entering some information on an app.

564. Concepcion was put in the back of a SWAT car which drove around for about 45 minutes.

565. The car that Plaintiff Concepcion was in met up with a van and the cars met bumper to bumper.

566. Plaintiff was not told why he was arrested or where he was being taken.

567. Concepcion was ordered into the second vehicle. He was driven around for a considerable period of time.

568. Plaintiff Concepcion was taken to West Allis Police Department and booked.

569. While at West Allis Police Department, Plaintiff was photographed and made to talk to the FBI.

570. There was no probable cause that Concepcion committed any State or Federal crimes.

571. Concepcion stated to the FBI agent that he did not want to talk to them and that he wanted his attorney.

572. Despite his invocation of his rights to remain silent and to an attorney, the FBI continued to question Concepion.

573. Upon his release from West Allis Police Department, Concepcion was given a ticket for violation of an Emergency Order for $1,321

574. According to Wis. Stat. 323.28 the maximum forfeiture that can be given is $200.

575. Defendant George Schimmel, independent contractor for Defendant City, later prosecuted Plaintiffs for violation of an emergency order pursuant to Wis. Stat. 323.14.

576. Defendant Schimmel acknowledged that Wis. Stat. 323.28 controls penalties as the referenced municipal authority for alleged violations, which reads, "323.28    Penalties. Whoever intentionally fails to comply with an order issued by an agent of the state or of a local unit of government who is engaged in emergency management activities under this chapter, including training exercises, is subject to a forfeiture of not more than $200."

577. Defendant Schimmel did not, and to date has not corrected for Plaintiffs nor the Court this statutory error.

578. According to the Emergency Proclamation signed by Mayor Dennis McBride persons going "to and from work" are exempted from the Curfew.

579. On October 7, 2020 when Mr. Concepcion was arrested he was working.

**x.    Leah Porter, Christina Vitolo Haddad, and Sonja Worthy - October 10, 2020**

580. Leah Porter, Christina Vitolo Haddad, and Sonja Worthy were in the City of Wauwatosa on October 10, 2020 serving as street medics.

581. The three came to Wauwatosa prepared to serve in a street medic capacity and brought the necessary equipment to triage general issues.

582. Porter, Haddad, and Worthy attended a candlelight vigil outside Wauwatosa's City Hall which continued past 7pm.

583. While there they witnessed the National Guard and various law enforcement agencies in armored vehicles and wearing tactical gear.

584. According to the Emergency Declaration, social service workers were exempt from the curfew.

585. Porter, Haddad, and Worthy were serving as street medics in a social service worker capacity and as such were exempt from the curfew.

586. Sometime after 7p.m. the police issued dispersal orders.

587. While at Wauwatosa City Hall Plaintiffs Porter, Haddad, and Worthy provided water to various people.

588. Seeing that there was no need for medical assistance, Plaintiffs left the City Hall area to leave to go home.

589. While they were walking to their car shortly after dispersal orders were given, Plaintiffs were stopped by a Wauwatosa police officer in a car.

590. One officer did not have a visible name tag or badge but had a "blue lives" matter tattoo on his forearm asked them where they were going.

591. Plaintiffs were arrested. Their medical bags were searched and their cellphones seized.

592. At no time did Plaintiffs Haddad, Porter, or Worthy give consent to search their cell phones or their bags.

593. While under arrest and before they were put in the police vehicle, an officer took a picture of all three Plaintiffs with his cell phone.

594. Vitolo repeatedly told the officers that she was not going to answer any questions. The officers continued to ask her questions.

595. While in the police car, the unidentified officer said to Plaintiffs, "Uh oh ladies it sounds like the feds want to talk to you."

596. After 8 pm, Plaintiffs were taken to Mayfair Mall where there was a contracted police station.

597. At Mayfair mall they were booked in by an unidentified female police officer.

598. The police took front and side pictures of Plaintiffs' faces.

599. Plaintiffs were told they had to talk to two FBI agents.

600. Haddad, Porter, and Worthy all together were forced to talk to two FBI agents

despite their previous assertions that they did not want to answer any questions.

601.   While in custody Plaintiffs were asked by the FBI agents if they were affiliated with the People's Revolution.

602.   One of the FBI agents took a picture of Plaintiffs with his cellphone.

603.   After FBI agents stopped questioning them, Plaintiffs were given tickets by Wauwatosa Officer Benjamin Ziegler.

604.   A Dane County officer drove Plaintiffs from Mayfair Mall back to their car.

605.   Before dropping them off the officer said, 'Ladies you're not going to do anything like this again, right?'

606.   At no time were Plaintiffs given their *Miranda* rights.

607.   At no time did Plaintiffs consent to a search of their belongings.

608.   Plaintiffs were all denied their right to an attorney and their right to remain silent.

609.   Plaintiffs suffered physical discomfort and injury, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

610.   Plaintiffs continue to experience post-traumatic stress and fear of on-going retaliation.

**x.**   **Destiney Jones - October 8, 2020**

611.   Plaintiff Destiney Jones was in Wauwatosa on October 8, 2020.

612.   While she was in Wauwatosa driving her car and trying to leave, an Officer approached her car with a gun pointed at her head..

613.   He ordered her to get out of the car which she did.

614.   Plaintiff Jones' car was searched without her permission.

615.   A female officer put Jones in extremely tight hand restraints and refused to loosen

80

them.

616. Jones was put into a van.

617. The van left the area, and additional arrested persons were put in the van with Jones.

618. The van parked somewhere on Mayfair Road for about an hour.



619. Jones and others were then taken to the Waukesha County Jail where they
sat in the van for about an hour.

620. While in the van outside of the Waukesha County Jail their pictures were
taken.

621. When Jones was taken inside the Waukesha County Jail building she was forced to change
into orange jail clothes.  While she was changing, an officer remained in the room,
watching her get naked, and told Plaintiff that it was protocol.

622. The Waukesha County Jail took inventory of all the items of clothing taken from Jones.

623. While at the Waukesha County Jail, Jones was told that she had to talk to the FBI.

624. Jones was photographed, fingerprinted, and made to talk with an FBI agent, despite the
lack of probable cause that she had committed any State or Federal crimes.

81

625. Jones was told that she had to talk to the FBI. She repeatedly told the police and the FBI that she wanted to talk to her attorney.

626. Despite Jones's repeatedly asserting her right to remain silent and her right to an attorney the FBI agents continued to ask Plaintiff questions.

627. Plaintiff Jones was released from the jail after midnight. Police kept her phone without explanation.

628. Before leaving the Waukesha County Jail, about four hours after she had been arrested, Plaintiff was given a municipal ticket for Violation of an Emergency Order signed by Lt. Jeffrey Farina for $1321.

629. According to Wis. Stat. 323.28 the maximum forfeiture that can be given is $200.

630. Defendant George Schimmel, independent contractor for Defendant City, later prosecuted Plaintiffs for violation of an emergency order pursuant to Wis. Stat. 323.14.

631. Defendant Schimmel acknowledged that Wis. Stat. 323.28 controls penalties as the referenced municipal authority for alleged violations, which reads, "323.28   Penalties. Whoever intentionally fails to comply with an order issued by an agent of the state or of a local unit of government who is engaged in emergency management activities under this chapter, including training exercises, is subject to a forfeiture of not more than $200."

632. Defendant Schimmel did not, and to date has not corrected for Plaintiffs nor the Court this statutory error.

633. While Plaintiff was under arrest her car was towed.

634. The towing of Plaintiff's car was in violation of WPD's towing policy.

635. Plaintiff suffered physical discomfort and significant emotional distress and trauma, including fear about where she would be taken and what would be done to her while she was being unlawfully arrested and detained.

82

636. Plaintiff continues to experience post-traumatic stress and fear on-going retaliation.

637. At no time was Plaintiff provided the *Miranda* warning, or informed in any way of any legal rights she had incident to an arrest, search, seizure, detention and interrogation.

### xi. Erik Fanning and Sonora Larson - October 8, 2020

638. Plaintiffs Erik Fanning and Sonora Larson were in the City of Wauwatosa on October 8, 2020.

639. While Plaintiffs Fanning and Larson were trying to leave Wauwatosa the car that they were traveling in was being "kettled" by numerous, unidentifiable law enforcement vehicles, forcing the car to arrive at a predetermined destination (corner of Milwaukee Avenue & Wauwatosa Avenue), where they were stopped by unidentified police officers and persons believed to be with the National Guard.

640. While Plaintiffs were trying to leave Wauwatosa, law enforcement officers also threw stop spike strips in front of and between the tires of the car which prevented Plaintiffs and the other occupants of the car from leaving.

641. Several law enforcement officers including Detective James Short threatened to break the windows of the car, pointed rifle(s) at the rear driver-side window, and used excessive force to pull Plaintiffs Fanning and Larson out of the car.

642. Fanning was dragged across pavement and struck with blunt object(s) while face-down on the ground.

643. Plaintiff's phones were seized by law enforcement officers without explanation.

644. Plaintiffs were then made to get into a Wauwatosa Police Department van. Plaintiffs Larson and Fanning were next taken to an unknown rendezvous point. Plaintiffs were

83

transferred to a Waukesha County Jail van and taken to the Waukesha County Jail by

Officer Maria Albiter and a Waukesha County Sheriff's Deputy.

645.   Plaintiffs were kept in close proximity to each other and other persons

Arrested, while their hands were tightly bound in zip ties, for hours.

646.   Plaintiffs were around multiple police officers, who refused to identify

themselves, and who were not wearing masks. Officers refused to give Plaintiffs

masks.

647.   While at the Waukesha County Jail, Plaintiffs Larson and Fanning were told that

they had to talk to the FBI.

648.   While at the Waukesha County Jail Plaintiffs were made to change into inmate

clothing, photographed, fingerprinted, and made to talk with several FBI agents

present at the jail that evening.

649.   Plaintiff Larson was made to remove all of her clothes in the presence of an Officer. Such

requirement is not normal procedure for a potential violation of a noncriminal municipal

ordinance.

650.   Despite the lack of probable cause that Plaintiffs had committed any State or

Federal crimes, they were both individually forced to sit and talk to FBI agents.

651.   Plaintiffs were told that they had to talk to the FBI.

652.   Despite Plaintiff's repeated assertions of their right to remain silent and their right

to an attorney, the FBI agents continued to question them.

653.   While at the Waukesha County Jail for hours, Plaintiffs were denied water and

use of the bathroom.

654. Plaintiffs were released from the jail around 1:00a.m. Officer Arbiter told them that Wauwatosa needed their phones for "evidence."

655. The Waukesha Police officers did not allow them to call for a ride and released them from the station after 1:00a.m.

656. Plaintiffs suffered physical injuries, discomfort, and significant emotional distress and trauma, including the fear about where they would be taken and what would be done to them while being unlawfully arrested and detained.

657. Plaintiffs continue to experience post-traumatic stress, and fear on-going retaliation by the Wauwatosa Police Department.

658. At no time were Plaintiffs given their *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention and Interrogation.

**xii.** **Breon Foster - October 9, 2020**

659. On October 9, 2020 Breon Foster was peacefully protesting in the City of Wauwatosa.

660. While he was trying to leave Wauwatosa at around 8:30p.m. he was violently grabbed by unidentified police officers from behind who refused to identify themselves.

661. The officers had tape over their nametags.

662. The unidentified officers put zip ties on Plaintiff extremely tight for at least an hour.

663. Plaintiff was photographed, booked, and fingerprinted while he was at the WPD.

664. Eventually, plaintiff was taken to the Wauwatosa Police station where he was

questioned.

665. Before he was questioned by the FBI he stated that he wanted his lawyer,

Kimberley Motley.

666. Despite plaintiff invoking his right to remain silent the FBI continued to question

him.

667. After he was questioned by the FBI, he was then questioned by Wauwatosa's

Detective Joseph Lewandowski.

668. Before being questioned by Detective Joseph Lewandowski, plaintiff stated that he
wanted his lawyer Kimberley Motley before going into the interrogation room.

669. Despite his invoking his constitutional right to remain silent, Detective

Lewandowski still made Plaintiff go into the interrogation room to be questioned.

670. Plaintiff felt that he had no choice but to talk to Detective Lewandowski.

671. The interrogation by Detective Lewandowski of Plaintiff occurred after 2:00a.m.

672. The Wauwatosa Police Department released the video of the interrogation to the

public on January 7, 2021.

673. Detective Lewandowski was wearing a "blue lives matter" mask throughout this

interview which was very intimidating for Plaintiff.

674. During this interrogation, Detective Lewandowski specifically dissuaded plaintiff

from Kimberley Motley being his lawyer and made disparaging remarks regarding her.

675. Specifically, during the interrogation of October 9, 2020 Detective Lewandowski told

Plaintiff,

"But that's what The People's Revolution is doing to Joe Mensah. They

don't have the facts. They're at least not willing to talk about the facts. But

86

yet they're terrorizing the city of Wauwatosa because they're pissed off because the D.A. didn't rule the way that they wanted. So, you all are lucky because you were able to uh, you were able to uh, get our chicken shit mayor to do what you all wanted to do and telling us if he stopped and then that's pissing People's Revolution off, that- and then now here we are, right? And you know what the worst part of this is? This all started because of Motley, 'cause Motley came in, and I'm sure she told the family, "I can get you money." You know why? 'Cause they always do. She is victimizing those families even worse than what Joe Mensah's doing. ' 'Cause she, I guarantee you, she promised them everything under the sun, "We're gonna get this, we're gonna get this, we're gonna get 'em fired, we're gonna get the chief fired." She told you all this, didn't she? She's gonna get the family money. She told you all this, didn't she? What just happened? He was ruled justified. You think the family's getting money? You think, you think Mensah's gettin' fired? you think Chief Weber's getting fired? And you know what the messed up thing is? She knew this was gonna happen from day number one. So who do you think the real crook is here? She knew exactly how the DA's office was gonna rule. Why? 'Cause she was with the family from day number one. You think this is the first time she's been involved in an officer-related use of force thing? She knows what they have to prove to, to whether or not they charge someone or not. And I gotta tell ya, I am aware of all of the specifics of all three incidents and all three incidents are justified.

