UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KATHRYN KNOWLTON, et al.,

        Plaintiffs,

     v.                                                   Case No. 2020-CV-01660

CITY OF WAUWATOSA, et al.,

        Defendants.

---

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER
---

       Defendants, by and through their counsel, Gunta Law Offices, S.C., moves the Court for an order, pursuant to Fed. R. Civ. P. 26(b), (c), and Fed. R. Civ. P. 37(a)(5)(A)(ii). Prior to filing this Motion, the parties met and conferred in good faith in an effort to resolve these discovery disputes. (Zellner Decl. ¶ 28) Grounds are as follows:

       The defendants have made extensive efforts to comply in good faith with Plaintiffs' voluminous formal and informal discovery requests and to provide reasonable access to electronically stored information (ESI)—specifically email records. Plaintiffs, however, continue to make numerous and unreasonable requests for extraneous information. It is evident that limits need to be placed on plaintiffs' continuing demands for information that has no apparent relevance to the issues in the case. It is also anticipated that copies of thousands of additional documents will be provided to counsel for the plaintiffs in the near future. (Zellner Decl. ¶ 27)

       Despite defendants' good faith efforts to reach an agreement their ongoing effort to reach an agreement was met by a demand from plaintiffs for a date certain for production of documents. As a result, defendants filed this motion seeking a protective order 1) barring plaintiffs' demand for

1

production of emails previously produced in .pdf format to prevent the public release of sensitive cybersecurity information or at minimum allow designation of the information as "Attorney's Eyes Only" and 2) placing limits on plaintiffs' requests for the search and production of ESI that is unduly burdensome, not relevant to any party's claim or defense and not proportional to the needs of the case.

## Appropriate Limitations on Discovery and ESI

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in part that a party may obtain discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." The rule further provides that discovery is not limited to matters that will be admissible at trial so long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." By this language, Rule 26 sets forth a liberal discovery standard, one which allows "extensive intrusion into the affairs of both litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984). Due to the liberality of the discovery standards, the potential for abuse of the rules is significant. *See Herbert v. Lando*, 441 U.S. 153, 176-77 (1979)("There have been repeated expressions of concern about undue and uncontrolled discovery, and voices from this Court have joined the chorus."). One way in which the federal rules seek to limit this potential for abuse is through the issuance of protective orders under Fed. R.Civ.P 26(c). *Seattle Times*, 467 U.S. at 34. In addition, Rule 26(b)(2)(C) provides that:

> On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

(Emphasis added). *See also Chavez v. Daimler Chrysler Corporation*, 206 F.R.D. 615, 619 (S.D. Ind. 2002).

2

When considering whether an abuse of the discovery process has occurred, a court must view Rule 26 in its entirety, keeping in mind the limited purposes of discovery. *Seattle Times*, 467 U.S. at 34. "Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times*, 467 U.S. at 34. Unfortunately, the need for Protective Orders in civil cases arises with some frequency. "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse." *Id.* Abuse of the discovery process, moreover, "is not limited to matters of delay and expense; discovery may also seriously implicate privacy interests of litigants and third parties." As the Supreme Court explained in *Seattle Times*:

> The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery. There is an opportunity, therefore, for litigants to obtain – incidentally or purposefully – information that is not only irrelevant but if publicly released could be damaging to reputation and privacy.

*Id.* at 35.

**Protective Order Regarding Request for Production of Emails in Sample Format**

Plaintiffs are seeking "metadata" of an email sent by Luke Vetter to David Clark on November 18, 2020.[1] Plaintiffs contend the email was responsive to Request No. 7 of their Amended Notice of Deposition to Luke Vetter (Dkt. 97-1; p. 6) which requested the following:

> Request 7 : Any and all metadata of emails, attachments to emails, text correspondence, communications to or from Dominick Ratkowski, Barry Weber, any Wauwatosa Police Officers, James Archambo, Dennis McBride, any Wauwatosa Common Council Members, members of the PFC, any federal agencies, any local law enforcement agencies, any private business entities, and local and federal governmental entities, which you sent, received, or have in your possession that refer or are about protesting and/or about curfews from May 25, 2020 to present.

(Zellner Decl. ¶ 3; Exhibit A) As a starting point, the terms "protesting" and "curfews" do appear in

---

[1] While this email was the only one specifically identified on Plaintiffs' inventory of outstanding discovery it is anticipated this will be an ongoing issue as Plaintiffs have made identical requests for at least 2 other emails.

