**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

KATHRYN KNOWLTON, et al,

      Plaintiffs,

      v.                               Case No. 20-CV-01660

CITY OF WAUWATOSA, et al,

      Defendants.

**PLAINTIFF'S MEMORANDUM OF FACTS AND LAW**
**TO SUPPORT THE MOTION FOR SANCTIONS**
**UNDER FRCP 37(e), Rule 37(a)(4), and Rule 37(b)**

1

## TABLE OF CONTENTS

Introduction…………………………………………………………………………3

I.       Rule 37(e): Failure to Preserve Electronically Stored Information…………....5

Legal issue………………………………………………………………………..……5

Applicable to instant case/Statement of Facts/evidence…………………….................6

Argument…………………………………………………………………………….10

Appropriate Sanctions…………………………………………………….…..13

II.      Rule 37(a)(4):  Evasive or Incomplete Disclosure, Answer, or Response. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond……………………………..15

Legal issue……………………………………………………………………………15

Applicable to instant case /Statement of Facts/evidence…………………………….16

Appropriate Sanctions…………………………………………………………19

III.     Rule 33 (b)(1):  Interrogatories to Parties Responding Party …………………16

Legal issue……………………………………………………………………………16

Applicable to instant case /Statement of Facts/evidence……………………………..16

Appropriate Sanctions…………………………………………………………19

IV.     Rule 37 (b) Failure to Comply with a Court Order………………………….20

Legal issue……………………………………………………………………………20

Applicable to instant case/Statement of Facts/evidence……………………………21

Argument……………………………………………………………………………23

Appropriate sanctions…………………………………………………………23

Conclusion……………………………………………………………………23

2

## **INTRODUCTION**

The import of the subject matter of this case cannot be overstated. This is a case of alleged constitutional violations against multiple governmental parties. Thus, the discovery process in this case has been complex and vital, though tedious. The maxim, "one cannot know what one does not know" is appropriately applied in controversies just like this, where the parties are far from equally situated. For discovery, of course critical to the case, Plaintiffs are solely dependent on Defendants who: 1) have direct access to information and 2) control how that information is collected, stored, restricted, and produced. The rules of discovery contemplate just such a scenario and safeguard against exploitation of such vulnerability. This instant case highlights the vital necessity for Courts in their capacity of referee to exercise their inherent authority, and appropriately level the playing field.

The instant case involves sixty-seven (67) individual citizen Plaintiffs claiming numerous violations by a City, its government, its law enforcement, and various public officials in their capacities and roles therein – in short, a collection of entities and people, organized in both communication and processes. The designated defendants, (even when additional defendants were added), is predicated on their connection to each other and their aligned objectives, articulated by their positions, actions and authority, all granted by the named City of Wauwatosa. Any information requested, regardless of form (document production, deposition, interrogatories), is subjectively examined by multiple parties with multiple roles inside the organization, prior to submission to Counsel for production.

There have been willful discovery violations, including the forever destruction of discovery directly relevant to the heart of this lawsuit, which unfortunately cannot be rectified. Even without any willful violations, which we do allege and argue here, the completeness and tests for veracity of discovery production from such a collection of defendants has been suspect and unnecessarily rife with problems. It is for this very reality that discovery rules exist; because with categories of defendants like this (a municipality and multiple personnel inside of it), innocuous problems (misunderstanding of terms, wrong department, typographical errors) do and may occur often in good faith. That happens. As a result, courts are understandably loath to strictly enforce rules if a bureaucratic reality for a large (or even small) defendant, like a city, impacts some correctable aspect of document production. However, and especially, when there is no available

3

correction, the rules still apply and discovery enforcement is even more critical to the administration of justice.

In contrast to Defendants, the Plaintiffs herein are individuals, different from, and in many cases unknown to one another, and aligned only insofar as experiencing the same and/or similar allegedly illegal adverse actions/activity, which resulted in some negative outcome attributable to one or more of the defendants. Each of these plaintiffs have only their own personal information to control, manage, and disclose. Regardless of form (answering interrogatories, testifying in depositions, producing documents), the veracity and credibility of discovery produced by a plaintiff in this scenario is much more easily tested and secured.

Given those definitional and autonomy realities, the discovery production process can be riddled with difficulties and vulnerabilities. This is nothing new, and Plaintiffs here have made every conceivable good faith effort to ensure that any such correctable discovery demand has been respectfully and timely communicated. This has failed on numerous occasions. Not because of a lack of communication, or a lack of court orders, or a lack of meet and confer meetings, or the lack of pursuing legal remedies to correct such as Plaintiffs motion to compel discovery filed on July 7, 2021 (ECF #37), or a lack of good faith correspondence and attempts on the part of Plaintiffs. This has failed because Defendants have systematically leveraged the autonomous and unilateral custodial nature of the necessary information in this case, and since the outset of this matter have consistently violated numerous discovery rules in order to distract, deflect, and derail this entire case. On July 13, 2021 the Court rightfully noted that, "We need to keep this case moving forward." (ECF #38). Moving the case forward requires the Defendants accountability for their continual and willful obstruction of the discovery process.