But I'll tell you what, this is the most cleanest cop one of them all as far as justification goes, and she knew this. But that didn't stop her from coming and saying, "Hey I can get ya this. I can do this." Why do you think she did that?"

676. Detective Lewandowski asked if Plaintiff Foster was a member of TPR.

677. At the end of the interview, the inside of Plaintiff's mouth was swabbed and Detective Lewandowski took saliva samples for the purpose of getting his DNA.

678. Plaintiff continues to experience post-traumatic stress and fear on-going retaliation.

679. Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having his arms tied behind his back, and significant emotional distress and trauma, including fear about where he would be taken and what would be done to him, from his unlawful arrest and detention.

680. Plaintiff was eventually given a municipal ticket in the amount of $1,321 for Violation of an Emergency Order signed by Lt. Jeffrey Farina.

681. According to Wis. Stat. 323.28 the maximum forfeiture that can be given is $200.

682. Defendant George Schimmel, independent contractor for Defendant City, later prosecuted Plaintiffs for violation of an emergency order pursuant to Wis. Stat. 323.14.

683. Defendant Schimmel acknowledged that Wis. Stat. 323.28 controls penalties as the referenced municipal authority for alleged violations, which reads, "323.28   Penalties. Whoever intentionally fails to comply with an order issued by an agent of the state or of a local unit of government who is engaged in emergency management activities under this chapter, including training exercises, is subject to a forfeiture of not more than $200."

684.	Defendant Schimmel did not, and to date has not corrected for Plaintiffs nor the Court this statutory error.

### xiii.	Jill Ferguson - October 11, 2020

685.	Jill Ferguson is an activist who was filming people protesting in Wauwatosa on October 11, 2020.

686.	At around 7:30p.m. Plaintiff was videotaping the interactions between the police and protestors from her car.

687.	Plaintiff's car has numerous bumper stickers regarding a wide variety of social justice issues.

688.	Plaintiff was immediately stopped and targeted by the police.

689.	While driving, about six unmarked vehicles stopped and surrounded her car.

690.	After they stopped her car, officers asked Plaintiff to step out of her car and immediately took her cell phone.

691.	Officers forcefully pushed her on the trunk of car and put extremely tight handcuffs on her.

692.	Plaintiff, arrested for a noncriminal ordinance violation, asked that her handcuffs be loosened as she has severe arthritis in her hands. Her request was denied.

693.	Police at the scene addressed Ferguson as to why she was supporting a "terrorist group", implying that TPR and BLM are terrorist organizations.

694.	Police at the scene asked Ferguson why she was associating with "thugs" in TPR and BLM.

695.	At no time did the officers identify themselves. Officers had black tape over their name badges.

696.	The video that Plaintiff was recording was erased from her phone by the police.

697.	At no time did Ferguson give the officers permission to search her phone.

89

698. Plaintiff was taken to the Wauwatosa Police Department where she was photographed and fingerprinted. While at the Wauwatosa Police Department Plaintiff was made to talk to the FBI.

699. Despite asserting her right to remain silent, the FBI asked her if she "was a member of a terrorist group like TPR, BLM, or Antifa."

700. Plaintiff wanted to leave the police station on her own but was told that she had to be driven by the police to her car and that she could not leave the police station on her own.

701. Despite Plaintiff's objections the police made her get back in the police car essentially arresting her again with no probable cause.

702 Officers told Plaintiff that her car had not been towed.

703. While Plaintiff was under arrest her car was towed.

704. The towing of Plaintiff's car was in violation of WPD's towing policy.

705. Officers dropped Plaintiff off several miles away from her car, with no cell phone, after 2 a.m.

706. Plaintiff continues to experience post-traumatic stress and fear on-going retaliation.

707. Plaintiff suffered physical discomfort and injury, including soreness and bruising from having her arms tied behind her back, and significant emotional distress and trauma, including fear about where she would be taken and what would be done to her from his unlawful arrest and detention.

708. Plaintiff was given a municipal ticket in the amount of $1,321 for Violation of an Emergency Order signed by Lt. Jeffrey Farina.

709. According to Wis. Stat. 323.28 the maximum forfeiture that can be given is $200.

710. Defendant George Schimmel, independent contractor for Defendant City, later prosecuted Plaintiffs for violation of an emergency order pursuant to Wis. Stat. 323.14.

711. Defendant Schimmel acknowledged that Wis. Stat. 323.28 controls penalties as the referenced municipal authority for alleged violations, which reads, "323.28 Penalties. Whoever intentionally fails to comply with an order issued by an agent of the state or of a local unit of government who is engaged in emergency management activities under this chapter, including training exercises, is subject to a forfeiture of not more than $200."

712. Defendant Schimmel did not, and to date has not corrected for Plaintiffs nor the Court this statutory error.

713. The next day, Plaintiff went to Dennis Towing and Transportation and was told that the WPD had called to get her car towed.

714. Plaintiff had to pay $157.75 to get her car out of the tow lot.

715. At no point while Plaintiff was under arrest was she given her *Miranda* rights.

### xiv. Pete Sparks - October 10, 2020

716. Plaintiff Sparks was attempting to film protesting in the City of Wauwatosa on October 10, 2020.

717. He rode his bicycle near the Wauwatosa Library and then noticed an unmarked car with their lights off, driving very fast next to him.

718. He thought that they were counter protestors and he was near a cemetery near 76th and Burleigh.

719. It appeared as though he was being kettled toward the cemetery and all of a sudden several people in military fatigues came running out of the area yelling at him to stop.

720. At that point, additional personnel appeared, jumped him and knocked him off his bicycle.

721. These personnel cuffed him tightly with zip ties before ever announcing that they were police officers.

91

722. Plaintiff told them that they never announced themselves as police officers.

723. Plaintiff was then dragged into the cemetery where the officers started beating and kicking him, causing him pain and numerous injuries.



724. The police also took his cellphone.

725. Police repeatedly pulled and bent Plaintiff's knee backward, which was extremely painful.

726. The officers at the scene also damaged plaintiff's bike which made it immobile and also had several broken pieces when he recovered it.

727. The officers at the scene refused to identify themselves as he was repeatedly asking and was eventually taken to the Wauwatosa Police Department.

728. At the police station Plaintiff complained about the excessive force that was used against him by the Wauwatosa Police Officers to the FBI officers.

729. Plaintiff was photographed, fingerprinted, and booked at the WPD.

730. Plaintiff was made to talk to the FBI despite their being no probable cause that he had committed any federal crimes to justify talking to them.

92

731. Plaintiff was eventually given a municipal ticket in the amount of $1,321 for Violation of an Emergency Order signed by Lt. Jeffrey Farina.

732. According to Wis. Stat. 323.28 the maximum forfeiture that can be given is $200.

733. Plaintiff suffered physical discomfort and injury, including soreness and bruising from his arms being handcuffed behind his backs, and significant emotional distress and trauma, including fear about what would be done to him, from his unlawful arrest and detention.

734. Plaintiff continues to experience post-traumatic stress and fear on-going retaliation.

735. At no time was Plaintiff Sparks provided *Miranda* warning, or informed in any way of any legal rights he had incident to an arrest, search, seizure, detention, and interrogation.

### xv. Carmen Palmer, (Juvenile Male) Palmer, and (Juvenile Female) Palmer – October 8, 2020

736. Carmen Palmer and her two teenaged children, were in Wauwatosa protesting on October 8, 2020.

737. While Plaintiff Palmer was driving she was "kettled" and then trapped in by numerous, unidentifiable law enforcement vehicles and stop spike strips were thrown in front of her car forcing her to stop and preventing her from leaving.

738. Police then pointed guns at Plaintiff Palmer and her two children and forced them all out of the car.

739. Plaintiffs were all forcefully pulled out of the car and thrown down on the ground.

740. Plaintiff's kids were trying to record the incident but the police stopped them.

93

741. Plaintiff told the officers that she wanted to call someone to get her children and was told to shut up.

742. The police put handcuffs on Plaintiffs which were extremely tight and they refused to loosen up.

743. Officers took all the phones of the Plaintiffs and refused to return it to them immediately upon her release.

744. Eventually Plaintiffs were taken to the West Allis police station.

745. Plaintiff was photographed, fingerprinted, and made to sit with the FBI.

746. Plaintiff was made to talk to the FBI despite their being no probable cause that she had committed any federal crimes to justify talking to them.

747. Eventually Plaintiffs were released by the West Allis police department.

748. There were no acts by Plaintiffs, nor acts by any other people that the Plaintiff's witnessed, which could constitute non peaceable assembly. They were simply protesting and trying to leave a peaceful protest against police brutality.

749. When Plaintiffs were eventually released from West Allis each of them were given a violation of an emergency order ticket in the amount of $1,321.

750. According to Wis. Stat. 323.28 the maximum forfeiture for Violation of an Emergency Order municipal citation that can be given is $200.

751. Plaintiff Palmer's car was towed at the direction of the WPD.

752. The Towing of Plaintiff's car was in violation of WPD's Towing policy.

753. When plaintiff went to get her car out of the tow lot she saw that it had been completely ram sacked and all of her windows were down.

754. Plaintiff did not give anyone permission to search her car.

755. Plaintiff continues to experience post-traumatic stress and fear of on-going retaliation.

94

756. At no time were Plaintiffs provided with their *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention and interrogation.

757. Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, significant emotional distress and trauma, including fear of where they would be taken and what would be done to them, from their unlawful arrest and detention.

### xvi. Molly Nilssen – October 10, 2020

758. Plaintiff was in the city of Wauwatosa on October 10, 2020 peacefully protesting.

759. At around 7:40p.m. Plaintiff was arrested.

760. Plaintiff's Nilssen's wrist restraints were extremely tight and the officers did not seem to care.

761. Plaintiff was put in a van with two other women, identified as Dana McCormick and Kate Knowlton.

762. Plaintiff Nilssen's phone was taken away with no explanation.

763. Plaintiff never gave anyone permission to search her phone.

764. Plaintiff was eventually taken to the WPD and while there, she was photographed, fingerprinted, and made to talk with two FBI agents.

765. Despite the lack of probable cause that Plaintiff had committed any state or Federal crimes she was still forced to sit and talk to FBI agents.

766. Plaintiff was told that she had to talk to the FBI despite her stating that she did not want to answer any questions.

767. Despite Plaintiff's repeated assertions of her right to remain silent and her right to

95

an attorney the FBI agents continued to ask her questions.

768. Plaintiff complained to the FBI agents of getting hit with rubber bullets and being tear gassed.

769. The FBI asked several questions including: what happened; why was she protesting; who was she with; and if she was with TPR.

770. After the questions, Plaintiff was told by the officers that she would be leaving in a police van and dropped off at a point of law enforcement's choosing.

771. Plaintiff Nilssen was upset and asked why she would not be free to leave on her own.

772. The unidentified law enforcement officer stated that "policy" required law enforcement transport as a "courtesy." Law enforcement further stated that Defendant Weber did not want people gathering at the police station.

773. Plaintiff Nilssen was told that if she continued to be upset that she would be arrested again for a curfew violation, and that it would be "safer" to take the law enforcement "courtesy" transport.

774. Plaintiff was walked out of the parking lot accompanied by a police officer.

775. Plaintiff was given a ticket for Violation of an Emergency Order in the amount of $1,321.

776. According to Wis. Stat. 323.28 the maximum forfeiture that can be given is $200.

777. At no time was Plaintiff provided *Miranda* warning, or informed in any way of any legal rights she had incident to an arrest, search, seizure, detention and interrogation.

### xix. Suzanne Wells – October 8, 2020

778. Suzanne Wells was in Wauwatosa protesting on October 8, 2020.

779. While Plaintiff Wells was trying to leave Wauwatosa, the car that they were traveling in was being "kettled" by numerous, unidentifiable law enforcement vehicles and stop spike strips were thrown in front of her car forcing her to stop and preventing her from leaving.

780. The police put wrist restraints on Plaintiff which was extremely tight and they refused to loosen up.

781. Eventually a police van showed up and they were driven to the parking lot of what she believed to be a school.

782. She was then told to get out of the van and taken into another car and was not told where she was going to be taken and the officers who transported her did not identify themselves.

783. Eventually she was taken to the West Allis police station.

784. Plaintiff was photographed, fingerprinted, and made to sit with the FBI.

785. Plaintiff was made to talk to the FBI despite their being no probable cause that she had committed any federal crimes to justify talking to them.

786. Eventually Plaintiff Wells was released by the West Allis police department.

787. She was told that they could keep her phone as long as they wanted and they were trying to get a search warrant which they never did.

788. Eventually, Plaintiff Wells got her phone back and it appeared to be tampered with.

789. When Plaintiff was eventually released from she was given a violation of an emergency order ticket in the amount of $1,321.

790. According to Wis. Stat. 323.28 the maximum forfeiture for Violation of an Emergency Order municipal citation that can be given is $200.

791. Plaintiff Wells' car was towed at the direction of the WPD.

792. The Towing of Plaintiff's car was in violation of WPD's Towing policy.

793. Plaintiff continues to experience post-traumatic stress and fear of on-going retaliation.

794. At no time was Plaintiff provided with their *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention and interrogation.

795. Plaintiff suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, significant emotional distress and trauma, including fear of where they would be taken and what would be done to them, from their unlawful arrest and detention.

## VI. PROTESTING IN WAUWATOSA August 13, 2020 – September 30, 2020

### A. PLAINTIFF'S ALLEGATIONS

#### i. Khalil Coleman - August 13, August 14, 2020, September 17, and September 29, 2020

796. Plaintiff Khalil Coleman was in Wauwatosa on August 13, August 14, 2020, September 17, and September 29, 2020 peacefully protesting for police accountability.

797. On all four dates of August 13, August 14, 2020, September 17, and September 29, 2020 Plaintiff was never arrested nor booked.

798. A few weeks after the August 13th and August 14, 2020 protests Plaintiff was mailed municipal tickets for Obstruction in the amounts of $1321 and $691.

98

799. A few weeks after the September 17 and September 29, 2020 protests Plaintiff was mailed municipal tickets for Special Events Permit Required in the amounts of $1321.

800. The Wauwatosa Police Department lacked probable cause in giving Plaintiff tickets for Special Event Permit Required.