3

the email (Zellner Decl. ¶ 26; Exhibit H) which perfectly illustrates the impossible task confronting defendants in providing responsive documents based on plaintiffs vague and overly broad requests (i.e. an email search for the terms "protesting" or "curfews" would not include this email—yet plaintiffs argue it is responsive). Nonetheless, once the email was identified by plaintiffs, defendants produced the email on September 23, 2021. (Zellner Decl. ¶ 26) The email was produced in searchable .pdf format pursuant to the agreement contained in the parties Rule 26(f) Report that electronically stored information would be produced in .pdf format. (Dkt. 15, p. 4)

Following production of the email, plaintiffs sought the "metadata" of the email. The request was confusing as the .pdf format shows relevant metadata. Equally confusing, plaintiffs routinely use the terms "metadata", "native form", and "metadata of emails in native form" interchangeably within their requests. For example, plaintiffs requested the "metadata" on their inventory of outstanding discovery for this email (Dkt. 97-1) and then changed their request to "native form with metadata data" in their email forwarding a sample of what they were seeking. (Zellner Decl. ¶ 27; Exhibit I) There are any number of problems with Plaintiff's position on this issue. First, production of an electronic document in "native format" does not result in production of "metadata" and those are two very different concepts. *See Palar v. Blackhawk Bancorporation Inc.*, No. 11-4039, 2013 WL 1704302, at *2 (C.D. Ill. Mar. 19, 2013).

Following a hearing with the Court, wherein defendants requested clarification on plaintiffs understanding of "metadata" they provided a sample document to defendants. (Exhibit I) Upon review of the sample document and communication with the City's IT department it was determined that the sample document was inadvertently produced and contained sensitive cybersecurity information. (Zellner Decl. ¶ 6) Defendants want to protect the confidentiality of their cybersecurity information. The sample format contains information related to defendants' software version which can easily be

4

translated into a list of published vulnerabilities, IP addresses making it easier to attach their systems, and other information that if publicly available would make them vulnerable to a cyber security attack. (Zellner Decl. ¶ 6) In short, this information is not generally available to the public and defendants deem it confidential information.

Equally important, there is no information that could be relevant to plaintiffs' claims in the sample format that does not appear in the .pdf format. The sample format does appear different than the .pdf format but any difference is only technical and more difficult to understand because it consists of plain text of fixed length and shortcut codes that instruct the operating system. While plaintiffs claim they are entitled to the sample format, they fail to explain or show how the information would be at all relevant to the issues in this case or how it is more useful to them than the .pdf format produced by defendants. The Court should not permit plaintiffs to expose sensitive cybersecurity information just to satiate their curiosity that the information could somehow be relevant to the issues in this case.

Defendants, in an effort to minimize the need for judicial intervention and the consequent expense advised plaintiffs that the sample format requested contained sensitive information which defendants would produce, subject to a protective order. Plaintiffs agreed. Counsel for defendants then provided a stipulation and proposed protective order that was modeled after the protective order used routinely by the United States District Court of the Eastern District of Wisconsin. (Zellner Decl. ¶ 9; Exhibit B) Plaintiffs did not object to protecting the confidentiality of this information yet refused to sign or agree to the stipulated protective order. Rather, plaintiffs contend the parties' agreement without more is sufficient:

> Please note that as mutually agreed. Only the metadata document with the software information for emails provided will be for attorneys eyes only. Not the emails themselves but the metadata document attached. <u>This email in addition to our recorded conversation is sufficient confirmation.</u>

5

(Zellner Decl. ¶ 19; Exhibit F) Defendants answered that an agreement between the parties without an order was insufficient and encouraged plaintiffs to sign the stipulation. (Zellner Decl. ¶ 20; Exhibit E, pp. 1-2) Plaintiffs did not respond and have not executed the stipulation.

Despite very clear communication on the subject, on December 9, 2021, plaintiffs further complained of defendants' failure to provide the sample format of the email. (Zellner Decl. ¶ 22; Exhibit G, p. 2) Defendants explained the information would be provided once the issue of a protective order was addressed by the Court and again encouraged plaintiffs to sign the stipulation if they did not object to protecting the confidentiality of the information. (Exhibit G, p. 1) Plaintiffs did not respond and have continuously failed to sign the stipulation.