It is simply factual that to adequately tell their story, Plaintiffs require information from the Defendants. Clearly, Defendants do not want Plaintiffs to tell their story. In fact, Defendants do not want to tell any story. This has extended on through the manufactured distraction by the Defendants, into the fourteenth month of silence and apathy that must be rectified by court intervention in the form of sanctions.

4

## I.     Violation of Rule 37(e): Failure to Preserve Electronically Stored Information (ESI)

### a.     The rule.

The language of FRCP 37(e) is unambiguous and must be applied pursuant to its plain language:

> (e)     Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court
>
> (1)     upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2)     only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A)     presume that the lost information was unfavorable to the party;
>> (B)     instruct the jury that it may or must presume the information was unfavorable to the party; or
>> (C)     dismiss the action or enter a default judgment.

In this matter, Defendants destroyed discovery with the intent to deprive Plaintiffs of information particularly which has prejudiced them. As such the courts should impose costs, order the establishment of facts, instruct the jury as to adverse inference, and enter default judgments on related claims to the discovery which has been permanently destroyed.

Defendants were properly and constructively noticed to preserve discovery on multiple occasions all of which relate to this lawsuit, initially on October 11, 2020, (see Exhibit 1, Knowlton Preservation Letter in Anticipation of Litigation), that in anticipation of litigation, preservation of evidence/information measures should be taken, including security and preservation of electronically stored information (ESI). This notice was confirmed and made actual by Defendants no later than October 13, 2020. (see Exhibit 2, Atty. Kesner's email confirmation.) This lawsuit was filed on November 2, 2020, thus actual notice was effectuated. Additional notices were

5

provided to Defendants on October 9, 2020, January 13, 2021, and again on July 3, 2021. (see Exhibits 3 - 5, Motley Preservation Letter in Anticipation of Litigation).

Regardless of this actual and undisputed notice, Defendants and Defendant Counsel knowingly and deliberately failed to preserve electronically stored information, (ESI), with the intent to deprive Plaintiffs of the information/evidence. These deliberate and willful bad faith actions directly result in such information being lost forever and causing irreparable prejudice to the Plaintiffs.

### b.      Statement of Facts and Evidence.

For the purposes of applying FRCP 37(e), a court may determine intent based not only on direct evidence, but circumstantial evidence, witness credibility, motives of witnesses in a particular case, and other factors. *See Greyhound Lines, Inc. v. Wade, 485 F.3d 1032*, 1035 (8th Cir. 2007), citing *Morris v. Union Pac. R.R., 373 F.3d 896*, 902 (8th Cir.2004).[1] Because the Court can apply circumstantial evidence, it is important to review the factual and party positions relative to each other and the respective responsibility to discovery in this case.

Defendants and witnesses employed by Defendants have testified not only to receiving no notice or training of an established routine for preservation of electronically stored information (ESI), but specifically Defendants have testified that communications made *only* electronically, such as text messages and data and communication applications downloaded to phones and designed and used specifically for the "operation" to enforce the curfew of October 7-12, 2020, were irretrievably deleted.

The Informational Technology Director for Defendant City, Jalal Ali,  testified on December 16, 2021 that such text messages and applications used on phones by law enforcement or any other agency, employee or agent involved in the curfew "operation," were not under his control and were therefore not archived by his department.  Jalal Ali also testified that with regards to text messages, from May 25, 2020 through December 16, 2021 in relation to this lawsuit and outside of his representation by Gunta Law Offices which presumably began early December

---

[1] "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pac. R.R., 373 F.3d 896*, 902 (8th Cir.2004).

6

2021, that no one told him to preserve his text messages. (Exhibit 6, Ali deposition, page 94 & 95 ¶ 24 - ¶1). In addition to this, he admitted that no one asked if he had access to the protestor list until he was deposed by Plaintiffs on December 16, 2021. Mr. Ali further testified that he regularly used texting for his work with the City, that he received texts from City of Wauwatosa employees and elected officials as to "IT functionality." (Exhibit 6, Ali deposition, page 94 ¶ 7 - ¶ 17).

In addition to Mr. Ali's evidence that no reasonable, appropriate or timely preservation and retention measures were taken, Plaintiffs also uncovered evidence through depositions that Defendants and defendants' agents made, stored and then deliberately deleted electronically stored information.

In his deposition of May 13, 2021, Defendant Barry Weber, the former chief of police of the Wauwatosa Police Department (WPD), admitted that he did not know or understand the City of Wauwatosa email retention process, and that he did in fact delete emails regarding curfews and protesting after allegedly forwarding them to the City Attorney, Alan Kesner, and his subordinates Captain Morrison or Lt. Roy. (See Exhibit 7, Barry Weber deposition, page 108 ¶ 5 - ¶ 13). Defendant Weber also admitted to deleting emails to preserve documents related to this lawsuit after he forwarded them on to the Wauwatosa City Attorney. (Exhibit 7, Barry Weber deposition, page 108 & 109 ¶ 14 - ¶ 8). Defendant Weber further testified to "probably" communicating with Defendant McBride by text regarding the curfew. It is appropriate to presume that Weber deleted those texts as well. (Exhibit 7, Barry Weber deposition, page 111 ¶ 8 - ¶ 10).