**ii.      Mariah Smith  – August 13, 2020 and September 5, 2020**

801. Plaintiff Mariah was in Wauwatosa on August 13, 2020 peacefully protesting for police accountability.

802. The Wauwatosa Police Department lacked probable cause in giving Plaintiff Smith a ticket for Obstruction of Traffic in the amount of $439.

803. On September 5, 2020 Plaintiff was peacefully protesting in Wauwatosa.

804. The Wauwatosa Police Department lacked probable cause in giving Plaintiff Smith an Obstructing Traffic ticket.

**iii.      Brandon Wilborn  – August 14, 2020 and September 30, 2020**

805. Plaintiff Brandon Wilborn was in Wauwatosa on August 14, 2020 and September 30, 2020 peacefully protesting for police accountability.

806. A few weeks after participating in the August 14, 2020 protest Plaintiff was mailed a ticket for lack of Special Event Permit Required in the amount of $691.00.

807. The Wauwatosa Police Department lacked probable cause in giving Plaintiff Wilborn a ticket for Special Event Permit Required.

808. On September 30, 2020 Plaintiff was peacefully protesting in Wauwatosa.

809. A few weeks after participating in the September 30, 2020 protest Plaintiff was mailed a ticket for Obstructing and/or Providing False Information to Officer in the amount of $1,321.00.

### iv.     Andrew Aaron – August 13, 2020

810.   Plaintiff Andrew Aaron was protesting in Wauwatosa on August 13, 2020 and July 7, 2020.

811.   While protesting on August 13, 2020, Plaintiff was identified as a "leader of TPR" and was targeted by officers with the WPD.

812.   Plaintiff routinely was working to make sure that protestors were safe and would often record the protests.

813.   While standing on his bicycle Plaintiff was tackled to the ground by three Wauwatosa Police Officers.

814.   Police arrested Plaintiff at the scene and took his Go Pro camera.

815.   At the police station Plaintiff complained about the excessive force that was used against him by the Wauwatosa Police Officers.

816.   Plaintiff was photographed, fingerprinted, and booked at the WPD on August 13, 2020.

817.   Police did not identify any probable cause that he had committed any state crimes to justify placing him under arrest.

818.   Upon his release from the WPD, police did not return Plaintiff's camera, claiming that they did not have it.

819.   Plaintiff received his camera back from police weeks later and when he went to collect it, it was damaged.

820.   Plaintiff was given a Disorderly Conduct municipal ticket in the amount of $1,321 signed by Detective Timothy Warren.

821.   Plaintiff suffered physical discomfort and injury, including soreness and bruising from his arms being handcuffed behind his back, and significant emotional

100

distress and trauma, including fear about what would be done to him, from his unlawful arrest and detention.

822.   Plaintiff continues to experience post-traumatic stress and fear on-going retaliation.

823.   At no time was Plaintiff Sparks provided *Miranda* warning, or informed in any way of any legal rights he had incident to an arrest, search, seizure, detention and interrogation.

**v.    Joey Koepp  – September 3, 2020**

824.   Plaintiff Joey Koepp was in Wauwatosa on September 3, 2020 peacefully protesting for police accountability.

825.   While protesting plaintiff was arrested and given three tickets in retaliation for protesting.  Failure to Yield in the amount of $250, violation of red traffic light in the amount of $98.00, and Obstruction providing False Information in the amount of $691.00.

826.   The Wauwatosa Police Department lacked probable cause in giving Plaintiff tickets and ultimately arrested him.

827.   Ticketing  Plaintiff without any justification, was done in accordance with the WPD's  de-facto policy, regulation, decision or custom condoning retaliation against persons who were engaging in peacefully protesting police accountability violating person's equal protection rights and plaintiff's right to peacefully protest.

**vi.    Sean Kafer - August 14, 2020**

828.   Plaintiff Sean Kafer was in Wauwatosa on August 14, 2020 filming people peacefully protesting for police accountability.

829.   On this date he never spoke or interacted with the Wauwatosa Police Department.

830.   A few weeks later Plaintiff was mailed a municipal ticket for Obstruction and providing False Information to Officers in the amount of $1,321.00 signed by Lt. Farina.

101

831. The Wauwatosa Police Department provided no probable cause in giving Plaintiff Kafer a ticket for Obstruction / False Info to Officer.

**vii. Steven Conklin - September 30, 2020**

832. Plaintiff Steven Conklin was in Wauwatosa on September 30, 2020 peacefully protesting for police accountability.

833. On this date he never spoke or interacted with any officers in the WPD.

834. At some point, a ticket was mailed to his former address.

835. A few weeks after this peaceful protest Plaintiff was mailed a ticket for lack of Special Event Permit Required in the amount of $691.00.

836. The Wauwatosa Police Department provided no probable cause in giving Plaintiff. Conklin a ticket for Special Event Permit Required.

**viii. Kamila Ahmed – August 30, 2020**

837. Plaintiff Kamila Ahmed was in Wauwatosa on August 30, 2020 peacefully protesting for police accountability.

838. On this date she never spoke or interacted with the Wauwatosa Police Department

839. At some point, a ticket was mailed to her.

840. According to the Wauwatosa Police Department report Plaintiff Ahmed was identified by Lt. Jeffrey Farina and had a brief conversation with him.

841. In this conversation, Lt. Farina claims to have told her that she should not block traffic.

842. At no time was she asked nor did she say that she was an organizer of the protest.

843. A few weeks after this peaceful protest Plaintiff Ahmed was mailed a ticket for

102

Special Event Permit Required in the amount of $691.00.

844. The Wauwatosa Police Department provided no probable cause in giving Ms. Ahmed a ticket for Special Event Permit Required.

### ix. Jacqueline Bogenberger – September 30, 2020

845. Plaintiff Jacqueline Bogenberger was in Wauwatosa on September 30, 2020 peacefully protesting for police accountability.

846. On this date she never spoke or interacted with the Wauwatosa Police Department

847. A few weeks later Plaintiff was mailed a municipal ticket for lack of Special Event Permit Required in the amount of $1,321.00.

848. The Wauwatosa Police Department provided no probable cause in giving Plaintiff Bogenberger a ticket for Special Event Permit Required.

### viii. Robert Agnew – September 5, 2020

849. Plaintiff Robert Agnew was in Wauwatosa on September 5, 2020 peacefully protesting for police accountability.

850. On this date he never spoke or interacted with the Wauwatosa Police Department

851. A few weeks later Plaintiff was mailed a municipal ticket for Special Event Permit Required in the amount of $691.00, as well as a recklessly endangering safety ticket in the amount of $313.00.

852. The Wauwatosa Police Department provided no probable cause in giving Plaintiff Robert Agnew a ticket for Special Event Permit Required.

852. On January 7, 2021 the Wauwatosa Police Department through its officer Lt.

Joseph Roy electronically released a huge file to journalists, lawyers, and other members of the community.

853. It was within this release of documents that Plaintiff discovered that WPD had a fabricated arrested and booking record of Plaintiff.

854. Plaintiff was not arrested nor booked by the WPD on September 5, 2020.

855. WPD created a false arrest record of Plaintiff and then released it to the public without any justification.

### xi. Gabriella Vitucci – August, 13th and August, 14, 2020

856. Plaintiff Gabriella Vitucci was in Wauwatosa on August 13 and August 14, 2020 peacefully protesting for police accountability.

857. A few weeks later Plaintiff was mailed a municipal ticket for Obstruction False Information and Obstructing Traffic.

858. The Wauwatosa Police Department lacked probable cause in giving Plaintiff any tickets.

859. Ticketing Plaintiff without any justification, was done in accordance with the WPD's de-facto policy, regulation, decision or custom condoning retaliation against persons who were engaging in peacefully protesting police accountability violating person's equal protection rights and plaintiff's right to peacefully protest.

### xii. Joseph Hayes – August, 14, 2020

860. Plaintiff Joseph Hayes was in Wauwatosa on August 14, 2020 peacefully protesting for police accountability.

861. On this date he never spoke or interacted with any officers from the Wauwatosa Police Department.

104

862. A few weeks later Plaintiff was mailed a municipal ticket for Disorderly Conduct in the amount of $1,321.

863. The Wauwatosa Police Department lacked probable cause in giving Plaintiff a ticket.

### xiii. Rosalind Rogers - September 5, 2020

864. Plaintiff Rosalind Rogers was in Wauwatosa on September 5, 2020 peacefully protesting for police accountability.

865. On this date she was arrested by WPD for not having permit for an event that she did not host.

866. Plaintiff was given a ticket for Special Event Permit Required in the amount of $691.00.

867. The Wauwatosa Police Department lacked probable cause in giving Plaintiff. a ticket for Special Event Permit Required.

### xiv. Isiah Baldwin - September 5, 2020 and October 10, 2020

868. Plaintiff Isiah Baldwin was in Wauwatosa on September 5, 2020 peacefully protesting for police accountability.

869. On this date he was arrested by WPD for Disorderly Conduct and given a ticket.

870. The Wauwatosa Police Department lacked probable cause in giving Plaintiff. a ticket.

871. Ticketing Plaintiff without any justification, was done in accordance with the WPD's de-facto policy, regulation, decision or custom condoning retaliation against persons who were engaging in peacefully protesting police accountability violating person's equal protection rights and plaintiff's right to peacefully protest.

872. Plaintiff Isiah Baldwin was in Wauwatosa on October 9, 2020 peacefully protesting for police accountability.

873. Plaintiff was given a ticket for Violation of an Emergency Order in the amount of $1,956.00.

874. According to Wis. Stat. 323.28 the maximum forfeiture for Violation of an Emergency Order municipal citation that can be given is $200.

## VII. RELEASE OF PERSONAL INFORMATION & FABRICATED or 'GHOST' ARREST DOCUMENTS CREATED BY THE WPD RELEASED TO THE PUBLIC ON JANUARY 7, 2021

### A. BACKGROUND

875. The Driver's Privacy Protection Act (the "DPPA"), 18 U.S.C. 2721 prohibits any person from knowingly obtaining or disclosing personal information from a motor vehicle record. The act defines personal information as information that identifies an individual including an individual's driver identification number, name, address, date of birth, height, weight, hair color, and eye color. At no time did the Plaintiffs give the Defendants permission to release their personal information to the public.

876. Defendant Roy testified that he was specifically trained to access citizens' motor vehicle records.

### B. DEFENDANTS' RELEASE TO THE PUBLIC PLAINTIFFS' PERSONAL INFORMATION RETRIEVED FROM MOTOR VEHICLE RECORDS

877. On January 7, 2021 Defendant Joseph Roy released to the public unredacted police reports, arrest & booking information, noncriminal tickets and interrogation videos to members of the public, media, and others which contained Plaintiffs' personal information and highly restrictive information that was obtained from their motor vehicle records.

106

878. When Defendant Roy released Plaintiffs' personal information from their motor vehicle records he was working in his official capacity.

879. Defendant Roy testified to on July 26, 2021, that "[i]nformation obtained from the DOT can't be released…to the public."

880. Defendant Roy testified to on July 26, 2021, that when WPD obtains the information from the Department of Transportation the following is prohibited from being released: a person's address, phone number, driver's license number, date of birth, weight, height, eye color.

881. Defendant Roy testified on July 26, 2021 that information that WPD obtains from a confidential source should not be released publicly.

882. Defendant Roy testified on July 26, 2021 that he publicly released unredacted personal information about Plaintiffs. (See Exhibit 2).

883. Defendant Roy testified on July 26, 2021 that he did not know many of the identities of the people (the addresses in the email caption below) to whom he gave Plaintiffs unredacted personal information.

## Open Records Request Response

"Joseph Roy" [jroy@wauwatosa.net]

Sent: 1/7/2021 5:24 PM

To: ""tony.aria@tmj4.com"" <tony.aria@tmj4.com>, ""blodestone@gmail.com"" <blodestone@gmail.com>, ""Lezlie.Johnson@tmj4.com"" <Lezlie.Johnson@tmj4.com>, ""colleenmariehenry@hotmail.com"" <colleenmariehenry@hotmail.com>, ""hmintz@wisn.com"" <hmintz@wisn.com>, ""eschneider@nexushelps.com"" <eschneider@nexushelps.com>, ""peteasparks@gmail.com"" <peteasparks@gmail.com>, ""isiah@wisconsinexaminer.com"" <isiah@wisconsinexaminer.com>, ""bryan.polcyn@FOX.com"" <bryan.polcyn@FOX.com>, ""mcollins@aclu-wi.org"" <mcollins@aclu-wi.org>, ""swaleslaw@gmail.com"" <swaleslaw@gmail.com>, ""mthomsen@gtwlawyers.com"" <mthomsen@gtwlawyers.com>, ""isiah@wisconsinexaminer.com"" <isiah@wisconsinexaminer.com>, ""isiah@wisconsinexaminer.com"" <isiah@wisconsinexaminer.com>, ""dmorganadams@gmail.com"" <dmorganadams@gmail.com>, ""dmorganadams@gmail.com"" <dmorganadams@gmail.com>, ""bgutenschwager@gmail.com"" <bgutenschwager@gmail.com>, ""kmotley@motleylegal.com"" <kmotley@motleylegal.com>, ""jfg@hallingcayo.com"" <jfg@hallingcayo.com>

884. Defendant Roy testified on July 26, 2021 that per the DPPA, WPD Policy and Wisconsin Open Records Laws, he was aware that highly restricted personal information and personal information must be redacted before it was released to the public.

885. Defendant Roy testified on July 26, 2021 that unredacted issued tickets included in the public disclosure included Plaintiffs' address, phone number, driver's license number, date of birth, weight, height, and eye color, which was information obtained from a person's driver's license record through accessing the DOT.

886. Also released to the public on January 7, 2021, by Lt. Roy of the WPD, were documents what will hereinafter be referred to as "fabricated arrest records" which were unredacted records documented and recorded by the WPD as "arrests" of persons allegedly for participating in protesting.

887. These records contained "booking" and "arrest" numbers assigned for arrests that in fact, never occurred in any way or at any time.

888. These fabricated arrest records were located in the "Records and Citations" folder included in the public release on January 7, 2021 as created by Defendant Roy.