Plaintiffs' position is indefensible, and their behavior necessitated the judicial intervention and consequent expense defendants sought to avoid through compromise. As such, defendants have modified their position with respect to producing the information. Defendants now seek an appropriate protective order, pursuant to Fed. R. Civ. P. 26(c)(1)(G) denying plaintiffs' demand for production of the email in the sample format which was previously produced in .pdf format. If the Court is inclined to require the production, the Court should, at a minimum, enter a protective order restricting access to plaintiffs' attorneys, with strong protections for any errant dissemination or use of the information. It is anticipated requests to produce documents in the sample format will be ongoing as other requests have already been made. As such, should the Court enter a protective order regarding the confidentiality of the information defendants are seeking an order that would address those ensuing disclosures as well.

**Limitation on Request for ESI Discovery**

Discovery in this lawsuit has spiraled out of control. The volume and scope of plaintiffs' requests for production of documents is in no way proportional to the amount in controversy in this case. At no time, have defendants refused to produce information relevant to the case. To date, defendants have produced approximately 15,692 pages of responsive emails, 854 pages of photos, 100 videos, and over 200 additional documents. (Zellner Decl. ¶ 4) It is anticipated that thousands of additional emails will be provided to plaintiffs soon. (Zellner Decl. ¶ 28) However, because of the time and cost involved in producing the discovery requested by plaintiffs, defendants have continuously objected to the requests and suggested that the parties attempt to agree upon appropriate search terms that could be used to cull relevant documents from a tremendous amount of information.

To fully understand this issue requires some additional historical background. Plaintiffs' <u>relevant</u> requests for production of documents are filed as Exhibit A. Each of the requests implicate a search by defendants (one of which is the City of Wauwatosa) for communications or documents. To appreciate the scope of the requests, it is important to understand that plaintiffs define "document" as follows:

> The word "document" means any kind of written, printed, typed, recorded or graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, copies and drafts and both sides thereof, and including but not limited to papers, books, periodicals, pamphlets, newspaper articles or clippings, publications, letters, photographs, objects, tangible things, correspondence, telegrams, inter-office communications, inter-departmental communications, transcripts, minutes, memoranda, reports and recordings of telephone or other conversations, or of interview, or of conferences, or of affidavits, statements, summaries, opinions, reports, video or audio recordings, film, all other records or information kept by electronic, photographic, mechanical or other means, and things similar to any of the foregoing, however denominated.

Defendants have continuously objected to their requests as overly broad and unduly burdensome noting requests to produce "must describe with reasonable particularity each item or

7

category of items to be inspected." Fed.R.Civ.P. 34(b)(1)(A). The broad language used by plaintiffs have made it extremely burdensome to determine which of numerous documents may conceivably fall within the scope of the request especially where electronically stored information is implicated. These overly broad requests have plagued discovery in this case and have engaged defendants in a never-ending cycle attempting to comply with their discovery obligations only to commence addressing a new request or respond to alleged failures to produce a responsive document they in good faith did not conceive to fall within the request.

Following a hearing before this Court on October 15, 2021, in which this and various discovery issues were discussed, the Court ordered plaintiffs to prepare an inventory of outstanding discovery. (Dkt. 98, ¶1) In response to the inventory, defendants were ordered to respond by either citing to responsive documents already produced or stating when the discovery would be provided. (Dkt. 98, ¶2) Defendants filed a response on October 29, 2021. (Dkt. 103) Within their response, defendants outlined objections that certain requests were unreasonably cumulative, overly broad, irrelevant, and not reasonably likely to lead to the discovery of admissible evidence and the burden and expense of responding far outweighs the likely benefit, considering the needs of this case and the importance of the discovery in resolving the issues pursuant to Rule 26(b)(2)(C)(ii), (iii). (Dkt. 103)

During a hearing before this Court on November 1, 2021, defendants explained that to fully appreciate the unreasonableness of discovery to date in this case, and to fully understand the bases for defendants' discovery objections, it was important for the Court to consider plaintiffs' requests in the totality. The hearing ended without resolving the discovery disputes, but plaintiffs agreed to further limit their ESI requests.