This is especially troubling in that Barry Weber was the chief policy maker for the Wauwatosa Police Department at all times relevant to this lawsuit and he alone, and without guidance of Counsel, arbitrarily decided what emails may be relevant to this lawsuit. Defendant Weber then took unilateral action to either forward or delete ESI, knowing of his impending retirement from the Wauwatosa Police Department on June 1, 2021.

When asked whether Defendant Weber "preserve(d) any text message that you had going or coming from your work cell phone from last year" and if he had "erased those," Weber answered, "Yes, but again they're still retrievable. … [and] "they would go to the city server or whatever." (Exhibit 8, Barry Weber deposition, page 155 ¶ 17 - ¶ 20.).

However, Jalal Ali, the Director of IT for the City of Wauwatosa testified that "IT is not involved with texts." (Exhibit 9, Ali deposition, page 47 ¶ 5 - ¶ 8). Ali also indicated that texts are not preserved on the City server and when asked whether, "texts were in his networks," he

7

answered no. (Exhibit 9 Ali deposition, page ¶ 9 - ¶ 12). In short, the texts and potentially other electronically stored information was intentionally deleted by Defendant Weber and others that would be relevant to this lawsuit and are now gone forever.

Contrary to the IT Director's subsequent testimony, former Chief Weber did claim that he thought the messages could be retrieved. This testimony provides the basis to find that electronically stored information, from emails and text messages, was deliberately, purposefully destroyed. Defendant Weber has not provided any ESI information, such as texts, pictures, videos and more from his phone throughout the duration of this lawsuit.

Defendant Weber is not the only person who deleted ESI relevant to this matter.

In his deposition of June 23, 2021, Dominick Ratkowski testified that officers would take pictures of people at a protest and then forward or display these images/information to him. Ratkowski further testified that he would then be asked to identify people. (See Exhibit 9, Ratkowski deposition, page 26.). Ratkowski responded to Plaintiffs' counsel of "before June 21, 2021, you have not been asked to provide any information to your counsel?" and he testified, "No. Before I got the subpoena, I was not asked for anything." (Exhibit 10, Ratkowski deposition, page 42.). Defendant Ratkowski has not provided any ESI information, such as texts, pictures, videos and more from his phone throughout the duration of this lawsuit.

In his deposition of July 26, 2021, Defendant Officer Joseph Roy testified as being the person responsible for responding to all requests for records, in compliance with Freedom of Information Act directives. He testified that "I was assigned overseer of the open records division." (Exhibit 11, Roy deposition, page 19 & 20). Defendant Roy further testified that he did have a phone with the ability to text during the curfew enforcement operations. When asked if he sent or received text messages regarding protesting or curfews from his fellow officers, he testified "not directly that I can recall about curfew." (See Exhibit 11, Roy deposition, page 62). This answer confirms his possession and use of text messages and other communication via his phone.

This answer is particularly important because as "overseer" of records, the documents requested by Plaintiffs in their First Request for Production on January 6, 2021 – six months prior to the deposition – should have been directly asked of him to satisfy Plaintiffs production. He also would have had a much better grasp of the answer to a relatively straightforward question regarding records and communications in particular. Defendant Roy did not provide any ESI information, such as texts, pictures, videos and more from his phone.

8

In his deposition of August 19, 2021, Defendant Detective Martin Keck testified that he would use his personal phone to communicate with other operational personnel in a professional capacity via text messages and email for police business and that it "only stores texts for 30 days…," (Exhibit 12, Keck deposition page 74). He also testified that he texted with co-workers and was "never advised," to preserve any texts from October 7 – 12, 2020 or at any other point, thus they are deleted forever. (Exhibit 12, Keck deposition page 74).

Defendant Keck further testified that with regards to his notes for investigations it is his common practice to "throw them out, destroy them." (Exhibit 13, Keck deposition page 14.) He has no recollection of taking any notes and being told of any requirement to, "preserve any of your notes, e-mails or any documentation as it relates to protesting in the City of Wauwatosa for 2020." ( Exhibit 14, Keck deposition page 107). Defendant Keck did not, and now cannot provide all ESI information such as texts, pictures, etc. from his phone throughout the duration of this lawsuit.

In his deposition of August 20, 2021, Defendant Captain Shane Wrucke testified that he would use his cell phone to communicate with other operational personnel in a professional capacity via text messages and email for police business, including sending images, videos, or texts during the curfew enforcement operation dates. He specifically said that he did not keep text messages or images on his phone and "does not keep text messages on his phone for very long."(See Exhibit 15 Wrucke deposition page 115). Defendant Wrucke testified that he was not advised to keep, "any messages or media or any correspondence." Defendant Wrucke also testified that he was not advised to preserve ESI by any supervisors at Wauwatosa or the police department, nor Gunta Law office at "any time" and "does not keep text messages on my phone for very long." (See Exhibit 15 at page 115).