## C. PLAINTIFF'S ALLEGATIONS
## as to WPD RELEASE OF PERSONAL INFORMATION:
## UNREDACTED CITATIONS, FABRICATED ARREST RECORDS,
## AND POLICE REPORTS

### i. Tracy Cole

889. On January 7, 2021 Defendant Roy released to the public, Plaintiff Tracy Cole's date of birth which he received from her motor vehicle records.

890. At no time did Plaintiff Cole give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

891. At no time did Plaintiff Cole give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

892. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### ii. Taleavia Cole

109

893. On January 7, 2021 Defendant Roy released to the public, Plaintiff Taleavia Cole's date of birth, address, height, weight, hair color, and eye color, which he received from her motor vehicle records.

894. At no time did Plaintiff Cole give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

895. At no time did Plaintiff Cole give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

896. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### vi. Andrew Aaron

897. On January 7, 2021 Defendant Roy released to the public Plaintiff Andrew Aaron's driver's license number, date of birth, address, height, weight, hair color, and eye color, which he received from her motor vehicle records.

898. At no time did Plaintiff Aaron give any consent for Defendant Roy or anyone who works for the City of Wauwatosa, to retrieve or share Plaintiff's motor vehicle records.

899. At no time did Plaintiff Aaron give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

900. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

110

### vii. Kamila Ahmed

901. On January 7, 2021 Defendant Roy released to public Plaintiff  Kamila Ahmed's driver license number, date of birth, address, height, weight, hair color, and eye color,  which he received from her motor vehicle records.

902. At no time did Plaintiff Ahmed give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

903. At no time did Plaintiff Ahmed give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

904. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available

### viii. Robert Agnew

905. On January 7, 2021 Defendant Roy released to public Plaintiff  Robert Agnew's driver license number, date of birth, address, height, weight, hair color, and eye color,  which he received from his motor vehicle records.

906. At no time did Plaintiff Agnew give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

907. At no time did Plaintiff Ahmed give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

908. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way

111

of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

ix. **Isiah Baldwin**

909. On January 7, 2021 Defendant Roy released to the public Plaintiff Isiah Baldwin's date of birth, address, height, weight, hair color, and eye color, which he received from his motor vehicle records.

910. At no time did Plaintiff Baldwin give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

911. At no time did Plaintiff Baldwin give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

912. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

x. **Jaqueline Bogenberger**

913. On January 7, 2021 Defendant Roy released to the public Plaintiff Jacqueline Bogenberger's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

914. At no time did Plaintiff Bogenberger give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

915. At no time did Plaintiff Bogenberger give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

916. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xii. Raine Cich

917. On January 7, 2021 Defendant Roy released to the public Plaintiff Raine Cich's date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

918. At no time did Plaintiff Cich give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

919. At no time did Plaintiff Cich give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

920. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xii. Khalil Coleman

921. On January 7, 2021 Defendant Roy released to the public Plaintiff Khalil Coleman's driver license number, date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

922. At no time did Plaintiff Coleman give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

923. At no time did Plaintiff Coleman give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

924. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

**xiii.    Steven Conklin**

925. On January 7, 2021 Defendant Roy released to the public Plaintiff  Steven Conklin's date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

926. At no time did Plaintiff Conklin give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

927. At no time did Plaintiff Conklin give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

928. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

**xv.    Anne Delessio-Parson**

929. On January 7, 2021 Defendant Roy released to the public Plaintiff  Anne Delessio-Parson's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

930. At no time did Plaintiff Delessio-Parson give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

931. At no time did Plaintiff Delessio-Parson give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

932. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xvi. Kimberly Dood

933. On January 7, 2021 Defendant Roy released to the public Plaintiff  Kimberly Dood's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

934. At no time did Plaintiff Dood give her any for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

935. At no time did Plaintiff Dood give her any for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

936. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xvi. Rachel Dulay

937. On January 7, 2021 Defendant Roy released to the public Plaintiff Rachel Dulay's driver's license number, license plate number, make/model/year of vehicle, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

938. At no time did Plaintiff Dulay give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

939. At no time did Plaintiff Dulay give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

940. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

**xvi. Erik Fanning**

941. On January 7, 2021 Defendant Roy released to the public Plaintiff Erik Fanning's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

942. At no time did Plaintiff Fanning give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

943. At no time did Plaintiff Fanning give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

944. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way

of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

### xvii.  Jill Ferguson

945.    On January 7, 2021 Defendant Roy released to the public Plaintiff Jill Ferguson's driver's license number, driver's license plate, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

946.    At no time did Plaintiff Ferguson give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

947.    At no time did Plaintiff Ferguson give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

948.    Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xviii.  Breon Foster

949.    On January 7, 2021 Defendant Roy released to the public Plaintiff Breon Foster's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

950.    At no time did Plaintiff Foster give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

951.    At no time did Plaintiff Foster give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

952. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

### xix.    Joanna Geisler

953. On January 7, 2021 Defendant Roy released to the public Plaintiff  Joanna Geisler's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

954. At no time did Plaintiff Geisler give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

955. At no time did Plaintiff Geisler give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

956. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xx.    Joseph Hayes

957. On January 7, 2021 Defendant Roy released to the public Plaintiff  Joseph Hayes' driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

958. At no time did Plaintiff Hayes give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

118

959. At no time did Plaintiff Hayes give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

960. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

**Iixvn. Percy Hayes**

961. On January 7, 2021 Defendant Roy released to the public Plaintiff Percy Hayes' driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

962. At no time did Plaintiff Hayes give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

963. At no time did Plaintiff Hayes give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

964. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

**xxi. Destiney Jones**

965. On January 7, 2021 Defendant Roy released to the public Plaintiff Destiney Jones's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

119

966. At no time did Plaintiff Jones give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

967. At no time did Plaintiff Jones give her any for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

968. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xx.    Mary Kachelski

969. On January 7, 2021 Defendant Roy released to the public Plaintiff  Mary Kachelski's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

970. At no time did Plaintiff Kachelski give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

971. At no time did Plaintiff Kachelski give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

972. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xxi.    Sean Kafer

120

973.    On January 7, 2021 Defendant Roy released to the public Plaintiff  Sean Kafer's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

974.    At no time did Plaintiff Kafer give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

975.    At no time did Plaintiff Kafer give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

976.    Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

    **xxi.    Kathryn Knowlton**

977.    On January 7, 2021 Defendant Roy released to the public Plaintiff  Kathryn Knowlton's date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

978.    At no time did Plaintiff Knowlton give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

979.    At no time did Plaintiff Knowlton give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

980.    Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way

of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xxii. Joey Koepp

981. On January 7, 2021 Defendant Roy released to the public Plaintiff Joey Koepp's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

982. At no time did Plaintiff Koepp give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

983. At no time did Plaintiff Koepp give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

984. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

### xxiii. John Larry

985. On January 7, 2021 Defendant Roy released to the public Plaintiff John Larry's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

986. At no time did Plaintiff Larry give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

987. At no time did Plaintiff Larry give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

988.　Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

### xxiv.　Alex Larson

989.　On January 7, 2021 Defendant Roy released to the public Plaintiff Alex Larson's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

990.　At no time did Plaintiff Larson give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

991.　At no time did Plaintiff Larson give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

992.　Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

### xxv.　Sonora Larson

993.　On January 7, 2021 Defendant Roy released to the public Plaintiff Sonora Larson's driver's license number, date of birth, license plate number, make/model/ and year of her vehicle, address, height, weight, hair color, phone number, and eye color which he received from her motor vehicle records.

994.　At no time did Plaintiff Larson give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

995. At no time did Plaintiff Larson give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

996. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xxvi.   Holly Lavora

997. On January 7, 2021 Defendant Roy released to the public Plaintiff Holly Lavora's driver's license number, date of birth, address, height, weight, hair color, and eye color which he retrieved from her motor vehicle records.

998. At no time did Plaintiff Lavora give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

999. At no time did Plaintiff Lavora give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1000. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xxviii.  Dana McCormick

1001. On January 7, 2021 Defendant Roy released to the public Plaintiff Dana McCormick's date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

124

1002. At no time did Plaintiff McCormick give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1003. At no time did Plaintiff McCormick give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1004. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

**xxviii. Molly Nilssen**

1005. On January 7, 2021 Defendant Roy released to the public Plaintiff Molly Nilssen's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1006. At no time did Plaintiff Nilssen give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1007. At no time did Plaintiff Nilssen give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1008. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

**xxix. Carmen Palmer**

1009. On January 7, 2021 Defendant Roy released to the public Plaintiff Carmen Palmer's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1010. At no time did Plaintiff Carmen Palmer give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1011. At no time did Plaintiff Carmen Palmer give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1012. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

**xxx.    Juvenile Palmer (female)**

1013. On January 7, 2021 Defendant Roy released to the public Plaintiff Juvenile Palmer date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1014. At no time did Plaintiff Juvenile Palmer, nor her parent/guardian give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1015. At no time did Plaintiff Juvenile Palmer, nor her parent/guardian give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1016. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way

126

of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available

### xxxi.   Juvenile Palmer (male)

1017.  On January 7, 2021 Defendant Roy released to the public Plaintiff  Juvenile Palmer male's date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1018.  At no time did Plaintiff Juvenile Palmer male, nor his parent/guardian give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1019.  At no time did Plaintiff Juvenile Palmer make, nor his parent/guardian give  consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1020.  Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

### xxxii.  Leah Porter

1021.  On July 7, 2021 Defendant Roy released to the public Plaintiff  Leah Porter's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1022.  At no time did Plaintiff Porter give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

127

1023. At no time did Plaintiff Porter give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1024. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xxxiv. Hector Rodriguez

1025. On January 7, 2021 Defendant Roy released to the public Plaintiff  Hector Rodriguez's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

1026. At no time did Plaintiff Hector Rodriguez give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1027. At no time did Plaintiff Hector Rodriguez give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

1028. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xxxvi. Oscar Concepcion Rodriguez

1029. On January 7, 2021 Defendant Roy released to the public Plaintiff  Oscar Concepcion Rodriguez's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from his motor vehicle records.

1030. At no time did Plaintiff Rodriguez give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1031. At no time did Plaintiff Rodriguez give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release his personal and highly restrictive information.

1032. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

**xxxv. Rosalind Rogers**

1033. On January 7, 2021 Defendant Roy released to the public Plaintiff  Rosalind Roger's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1034. At no time did Plaintiff Rosalind Rogers give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1035. At no time did Plaintiff Rosalind Rogers give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1036. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

**xxxviii. Mariah Smith**

1037. On January 7, 2021 Defendant Roy released to the public Plaintiff Mariah Smith's date of birth, address, height, weight, hair color, and phone number which he received from her motor vehicle records.

1038. At no time did Plaintiff Mariah Smith give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1039. At no time did Plaintiff Mariah Smith give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1040. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

**xxxix. Peter Sparks**

1041. On January 7, 2021 Defendant Roy released to the public Plaintiff Peter Spark's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1042. At no time did Plaintiff Spark give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1043. At no time did Plaintiff Spark give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1044. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way

130

of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

**xl.   Angel Vega**

1045.   On January 7, 2021 Defendant Roy released to the public Plaintiff  Angel Vega's date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1046.   At no time did Plaintiff Vega give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1047.   At no time did Plaintiff Vega give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1048.   Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

**xli.   Christina Vitolo-Haddad**

1049.   On January 7, 2021 Defendant Roy released to the public Plaintiff  Christina Vitolo-Haddad's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1050.   At no time did Plaintiff Vitolo-Haddad give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1051.   At no time did Plaintiff Vitolo-Haddad give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1052. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xlii. Gabriella Vitucci

1053. On January 7, 2021 Defendant Roy released to the public Plaintiff Gabriella Vitucci's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1054. At no time did Plaintiff Vitucci give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1055. At no time did Plaintiff Vitucci give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1056. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### xliii. Suzanne Wells

1057. On January 7, 2021 Defendant Roy released to the public Plaintiff Suzanne Well's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1058. At no time did Plaintiff Suzanne Wells give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1059.  At no time did Plaintiff Wells give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1060.  Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

**xliv.  Brandon Wilborn**

1061.  On January 7, 2021 Defendant Roy released to the public Plaintiff Brandon Wilborn's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1062.  At no time did Plaintiff Wilborn give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1063.  At no time did Plaintiff Wilborn give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1064.  Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing his personally identifying information by way of a drop box link from his motor vehicle records, and to the date of this writing such information is still publicly available.

**xlvi.  Sonja Worthy**

1065.  On January 7, 2021 Defendant Roy released to the public Plaintiff Sonja Worthy's driver's license number, date of birth, address, height, weight, hair color, and eye color which he received from her motor vehicle records.

1066. At no time did Plaintiff Sonja Worthy give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to retrieve or share Plaintiff's motor vehicle records.

1067. At no time did Plaintiff Sonja Worthy give any consent for Defendant Roy or anyone who works for the City of Wauwatosa to publicly release her personal and highly restrictive information.

1068. Defendant Roy was informed by Plaintiff's Counsel on July 26, 2021 of the continuing violation of the DPPA by publicly releasing her personally identifying information by way of a drop box link from her motor vehicle records, and to the date of this writing such information is still publicly available.

### D.    RELEASE TO THE PUBLIC OF REDACTED "TPR TARGET LIST" ON JULY 2, 2021

1069. On July 2, 2021 Defendant Roy of the WPD released to a redacted version of the Protestor List with Plaintiff's names and some of Plaintiff's pictures.  (Exhibit WPD Redacted TPR Target list)

https://www.fox6now.com/news/wauwatosa-police-protester-arrest-list

1070. On July 27, 2021 Defendant Dominick Ratkowski testified that the photos on the right "came from a confidential source."

1071. On July 27, 2021 Defendant Dominick Ratkowski testified that he told Defendant Roy where the photos on the right came from before Defendant Roy publicly released the document.

1072. On July 27, 2021 Defendant Ratkowski testified he that the photos on the left came from Plaintiff's motor vehicle records with the DOT.

134

1073. On July 27, 2021 Defendant Dominick Ratkowski testified that he told Defendant Roy where the photos on the left came from before Defendant Roy publicly released the document.