The parties then engaged in two meet and confers to discuss ways to limit plaintiffs' ESI search requests. As part of the process, the parties discussed limits for a series of ten searches during

their November 11, 2021, meet and confer. (Zellner Decl. ¶ 28) The position of defendants is and has remained that due to the breadth and volume of information requested by plaintiffs, any agreement on a search would be contingent on analyzing the search under the undue burden/cost analysis. (Zellner Decl. ¶ 10) As such, defense counsel instructed the City to run the ten searches to determine the volume of responsive emails. (Zellner Decl. ¶ 10) Despite efforts to limit the ESI searches 8,359 responsive emails remained. (Zellner Decl. ¶ 11; Exhibit C)

When evaluating the number of emails, it is important to understand that to produce the emails defendants are required to filter the emails and their attachments to a .pdf format. Many of the emails contain one or multiple attachments—so 8,359 emails can easily result in 17,000-25,000 pages of documents. The documents identified by search terms then require extremely time-consuming and costly attorney review for privilege, confidentiality, relevance, or material subject to "Attorney's Eyes Only" designation.

During the meet and confer on November 17, 2021, the parties again discussed the search results and additional limitations—specifically plaintiffs offered to change the largest search (Search No. 7) from "city-wide" to thirty-one specific email addresses. (Zellner Decl. ¶ 12) All thirty-one of the emails were included in a prior city-wide email search and production for identical search terms. (Zellner Decl. ¶ 13) To eliminate duplicative production, defendants proposed adjusting Search No. 7 to eliminate any overlap between the prior search and the new Search No. 7. (Zellner Decl. ¶ 14; Exhibit D)

The proposal was emailed to plaintiffs on November 17, 2021, for their review and response. (Zellner Decl. ¶ 14; Exhibit D) On November 19, 2021, Attorney Motley vaguely responded, "thank you for your email and as you are aware in the meet and confer that we just had that was clarified so you should have plenty to rely to your clients." (Zellner Decl. ¶ 16; Exhibit D) Attorney Motley then

9

asked that we provide a date certain for production of all discovery. (Exhibit D) Plaintiffs' response illustrates the broader concern of defendants in this case. The discovery dispute over the ESI search parameters was not resolved and rather than continuing to work towards resolution plaintiffs respond by demanding a date certain for the discovery production leaving defendants no choice but to seek a protective order.

Arguably, as asserted by plaintiffs to the Court, the parties "were successful in setting some restrictions." (Dkt. 113) Yet those restrictions hardly feel like "success" for defendants considering the plaintiffs overly broad requests. Defendants do not wish to waste this Court's time by going through each discovery request to date so we focus only on requests specific to ESI. Taken as a whole, if unrestricted plaintiffs' requests would require defendants to produce any document within the control of the City containing any of the following search terms from May 25, 2020-present:

> Curfew, emergency declaration, emergency order, state of emergency, proclamation of emergency, TPR, The People's Revolution, Alvin Cole, David Beth, John Martin Antaramian, John Chisholm, Governor Evers, Daniel Miskinis (First-Request No. 2); Kimberley Motley, Deja Vishny, Kathryn Knowlton, Milo Schwab, Tracy Cole, Taleavia Cole, John Larry, Khalil Coleman, Jacqueline Bogenberger, Mariah Smith, Gaige Grosskreutz, Joey Koepp, Breon Foster, Sean Kafer, Antifa, BLM (Second-Request No. 5); Tahudah Cole, Tristiana Walls, Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Lavita Booker, Rebecca Burrell, Raine Cich, Steven Conklin, Lauryn Cross, Rachel Dulay, Anne Delessio-Parson, Erik Fanning, Jessica Fenner, Jill Ferguson, Joanna Geisler, Christine Groppi, Joseph Hayes, Percy Hayes, Destiney Jones, Adante Jordan, Mary Kachelski, Joey Koepp, Alex Larson, Sonora Larson, Holly Lavora, Lazarito Matheu, Vaun Mayes, Molly Nilssen, Shawn Page, Carmen Palmer, (juvenile) Palmer 1[2], (juvenile) Palmer 2[3], Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Jose Hernandez Ramirez, Oscar Concepcion Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Madeliene Schweitzer, Peter Sparks, Tiffany Stark, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Oscar Walton, Jayden Welch, Britta Welch, Suzanne Wells, Brandon Wilborn, Trisha Wilson, Katelyn Wojnar, Sonja Worthy, members of TPR[4] (Second-Request No. 6); "TPR Target List" [including by any other name][5], Protestor Folder (Second-Request No. 3); Dana McCormick, Jay Anderson, Antonio Gonzales, David Bowen, Heather Kuhl, Mary Lockwood, Kyle Rittenhouse, Tiffany Henry, Jonathan Brostroff, Kathy Causier, Dennis McBride, Kenosha,

---

[2] Defendants doubt plaintiffs want a search for "(juvenile) Palmer 1" instead of their client's actual name.
[3] Defendants doubt plaintiffs want a search for "(juvenile) Palmer 2" instead of their client's actual name.
[4] Would require defendants to speculate and generate additional search terms for "members of TPR."
[5] Impossible search parameter—would require reviewing every email in existence for the period of time.