When Defendant Wrucke was asked whether he had any text messages or correspondences, Defendant Wrucke stated, "Not that I recall." He further testified that, "the first I saw any mention of text messages was on the, is it a subpoena" referring to the Notice of Deposition served by Plaintiffs' counsel on July 20, 2021. (Exhibit 15, Wrucke at page 116). Defendant Wrucke has not provided any ESI information such as texts, pictures, etc. from his phone throughout the duration of this lawsuit.

Officer Shannon Gee and Officer Ralph Salyers of the Wauwatosa Police Department, both testified on December 1, 2021, in Wauwatosa Municipal Court for obstruction tickets received by Plaintiff William Schroeder and Plaintiff Joanna Geisler during the curfew of October 7 – 12,

2020. The officer testified that they were instructed by WPD supervisors to download an application to their phones (personal or city-issued), and to use the application to capture and forward information electronically for anyone who was arrested and/or transported by officers during the October 7 – 12, 2020 curfew. (See Exhibit 16, Declaration of Attorney Kimberley Cy. Motley 01/20/22).

It should be noted that at the time of the October 7 – 12, 2020 curfew, there were hundreds of law enforcement officers from more than a dozen local police departments and federal agencies who were dispatched to Wauwatosa to provide "aid." Presumably, there were approximately ninety (90) Wauwatosa police officers working with the Wauwatosa Police Department. Based on the testimony of various officers, they and similarly situated officers pf cooperating agencies were never told to preserve ESI. Defendants' Counsel has also failed to provide all ESI information such as texts, pictures, etc. from WPD officers' phones throughout the duration of this lawsuit and despite direct discovery requests made by Plaintiffs as early as January 6, 2021.

### c. <u>Argument</u>

But for Attorney Motley representing Plaintiffs Schroeder and Geisler for their civil municipal obstruction tickets in the Wauwatosa Municipal Court on 12/1/21, it is highly likely that this directly relevant and responsive information would have remained undiscovered.

Defendants and Defendants' Counsel have not at any time advised that any digital/electronic-only application had been designed and used specifically for the purpose (directly applicable to this lawsuit's controversy) described by the testifying officers in municipal court. Most disconcerting and inexcusable is the fact that but for the continuing ramifications for Plaintiffs outside of this federal action, this evidence may not have been uncovered.

Plaintiffs properly served requests for production of documents on January 6, 2021, more than a year ago, correctly seeking this directly relevant information. Numerous deponents provide the basis to find that Defendants were in possession of directly relevant ESI which had been deliberately and specifically destroyed. It is only through seemingly accidental and peripheral luck, that this directly relevant evidence has come to light, yet remains unavailable because of its destruction by the Defendants. Such evidence in ESI was clearly known to, collected, organized, manipulated and used by Defendants, and then summarily and purposefully deleted even with the

10

knowledge of this lawsuit and multiple preservation requests, as testified to by numerous Defendants in this lawsuit. This demonstrates Defendants' complete disregard, utter bad faith, and deliberate intent to deprive Plaintiffs of this information.[2] Parties are not required or even expected to conduct discovery by accident. Such disregard for basic compliance and good faith cannot stand.

Defendants' deliberate spoliation in this case is particularly disrespectful to the discovery process as this is not a controversy between two equally situated parties; for example, two companies fighting over proprietary information, or even an employee dispute with an employer, may both arguably have access and opportunity, at some point, to the ESI that may be foundational to subsequent claims. Rather, in this case, the Plaintiffs are completely at the mercy of the Defendants to follow proper discovery rules both for preservation and disclosure, in order to secure evidence to justly prosecute the controversy, deliver the truth, and potentially prevail on their claims. Here, numerous defendants testified that they were not even instructed to preserve evidence related to this lawsuit.

It is undisputed that only the Defendants, their agents and organization had and have unilateral control of how, when and between whom, communications, directives and "operations" occurred in this case. Not only can intent (a necessary element to some of Plaintiffs' claims) be gleaned and evidenced from such communication, but so can actual actor identity, process, and method be evidenced. It is only through channels controlled exclusively by Defendants that evidence directly relevant and implicating the heart of the claims can be found. Distinct from actions wherein the moving party may have at one point had access to and/or control of some information that the nonmoving party has destroyed, in this instant case, Plaintiffs simply don't know what we don't know.