## VIII.  THE PEOPLE'S REVOLUTION TARGET LIST "TPR TARGET LIST" CREATED ON OR AROUND JUNE 5, 2020

### A.  BACKGROUND

| From: | Dominick Ratkowski |
|---|---|
| Sent: | Tuesday, October 6, 2020 4:27 PM |
| To: | Christin Berges |
| Subject: | TPR target list |
| Attachments: | Protesters invovled-Working copy.pdf |

Dominick Ratkowski
Crime Analyst
Wauwatosa Police Department
1700 N 116th St
Wauwatosa, WI 53226

Office: 414-607-7085
Cell: 414-688-0079

1074. Defendant Dominick Ratkowski is the Civilian Crime Analyst who is a City of Wauwatosa employee who works at the Wauwatosa Police Department.

1075. Defendant Ratkowski, "is not trained in law enforcement" as he testified to on June 23, 2021.

1075. Defendant Ratkowski does not have any special state or federal security clearance.

1076. On or around June 5, 2020, Defendant Ratkowski created a protestor list, referenced variously by WPD as "The Peoples Revolution List," the "TPR Target List", and "the Protestor List."

135

1077. Defendant Ratkowski was given little to no direction from his supervisors at WPD as to who or why people should be included and identified on the TPR Target List.

1078. Defendant Ratkowski testified on June 23, 2021 that he spent about 10 – 15 hours per week on the TPR Target List for about six months

1079. Defendant Ratkowski testified that his supervisors, Defendants Weber, Vetter, and Wrucke were aware of the list and encouraged his continued work, maintenance and updating of same.

1080. Defendant Ratkowski testified that he never asked his supervisors about who they think he should put on the TPR Target List because "it wasn't his place to ask."

1081. Defendant Ratkowski shared the "TPR Target List", even though this was unsolicited, such as to other cities including Burlington and Racine.

From:        Dominick Ratkowski
Sent:        Tuesday, November 10, 2020 7:28 AM
To:          rseils@burlington-wi.gov; Jborchardt@burlington-wi.gov
Subject:     Burlington School Board Meeting Protest
Attachments: Protesters invovled-Working copy.pdf

Good Morning,
I saw that Burlington had a disruptive protest at the school board meeting last night. I attached a list of known Peoples Revolution members. This group has been targeting the Milwaukee/Wauwatosa Area for 150+ days. As I watched part of the meeting, I recognized a good portion of the people, causing the disruption, as The Peoples Revolution (TPR) members. If there is any need for identifications, I would be more than willing to assist with that. I have been following them from the start, and know them well.

Dominick Ratkowski
Crime Analyst
Wauwatosa Police Department
1700 N 116th St
Wauwatosa, WI 53226

Office: 414-607-7085
Cell: 414-688-0079
E-mail: dratkowski@wauwatosa.net

1082. Defendant Ratkowski, testified on June 23, 2021 that, he was never tasked to create the protestor list.

1083. Defendant Ratkowski, testified on June 23, 2021 that he decided to create a list of "known protestors on his own."

1084. The "TPR Target List" is was created by Defendant Ratkowski and as he testified, is based upon who he perceived to be affiliating with the ideas, and/or assembling at an event described by of the People's Revolution, an unincorporated entity.

1085. Defendant Ratkowski testified on June 23, 2021 that he only created one protestor list and that there were not any other protesting affiliated with other groups (like Whites for Wauwatosa") because "typically pro-Trump/right wing extremist don't go on social media."

1086. Furthermore, from June 5, 2020 through June 23, 2021, Defendant Ratkowski released highly restricted and restricted personal information of Plaintiffs to third parties.

1087. Such release included to parties outside of law enforcement permissible exceptions for the release of such information.

1088. Defendant Ratkowski then encouraged other agencies to share the list with "anyone who would find it useful."

From:          Dominick Ratkowski
Sent:          Thursday, September 24, 2020 8:48 AM
To:            Conte, Brian
Subject:       The People's Revolution
Attachments:   Protesters invovled-Working copy.pdf

Morning Brian,
I attached a list of The People's Revolution members that I have been working on. It identifies a
large chunk of the people who were on I-94 last night. Let me know if you guys need help IDing
people. Feel free to pass this along to who you think would find it useful.

_____

Dominick Ratkowski
Crime Analyst
Wauwatosa Police Department
1700 N 116th St
Wauwatosa, WI 53226

Office: 414-607-7085
Cell: 414-688-0079
E-mail: dratkowski@wauwatosa.net

1089. Defendant Ratkowski testified on June 23, 2021 that his criteria for putting people on this list was through assembling and/or association at an event, and/or affiliation with a protest or idea expressed on social media.

1090. Defendant Ratkowski testified on June 23, 2021 that a person being put on the list did not require them to have been violent and/or suspected of criminal activity.

1091. Defendant Ratkowski testified that the length of the protests is what prompted him from compiling the TPR Target list.

1092. Defendant Ratkowski testified that he put vehicles and their associated information on the TPR Target List based on officers' requests and/or advising Ratkowski of license plate information from cars that were in the vicinity of a protest event.

1093. Defendant Ratkowski testified that he never verified if the vehicles were involved in protests and/or criminal activity.

1094. Defendant Ratkowski testified on June 23, 2021 he did not recall being directed to create the list, but that his supervisors were very pleased and appreciative and the list was made available to the WPD in general via the shared computer server.

1095. Defendant Ratkowski testified on June 23, 2021 that he "believed that (this list) is available to the entire police department."

1096. Defendant Ratkowski testified on June 23, 2021 that he thinks it's appropriate for the government to keep lists of people who attend protests.

1097. Defendant Ratkowski testified on June 23, 2021 that he does not think keeping a list on persons at protests is an infringement on people's rights (85).

1098. Defendant Ratkowski testified on June 23, 2021 that at the time he was creating the list that he did not know who the People's Revolution was.

1099. On July 14, 2020 Defendant Ratkowski sent an email to the Deputy Chief of West Allis Police Department with the subject line of "Protest at McCarty Park by the People's Movement Khalil Coleman".



From: Dominick Ratkowski
Sent: Tuesday, July 14, 2020 8:24 AM
To: Chris Marks –Deputy Chief List All>
Subject: Protest at McCarty Park by the Peoples Movement Khalil Coleman
Attachments: Protesters invoved-Working copy.pdf

Confidential Source

I have also attached a document of 30+ people I have identified as being people who are
consistently protesting. And I am working on more. This group ranges from 40-60 people.

Dominick Ratkowski
Crime Analyst
Wauwatosa Police Department
1700 N 116th St
Wauwatosa, WI 53226

Office: 414-607-7085
Cell: 414-688-0079
E-mail: dratkowski@wauwatosa.net

1100. McCarty Park is not within Wauwatosa nor within the jurisdiction of Wauwatosa Police Department.

1101. Defendant Ratkowski testified on June 23, 2021 that if he were asked by his supervisors to create a list of, "every member of the Socialist Party," that he "probably would do it."

1102. Defendant Ratkowski testified on June 23, 2021 that the list was disseminated to the FBI and the Milwaukee Police Department.

1103. Defendant Ratkowski testified on June 23, 2021 that he retrieved people's name and phone numbers through ZETX, "a law enforcement tool that confirm subscriber's information."

140

1104. Defendant Ratkowski testified on July 26, 2021, that he was able to get most of the information through people's motor vehicle records through the Department of Transportation.

1105.  Defendant Ratkowski testified on July 26, 2021, that to get information from the Department of Transportation (DOT) that he is required to attend a training and pass an exam.

1106. Defendant Ratkowski testified on July 26, 2021, that once he passes the exam with the DOT he is assigned a specific user name and password which allows him access to people's motor vehicle records.

1107. Defendant Ratkowski testified on July 26, 2021 that utilized the DOT and other law enforcement restricted sources to  retrieve personal information as defined per 18 U.S. Code § 2725 (3) which includes but is not limited to home addresses, phone numbers, and date of birth, for persons he perceived to be  affiliated with TPR, their ideas, events, and/or social media.

1108. Defendant Ratkowski testified on July 26, 2021 that utilized the DOT and other law enforcement restricted sources to retrieve personal information as defined per 18 U.S. Code § 2725 (4) which includes  driver's license photographs from the internal DOT system.

1109. Defendant Ratkowski testified on July 27, 2021 that he accessed Plaintiff's motor vehicle records through the DOT site and that in order to get their driver's license pictures into his document he cut the pictures off of the DOT site and pasted it to the desktop of his computer.

141

1110. Defendant Ratkowski testified on July 26, 2021 that he did not have any consent of any Plaintiff herein, nor any consent or contact with/from any individual listed on the TPR Target List to retrieve or share their personal information.

1111. Defendant Ratkowski testified on July 26, 2021 that he did not have any consent of any Plaintiff herein, no any consent or contact with/from any individual listed on the TPR Target List to retrieve or share their highly restricted personal information.

1112. Defendant Ratkowski did not identify any lawful/legal purpose to retrieve any citizen's personal information from the DOT.

1113. By unlawfully obtaining Plaintiffs' personal and highly restrictive personal information, Defendant Ratkowski knowingly violated the DPPA.

1114. Defendant Ratkowski's obtaining personal and highly restrictive personal information was willful and reckless.

1115. Defendant Ratkowski testified on July 27, 2021 that in fact he personally gave the TPR Target List to nine (9) additional agencies that he did not recall during his June 23, 2021 deposition, including the FBI and the Milwaukee County District Attorney's Office.

**E.    PLAINTIFFS' ALLEGATIONS AS TO THE TPR TARGET LIST**

  i. Tracy Cole



1116. Defendant Ratkowski put Tracy Cole on the TPR Target List on or around June 5, 2020.

1117. Defendant Ratkowski put Plaintiff Cole on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

142

1118. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1119. Defendant Ratkowski obtained Plaintiff's address, phone number, and date of birth from her motor vehicle record through the internal Department of Transportation system.

1120. Defendant Ratkowski did not have any consent to retrieve and share Plaintiff's information.

1121. Defendant Ratkowski did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1122. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1123. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared her information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

    ii.    Taleavia Cole

Cole Family+



Taleavia L Cole (BF 3/█/1998):———————————————————

TLO: 414-█████████ and 414-████████

KGIS as of 4/2/18: 414-████████

TLO Address: █████ N Buffum St

DOT address as of 12/4/2019: █████ N 24th P

https://www.facebook.com/taleavia.cole.3



1124. Defendant Ratkowski put Taleavia Cole on the TPR Target List on or around June 5, 2020.

1125. Defendant Ratkowski put Plaintiff Cole on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1126. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1127. Defendant Ratkowski obtained Plaintiffs address, phone number, and date of birth from her motor vehicle record through the internal Department of Transportation system.

1128. Defendant Ratkowski did not have the express consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1129. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1130. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared her information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department,

144

Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

      iii.    Tahudah Cole

 Tahudah L Cole (FB 9/█/1994) — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — 
DOT as of 2/28/2019: ██ W Burleigh St ██
https://www.facebook.com/imsexy.cole

1131.    Defendant Ratkowski put Tahudah Cole on the TPR Target List on or around June 5, 2020.

1132.    Defendant Ratkowski put Plaintiff Cole on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1133.    Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1134.    Defendant Ratkowski obtained Plaintiff's address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1135.    Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1136.    From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1137.    To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared her information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington

145

Police Department, the City of Brookfield Police Department, the City of West Allis

Police Department, Oak Creek Police Department, Greenfield Police Department,

Marquette University Police Department, Milwaukee County District Attorney's

Office, and Racine County.

    iv.    Tristiana Walls



Tristiana E Walls (FB 1/█/1992)——————————————————————

DOT as of 3/26/2019: ███ N 24 Pl

https://www.facebook.com/shayla.wells.3?
fref=profile_friend_list&hc_location=profile_browser



1138.   Defendant Ratkowski put Tristiana Walls on the TPR Target List on or around June 5,
2020.

1139.   Defendant Ratkowski put Plaintiff Walls on the list because he perceived her to be
associated with the People's Revolution an unincorporated entity.

1140.   Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle
record through the internal Department of Transportation system.

1141.   Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle
record through the internal Department of Transportation system.

1142.   Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain
Plaintiff's personal information from her motor vehicle record.

1143.   From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information
from her motor vehicle record "hundreds of times" without her knowledge or consent.

1144.   To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.;
7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20;
8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm;

10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared her information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

     v.    Andrew Aaron



Andrew J Aaron (Mw 10/██/1984) "██████████"————————
Common Council Meeting Address: ██████ E Belleview pl #3a
Social media: Jo Van Deraffe
https://www.facebook.com/profile.php?id=100013651656401

1145. Defendant Ratkowski put Andrew Aaron on the TPR Target List on or around June 5, 2020.

1146. Defendant Ratkowski put Plaintiff Aaron on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1147. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1148. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1149. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1150. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from his motor vehicle record "hundreds of times" without his knowledge or consent.

1151. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.;

147

7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

vi.     Kamila Ahmed



Kamila S Ahamed (BF 4/██/1992)—————————————
As of 2/25/2018: ████ N 20th St
https://www.facebook.com/kamila.ahmed.9655
https://www.facebook.com/kami.simmone.3

1152.   Defendant Ratkowski put Kamila Ahamed on the TPR Target List on or around June 5, 2020.

1153.   Defendant Ratkowski put Plaintiff Ahamed on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1154.   Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1155.   Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

148

1156. Defendant Ratkowski did not have yany consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1157. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1158. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared her information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

   vii.   Robert Agnew



1159. Defendant Ratkowski put Robert Agnew on the TPR Target List on or around June 5, 2020.

1160. Defendant Ratkowski put Plaintiff Agnew on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1161. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

149

1162. Defendant Ratkowski obtained Plaintiffs address, date of birth, motor vehicle information, from his motor vehicle record through the internal Department of Transportation system.

1163. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1164. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from his motor vehicle record "hundreds of times" without his knowledge or consent.