10

George Floyd, Jacob Blake, curfew tickets, HVT, High Value Target, John Archambo[6], Dominic Leone, Barry Weber, Joseph Mensah, Kenosha Guard, Proud Boys, terrorist, right wing extremist, domestic terrorist, Robin Vining, Trump (Wrucke Deposition Request No. 10; Vetter Deposition Request No. 4; Lewandowski Deposition Request No. 4; Keck Deposition Request No. 10)

(Exhibit A) Essentially, plaintiffs are asking defendants to review every single email and any corresponding attachment that contains any one of those terms for a period of 19 months. One can only imagine how many documents in possession of the City would contain any one of those search terms—and then consider how anyone could be required to sift through that number of documents. Yet plaintiffs' demands do not end there—they also demand all documents to or from certain persons regardless of search terms:

> Any and all emails sent to or from the email addresses WUPDCP@wauwatosa and netmcleeacovid@googlegroups.com for the time period May 25, 2020 thru present. (Second-Request No. 4)
>
> Any and all emails between August 25, 2020 to December 15, 2020 between defendants, Wauwatosa's Common Council, and Wauwatosa Police and Fire Commission Members. (First-Request No. 7; Weber Amended Deposition Request No. 9)
>
> Any and all emails to or from any federal agencies or agents including but not limited to persons from the FBI, U.S. Attorney's Office, U.S. Marshals, CIA, the Department of Homeland Security, (ICE Immigration and Customs Enforcement), the state or federal National Guard sent or received that refer or are about protesting and or about curfews from May 25, 2020 to present. (Wrucke Deposition Request No. 7; Vetter Deposition Request No. 5; Roy Deposition Request No. 5; Keck Deposition Request No.7)
>
> Any and all emails from any local law enforcement agencies sent, received, or possessed that refer or are about protesting an/or about curfews from May 25, 2020 to present. (Wrucke Deposition Request No. 8; Vetter Deposition Request No. 6; Roy Deposition Request No. 6; Keck Deposition Request No. 8)
>
> Any and all emails to or from Barry Weber, any Wauwatosa Police Officers, James Archambo, Dennis McBride, any Wauwatosa Common Council Members, members of the PFC, any federal agencies, any local law enforcement agencies, any private business entities, and local and federal governmental entities, sent, received, or possessed that refer or are about protesting and/or about curfews from May 25, 2020 to present. (Wrucke Deposition Request

---

[6] Likely a wrong name.

11

No. 9; Vetter Deposition Request No. 7; Roy Deposition Request No. 7; Keck Deposition Request No. 9)

Any and all emails to or from Dominick Ratkowski sent, received, or possessed that refer or are about protesting and/or about curfews from May 25, 2020 to October 13, 2020. (Vetter Deposition Request No. 7; Roy Deposition Request No. 7)

Any and all emails sent, received, or possessed that refer to or are about use of force by any law enforcement against anyone from May 25, 2020 to present. (Vetter Deposition Request No. 9; Roy Deposition Request No. 9)

Any and all emails sent, received, or possessed from May 25, 2020 to present regarding protesting in the City of Wauwatosa and law enforcement operations regarding the curfew. (Wrucke Deposition Request No. 10; Lewandowski Deposition Request No. 4; Roy Deposition Request No. 8; Keck Deposition Request No. 10)

Any and all emails between the City and the FAA regarding Drone Operation in Wauwatosa from June 1, 2020 through December 1, 2020. (Weber Amended Deposition Request No. 7; Archambo Amended Deposition Request No. 8)

Any and all emails between the City and any non-government entities, including volunteers, private businesses, non-profits, ect. between June 1, 2020 and December 1, 2020. (Weber Amended Deposition Request No. 8; Archambo Amended Deposition Request No. 8)

(Exhibit A) In essence, what plaintiffs want is for defendants to turn over wholesale hundreds of thousands of documents, because somewhere in those documents something might appear. Plaintiffs do not care that the vast majority of the search terms and emails do not actually concern them or their claims. The plaintiffs do not care that their unreasonable requests have costs defendants substantial and unnecessary time and expense in responding. Plaintiffs simply insist that they are entitled to the documents.