With this knowledge, and arguably specifically *because* of this knowledge, Defendants deliberately took steps to block their communications and actions from view and ensure irreparable destruction of same. This action by the Defendants not only undermines what is routinely recognized as a necessary standard for democracy: public oversight and accountability, but from the proper discovery process in a federal lawsuit alleging authoritarian infringement of citizens' Constitutional rights. It is worth noting that in the interests of safety and domestic security, there

---

[2] Defendants only provided any confirmation and information pertaining to this application after Plaintiffs' counsel informed them of Officer Gees' testimony.

are exceptions from that public scrutiny. But Defendants do not, and cannot invoke those exceptions here. This Honorable Court already deemed necessary the strict adherence to the principles of transparency, not only for the administration of justice, but also for the credibility of the process. This Court already outlined the requirements for such invocation, comprehensively disposed of this issue in this case, as to protection of individual confidential informants and personally identifying information, neither of which apply to the communications at issue for this motion.

Given these explicit and overwhelming violations of Rule 37(e) by the Defendants, prejudice is a foregone conclusion. FRCP 37 (e)(1) necessarily assumes the existence of prejudice when spoliation has occurred, and in confirming the intent to deprive, subdivision (e)(2) is implicated and imparts a rebuttable inference of prejudice in order to (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) enter a default judgment.[3] That is, once finding an "intent to deprive," a court may order a default judgment on liability, as the standard of prejudice is met. (*See Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, No. 12 CV 1851 (N.D. Ill. Sep. 13, 2016), presuming prejudice because the nonmoving party had acted with an intent to deprive.).

In the instant case, the evidence that is now not available to the Plaintiffs is absolutely more than "minimal," and has a direct impact on the ability of the Plaintiffs to prosecute some of their claims, as well as having a direct impact on the administration of justice. Courts have depended upon far less in determining the degree of prejudice. In *McQueen v. Aramark Corporation*, for example, it was enough for the court that the loss "may very well have an effect" on the ability of the moving party to pursue their claim. *McQueen v. Aramark Corp.*, No. 2:15-CV-492-DAK-PMW (D. Utah Nov. 29, 2016) at 8. In this case, the communications between, and information obtained, constructed and maintained by the Defendants during the actual events giving rise to the claims, are critical to Plaintiffs' case.

---

[3] Default judgment is an appropriate sanction where: (1) there is "a clear record of delay or contumacious conduct"; (2) less drastic sanctions have proven ineffective; or (3) a party has demonstrated willfulness, bad faith, or fault. Domanus v. Lewicki, 742 F.3d 290, 301 (7th Cir. 2014) (quoting Maynard v. Nygren, 332 F.3d 462, 467 (7th Cir. 2003); In re Thomas Consol. Indus., Inc., 456 F.3d 719, 724 (7th Cir. 2006))

### d. __Appropriate Sanctions__

The repeated failures by Defendants and Defendants' Counsel cannot be remediated and have an irreparable prejudicial effect on the Plaintiffs claims such that Rule 37(e) alternatives and the inherent authority of this Court must be exercised. In this case in particular, implicating Constitutional issues where Defendants are government entities and personnel, strict construction of discovery rules must attach to Defendants because Defendants have unilateral control of the substantive information at issue in this case. Defendants' actions at issue in this case involve concerted, organized and documented communication, decisions, operations over an extended period of time, and to which access is restricted and now, lost forever. In short, Plaintiffs have been completely at the mercy of Defendants' adherence to the rules, and the Court's willingness to uphold them.

Plaintiffs respectfully request that due to the repeated, severe and irreparable impact of Defendants' failure to comply with FRCP 37(e), the Court find and order costs as well as to adopt 1) designated facts to be established; 2) provide adverse inferences instructions to the jury; and 3) order default judgments as follows:

### 1. ESTABLISHED FACTS

Plaintiffs respectfully request that the Court order the following established facts:

     i.     Plaintiffs were unreasonably seized by law enforcement during the October 7 – 12, 2020 curfew.

     ii.     Plaintiffs' property was unreasonably seized by law enforcement.

     iii.     Plaintiffs were targeted, monitored, and surveilled by law enforcement for their participation in lawful protests during times giving rise to this lawsuit.

     iv.     Law enforcement officers used unreasonable, disproportionate and excessive force during time giving rise to this lawsuit.

     v.     Law enforcement misconduct occurred at the direction of Defendants.

     vi.     Law enforcement refused, restricted and interfered with Plaintiffs' lawful communication with legal counsel during the October 7 – 12, 2020 curfew.

     vii.     Defendants targeted, monitored and surveilled persons whom they believed to be affiliated with or "members" of the People's Revolution, an

13

unincorporated entity.

viii.    Law enforcement willfully conspired, oppressed, threatened, and/or intimidated Plaintiffs in the free exercise or enjoyment of rights and privileges secured to them by the Constitution or laws of the United States.

ix.    Law enforcement accessed and instructed personnel to access proprietary databases to target, monitor and surveil Plaintiffs.

x.    Law enforcement conspired to not intervene or protect Plaintiffs from excessive, unreasonable force, search and seizure.

**2.    ADVERSE INFERENCE**

Plaintiffs respectfully request that the Court order the following instruction be given to the jury that hears this case:

You have heard that Defendants failed to produce some of the ESI by way of text messages, videos, photographs, police data, communications and emails by and between the Defendants and Defendants' personnel during times that are implicated in this lawsuit, and specifically, but not limited to October 7-12, 2020.  This evidence  was in Defendants' control and Plaintiffs argue that if properly preserved and produced, it would have proven facts material to the matter in controversy.