1165. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

   viii.   Isiah Baldwin



Isaiah J Baldwin (4/██/2002) "███" AKA:███ ————————————————
MPD: ███ N 27th St—██ 9/5/2020 ███ | GF: ███
https://www.facebook.com/ybk.zay.3

1166. Defendant Ratkowski put Isaiah J Baldwin on the TPR Target List on or around June 5, 2020.

1167. Defendant Ratkowski put Plaintiff Baldwin on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1168. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1169. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1170. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1171. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1172. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

      ix.    Jaqueline Bogenberger


Jacqueline L Bogenberger (5/█/1991)—————————————————-

DOT as of 11/30/2015: ██ N Elkhart Ave

https://www.facebook.com/jaxximal/



1173. Defendant Ratkowski put Jacqueline L. Bogenberger on the TPR Target List on or around June 5, 2020.

1174. Defendant Ratkowski put Plaintiff Bogenberger on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1175. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1176. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1177. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1178. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1179. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department,

152

Marquette University Police Department, Milwaukee County District Attorney's

Office, and Racine County.

x. Lavita Booker

 LaVita Booker (BF 9/█/1961) "████████████" Mother of ████████s—

DOT as of 9/6/2016: ████ N 38th St

https://www.facebook.com/BlackQueen360

https://www.facebook.com/lavita.booker.9/photos

1180. Defendant Ratkowski put LaVita Booker on the TPR Target List on or around June 5, 2020.

1181. Defendant Ratkowski put Plaintiff Booker on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1182. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1183. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1184. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1185. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1186. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County

153

Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

      xi.    Rebecca Burrell



**Rebecca L Wigley (███████) (FB 2/██/1986)——————————————————-**

DOT as of 12/18/2016: ███ W Medford Ave

TLO: ███ W Courtland Ave (most likely)

https://www.facebook.com/Crowning.Legacy.Becca

1187. Defendant Ratkowski put Rebecca L. Wigley on the TPR Target List on or around June 5, 2020.

1188. Defendant Ratkowski put Plaintiff Wigley on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1189. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1190. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1191. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1192. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

154

1193. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared her information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

     xii.    Raine Cich



Raine A Cich   (FW 05/██/01)————————————————

DOT: ██ Lorraine Pl Milw

https://www.facebook.com/raine.mendoza.967

1194. Defendant Ratkowski put Raine Cich on the TPR Target List on or around June 5, 2020.

1195. Defendant Ratkowski put Plaintiff Cich on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1196. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1197. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

155

1198.   Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1199.   From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1200.   To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

  xiii.   Khalil Coleman

https://www.facebook.com/profile.php?id=100024409792996

**The people's Movement: Group is** █████████████ ████████████████████

**Khalil Coleman (BM 7/█/1986)** Likely a ██—————————————————————

TLO: 414█████████ (ZETX confirmed)

TLO address: █████ N 49th St

DOT address as of 8/20/2012: █████ W Congress St.

MCSO: 414-███████



1201.   Defendant Ratkowski put Khalil Coleman on the TPR Target List on or around June 5, 2020.

1202.   Defendant Ratkowski put Plaintiff Coleman on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

156

1203. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1204. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1205. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1206. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1207. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xiv. Steven Conklin



Steven A Conklin (MW 10/█/1957)————————————————-

DOT: █ Grey Fox Run Watertown

https://www.facebook.com/steve.conklin.520

157

1208. Defendant Ratkowski put Steven Conklin on the TPR Target List on or around June 5, 2020.

1209. Defendant Ratkowski put Plaintiff Conklin on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1210. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1211. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1212. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1213. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1214. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

        xv.    Lauryn Cross

 Lauryn P Cross (6/█/2000)——————————————————————————————
TLO address: █████ W Grantosa Dr (DOT as of 12/18/2018) and ████ N Maryland Ave
TLO Phone: 414-███-████ 
https://www.facebook.com/lauryn.paige.cross

1215. Defendant Ratkowski put Lauryn Cross on the TPR Target List on or around June 5, 2020.

1216. Defendant Ratkowski put Plaintiff Cross on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1217. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1218. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1219. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1220. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1221. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's

Office, and Racine County.

xvi.     Erik Fanning



Eric C Fanning (MW 9/█/1970)————————————————

Arrest 10/7/2020: █████ W Burleigh St.

https://www.facebook.com/profile.php?id=100015261732737

1222.  Defendant Ratkowski put Erik Fanning on the TPR Target List on or around June 5, 2020.

1223.  Defendant Ratkowski put Plaintiff Fanning on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1224.  Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1225.  Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1226.  Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1227.  From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1228.  To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington

160

Police Department, the City of Brookfield Police Department, the City of West Allis

Police Department, Oak Creek Police Department, Greenfield Police Department,

Marquette University Police Department, Milwaukee County District Attorney's

Office, and Racine County.

xvii.    Breon Foster

 Breon Foster (2/█/2000) "█"————————————————————————

TLO: █ N 40th st

https://www.facebook.com/breon.foster.9/timeline?lst=100026607331541%
3A10004121546245%3A1597166823

1229.    Defendant Ratkowski put Plaintiff Breon Foster on the TPR Target List on or around June

5, 2020.

1230.    Defendant Ratkowski put Plaintiff Foster on the list because he perceived him to be

associated with the People's Revolution an unincorporated entity.

1231.    Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle

record through the internal Department of Transportation system.

1232.    Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle

record through the internal Department of Transportation system.

1233.    Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain

Plaintiff's personal information from his motor vehicle record.

1234.    From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information

from her motor vehicle record "hundreds of times" without his knowledge or consent.

1235.    To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.;

7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20;

8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm;

161

10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xviii. Christine Groppi



Christine A Groppi (9/██/1980)————————————————————————
DOT as of 311/2014: ██ E Montana St
https://www.facebook.com/christine.groppi



1236. Defendant Ratkowski put Plaintiff Groppi on the TPR Target List on or around June 5, 2020.

1237. Defendant Ratkowski put Plaintiff Groppi on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1238. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1239. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1240. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1241. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

162

1242. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.;

7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20;

8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm;

10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-

three times with the FBI, Milwaukee Police Department, the Milwaukee County

Sheriff's Department, City of Racine Police Department, the City of Burlington

Police Department, the City of Brookfield Police Department, the City of West Allis

Police Department, Oak Creek Police Department, Greenfield Police Department,

Marquette University Police Department, Milwaukee County District Attorney's

Office, and Racine County.

    xix.   Gaige Grosskreutz



Gaige P Grosskruetz (WM 11/█/1993) █████████████

DOT as of 8/7/2018: ███ 7th st, Ashland WI

TLO: ███ S 78th St, West Allis

https://www.facebook.com/gaige.grosskreutz.52

1243. Defendant Ratkowski put Plaintiff Gaige Grosskreutz on the TPR Target List on or around

June 5, 2020.

1244. Defendant Ratkowski put Plaintiff Grosskreutz on the list because he perceived him to be

associated with the People's Revolution an unincorporated entity.

1245. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle

record through the internal Department of Transportation system.

1246. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle

record through the internal Department of Transportation system.

163

1247. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1248. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1249. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xx.    Joseph Hayes



Joseph S Hayes (MB 9/██/1996) "████████"—————————————
As of 07/10/20: staying at ██████████ on ██████ Plwy
TLO: ███ N 13th St   https://www.facebook.com/josh.haues.39?refid=52
https://www.facebook.com/profile.php?id=100035599390952

1250. Defendant Ratkowski put Plaintiff Joseph Hayes on the TPR Target List on or around June 5, 2020.

1251. Defendant Ratkowski put Plaintiff Hayes on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

164

1252. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1253. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1254. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1255. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1256. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

      xxi.    Percy Hayes



Percy L Hayes JR (BM 1/██/1986) "█████████"
Initial Hearing 10/15/2020: ███ W Highland blvd, ███ 414-█████ (from video) (20-01███ in ███████████ vehicle)
TLO: ███n 21st St **Girlfriend** ██████████: https://www.facebook.com/katelyn.harvey.50
https://www.facebook.com/godking.hayes

165

1257. Defendant Ratkowski put Plaintiff Percy Hayes on the TPR Target List on or around June 5, 2020.

1258. Defendant Ratkowski put Plaintiff Hayes on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1259. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1260. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1261. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1262. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1263. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxii.    Mary Kachelski

166



Mary P "█████" kachelski (9/██1972) Tosa Moms Tackling Racism █
Daughter —> DOT as of 11/18/2015:█████N 72nd St

https://www.facebook.com/marajarzynski.kachelski

1264. Defendant Ratkowski put Plaintiff Kachelski on the TPR Target List on or around June 5, 2020.

1265. Defendant Ratkowski put Plaintiff Kachelski on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1266. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1267. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1268. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1269. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1270. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis

Police Department, Oak Creek Police Department, Greenfield Police Department,

Marquette University Police Department, Milwaukee County District Attorney's

Office, and Racine County.

xxiii. Sean Kafer

 Sean M Kafer (WM 10/██/1979)——————————————

DOT as of 3/23/2013: ██ N 2nd St

https://www.facebook.com/seankafer



1271. Defendant Ratkowski put Plaintiff Sean Kafer on the TPR Target List on or around June 5, 2020.

1272. Defendant Ratkowski put Plaintiff Kafer on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1273. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1274. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1275. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1276. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1277. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm;

168

10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m.shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxiv.   Joey Koepp



Joey R Koepp (MW 1/█/1993)——————————————————————
DOT as of 6/23/2020: █ S 47 St
https://www.facebook.com/joey.koepp



1278.  Defendant Ratkowski put Plaintiff Joey Koepp on the TPR Target List on or around June 5, 2020.

1279.  Defendant Ratkowski put Plaintiff Koepp on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1280.  Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1281.  Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1282.  Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1283.  From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

169

1284. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.;

7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20;

8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm;

10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-

three times with the FBI, Milwaukee Police Department, the Milwaukee County

Sheriff's Department, City of Racine Police Department, the City of Burlington

Police Department, the City of Brookfield Police Department, the City of West Allis

Police Department, Oak Creek Police Department, Greenfield Police Department,

Marquette University Police Department, Milwaukee County District Attorney's

Office, and Racine County.

xxv. John Larry




John L Larry (MB 9/█/1980)—————————————————
DOT as of 8/1/2016: █████N 110th St——Drives 2011 white ██████
(█████) "█████████" written on the sides
On New Tosa Ad Hoc Committee
https://www.facebook.com/john.larry

1285 Defendant Ratkowski put Plaintiff John Larry on the TPR Target List on or around June 5,

2020.

1286. Defendant Ratkowski put Plaintiff Larry on the list because he perceived him to be

associated with the People's Revolution an unincorporated entity.

1287. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle

record through the internal Department of Transportation system.

1288. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle

record through the internal Department of Transportation system.

170

1289. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1290. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1291. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxvi.  Alex Larson

 Alex A Larson (WM 3/█/1992)————————————————————··
DOT As of 7/24/2018: ███ N Franklin Pl, ███
https://www.facebook.com/aalarson3  

1291. Defendant Ratkowski put Plaintiff Alex Larson on the TPR Target List on or around June 5, 2020.

1292. Defendant Ratkowski put Plaintiff Larson on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1293. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

171

1294. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1295. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1296. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1297. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxvii. Sonora Larson


Sonora A Larson (11/██/1993)————————————————————————
DOT as of 5/23/2020: ██ N Fratney St
https://www.facebook.com/SonoraLarson


1298. Defendant Ratkowski put Plaintiff Larson on the TPR Target List on or around June 5, 2020.

172

1299. Defendant Ratkowski put Plaintiff Larson on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1300. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1301. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1302. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1303. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1304. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxviii.        Vaun Mayes

173



Vaun L Mayes (BM 3/█/1987)———————————————————————
DOT as of 12/19/2018: ███ N 41st St  [YouTube](YouTube)
[https://www.facebook.com/YungLz](https://www.facebook.com/YungLz)          [https://www.instagram.com/yunglz/](https://www.instagram.com/yunglz/)
[https://www.facebook.com/CommunityTaskForceMKE](https://www.facebook.com/CommunityTaskForceMKE)
[https://www.facebook.com/Justice-Tour-2020-Protest-Parties-MKE-107269697695666](https://www.facebook.com/Justice-Tour-2020-Protest-Parties-MKE-107269697695666)






1305. Defendant Ratkowski put Plaintiff Vaun Mayes on the TPR Target List on or around June 5, 2020.

1306. Defendant Ratkowski put Plaintiff Mayes on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1307. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1308. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1309. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1310. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1311. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department,

174

Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxix. Molly Nilssen

 Molly J Nilssen (WF 12/██/1985)——————————————————

DOT as of 3/20/2016: ██ N52nd St

https://www.facebook.com/molly.nilssen

1312. Defendant Ratkowski put Plaintiff Nilssen on the TPR Target List on or around June 5, 2020.

1313. Defendant Ratkowski put Plaintiff Nilssen on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1314. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1315. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1316. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1317. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1318. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-

three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxx.    Carmen Palmer



Carmen N Palmer (FB 3/█/1980)——————————————

Arrest 10/8/2020: █████W Bobolink Ave

https://www.facebook.com/profile.php?id=100001976603104

1319.   Defendant Ratkowski put Plaintiff Palmer on the TPR Target List on or around June 5, 2020.

1320.   Defendant Ratkowski put Plaintiff Palmer on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1321.   Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1322.   Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1323.   Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1324.   From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

176

1325. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.;

7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20;

8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm;

10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared her information at least twenty-

three times with the FBI, Milwaukee Police Department, the Milwaukee County

Sheriff's Department, City of Racine Police Department, the City of Burlington

Police Department, the City of Brookfield Police Department, the City of West Allis

Police Department, Oak Creek Police Department, Greenfield Police Department,

Marquette University Police Department, Milwaukee County District Attorney's

Office, and Racine County.

xxxi. Juvenile (female) Palmer

1326. Defendant Ratkowski put Plaintiff Juvenile Female Palmer on the TPR Target List on or

around June 5, 2020.

1327. Defendant Ratkowski put Plaintiff Juvenile Female Palmer on the list because he perceived

her to be associated with the People's Revolution an unincorporated entity.

1328. Defendant Ratkowski obtained Plaintiff's motor vehicle record through the internal

Department of Transportation system.

1329. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle

record through the internal Department of Transportation system.

1330. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain

Plaintiff's personal information from her motor vehicle record.

1331. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information

from her motor vehicle record "hundreds of times" without her knowledge or consent.