Plaintiffs' refusal to agree or further discuss proposed limitations have halted the discovery process. Notwithstanding their objections, defendants have agreed to produce Search Nos. 1, 6, 8, 9, and 10 to keep discovery moving. (Dkt. 112; Zellner Decl. ¶¶ 21, 28) Those searches consist of 1,345 emails which will result in significantly more pages. (Zellner Decl. ¶ 28) Those documents are being reviewed for privilege, confidentiality, and responsiveness and then will be produced. As anticipated,

most of those documents are not relevant to this dispute or are privileged communications regarding the dispute. (Zellner Decl. ¶ 28)

Defendants now seek a protective order for the remaining ESI email searches requested by plaintiffs. The requests are not at all tailored to the issues of this lawsuit; the amount of ESI to be searched is breathtaking; and plaintiffs have not used available techniques to narrow their requests. The amount at stake in this lawsuit, coupled with plaintiffs broadly over-inclusive search demands and the extraordinary cost of compliance compel protection pursuant to Rule 26(b)(2)(c) for the following searches:

> *Search No. 2:* This search seeks emails with the search term "Alvin Cole" for the time period May 25, 2020 to October 13, 2020. This information is not relevant, and the burden and expense of this proposed discovery outweighs its likely benefit under Federal Rule of Civil Procedure 26(b)(2).
>
> *Search No. 3:* This search seeks emails with the search term "BLM" for the time period May 25, 2020 to June 24, 2021. This information is not relevant, and the burden and expense of this proposed discovery outweighs its likely benefit under Federal Rule of Civil Procedure 26(b)(2).
>
> *Search No. 4:* This search seeks emails with the search terms "George Floyd" or "Jacob Blake" for the time period August 23, 2020 to October 13, 2020. This information is not relevant, and the burden and expense of this proposed discovery outweighs its likely benefit under Federal Rule of Civil Procedure 26(b)(2).
>
> *Search No. 5:* This search seeks emails with the search terms "Kimberly Motley" or "Deja Vishny" for the time period June 1, 2020 to November 1, 2020. This information is not relevant, and the burden and expense of this proposed discovery outweighs its likely benefit under Federal Rule of Civil Procedure 26(b)(2).
>
> *Search No. 7:* The burden and expense of this proposed discovery outweighs its likely benefit under Rule 26(b)(2), as the request significantly exceeds the scope of plaintiffs' and thus would require defendants to perform an overly burdensome review of perhaps thousands of extraneous emails. Moreover, the defendants already produce emails with the search terms curfew, emergency declaration, emergency order, state of emergency and proclamation of emergency for the period of 07/01/2020 to 12/31/2020 and the search terms The People's Revolution, People's Revolution, TPR, protest, protesting, and police presence in the City of Wauwatosa for the period of 08/13/2020 to 10/14/2020.

13

Counsel for defendants have already spent approximately 270 hours identifying, locating, reviewing, and producing responsive documents in this case. (Montgomery Declaration ¶ 5) The 270 hours is in addition to substantial time spent by defendants to search, locate and produce responsive documents. As such, if the Court requires defendants to produce the searches as requested, plaintiffs should be ordered to pay the associated costs. *Spears v. City of Indianapolis*, 74 F.3d 153 (7th Cir. 1996) (finding that the district court did not err in shifting the costs associated with a subpoena request to the issuing party, and that Rules 45 and 26 give "considerable discretion in determining whether expense shifting in discovery production is appropriate in a given case").

## CONCLUSION

For the foregoing reasons, defendants respectfully request the Court grant their Motion for Protective Order barring plaintiffs request for the production of the November 18, 2020, email in alternate form and barring plaintiffs requests for additional ESI searches. The moving party seeks their expenses in bringing this Motion pursuant to Fed. R. Civ. P. 37(a)(5)(A)(ii).

Dated this 15th day of December 2021.

GUNTA LAW OFFICES, S.C.
Attorneys for Defendants

 */s/ Kiley B. Zellner*
Kiley B. Zellner WI Bar No. 1056806
9898 W. Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: (414) 291-7979
F: (414) 291-7960
kbz@guntalaw.com

14