If you find that Defendants could have produced this evidence, and that the evidence was within its control, and that the evidence would have been material in deciding facts in dispute in this case, you are permitted to infer that the evidence would have been unfavorable to Defendants.

**3.    DEFAULT JUDGMENTS**

Plaintiffs respectfully request that the Court enter the following default judgments:

i.    Defendant law enforcement unlawfully seized Plaintiffs at all times implicated by this lawsuit.

ii.    Defendant law enforcement used excessive force at all times implicated by this lawsuit.

iii.    Defendant law enforcement barred Plaintiffs from their right to Counsel at all times implicated by this lawsuit.

iv.    Defendant law enforcement adopted a policy and practice to target persons

14

who were lawfully assembled at all times implicated by this lawsuit.

      v.    Defendant law enforcement unlawfully seized Plaintiffs' property at all times implicated by this lawsuit.

      vi.    Defendant law enforcement unlawfully searched Plaintiffs and their property at all times implicated by this lawsuit.

      vii.    Defendant law enforcement targeted, monitored and surveilled persons based upon perceived political affiliations at all times implicated by this lawsuit.

      viii.    Defendant law enforcement conspired to deprive Plaintiffs of their Constitutional rights at all times implicated by this lawsuit .

      ix.    Defendants conspired to deprive Plaintiffs of their Constitutional rights at all times implicated by this lawsuit .

## II.    Rule 37(a)(4):  Evasive or Incomplete Disclosure, Answer, or Response.

### a.    The Rule 37(a)(4) Request for Production of Documents

**Pursuant to Rule 37(a)(4) an "Evasive or Incomplete Disclosure, Answer, or Response. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."**

### b.    Statement of Facts and Evidence – *Requests for Production of Documents*

Discovery closed on December 31, 2021.

On July 7, 2021, Plaintiffs filed a Motion to Compel (ECF #37). Defendants never disputed the underlying facts and contentions in the motion.  There is no dispute that Plaintiffs are entitled to the requested discovery, but absent any consequences, Defendants have not been compelled to provide the documents despite being given nearly one full year to comply with Plaintiffs request for production of documents served on January 6, 2021.

Despite numerous court orders and warnings, meet and confer conferences and substantial compromises by Plaintiffs of discovery being sought, Defendants continue to withhold and evade their legal obligation to produce discovery. Highlighting this reality, since the Court status conference on November 1, 2021, Plaintiffs have not received one single new email, nor ESI from most Defendants.

Please see attached tables of missing discovery. (See attached Exhibit 17 – Plaintiffs Request for Production of documents missing discovery).

### III. Rule 33. Interrogatories to Parties

#### a. **The rule.**

**Pursuant to Rule 33(b) Responding Party.**

(1) *Responding Party.* The interrogatories must be answered:

    (A)    by the party to whom they are directed; or

    (B)    if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

(2) *Time to Respond.* The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(3) *Answering Each Interrogatory.* Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

(4) *Objections.* The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

(5) *Signature.* The person who makes the answers must sign them, and the attorney who objects must sign any objections.

#### b. **Statement of Facts and Evidence – Response to Interrogatories**

Plaintiffs have served a total of four interrogatories and sixteen requests for admissions throughout the entirety of this lawsuit. All sixteen (16) requests for admissions have been answered by appropriate Defendants. Not one Defendant has responded to all four of the interrogatories. Only one Defendant, Dominick Ratkowski, has responded to three of the interrogatories (amending his answer twice, once without signature). One witness, Jalal Ali, an employee of Defendant City, has responded to one interrogatory. (See attached Exhibit 18 – Plaintiffs Comprehensive Table Regarding Interrogatories.)

16

By contrast, Defendants have served Plaintiffs with 1,162 interrogatories and 785 Requests for admissions total.  All 785 requests for admissions have been answered by appropriate Plaintiffs.   All sixty-seven of the Plaintiffs have responded to all of the 1,165 interrogatories with their signatures.  This is clearly demonstrated in the tables below.

**PLAINTIFFS INTERROGATORIES & REQUESTS FOR ADMISSIONS REQUESTED 6/26/21 & 9/16/21**

| DATE Plaintiffs Served Inter. | Interrogatory Question | Defendants' RESPONSE |
|---|---|---|
| 06/26/21 - Plaintiffs Interrogatories 3 Interrogatories were served on all Defendants | Question #1<br><br>3 Defendants Total:  NONE  Responded in any way<br><br>1 response from Witness Dominick Ratkowski | 3 questions per 3 Def. 9 Questions Total<br><br>0 Responses by Defendants |
| 06/26/21 | Interrogatory Question #2<br><br>3 Defendants Total NONE Responded in any way<br>1 response from Witness Dominick Ratkowski | 3 questions per 3 Def. 9 Questions Total<br><br>0 Response by Defendants |
| 06/26/21 | Interrogatory Question #3<br>3 Defendants Total NONE Responded<br>1 response from Witness Dominick Ratkowski | 3 questions per 3 Def. 9 Questions Total<br><br>0 Responses by All Defendants |