1332. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.;

177

7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxxii.   Juvenile Male Palmer

1333. Defendant Ratkowski put Plaintiff Juvenile Male Palmer on the TPR Target List on or around June 5, 2020.

1334. Defendant Ratkowski put Plaintiff Male Palmer on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1335. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1336. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1337. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1338. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm;

10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxxiii. Oscar Concepcion Rodriguez



Oscar Concepcion Rodriguez  (MH 11/█/1984)————————————-

DOT as of 4/3/2020: ████ E Cleveland Ave

https://www.facebook.com/oscar.concepcion.18

1339. Defendant Ratkowski put Plaintiff Oscar Rodriguez on the TPR Target List on or around June 5, 2020.

1340. Defendant Ratkowski put Plaintiff Rodriguez on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1341. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1342. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1343. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

179

1344. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1345. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxxiv. Rosalind Rogers



1346. Defendant Ratkowski put Plaintiff Rogers on the TPR Target List on or around June 5, 2020.

1347. Defendant Ratkowski put Plaintiff Rogers on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1348. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1349. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

180

1350.  Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1351.  From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1352.  To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxxv.  Madeline Schweitzer

 Madeleine Schweitzer (FW 4/█/1991)-Photographer——————————————
DOT as of 10/15/2014 ███ N 2nd St
https://www.facebook.com/madeleine.schweitzer.3 

1353.  Defendant Ratkowski put Plaintiff  Schweitzer on the TPR Target List on or around June 5, 2020.

1354.  Defendant Ratkowski put Plaintiff Schweitzer on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

181

1355. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1356. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1357. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1358. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1359. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxxvi. Mariah Smith

 **Mariah R Smith (BF 1/█/1992) "**█████████**"**————————————
DOT as of 12/29/2015: █████ N 26th St
https://www.facebook.com/mariah.smith.5477
https://www.facebook.com/ryee.smith.1
**Andre Triplet (BM 2/█/1994)-**———————————————— 

1360. Defendant Ratkowski put Plaintiff Mariah Smith on the TPR Target List on or around June 5, 2020.

1361. Defendant Ratkowski put Plaintiff Smith on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1362. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1363. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1364. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1365. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1366. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxxvii.  Peter Sparks



Peter A Sparks (MW 4/■/1969)

Arrest 10/11/2020: ■■■ N 62nd St

1367. Defendant Ratkowski put Plaintiff Peter Sparks on the TPR Target List on or around June 5, 2020.

1368. Defendant Ratkowski put Plaintiff Sparks on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1369. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1370. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1371. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1372. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1373. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington

184

Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xxxviii.    Tiffany Stark



Tiffany A Stark (FW  11█/1978)————————————————

DOT as of  9/282015:  █████W Burnham St, West Allis

https://www.facebook.com/tiffany.stark2

1374.   Defendant Ratkowski put Plaintiff Stark on the TPR Target List on or around June 5, 2020.

1375.   Defendant Ratkowski put Plaintiff Stark on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1376.   Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1377.   Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1378.   Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1379.   From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or  consent.

1380.   To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm;

185

10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared her information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

il.    Angel Vega



Angel Vega-Angiano (MH 12/██/1990)————————

Arrest 10/9/2020: ████N 1st St

https://www.facebook.com/angel.vega.315080/

1381. Defendant Ratkowski put Plaintiff Angel Vega-Angiano on the TPR Target List on or around June 5, 2020.

1382. Defendant Ratkowski put Plaintiff Vega-Angiano on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1383. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1384. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1385. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

186

1386. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1387. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xl.    Gabriella Vitucci



Gabriella M Vitucci (WF 08/▉▉/2000)—————————————

DOT as of 8/3/2019: ▉▉ E Smith St

https://www.facebook.com/gabriella.vitucci.52?hc_location=ufi

1388. Defendant Ratkowski put Plaintiff Vitucci on the TPR Target List on or around June 5, 2020.

1389. Defendant Ratkowski put Plaintiff Vitucci on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1390. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

187

1391. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1392. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1393. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1394. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

   xli.   Oscar Walton



Oscar J Walton "█████" (BM 6/██/1992)—————————————————————
DOT as of 10/24/2019: █ N 48th St.
https://www.facebook.com/OfficialSpaidez

1395. Defendant Ratkowski put Plaintiff Oscar Walton on the TPR Target List on or around June 5, 2020.

1396. Defendant Ratkowski put Plaintiff Walton on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1397. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1398. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1399. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1400. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1401. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xlii.    Brandon Wilborn



189

1402. Defendant Ratkowski put Plaintiff Brandon Wilborn on the TPR Target List on or around June 5, 2020.

1403. Defendant Ratkowski put Plaintiff Wilborn on the list because he perceived him to be associated with the People's Revolution an unincorporated entity.

1404. Defendant Ratkowski obtained Plaintiff's driver's license photo from his motor vehicle record through the internal Department of Transportation system.

1405. Defendant Ratkowski obtained Plaintiffs address and date of birth from his motor vehicle record through the internal Department of Transportation system.

1406. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from his motor vehicle record.

1407. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without his knowledge or consent.

1408. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department, Marquette University Police Department, Milwaukee County District Attorney's Office, and Racine County.

xliii.   Katelyn Wojnar

190



Katelyn A Wojnar (WF 12/██/1997)——————————————————————-

DOT as of 8/7/2020: ██ 2nd St N██# Stevens Point (From Waukesha ██ S University Dr)

https://www.facebook.com/profile.php?id=100009568005871

1409. Defendant Ratkowski put Plaintiff Wojnar on the TPR Target List on or around June 5, 2020.

1410. Defendant Ratkowski put Plaintiff Wojnar on the list because he perceived her to be associated with the People's Revolution an unincorporated entity.

1411. Defendant Ratkowski obtained Plaintiff's driver's license photo from her motor vehicle record through the internal Department of Transportation system.

1412. Defendant Ratkowski obtained Plaintiffs address and date of birth from her motor vehicle record through the internal Department of Transportation system.

1413. Defendant Ratkowski did not have any consent and did not have a lawful purpose to obtain Plaintiff's personal information from her motor vehicle record.

1414. From June 5, 2020 to present Defendant Ratkowski shared Plaintiff's personal information from her motor vehicle record "hundreds of times" without her knowledge or consent.

1415. To date, Plaintiff is aware that Defendant Ratkowski on 7/13/20; 7/14/20 8:24a.m.; 7/14/20 2:58p.m.; 7/23/20; 7/27/20; 7/27/20; 8/9/20; 8/10/20; 8/11/20; 8/20/20; 8/24/20; 8/28/20; 9/1/20; 9/4/20; 9/15/20; 9/24/20; 9/28/20; 10/1/20; 10/6/20 11:51; 10/6/20 4:27pm; 10/27/20; 11/10/20 7:28a.m; 11/10/20 8:20a.m. shared his information at least twenty-three times with the FBI, Milwaukee Police Department, the Milwaukee County Sheriff's Department, City of Racine Police Department, the City of Burlington Police Department, the City of Brookfield Police Department, the City of West Allis Police Department, Oak Creek Police Department, Greenfield Police Department,

191

Marquette University Police Department, Milwaukee County District Attorney's
Office, and Racine County.

1416. The fabricated arrest records and municipal tickets released to the public also contained personal and highly restricted personal information as defined by 18 U.S.C. § 2721(3) and (4).

1417. Plaintiff's attorneys informed Defendant Roy and his counsel on July 26, 2021 that the drop box link created by him on January 7, 2021 that contained numerous Plaintiff's personal information is still publicly available, over 220 days later.

1418. As to the filing of this document the drop box link remains open and available to the public.

1419. At no time did Plaintiffs give any consent for their motor vehicle records to be released in any manner to the public.

----------------------------------------

## LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
**Violation of Plaintiffs' Fourth Amendment Rights to be Free from Unlawful Seizure**

**As to Plaintiffs:** Tracy Cole, Taleavia Cole, Tahudah Cole, Tristiana Walls, Kathryn Knowlton, Dana Mccormick, Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Raine Cich, Rachel Dulay, Anne Delessio-Parson, Erik Fanning, , Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Destiney Jones, Sonora Larson, Holly Lavora, Lazarito Matheu, Molly Nilssen, Carmen Palmer, (Juvenile) Palmer, (Juvenile) Palmer, Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Jose Hernandez Ramirez, Oscar Concepcion Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci,  Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, Sonja Worthy, and Members Of The People's Revolution An Unincorporated entity hereinafter referred to as (TPR), on behalf of themselves and all others similarly situated,
**Against All Defendants:**

1410. All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

1411. At all relevant times herein, the above-named Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of law to deprive Plaintiffs of their constitutional rights.

1412. By the actions set forth above, Defendants and their agents, including WPD officers, have engaged and continue to engage in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

1413. Law enforcement's arrest and detention of Plaintiffs were unjustified and unreasonable seizures of their persons.

1414. Defendants' actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury, including but not limited to bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of personal freedom, fear of retaliation, and legal expenses.

1415. Defendants Weber and McBride knew that the Wauwatosa Police Department were acting under an unlawful order and that the police did not have probable cause to arrest Plaintiffs. Defendants Weber and McBride in fact took actions with the expectation and intent that persons in Plaintiffs' situations would be arrested without probable cause.

1416. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' constitutional rights.

1417. That the Defendants' conduct constituted an unlawful and false arrest or unreasonable seizure and violation of Plaintiffs' Fourth Amendment Rights as incorporated by the Fourteenth Amendment and/or Plaintiffs' equal protection rights guaranteed by that same Amendment.

1418. While acting under color of law, Defendants deprived Plaintiffs of their Fourth Amendment rights for which Plaintiffs are entitled to damages proximately

caused thereby.

1419.  Unless restrained by this Court, Defendants will continue to engage in the

unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or

illegal conduct, causing irreparable harm to the people of Wauwatosa.

## SECOND CLAIM FOR RELIEF

### Violation of Plaintiffs' Fourth Amendment Right to be Free from Excessive Force

**As to Plaintiffs** Tracy Cole, Taleavia Cole, Tahudah Cole, Tristiana Walls, Kathryn Knowlton, Dana Mccormick, Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Raine Cich, Rachel Dulay, Anne Delessio-Parson, Erik Fanning, , Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Destiney Jones, Sonora Larson, Holly Lavora, Lazarito Matheu, Molly Nilssen, Carmen Palmer, (Juvenile) Palmer, (Juvenile) Palmer, Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Jose Hernandez Ramirez, Oscar Concepcion Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci,  Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, Sonja Worthy, and Members Of The People's Revolution An Unincorporated entity hereinafter referred to as (TPR), on behalf of themselves and all others similarly situated,
**Against All Defendants:**

1420.  All paragraphs of this Complaint are realleged and incorporated as though fully

set forth.

1421.  At all relevant times herein, the above-named Defendants were "persons" for

purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Plaintiffs of

their constitutional rights.

1422.  At all times material hereto, the Defendants used unnecessary, excessive force,

without legal cause; it was unjustified and unreasonable.

1423.  Defendants' actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

1424.  While acting under color of state law, law enforcement deprived Plaintiffs of their Fourth Amendment rights for which Plaintiffs are entitled to damages proximately caused thereby.

194

1425. Unless restrained by this Court, Defendants will continue to engage in the

unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or

illegal conduct, causing irreparable harm to the people of Wauwatosa.

### THIRD CLAIM FOR RELIEF
### Violation of Plaintiffs' Sixth Amendment Right to Counsel

**As to Plaintiffs Taleavia Cole, Tahudah Cole, Kathryn Knowlton, Dana McCormick, Breon Foster, Against All Defendant Law Enforcement:**

1426. All paragraphs of this Complaint are realleged and incorporated as though fully

set forth.

1427. Law enforcement interrogation of Plaintiffs despite explicit notice that Plaintiffs had

Counsel, and in addition to their specific and explicit invocation of their right to Counsel,

is a violation of the Sixth Amendment.

1428. Law enforcement actions were taken in willful, wanton, reckless and malicious

disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

1429. While acting under color of state law, law enforcement deprived Plaintiffs of their

Sixth Amendment rights for which Plaintiffs are entitled to damages proximately caused

thereby.

### FOURTH CLAIM FOR RELIEF

**Policy and Practice of Arrests for Unlawful Assembly in Violation of First and Fourth Amendment Rights**

**As to Plaintiffs** Tracy Cole, Taleavia Cole, Tahudah Cole, Tristiana Walls, Kathryn Knowlton, Dana Mccormick, Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Raine Cich, Rachel Dulay, Anne Delessio-Parson, Erik Fanning, , Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Destiney Jones, Sonora Larson, Holly Lavora, Lazarito Matheu, Molly Nilssen, Carmen Palmer, (Juvenile) Palmer, (Juvenile) Palmer, Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Jose Hernandez Ramirez, Oscar Concepcion Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, Sonja Worthy, and Members Of The People's Revolution An

Unincorporated entity hereinafter referred to as (TPR), on behalf of themselves and all others similarly situated,

**Against All Defendants:**

1430. All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

1431. The policy and practice of Defendants City of Wauwatosa, Weber, and McBride of directing and ordering the emergency curfew and dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those, who through law enforcement obstructive and excessive force action are made unable to comply, is unreasonable and unjustified and interfered with Plaintiffs' First Amendment rights of association and ability to observe, record and report their observations.

1432. Defendants City of Wauwatosa, Weber, and McBride, in implementing the policy and practice of ordering the emergency curfew and dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those, who through law enforcement obstructive and excessive force action are made unable to comply, place Plaintiffs, and others similarly situated, at continuing and foreseeable risk of being arrested for exercising their First Amendment right of association and Fourth Amendment right to be free from excessive force and will not cease without injunctive relief.

1433. Defendants' actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

1434. While acting under color of state law, Defendants City of Wauwatosa, Weber and

McBride deprived Plaintiffs of their First and Fourth Amendment rights for which Plaintiffs are entitled a declaration that the policy and practice is unlawful and an injunction against that policy and/or practice.

1435. Unless restrained by this Court, Defendants will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to the people of Wauwatosa.