| DATE Plaintiffs Served Inter. | Interrogatory Question | Defendants' RESPONSE |
|---|---|---|
| 9/16/21<br>PL Interrogatory – 1 Question served as to all Defendants | Question #1<br><br>12 Defendants total NONE Responded in any way,<br>1 response from Witness Jalal Ali | 1 question per 12 Def.<br>12 Questions Total<br><br>0 Responses by All Defendants |
| 9/16/21<br>PL Req. for Admissions - 16 Req. for Admissions | Defendants Answered all of Plaintiffs Req. for Admissions | 16 Requests for Admissions<br><br>All 16 Answered by appropriate Defendants |

### DEFENDANTS INTERROGATORIES & REQUESTS FOR ADMISSIONS REQUESTED
### 3/30/21, 6/15/21 & 9/16/21

| DATE Defendants Served Inter. | Interrogatory Question | Plaintiffs' RESPONSE |
|---|---|---|
| 03/30/21<br>Defendants Interrogatories<br>12 Questions as to 2 Plaintiffs | Questions #1 - #12<br><br>Two Plaintiffs Responded to all 12 Interrogatories | 12 Questions per 2 Plaintiffs<br>24 Questions Total<br><br>24 Questions Responded to by Plaintiffs |
| 3/30/21<br>Defendants Req. for Admissions<br>- 57 Req. for Admissions | Plaintiffs Answered all of Defendants Req. for Admissions | 57 Requests for Admissions<br><br>All 57 Answered by appropriate Plaintiffs |

18

| | | |
|---|---|---|
| | | |
| 6/15/21<br>Def. Interrogatory –<br>18 Questions served<br>to 50 Plaintiffs | Questions #1 - 18<br><br>50 Plaintiffs total<br>all Responded in<br>some way | 18 questions per 50 Plaintiffs<br>900 Questions Total<br><br>All Plaintiffs Responded to All Interrogatories |
| 6/15/21<br>Defendants Req. for<br>Admissions<br>- 728 Req. for<br>Admissions | Plaintiffs Answered<br>all of Defendants<br>Req. for<br>Admissions | 728 Requests for Admissions<br><br>All 728 Answered by appropriate Plaintiffs |
| | | |
| 9/16/21<br>Def. Interrogatory –<br>14 Questions served<br>to 17 Plaintiffs | Questions #1 - 14<br><br>17 Plaintiffs total<br>all Responded in<br>some way | 14 questions per 17 Plaintiffs<br>238 Questions Total<br><br>All Plaintiffs Responded to All Interrogatories |

 

    **c.**    <u>**Appropriate Sanctions**</u>

       Plaintiffs respectfully request that due to the repeated, severe and irreparable impact of Defendants' failure to produce documents pursuant to FRCP 37(a)(4). And their failure to respond to interrogatories pursuant to FRCP 33(b)(1)(A) including the failure pf eleven out of twelve defendants to responding to any of the interrogatories. Plaintiffs respectfully request that the Court find and order costs as well as 1) order designated facts to be established; 2) order adverse inference instructions to the jury be adopted; and 3) enter default judgments as follows:

       **1.**    **ESTABLISHED FACTS**

       Plaintiffs respectfully request that the Court order the following established facts be given to the jury that hears this case:

i.      Plaintiffs were targeted, monitored, and surveilled by law enforcement based upon their participation in lawful protests during all times giving rise to this lawsuit.

ii.     Defendants targeted, monitored and surveilled persons whom they believed to be affiliated with or "members" of the People's Revolution, an unincorporated entity.

iii.    Defendant law enforcement unlawfully shared the protestor list.

iv.     Defendants unlawfully shared the protestor list.

## 2.      ADVERSE INFERENCE

Plaintiffs respectfully request that the Court order the following instruction be given to the jury that hears this case:

You have heard that Defendants failed to produce and disclose all of the persons or entities with whom they shared the protestor list.  This evidence was in Defendants' control and Plaintiffs argue that Defendants shared it for an unlawful purpose.

If you find that Defendants could have produced this evidence, and that the evidence was within its control, and that the evidence would have been material in deciding facts in dispute in this case, you are permitted to infer that the evidence would have been unfavorable to Defendants.

## 3.      DEFAULT JUDGMENTS

Plaintiffs respectfully request that the Court enter the following default judgments:

i.      Defendants were prohibited from creating the protester list.

ii.     Defendants were prohibited from sharing the protestor list.

iii.    Defendants unlawfully targeted, surveilled and monitored Plaintiffs.

iv..    Defendant law enforcement targeted, monitored and surveilled persons based upon perceived political affiliations at all times implicated by this lawsuit.

20

## IV. Rule 37(b) Failure to Comply with a Court Order.

### a. The rule.

Rule 37(b) Failure to Comply with a Court Order.