## FIFTH CLAIM FOR RELIEF – MONELL CLAIM

### As to All Plaintiffs Against All Defendants:

1436.  All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

1437. The unlawful acts of Defendants, including excessive force, and unlawful seizure and arrest, was done in accordance with the WPD's de-facto policies which were officially adopted, expressly or implicitly, promulgated, practiced and/or ratified by the City of Wauwatosa, through its Chief of Police Barry Weber, and as such constitute a de-facto governmental custom.

1438. In addition to de-facto policies and practices, Mayor McBride explicitly created a formal government policy, knowingly contravening the lawful process to implement and enforce same, in violation of Plaintiffs' constitutional rights.

1439. The official or de facto policy and practice has permitted, encouraged, tolerated and ratified the actions of Defendant Officers, and the unnamed John Doe Officers all in malicious and/or reckless disregard or with deliberate indifference to Plaintiffs' Constitutional rights.

1440. While acting under color of state law, Defendants deprived Plaintiffs of their Constitutional rights for which Plaintiffs are entitled to damages proximately caused thereby.

# SIXTH CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS – UNLAWFUL SEARCH & SEIZURE OR PROPERTY – 42 U.S.C. §§ 1983,**

**As to Plaintiffs Tracy Cole, Taleavia Cole, Tahudah Cole, Kathryn Knowlton, Dana Mccormick, Oscar Concepcion Rodriguez, Anne Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geiser, Christina Vitolo-Haddad, Joseph Hayes, Percy Hayes, Jose Hernandez Ramirez, Destiney Jones, Joey Koepp, Sonora Larson, Holly Lavora, Lazarito Matheu, Molly Nilssen, Carmen Palmer, (juvenile) Palmer, (juvenile) Palmer, Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Gabriella Vitucci, Suzanne Wells, Katelyn Wojnar, Sonja Worthy, Jacqueline Bogenberger, and Raine Cich,**

**Against All relevant Defendant Officers and the City of Wauwatosa:**

1441. All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

1442. Defendants' actions in knowingly searching and seizing Plaintiffs' property during the events described in the Complaint, without a warrant, probable cause, or legal justification, violated Plaintiffs' right to be free from unreasonable search and seizure of Plaintiffs' property guaranteed by the Fourth and Fourteenth Amendments.

1443. Defendants have engaged in a pattern of seizing and searching without the individualized, reasonable suspicion of wrongdoing required by the Fourth Amendment. Defendants seized and searched phones without identifying reasonable suspicion, including seizing property from individuals standing on sidewalks or street corners without any indication that the individuals are connected to unlawful activity.

1444. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

1445. As a direct and proximate result of the Defendant Officers' actions, Plaintiffs suffered damages, including the loss of and damage to their property, as set forth

more fully above.

## SEVENTH CLAIM FOR RELIEF
## DEFENDANTS' LAW ENFORCEMENT ACTIVITIES VIOLATE TITLE VI

### As to All Plaintiffs Against All Defendants

1446.  All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

1447.  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

1448.  Defendants received and continue to receive federal financial assistance for its programs and activities that are subject to the requirements of Title VI and its implementing regulations.

1449.  Defendants have engaged in law enforcement practices, including stops, searches, arrests, and uses of force, that have an adverse disparate impact on African Americans and that are unnecessary to achieve non-discriminatory objectives.

1450.  Defendants' discriminatory law enforcement practices violate Title VI.

## Eighth CLAIM FOR RELIEF- 42 U.S.C. §§ 1983, 1985, 1986
## CONSPIRACY TO DEPRIVE PLAINTIFFS OF THEIR CONSTITUTIONAL RIGHTS

### As to All Plaintiffs Against All Defendants:

1451.  All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

1452.  Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to commit the

unconstitutional overt acts set forth in the facts above.

1453. Because said conspiracy or conspiracies and the overt actions in furtherance thereof, including, but not limited to, each and every act alleged in the facts above, were done with the knowledge and purpose of depriving Plaintiffs, many of whom were protesting anti-Black racist police violence and in support of the movement for Black lives, of the equal protection of the laws and/or of equal privilege and immunities under the law, and with racial animus toward each and every Plaintiff individually and as a group, either because of their identity and/or because of what they were protesting, and the other victims of this racially motivated conspiracy, the Defendants also deprived Plaintiffs of their right to equal protection of the laws under the Fourteenth Amendment, and 42 U.S.C. § 1985.

1454. Additionally or alternatively, the Defendants, knowing that the above §1985 conspiracy to deprive Plaintiffs of their constitutional rights was about to be committed, and having the power to prevent or aid in preventing the commission of the acts in furtherance of said conspiracy, neglected and/or refused to do so, in violation of 42 U.S.C. § 1986.

1455. The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' constitutional rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, and loss of personal freedom, as set forth more fully above.

1456. Each of the Defendants acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

1457. The Defendant Officers acted under the color of law, and under the authority of one or more interrelated de facto policies, practices, and/or customs of the Wauwatosa Police Department, to violate Plaintiffs' rights as set for in the preceding claims.

1458. Each of the Defendant Officers took concrete steps to enter into an agreement to unlawfully

use force on certain Plaintiffs, and to detain and arrest certain Plaintiffs, knowing they lacked reasonable suspicions and/or probable cause to do so, and for the purpose of violating Plaintiffs' First, Fourth, and Fourteenth Amendment rights.

1459. In furtherance of this conspiracy, each of the Defendant Officers committed specific overt acts, misusing their police powers for the purpose of violating Plaintiffs' rights. They accomplished this goal by using excessive force on all Plaintiffs and unlawfully arresting certain Plaintiffs.

1460. Each individual Defendant Officer is therefore liable for the violation of Plaintiffs' rights by any other individual Defendant Officer.

1461. The City has acted with deliberate indifference to the First, Fourth, and Fourteenth Amendment rights of the Plaintiffs. As a direct and proximate result of the acts and omissions of the City and WPD, the First, Fourth, and Fourteenth Amendment rights of the Plaintiffs have been violated.

1462. Defendants Mayor McBride, Kathy Causier, Chief Weber, and the City of Wauwatosa were aware, even participants, and had the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein, yet failed or refused to do so, in violation of 42 U.S.C. § 1983.

1463. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

1464. As a direct and proximate result of the Defendants' failure to intervene, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of personal freedom, and legal expenses, as set forth more fully

201

above.

## 11TH CLAIM FOR RELIEF – 42 U.S.C. § 1983 Retaliation for Exercise of Free Speech
### (As to All Plaintiffs Against All Defendants)

1465.   All paragraphs of this Complaint are realleged and incorporated as though fully

set forth.

1466.   At all relevant times, Defendants were operating under color of law.  As described in detail

above, Plaintiffs were participating in lawful, constitutionally protected activity on the

public streets of the City of Wauwatosa.

1467.   The actions of the Defendant Officers described above violated Plaintiffs' rights to freedom

of speech and assembly guaranteed by the First and Fourteenth Amendments to the United

States Constitution, in that Plaintiffs were abruptly prevented from further exercising their

rights and suffered retaliation for having exercised their rights.

1468.   The Defendant Officers retaliated against Plaintiffs for engaging in protected speech by

subjecting them to excessive force without legal justification. Plaintiffs' protected speech

was the substantial and motivating factor for the Defendant Officers' use of force against

them. The Defendant Officers' actions were intended to make Plaintiffs and other people

engaging in constitutionally-protected speech and assembly at the protests wary of

continuing to engage in such protected activities in the future and specifically to chill their

rights guaranteed under the First Amendment.

1469.   At all relevant times, the Defendant Officers were aware or should have been aware that

Plaintiffs were engaged in constitutionally-protected speech and assembly when they

violated their rights. The misconduct described in this Count was objectively unreasonable

and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly

established constitutional rights.

202

1470. The actions of the Defendant Officers were the direct and proximate cause of the violations of Plaintiffs' constitutional rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, and loss of personal freedom, as set forth more fully above.

**16TH CLAIM FOR RELIEF**
**VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT.**
**(18 U.S.C. § 2721, et seq.)**

**As to All Plaintiffs Against All Defendants:**

1471. All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

1472. The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

1473. The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains.

1474. The DPPA, 18 U.S.C. § 2725(1) defines "motor vehicle record" to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."

1475. The DPPA, 18 U.S.C. § 2725(3) defines "personal information" to mean information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."

1476. Defendant law enforcement obtained, since at least May, 2020, and continuing to present,

personal information from the Wisconsin Department of Transportation to complete

citations as well as compile lists, including those involving Plaintiffs and containing

"personal information from a motor vehicle record" within the meaning of 18 U.S.C. §§

2722 & 2725(1), (3). By obtaining such information and reports, Defendants obtained the

Personal Information, within the meaning of 18 U.S.C. § 2725(3) of Plaintiffs.

1477.  Defendant law enforcement unlawfully accessed, obtained and disclosed information for

the express purpose of compiling, using and/or disclosing Plaintiffs personal information

to third parties for no lawful purpose, but rather as a pretext for surveillance, which is not

a "permissible use" of seeking or disclosing personal information under the DPPA, 18

U.S.C. § 2721(b).

1478.  Defendants had no permissible purpose, within the meaning of 18 U.S.C. § 2722(a) or

§2721(b), to obtain or disclose the personal information of Plaintiffs.

1479.  Defendants obtained the personal information of Plaintiffs knowing that they were

obtaining their personal information from a motor vehicle record and knew that they had

no permissible use under the DPPA.

1480.  As a result of Defendants' conduct, Plaintiffs have suffered harm, and are entitled to

recover the damages available under the DPPA, plus costs and attorneys' fees, as

provided under 18 U.S.C. §2724(b) of the DPPA.

WHEREFORE, Plaintiffs respectfully pray that judgment be entered against Defendants, jointly

and severally, and request that the Court award the following relief:

1.      An order finding the City of Wauwatosa's curfew of October 7 - 12, 2021 was unlawful

and illegally enacted;

2.      An order finding the City of Wauwatosa's October 7 – 12, 2020 curfew unconstitutional;

3.     A declaration that Defendants' conduct violated the First, Fourth, and Fourteenth Amendments of the United States Constitution;

4.     An order requiring immediate cessation of law enforcement surveillance and monitoring of peaceful protest activity, including a prohibition of law enforcement  maintaining files on the views and expressive activities;

5.     An injunction prohibiting the Wauwatosa Police Department from sharing its existing files with any other law enforcement or non-law enforcement agencies or municipalities;

6.     A preservation order that the files on activists and peaceful protests be preserved as they are potential evidence in future litigation;

7.     Damages compensating Plaintiffs for their injuries, including but not limited to compensatory, pecuniary, punitive and medical expense damages;

8.     An award of prejudgment interest;

9.     An order enjoining Defendants from enforcing a policy ordering dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those through law enforcement;

10.    An order that Defendants and other law enforcement agencies whom the Defendants engaged, permanently delete any fabricated arrest records, booking photos, arrest information, fingerprint cards, and any and all data that they have regarding Plaintiffs;

11.    Order the Wauwatosa Police Department to make a public accounting of the scope and nature of files subject of this lawsuit, such that Defendants fully, accurately and completely identify:

    a)     Number of groups and organizations has the Wauwatosa Police Department been surveilling, monitoring and recording;

b.) Descriptors used by the WPD (such as "criminal," "extremists," and/or "domestic terrorists");

c.) Criteria for listing and/or placing an individual and/or organization on the protestor list;

d.) Number of individuals with files created by the Wauwatosa Police Department on since the death of George Floyd on May 25, 2020 to present as it relates to protests;

e.) To whom (all individuals and organizations) the WPD, and including any employees of the City, has the information from the files (including the files themselves) been given, whether by access or providing copies;

12. An order requiring notification to individuals listed on any files, lists, or other monitoring/intelligence document, including on the TPR Target List, of the existence and opportunity to that individual to review the information;

13. An order requiring the Wauwatosa Police Department to destroy the protestor list and any protestor monitoring files and all of its contents with written confirmation after all subjects have been notified and provided an opportunity to review;

14. Order the Wauwatosa Police Department to contact any third party entities who received the protestor list and any protestor monitoring files to destroy it and all of

15. Declare that Defendants' practice of obtaining personal information through the DOT without probable cause or reasonable suspicion as arbitrary and as such violated the DPPA;

16. Enter a preliminary and permanent injunction preventing and restraining Defendants (and any of their attorneys, employees, agents, representatives or anyone acting on their behalf) from disclosing or using the personal information about Plaintiffs, and requiring Defendants to destroy all personal information about Plaintiff that Defendants have in the possession, custody or control.

17. Require Defendants to identify under penalty of perjury all manners how the personal information of Plaintiffs has been used or disclosed and confirming that all personal information about Plaintiffs has been destroyed.

18. Award monetary damages, the exact amount to be determined at trial, in an amount not less than the statutory-provided liquidated damages, for each Plaintiff and each member of the Class, of not less than $2500 for each separate violation of DPPA by Defendant under 18 U.S.C. §2724(b)(1);

19. Award punitive damages, the exact amount to be determined at trial, for Defendants' willful and reckless disregard of the DPPA and to deter such future violations, pursuant to 18 U.S.C. §2724(b)(2);

20. Require Defendants to pay pre-judgment interest and post judgment interest;

21. Award reasonable and actual attorney's fees and other litigation costs pursuant to 18 U.S.C. §2724(b)(3);

22. Grant any other relief that this Court determines is appropriate pursuant to 18 U.S.C. § 2724(4) and grant any other relief to which Plaintiff is entitled pursuant to Rule 54(c) of the Federal Rules of Civil Procedure;

23. An award of attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

24. All other relief the Court deems just.

Respectfully submitted this 20th day of August 2021.

PLAINTIFFS HEREBY DEMANDS A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.

207

s/ Kimberley Cy. Motley
MOTLEY LEGAL SERVICES
State Bar No.: 1047193
2206 Bonnie Butler Way
Charlotte, North Carolina 28270
Email : kmotley@motleylegal.com
Telephone : (704) 763-5413

Kathryn Knowlton
KNOWLTON LAW GROUP
State Bar No: 1032814
7219 West Center Street
Wauwatosa, WI 53210
Email: kate@knowltonlawgroup.com
Telephone: 414-202-2444

E. Milo Schwab
State Bar No.:
3000 Lawrence Street
Denver, CO 80205

**ATTORNEYS FOR PLAINTIFFS**

208