(2) *Sanctions Sought in the District Where the Action Is Pending.*

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

### b. Statement of Facts and Evidence

The facts are best demonstrated by the docket of the Court. The timeline below is provided for efficiency.

| DATE | ECF # | COURT ORDER | Defendant's Non-Compliance with Court Order |
|------|-------|-------------|---------------------------------------------|
|      |       |             |                                             |
| 7/13/2021 | 38 | "We need to keep this case moving forward." … [Court] "is willing to bring police and other officials to a hearing regarding these discovery issues." | Defendants have failed to provide discovery obligations See Exhibit 17 & 18 |
| 8/23/21 | 50 | "...orders all discovery to be given in its unredacted form AND Defendants' redacted version. This includes already sent redacted emails and documents." | 22 texts messages from Defendant McBride redacted and never given unredacted docs<br><br>Jalal Ali – redacted docs provided 12/21/21 without unredacted versions |
| 8/26/2021 | 51 | "Defendants will have discovery completed, bates labeled and to Plaintiffs' counsel on or before September 10, 2021."sharn | Defendants have failed to provide discovery obligations See Exhibits 17 & 18 |
| 10/1/2021 | 90 | "Defendants to submit all outstanding discovery to Plaintiffs by October 8th, 2021." | Defendants have failed to provide discovery obligations See Exhibits 17 & 18 |
| 10/19/2021 | 99 | "Further, as this has been an issue in this case, I remind the parties that Fed. R. Civ. P. 33(b)(5) requires that the person who answers the interrogatories also signs them." | 11 out of the 12 Defendants have never responded to interrogatories in any way.<br><br>Defendant Dominick Ratkowski responded to three of the four interrogatories.<br><br>Witness Jalal Ali responded to 1 of the 4 interrogatories. |

| 11/1/2021 | 104 | "Defendants to submit a letter specifying a date certain that emails can be provided to Plaintiffs." | Defendants have not provided one new email since the court's status conference of 11/1/21 |
|---|---|---|---|
| 11/23/2021 | 112 | In response to Court order to provide a date certain to produce emails, Defendants provide a date certain of 1/7/22 outside of the scheduling Order | Defendants have failed to provide discovery obligations See Exhibits 17 & 18 |

Additionally, there are multiple examples of Defendants and/or Defendants' Counsel deliberately altering documents, producing what are characterized and named as the same responsive document, but with different substantive information being either hidden from view, or containing new substantive information.

### c. **Argument**

The language of the rule is plain and unambiguous. The facts speak for themselves, not only through the actual court docket, but in the correspondence authored by Defendants' Counsel.

### d. **Appropriate Sanctions**

Plaintiffs respectfully request the Court order all the aforementioned facts, adverse inferences and default judgments. Defendants have failed, demonstrating a pattern and practice of contempt for this Court's orders, as well as the most basic FRCP, both in spirit and in fact. Defendants' failure has substantially and irreparably prejudiced the Plaintiffs.

## **CONCLUSION**

Discovery closed on December 31, 2021. Appropriately, Plaintiffs structured their discovery strategy and now their trial preparation strategy in full compliance with all controlling orders. Without respect for the rules of civil procedure and court orders, the administration of justice is meaningless; access is denied.

In this matter, time will not rectify the discovery violations. More time will only serve to prejudice these sixty-seven (67) Plaintiffs. Defendants have repeatedly shown this Court that they are incapable of complying with deadlines, and that stringent consequences are required. We agree with this Court, that, "[w]e need to keep this case moving forward." (ECF #38).

A remedy beyond simple production is required. Defendants have established a pattern and practice of deliberate defiance of production, both in form and by specific dates, and even when ordered by this Court. For nearly a year, in excess of 50 weeks, relevant evidence to this lawsuit has been deliberately and purposefully destroyed, and would be compromised even if produced.

We ask the court to grant this motion and for sanctions in the form of costs, established facts, that the jury be instructed on the adverse inferences and for default judgment on all of Plaintiffs' claims. Unfortunately, plaintiffs don't know what they don't know, specifically can't know what is deliberately withheld from them, and they are without recourse to evidence that has been destroyed or hidden through willful and purposeful obstruction. Plaintiffs already have and continue to experience substantial harm as a direct result of Defendants' and Defendants' Counsels' deliberate discovery misconduct.

Dated this 21st day of January, 2022.

**COUNSEL FOR PLAINTIFFS**

By: /s:/ Kimberley Cy. Motley, Esq.
WI State Bar No. 1047193
Motley Legal Services
2206 Bonnie Butler Way
Charlotte, North Carolina 28270
Telephone: (704) 763-5413
Email : kmotley@motleylegal.com

/s/ Kathryn L. Knowlton
WI State Bar No. 1032814
Knowlton Law Group, LLC
7219 West Center Street
Wauwatosa, WI 53213
Telephone: (414) 202-2444
Email: kate@knowltonlawgroup.com

E. Milo Schwab
Email :milo@ascendcounsel.co

24