# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

KATHRYN KNOWLTON, *et al.*,

    **Plaintiff,**

    **v.**                                    **Case No. 20-CV-1660**

CITY OF WAUWATOSA, *et al.*,

    **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

Plaintiffs, comprised of sixty-eight individuals and an unincorporated entity, sue the City of Wauwatosa (the "City"), former Wauwatosa Police Department ("WPD") Chief of Police Barry Weber, Wauwatosa Mayor Dennis McBride, WPD employee Dominick Ratkowski, Wauwatosa Municipal Court prosecutor George Schimmel, WPD Officers Luke Vetter, Jeffrey Farina, Joseph Roy, Joseph Lewandowski, Martin Keck, and Shane Wrucke, Wauwatosa Common Council member Kathy Causier, and John Does 1-100 (the "John Doe Officers") (collectively "Defendants") for numerous constitutional and other federal law violations. Defendants now move to dismiss Plaintiffs' Third Amended Complaint on the ground that it fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Docket # 108.) For the reasons explained below, the motion to dismiss is granted and the complaint is dismissed without prejudice (except as to Count Twelve which is dismissed with prejudice). However, Plaintiffs are granted leave to re-file their complaint consistent with this decision.

## BACKGROUND

On February 2, 2020, 17-year-old Alvin Cole was shot and killed by former WPD Officer Joseph Mensah at the Mayfair Mall in Wauwatosa. (Third Am. Compl. ¶ 122, Docket # 56.) On May 25, 2020, George Floyd, a Black man, was shot and killed at the hands of a white police officer in Minnesota. (*Id.* ¶ 79.) In their Third Amended Complaint, Plaintiffs allege that in the wake of these deaths and others, throughout the summer of 2020, the United States was "immersed in the largest social justice movement in history. In a repudiation of anti-Black racism, white supremacy, police violence, mass criminalization, and mass incarceration . . . ." (*Id.* ¶ 1.) Plaintiffs allege that "millions joined demonstrations around the globe in solidarity against police violence which was inspired by the tragic deaths of persons like George Floyd, Breonna Taylor, Alvin Cole, Sandra Bland, Jay Anderson, Dontre Hamilton, Elijah McClain, and far too many other black Americans killed at the hands of police." (*Id.*)

Plaintiffs allege that they, as well as thousands of others, engaged in a wide variety of actions throughout the summer and fall of 2020, including rallies, marches, and other "creative protests" to oppose police violence. (*Id.* ¶ 2.) Plaintiffs allege that one political protest movement emerging in Wisconsin after George Floyd's death was called The People's Revolution ("TPR"). (*Id.* ¶ 3.) TPR organized and began protesting in May 2020, after George Floyd's death. (*Id.* ¶¶ 3–4.) Then, on June 1, 2020, Officer Mensah's identity and role in the shooting of Alvin Cole was made public. (*Id.* ¶ 125.) As a result, Wauwatosa became the center of several protests while the Alvin Cole shooting was under review by the Milwaukee County District Attorney's office. (*Id.* ¶ 126.) Plaintiffs allege that on or around June 5, 2020, Defendant Dominick Ratkowski, an employee of the WPD, created a "protester list" for the

purpose of monitoring and targeting persons whom the WPD perceived to be members of, or in sympathy with, ideas expressed by TPR, including members of the public who were simply physically at a gathering. (*Id.* ¶¶ 13, 83.)

On July 15, 2020, Wauwatosa's Police and Fire Commissioner suspended Officer Mensah with pay. (*Id.* ¶ 132.) On July 21, 2020, the Wauwatosa City Government sponsored a "listening session" with the public. (*Id.* ¶ 37.) Protests subsequently occurred in the City of Wauwatosa in August and September 2020. (*Id.* ¶¶ 40, 47.)

On September 30, 2020, Mayor McBride signed a "Proclamation of Emergency" (the "Emergency Order") which enacted a curfew restricting pedestrian and vehicular traffic on Wauwatosa streets from 7:00 p.m. to 6:00 a.m. from October 7 to October 12, 2020. (*Id.* ¶ 136.) Plaintiffs allege that former Chief of Police Weber stated that he recommended the curfew to Mayor McBride because of the anticipated charging decision in the Alvin Cole case, as well as reactions to murder of George Floyd in Minneapolis, Minnesota on May 25, 2020 and the shooting of Jacob Blake in Kenosha, Wisconsin on August 23, 2020, which both involved law enforcement officers. (*Id.* ¶¶ 4, 119, 140–41.) On October 7, 2020, Milwaukee County District Attorney John Chisholm announced that Officer Mensah would not be criminally charged for the shooting of Alvin Cole. (*Id.* ¶ 135.)

Plaintiffs allege that they are persons who were "ticketed, arrested, and/or targeted for being physically present or engaging in peaceful protests in Wauwatosa in the wake of the homicides of George Floyd, Alvin Cole, and the shooting of Jacob Blake, as well as peacefully protesting the inequitable treatment imposed upon persons of color who have been severely hurt or killed by police officers." (*Id.* ¶ 6.) Plaintiffs further alleges that the Emergency Order— passed and signed by Mayor McBride without the knowledge or approval of the Wauwatosa

Common Council—gave rise to unconstitutional tactics by the WPD intended to injure, silence, and intimidate Plaintiffs, including beating protestors, engaging in false arrests, creating false arrest records, using chemical agents, and kettling protestors in enclosed areas. (*Id.* ¶¶ 7–8, 137.) Plaintiffs allege that the police response also included unlawful surveillance, monitoring, and targeting of protestors, particularly those associated with TPR. (*Id.* ¶¶ 3, 79, 128.)

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing

4

*Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

### 1. Initial Matters

The first iteration of this complaint was filed on November 2, 2020. (Docket # 1.) In this complaint, two plaintiffs, Kathryn Knowlton and Dana McCormick, sued the City of Wauwatosa, WPD Police Chief Barry Weber, and Mayor McBride based on the defendants' alleged actions stemming from the Emergency Order. (*Id.*) On March 6, 2021, Plaintiffs filed a first amended complaint, adding 50 new plaintiffs and John Doe officer defendants, but again, bringing multiple causes of action arising from the Emergency Order. (*Id.* ¶ 6.) On August 21, 2021, Plaintiffs filed what they called their "Third Amended Complaint" (although this was actually the Second Amended Complaint), now with over 60 named plaintiffs and multiple additional defendants, including Wauwatosa's Common Council President Kathy Causier (Docket # 47 at ¶ 84) and Attorney for the City of Wauwatosa, George Schimmel (*id.* ¶ 85). Plaintiffs filed a "corrected" version of the "Third Amended Complaint" on September 8, 2021. (Docket # 56.) It is this version that is now the operative pleading in this case.

This most recent complaint suffers from multiple defects that will be addressed below. However, it has several overarching issues that infect the entirety of the complaint. This complaint spans 204 pages and contains 1,523 allegations. (*Id.*) There are sixteen causes of action. (*Id.*) When this case was initially filed in November 2020, it addressed the Emergency Order and the October protests. The current complaint, as specifically alleged, *still* "primarily arises from the City of Wauwatosa's Emergency Order unlawfully and unilaterally passed and signed by the Mayor Dennis McBride on September 30, 2020 . . . ." (Third Am. Compl. ¶ 7.)

Unfortunately, however, neither the named Plaintiffs nor their asserted causes of action reflect this statement. While all 60+ Plaintiffs were somehow involved in protests during summer and fall of 2020, the bulk of Plaintiffs' allegations, again, "primarily arises from the . . . Emergency Order." Because of this, the majority of the Plaintiffs' sixteen causes of action, many of which are brought by all Plaintiffs against all Defendants, do not actually apply to all Plaintiffs listed. Again, while I will address each cause of action in detail below, a good example is Claim One, which alleges unlawful seizure arising from the Emergency Order. However, this claim is brought by multiple Plaintiffs that were neither seized nor even present at the October protests.

The complaint suffers overbreadth as to the named Defendants as well. Plaintiffs sue the City of Wauwatosa, eleven named individuals, and John Doe officers. With the exception of Mayor McBride, however, all of the individuals are sued in their official capacities. Only Mayor McBride is sued in both his official and individual capacities. Under § 1983, however, an official capacity action against a government official is treated as a suit brought against the government entity itself. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). In an official

capacity suit, "the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a government because the real party in interest is the entity[.]" *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). As such, the alleged constitutional deprivation must be linked to a policy or custom of the entity. *Id.* Despite this law, a majority of Plaintiffs' causes of action are against "all defendants," which includes these individuals sued in their official capacities only. This is incorrect.

There is also the matter of the John Doe Officers. Plaintiffs name John Doe Officers as defendants in the caption, but it is unclear in the body of the Third Amended Complaint when causes of action are being asserted against them. While Plaintiffs may assert causes of action against John Doe Officers at this stage in the case, the complaint as it stands is insufficient to give Defendants proper notice as to which causes of action the John Doe defendants are named in and what the allegations against them are.

These fundamental errors have created a long and confusing complaint in which it is entirely unclear which Plaintiffs allege what claims against which Defendants. Incredibly, at times the Plaintiffs allege causes of action against "all relevant defendants." But it is the *Plaintiffs'* job to connect the dots between the allegations and the relevant defendants. Plaintiffs' allegations against "relevant defendants" are tantamount to telling the defendants that "you know which one of you did what." This is entirely insufficient, even under notice pleading standards. "A federal court is not obligated to sift through a complaint to extract some merit when the attorney who drafted it has failed to do so himself. 'Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.'" *Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011) (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

Plaintiffs will be given leave to file an amended complaint. Plaintiffs are instructed, however, to file an organized and concise document. Remember that "[l]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." *Garst*, 328 F.3d at 378. Furthermore, Plaintiffs are warned that this amended complaint must clarify which Plaintiffs sue which Defendants. Plaintiffs should consider the law on official and individual capacity claims under § 1983 and sue accordingly. While it is true that pleading rules favor decision on the merits rather than technicalities, as the Seventh Circuit has stated, "these general principles have some limits." *Nygren*, 658 F.3d at 800–01. After over a year of litigation, we still do not have a proper operative complaint. If Plaintiffs cannot remedy these errors as articulated in this decision, Plaintiffs risk having this complaint dismissed with prejudice. With this background in mind, I will now turn to the specific deficiencies in each cause of action.

2.      *Section 1983 Claims*

The following causes of action in Plaintiffs' Third Amended Complaint are brought under § 1983: Counts 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 13, 14, and 16.

2.1      Legal Standards

Section 1983 provides a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim for relief under § 1983, a plaintiff must allege: (1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person or persons acting under color of state law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

8

Defendants to a § 1983 action may be sued in their individual or official capacities. In an individual capacity action, a plaintiff seeks to "impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018) (citation omitted). In other words, a plaintiff must demonstrate "a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

By contrast, an official capacity action against a government official is treated as a suit brought against the government entity itself. *Walker*, 526 F.3d at 977. In an official capacity suit, "the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a government because the real party in interest is the entity[.]" *Hill*, 924 F.2d at 1372. As such, the alleged constitutional deprivation must be linked to a policy or custom of the entity. *Id.*

A municipality is a "person" under § 1983 and may be held liable for its own violations of the federal Constitution and laws. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). Specifically, the plaintiff must prove that the constitutional violation was caused by a governmental "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* (quoting *Monell v. Department of Social Services*, 436 U.S. 658 (1978)). The Seventh Circuit has interpreted this language to include three types of actions that can support municipal liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a

9

custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)).

With these requirements in mind, I turn to Plaintiffs' specific § 1983 claims.

### 2.2 Unlawful Seizure (First Claim for Relief)

Plaintiffs[1] allege that Defendants unlawfully seized them in violation of the Fourth Amendment. (Third. Am. Compl. ¶¶ 1424–33.) The Fourth Amendment prohibits unreasonable seizures. U.S. Const. amend. IV. A seizure occurs whenever a police officer "by means of physical force or show of authority . . . in some way restrain[s] the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Further, "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," but instead requires "careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

As articulated above, the plaintiffs who bring this cause of action are overbroad. Again, Count One addresses Defendants acting "under an unlawful order," (Third Am. Compl. ¶ 1429), indicating that this cause of action only applies to those Plaintiffs who were: (1) seized (2) as the result of the Emergency Order. Although I will not go through each Plaintiff bringing this cause of action, Andrew Aaron, for example, is not alleged to be present

---

[1] Tracy Cole, Taleavia Cole, Tahudah Cole, Tristiana Walls, Kathryn Knowlton, Dana McCormick, Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Raine Cich, Rachel Dulay, Anne Delessio-Parson, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Destiney Jones, Sonora Larson, Holly Lavora, Lazarito Matheu, Molly Nilssen, Carmen Palmer, (Juvenile) Palmer, (Juvenile) Palmer, Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Jose Hernandez Ramirez, Oscar Concepcion Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, Sonja Worthy, and TPR.

at the October protests. Nor are there any allegations that Kamila Ahmed (*id.* ¶¶ 838–39, 844); Robert Agnew (*id.* ¶ 856); Mariah Smith (*id.* ¶¶ 67, 802–05); and Brandon Wilborn (*id.* ¶¶ 806–10) were ever arrested or detained. Thus, should Plaintiffs choose to replead this cause of action, only those Plaintiffs allegedly unlawfully seized, detained, or arrested should be named. Furthermore, either the cause of action must expand beyond the Emergency Order, or it must allege, for example, that Andrew Aaron's disorderly conduct arrest was an unlawful seizure.

Next, Count One is also overbroad as to the defendants named. Plaintiffs sue all defendants. As to the City, Defendants argue that Plaintiffs fail to state a claim against the City because it cannot be sued under § 1983 for an injury solely inflicted by its employees or agents. (Def.'s Br. at 5, Docket # 109.) It is well-established that "[m]unicipalities do not face *respondeat superior* liability under section 1983 for the misdeeds of employees or other agents." *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021). As stated above, a claim is brought against a municipality under *Monell*. Plaintiffs later bring *Monell* claims (in Counts Four and Five), but that is not what they are doing in Count One as to the City. In amending the complaint, Plaintiffs should take care to only bring causes of action against the City through *Monell*.

Defendants further argue that Plaintiffs fail to state a claim against Defendants Weber, McBride, Ratkowski, Schimmel, Vetter, Farina, Roy, Keck, Wrucke, and Causier because there are no allegations in the Third Amended Complaint that any of them were personally involved in the seizure of any plaintiff. (Def.'s Br. at 5.) With the exception of Mayor McBride, Plaintiffs explicitly assert only official capacity claims against Defendants Weber, Ratkowski, Schimmel, Vetter, Farina, Roy, Keck, Wrucke, and Causier, and even the John

Doe Officers. Because a suit against a governmental official in his official capacity is treated as a suit against the official's employing governmental entity, "district courts routinely dismiss official capacity claims against individuals as 'redundant' where the appropriate municipality is also named." *Comsys, Inc. v. City of Kenosha Wisconsin*, 223 F. Supp. 3d 792, 802 (E.D. Wis. 2016). Thus, in repleading this count, Plaintiffs should not bring the claim against these individuals in their official capacity.

Which leaves Mayor McBride, sued in his individual capacity. Again, "[i]ndividual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Carmody*, 893 F.3d at 401. While a defendant's direction participation in an alleged constitutional deprivation is not required, to be liable under § 1983, a defendant must act or fail to act with a deliberate or reckless disregard of a plaintiff's constitutional rights, or the conduct causing the constitutional deprivation must occur at his direction or with his knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). The crux of Plaintiffs' allegations against McBride appear to be that he enacted the Emergency Order with the intention of depriving people of their constitutional rights, knowing the WPD would act on it by arresting people without probable cause. (Third. Am. Compl. ¶ 1429.) Although this is what I surmise, the way the complaint is currently pled, McBride's personal involvement is not entirely clear. In repleading, Plaintiffs should either clarify Mayor McBride's individual involvement or not name him.

For all of these reasons, Count One is dismissed without prejudice.

12

### 2.3 Excessive Force (Second Claim for Relief)

Plaintiffs[2] assert that Defendants subjected them to excessive force in violation of the Fourth Amendment. (Third. Am. Compl. ¶¶ 1434–39.) A claim that police officers used excessive force while making an arrest, investigatory stop, or other seizure is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 388. The ultimate question in analyzing a particular use of force is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

As with Count One above, multiple Plaintiffs named in Count Two fail to plead any allegations of excessive force. For example, the Third Amended Complaint does not contain facts sufficient to plausibly suggest that excessive force was used against the following Plaintiffs: Geisler, Schroeder, Delessio-Parson, Vega, Wojnar, Porter, Haddad, Worthy, Walls, Ahmed, Agnew, Baldwin, Hayes, Rogers, Smith, and Wilborn. In repleading this count, if Plaintiffs so choose, Plaintiffs should take care to only name those plaintiffs who can plausibly plead facts accordingly.

Also as above, Plaintiffs bring Count Two against all Defendants. However, as to Defendants Weber, McBride, Ratkowski, Schimmel, Vetter, Farina, Roy, Keck, Wrucke, and Causier, sued in their official capacities, this claim is redundant as to the City and they should

---

[2] Plaintiffs Tracy Cole, Taleavia Cole, Tahudah Cole, Tristiana Walls, Kathryn Knowlton, Dana McCormick, Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Raine Cich, Rachel Dulay, Anne Delessio-Parson, Erik Fanning, , Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Destiney Jones, Sonora Larson, Holly Lavora, Lazarito Matheu, Molly Nilssen, Carmen Palmer, (Juvenile) Palmer, (Juvenile) Palmer, Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Jose Hernandez Ramirez, Oscar Concepcion Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, Sonja Worthy, and TPR.

not be named. Furthermore, as to Mayor McBride in his individual capacity, there are no facts to suggest his personal involvement in the excessive force allegations. Again, as above, if Plaintiffs wish to bring a *Monell* claim against the City on this cause of action, they must plead it properly as a *Monell* claim. If Plaintiffs wish to sue defendants in their individual capacity, they need to allege those defendants' personal involvement.

Otherwise, the "Defendants" alleged to have engaged in excessive force seem to either be unknown or otherwise unnamed officers. For example, Plaintiffs' claims of excessive force involve unidentified officers or members of the National Guard as to the following Plaintiffs: Tahudah Cole, Taleavia Cole, and Tracy Cole; William Rivera, Aidali Rivera, Hector Rodriguez, and Lazarito Matheu; Kate Knowlton and Dana McCormick; Oscar Concepcion; Destiney Jones; Breon Foster; Jill Ferguson; Peter Sparks; and Carmen Palmer, (Juvenile Male) Palmer, and (Juvenile Female) Palmer. (Def.'s Br. at 7.) Detective Short, Officer Mitchell, and Officer Schmidt are not Defendants in this case. It appears the complaint alleges excessive force facts as to Plaintiff Fanning (by Detective Short) (*see* Third Am. Compl. ¶¶ 642–43), Plaintiff Bogenberger (by Officer Mitchell) (*id.* ¶¶ 377–83), and Plaintiff Vitucci (by Officer Schmidt) (*id.*).

Should Plaintiffs choose to replead this cause of action, as to the unknown defendants, Plaintiffs should specifically allege that excessive force was committed by a John Doe Officer. This will serve as a placeholder defendant and Plaintiffs will be given a deadline upon which to either name the officers or dismiss them. Otherwise, Plaintiffs should allege that a specific defendant engaged in excessive force against a specific plaintiff.

For all of these reasons, Count Two is dismissed without prejudice.

14

2.4     Right to Counsel (Third Claim for Relief)

Plaintiffs Taleavia Cole, Tahudah Cole, Kathryn Knowlton, Dana McCormick, and Breon Foster assert that Defendants violated their Sixth Amendment right to counsel when law enforcement officers interrogated them despite explicit notice that they were represented by counsel and their explicit invocation of said right. (Third. Am. Compl. ¶¶ 1440–43.) The Sixth Amendment guarantees the assistance of counsel in all criminal prosecutions. U.S. Const. amend. VI. Defendants argue that Plaintiffs' Sixth Amendment claim should be dismissed because the Third Amended Complaint does not allege facts indicating that the Sixth Amendment right to counsel had attached. (Def.'s Br. at 9.)

Plaintiffs' right to counsel claim conflates the protections of the Fifth and Sixth Amendments, but Plaintiffs' allegations are insufficient to state a claim under either. For the Sixth Amendment right to counsel, the Supreme Court has "pegged commencement to the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment[.]" *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 198 (2008) (internal quotations omitted). By contrast, the Fifth Amendment right to counsel derived from the Supreme Court's holding in *Miranda v. Arizona*, 384 U.S. 436 (1966) applies during custodial interrogations. But violation of the Fifth Amendment right to counsel "cannot provide the basis for § 1983 liability without use of a suspect's statements against him in a 'criminal case.'" *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1025 (7th Cir. 2006).

As the Third Amended Complaint currently stands, Plaintiffs Taleavia Cole, Tahudah Cole, Kathryn Knowlton, Dana McCormick, and Breon Foster do not allege that at the time they were interviewed, adversarial criminal proceedings against them had commenced. They

15

also do not allege that statements they made during their interrogations were used against them in a criminal case. Thus, these Plaintiffs have not stated a claim for violation of the right to counsel under either the Fifth or Sixth Amendments. Accordingly, Plaintiffs' right to counsel claim will be dismissed without prejudice.

### 2.5 Policy and Practice of Arrests for Unlawful Assembly and *Monell* Claim (Fourth and Fifth Claims for Relief)

It is in Counts Four and Five that Plaintiffs appear to be alleging their *Monell* claim. However, they again sue "all defendants." Plaintiffs[3] assert that the City, Chief Weber, and Mayor McBride violated their First and Fourth Amendment rights through a policy and practice of "directing and ordering the emergency curfew and dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those, who through law enforcement obstructive and excessive force action are made unable to comply," (Third. Am. Compl. ¶¶ 1444–49.) Plaintiffs further assert that the "unlawful acts of Defendants, including excessive force, and unlawful seizure and arrest," were done in accordance with de facto policies of the WPD; they further assert that Mayor McBride explicitly created a formal government policy in violation of their constitutional rights. (*Id.* ¶¶ 1451–52.)

To state a *Monell* claim, a plaintiff must allege (1) the deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a

---

[3] Tracy Cole, Taleavia Cole, Tahudah Cole, Tristiana Walls, Kathryn Knowlton, Dana Mccormick, Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Raine Cich, Rachel Dulay, Anne Delessio-Parson, Erik Fanning, , Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Destiney Jones, Sonora Larson, Holly Lavora, Lazarito Matheu, Molly Nilssen, Carmen Palmer, (Juvenile) Palmer, (Juvenile) Palmer, Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Jose Hernandez Ramirez, Oscar Concepcion Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, Sonja Worthy, and TPR.

decision-maker with final policymaking authority; which (3) was the proximate cause of the plaintiff's injury. *See McFields v. Dart*, 982 F.3d 511, 516 (7th Cir. 2020).

As an initial matter, Plaintiffs are instructed that *Monell* claims are brought against the municipality. Thus, to the extent Plaintiffs wish to recraft a *Monell* claim, Plaintiffs should sue the municipality only.

However, like the previous causes of action, the complaint appears overinclusive as to Plaintiffs. Count Four very clearly alleges that the illegal "policy and practice" of the City was the Emergency Order. (Third. Am. Compl. ¶ 1445.) Also, this municipal liability claim is based on the use of excessive force and unlawful seizure. However, the Third Amended Complaint contains no such allegations for the following Plaintiffs: Lavita Booker, Rebecca Burrell, Khalil Coleman, Steven Conklin, Lauryn Cross, Kimberly Dood, Jessica Fenner, Christine Groppi, Gaige Grosskreutz, Percy Hayes, Adante Jordan, Mary Kachelski, Sean Kafer, Joey Koepp, John Larry, Alex Larson, Vaun Mayes, Shawn Page, Madeliene Schweitzer, Tiffany Stark, Oscar Walton, Britta Welch, Jayden Welch, or Trisha Wilson.

As to Count Five, it is entirely unclear what Plaintiffs are alleging. As best I can surmise, Plaintiffs allege that the City has created a *de facto* policy of violating people's constitutional rights. (*Id.* ¶¶ 1450–54.) Plaintiffs do not allege what this policy or practice was and how it proximately caused Plaintiffs' injuries.

For these reasons, Counts Four and Five are dismissed without prejudice.

2.6    Unlawful Search and Seizure of Property (Sixth Claim for Relief)

Plaintiffs[4] allege that Defendants searched and seized their property without a warrant, probable cause, or legal justification in violation of the Fourth Amendment. (Third. Am. Compl. ¶¶ 1455–59.) For the purposes of the Fourth Amendment, a search occurs "either when the government physically intrudes without consent upon a constitutionally protected area in order to obtain information . . . or when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Thompson*, 811 F.3d 944, 948 (7th Cir. 2016) (internal quotation marks and citations omitted). Property is seized "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

Plaintiffs assert their unlawful search and seizure claim against "All relevant Defendant Officers" and the City. (Third. Am. Compl. at 191.) Defendants assert that Plaintiffs fail to state a claim against the City or Defendants Weber, McBride, Ratkowski, Schimmel, Vetter, Farina, Roy, Keck, Wrucke, Lewandowski, and Causier. (Def.'s Br. at 15.) Again, because Defendants Weber, McBride, Ratkowski, Schimmel, Vetter, Farina, Roy, Keck, Wrucke, Lewandowski, and Causier are named in their official capacities in this claim, they will be dismissed because the City is also named. Furthermore, however, the City must also be dismissed because Plaintiffs have not alleged that any unlawful search or seizure was the result of a policy or custom of the City. Finally, to the extent that Mayor McBride is

---

[4] Tracy Cole, Taleavia Cole, Tahudah Cole, Kathryn Knowlton, Dana McCormick, Oscar Concepcion Rodriguez, Anne Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geiser, Christina Vitolo-Haddad, Joseph Hayes, Percy Hayes, Jose Hernandez Ramirez, Destiney Jones, Joey Koepp, Sonora Larson, Holly Lavora, Lazarito Matheu, Molly Nilssen, Carmen Palmer, (Juvenile) Palmer, (Juvenile) Palmer, Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Gabriella Vitucci, Suzanne Wells, Katelyn Wojnar, Sonja Worthy, Jacqueline Bogenberger, and Raine Cich.

named in his individual capacity, he will be dismissed because Plaintiffs have not plausibly alleged his personal involvement in the search or seizure in any Plaintiffs' property.

Defendants additionally argue that because there are no allegations in the Third Amended Complaint of a seizure or search of the following Plaintiffs' property, their unlawful search and seizure claims should be dismissed: Joseph Hayes, Percy Hayes, Joey Koepp, Tracy Cole, Tahudah Cole, Oscar Conception Rodriguez, Anne Delessio-Parson, Nathan Sabel, and Mariah Smith. (Def.'s Br. at 16.) Defendants are correct that there are no allegations for a search or seizure pertaining to these Plaintiffs. As such, these Plaintiffs' unlawful search and seizure of property claims will be dismissed without prejudice. Again, Plaintiffs can replead this cause of action, but must correctly plead as to both Plaintiffs and Defendants named.

### 2.7 Conspiracy to Deprive Plaintiffs of their Constitutional Rights (Eighth Claim for Relief)

Plaintiffs allege that Defendants conspired to deprive them of their First, Fourth, and Fourteenth Amendment rights in violation of § 1983. (Third Am. Compl. ¶¶ 1465–78.) Under § 1983, a conspiracy claims requires allegations that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007) (citation omitted). The plaintiff alleging conspiracy must indicate "the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002.)

Defendants assert that the Third Amended Complaint contains only conclusory allegations of a conspiracy, and that Plaintiffs fail to allege that Defendants reached an

understanding to deny them of their constitutional rights. (Def.'s Br. at 18–19.) I agree. While Plaintiffs need not assert their conspiracy theory in great detail, the allegations in the Third Amended Complaint are insufficient to apprise each Defendant of how they conspired to deprive Plaintiffs of their First, Fourth, and Fourteenth Amendment rights. As such, this claim will be dismissed without prejudice.

### 2.8    Retaliation for Exercise of Free Speech (Ninth Claim for Relief)

Plaintiffs allege that Defendants retaliated against them for exercising their First Amendment freedom of speech and assembly rights. (Third Am. Compl. ¶¶ 1479–84.) To state a First Amendment retaliation claim, a plaintiff must allege that he engaged in activity protected by the First Amendment; that he suffered an adverse action that would likely deter First Amendment activity in the future; and that the protected activity motivated the adverse action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Rowe v. Buss*, No. 21-1182, 2021 WL 5232512, at *2 (7th Cir. Nov. 10, 2021).

Defendants assert that because Plaintiffs have not pleaded the absence of probable cause for their arrests, as required by *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019), their First Amendment retaliation claim must be dismissed. (Def.'s Br. at 20–21.) In *Nieves*, the Supreme Court held that in most cases, probable cause to make an arrest defeats a First Amendment claim for retaliatory arrest. 139 S. Ct. at 1726. The Court further instructed that a plaintiff "pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Id.* at 1724.

However, it is not clear that Plaintiffs' retaliation claim actually rests on a theory of retaliatory arrest. Plaintiffs allege that "the actions of the Defendant Officers described above violated Plaintiffs' rights to freedom of speech and assembly guaranteed by the First and

Fourteenth Amendments to the United States Constitution, in that Plaintiffs were abruptly prevented from further exercising their rights and suffered retaliation for having exercised their rights." (Third. Am. Compl. ¶ 1481.) Plaintiffs further assert that "[t]he Defendant Officers retaliated against Plaintiffs for engaging in protected speech by subjecting them to excessive force without legal justification." (*Id.* ¶ 1482.)

In other words, it appears Plaintiffs allege that the "Defendant Officers" retaliated against the Plaintiffs for exercising their constitutional rights by subjecting them to excessive force. But again, why are "all plaintiffs" suing "all defendants"? Clearly not all Plaintiffs were alleged to have experienced excessive force and only three officers have been named as defendants. This cause of action is woefully inadequate as currently pled and will be dismissed without prejudice.

### 2.9    Failure to Intervene (Eleventh Claim for Relief)

Plaintiffs allege that during the events described in the Third Amended Complaint, Defendants stood by without intervening to prevent violations of their First, Fourth, and Fourteenth Amendment rights. (Third Am. Compl. ¶¶ 1495–99.) "[U]nder certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). To succeed on a claim for failure to intervene, a plaintiff must demonstrate that the defendants "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). Defendants argue that Plaintiffs fail to state a claim for failure to intervene because Defendants cannot be held liable for failing to intervene to prevent constitutional violations that Plaintiffs have not proven. (Def.'s Br. at 23.) Defendants further argue that even if Plaintiffs' constitutional rights were violated, there are no allegations that

21

the named defendants were present for the violations and thus would have been able to intervene. (*Id.*)

Plaintiffs' failure to intervene claim is insufficiently pleaded. They fail to articulate, beyond conclusory allegations, which Defendants stood by during violations of their constitutional rights and whether the Defendants were even present during the violations. For this reason, Plaintiffs' failure to intervene claim will be dismissed without prejudice.

### 2.10    Abuse of Power (Twelfth Claim for Relief)

Plaintiffs allege that "the individual Defendants acted maliciously and/or with reckless disregard and/or with deliberate indifference towards Petitioners or in an intentional disregard of their rights, such as to subject all the individual Defendants to punitive damages." (Third Amended Compl. ¶ 1504.) Plaintiffs further allege that the City is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered in this action "because said Defendants were acting within the scope of his [sic] employment when they committed the acts described above." (*Id.* ¶ 1505.)

Defendants argue that Plaintiffs' abuse of power claim is conclusory and clearly fails to meet the pleading standards of *Twombly/Iqbal* and thus must be dismissed. (Def.'s Br. at 24.) In a § 1983 action, "a jury may be permitted to assess punitive damages . . . when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Plaintiffs assert that all Defendants except for the City are subject to punitive damages. However, punitive damages are not recoverable under § 1983 against a municipality or, by logical extension, a defendant sued in his official capacity. *See Newport v. Fact Concerts, Inc.*,

453 U.S. 247, 271 (1981); *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010). As such, the official capacity claims against Defendants Weber, McBride, Ratkowski, Schimmel, Vetter, Farina, Roy, Keck, Wrucke, and Causier must be dismissed.

As to the claim against Mayor McBride in his individual capacity, it is unclear what conduct of his Plaintiffs believe was the result of "evil motive or intent" or involved "reckless or callous indifference" to their federal rights. Thus, the individual capacity suit against Mayor McBride will also be dismissed.

As to the City, Plaintiffs invoke Wis. Stat. § 895.46, an indemnification statute that provides as follows:

> If the defendant in any action or special proceeding is a public officer or employee and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employee and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employee . . . in excess of any insurance applicable to the officer or employee shall be paid by the state or political subdivision of which the defendant is an officer or employee.

Wis. Stat. § 895.46(1)(a). Section 895.46, however, appears to create a private right of action for public officials against whom a judgment has been entered, not persons suing for violations of their civil rights. *See Chiroff v. Milwaukee Cty.*, 2000 WI App 233 n.11, 239 Wis. 2d 232, 619 N.W.2d 307 ("The intent of [§ 895.46] is to enable an official of a political subdivision to bring an action against the political subdivision to obtain reimbursement for an obligation of the political subdivision he or she has borne."); *Williams v. Michalsen*, No. 19-CV-56-PP, 2020 WL 1939136, at *9 (E.D. Wis. Apr. 21, 2020) ("If the individual officers are found liable, the indemnity mandated by § 895.46 will be triggered; the plaintiffs do not need to sue the county for that to happen.").

23

This cause of action is not actually a cause of action, but assertions of damages theories. Count Twelve is dismissed with prejudice. If Plaintiffs wish to assert their theory of damages in the corrected complaint they may do so, but not as a "cause of action."

### 2.11   Equal Protection (Fourteenth Claim for Relief)

Plaintiffs allege that Defendants subjected Plaintiffs, "some of whom are Black and all of whom were protesting anti-Black racist police violence and in support of the movement for Black lives," to excessive force and/or unlawful detention and arrest, and/or suppressed their right to freedom of speech and assembly, in violation of the Equal Protection Clause of the Fourteenth Amendment. (Third Am. Compl. ¶¶ 1509–11.)

The Equal Protection Clause provides that "no State shall . . . deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. It is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An Equal Protection Clause violation typically occurs when state action discriminates based on a person's membership in a protected class, such as race, or interferes with a person's fundamental rights, such as freedom of speech or religion. *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). The Equal Protection Clause may also be violated if state action "irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Because Plaintiffs assert that they were denied equal protection of the law based on their identity and the identity of those for whom they were protesting, I construe the claim as one based on class membership.

Defendants argue that Plaintiffs' equal protection claim must be dismissed because they do not assert, beyond conclusory allegations, that any arrest decisions were made

pursuant to a discriminatory motive. (Def.'s Br. at 24.) "To maintain an equal protection claim, 'plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.'" *Levan Galleries LLC v. City of Chicago*, 790 F. App'x 834, 835 (7th Cir. 2020) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001)).

Again, Plaintiffs allege that their equal protection rights were violated by the named and unidentified Defendant Officers "because of their identity and/or because of what they were protesting" and with "racial animus toward each and every Plaintiff individually and as a group[.]" (Third Am. Compl. ¶ 1510.) There are two main problems with this cause of action. First, while Plaintiffs do allege that some of the plaintiffs are Black and include photographs of some of the Plaintiffs within the body of the complaint, it also identifies a group of Plaintiffs based on what they were protesting. The law does not recognize those protesting on behalf of Black individuals as a protected class. *See Srail*, 588 F.3d at 943 ("Suspect classes include race, alienage, and national origin."). Accordingly, the complaint needs to clearly state what protected class the Plaintiffs fall under. Second, Plaintiffs need to allege facts as to each Defendant. If a defendant is sued in his or her individual capacity, then the complaint needs allegations of personal involvement. If Plaintiffs allege a *Monell* claim, then the complaint needs to identify the violative policy or practice and how it proximately caused Plaintiffs' injuries.

For these reasons, Count Fourteen is dismissed without prejudice.

### 2.12    Right to Assemble (Sixteenth Claim for Relief)

Plaintiffs allege that the City and Mayor McBride violated their First Amendment right to assemble when Mayor McBride effectively declared all protests in the City unlawful

25

for the week of October 7, 2020 by enacting the emergency order. (Third Am. Compl. ¶¶ 1517–23.) The First Amendment protects the "right of the people peaceably to assemble." U.S. Const. amend. I. "The amount of access to which the government must give the public for First Amendment activities, and the standards by which a court will evaluate limitations on those rights, depends on the nature of the forum at issue." *John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 609 (7th Cir. 2021). In a traditional public forum, such as a street or park, restrictions on the time, place, and manner of First Amendment activity may be imposed so long as they are content-neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Defendants argue that Plaintiffs' right to assemble claim fails because it is premised on Mayor McBride's alleged failure to follow state law in declaring a state of emergency or curfew, and § 1983 does not provide a remedy for the failure to follow state law. (Def.'s Br. at 25–27.) I agree. Plaintiffs' theory as to how the City and Mayor McBride violated their First Amendment right to assemble is unclear. Plaintiffs' allegations only suggest that Mayor McBride had no sufficient factual basis to declare the emergency order as contemplated by state law. However, the "federal government is not the enforcer of state law." *Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Because Plaintiffs fail to plausibly allege a violation of their right to assemble under the First Amendment, the Sixteenth Claim for Relief will be dismissed against Mayor McBride and the City without prejudice.

### 3. *Section 1985 and 1986 Claims*

Plaintiffs assert in their Eighth and Fifteenth Claims for Relief that Defendants conspired to deprive them of equal protection of the laws in violation of 42 U.S.C. § 1985

because some of them are Black and all of them were protesting in support of the movement for Black lives. (Third Am. Compl. ¶¶ 1465–78, 1512–16.) Plaintiffs further assert that Defendants, knowing that a conspiracy to deprive them of their constitutional rights was about to be committed, neglected or refused to prevent the conspiracy in violation of 42 U.S.C. § 1986. (*Id.*) Defendants argue that Plaintiffs have only alleged conclusory allegations of a conspiracy. (Def.'s Br. at 18.)

Section 1985(3) provides that: "If two or more persons in any state or Territory conspire . . . for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3). In turn, section 1986 provides that: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]" 42 U.S.C. § 1986.

The Seventh Circuit has observed that pleading a conspiracy under § 1985(3) when all defendants are state actors is superfluous, since the function of § 1985 is to permit recovery from a private actor who has conspired with state actors. *See Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009). Nevertheless, to state a claim under § 1985(3), a plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to

person or property or a deprivation of a right or privilege granted to U.S. citizens." *Majeske v.*
*Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996).

Plaintiffs have not sufficiently alleged an underlying violation of their right to equal
protection. Thus, their conspiracy claim under § 1985(3) necessarily fails. *Ennin v. CNH Indus.*
*Am., LLC*, 878 F.3d 590, 597 (7th Cir. 2017). Further, "in the absence of a viable claim under
§ 1985(3), a § 1986 claim cannot exist." *Hicks v. Resol. Tr. Corp.*, 970 F.2d 378, 382 (7th Cir.
1992). As such, Plaintiffs' claims under 42 U.S.C. §§ 1985 and 1986 will be dismissed without
prejudice.

### 4. Title VI Claim

Plaintiffs allege that Defendants have engaged in discriminatory law enforcement
practices, including stops, searches, arrests, and uses of force, in violation of Title VI. (Third
Am. Compl. ¶¶ 1460–64.) Title VI provides that "[n]o person in the United States shall, on
the ground of race, color, or national origin, be excluded from participation in, be denied the
benefits of or be subjected to discrimination under any program or activity receiving federal
financial assistance." 42 U.S.C. § 2000d. "To state a claim under Title VI, plaintiffs must
allege facts satisfying two elements: (1) that they have been intentionally discriminated against
on the grounds of race; and (2) that defendants are recipients of federal financial assistance."
*Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015).

Defendants first argue that Plaintiffs fail to state a Title VI claim against the individual
defendants because Plaintiffs' allegations do not suggest that they are themselves recipients of
federal funds. (Def.'s Br. at 16–17.) In *Smith v. Metropolitan School District Perry Township*, the
Seventh Circuit held that "[b]ecause Title IX only protects against discrimination under any
education program or activity receiving federal financial assistance . . . a Title IX claim can

only be brought against a grant recipient and not an individual." 128 F.3d 1014, 1019 (7th Cir. 1997). "Title VI and Title IX are so similar that a decision interpreting one generally applies to the other." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014).

The Third Amended Complaint does not contain facts suggesting that the individual defendants themselves are the recipients of federal funds, and "the mere fact that the Defendants are employed by the government . . . does not mean that they are recipients of federal funds." *Rogers v. Off. of the Att'y Gen.*, No. 1:16-CV-429-TLS, 2017 WL 2864950, at *3 (N.D. Ind. July 5, 2017). As such, Plaintiffs' Title VI claim against Defendants Weber, McBride, Ratkowski, Schimmel, Vetter, Farina, Roy, Keck, Wrucke, Lewandowski, and Causier will be dismissed.

Defendants also assert that because the Third Amended Complaint does not contain allegations that the following Plaintiffs were stopped, searched, arrested, or had any force used against them, their Title VI claims must be dismissed: Kamila Ahmed, Robert Agnew, Lavita Booker, Rebecca Burrell, Khalil Coleman, Steven Conklin, Lauryn Cross, Jessica Fenner, Christine Groppi, Gaige Grosskreutz, Joseph Hayes, Percy Hayes, Adante Jordan, Mary Kachelski, Sean Kafer, John Larry, Alex Larson, Vaun Mayes, Shawn Page, Mariah Smith, Madeliene Schweitzer, Tiffany Stark, Oscar Walton, Jayden Welch, Britta Welch, and Brandon Wilborn. (Def.'s Br. at 17.) I agree. Because there are no allegations that these Plaintiffs ever interacted with law enforcement and no indication as to how they were subject to intentional discrimination for the purposes of Title VI, their claims will be dismissed.

Defendants further argue that Plaintiffs have not alleged facts indicating intentional discrimination. (Def.'s Br. at 17.) The Third Amended Complaint fails to allege facts to plausibly suggest intentional discrimination against any Plaintiff, save for Plaintiff William

Rivera's allegation that a John Doe Officer arrested him because of his race. (Third Am. Compl. ¶ 326.) As such, while Plaintiff William Rivera may state a Title VI claim, the remaining Plaintiffs have not. Their Title VI claims will be dismissed without prejudice.

5.    *Driver's Privacy Protection Act Claim (Tenth Claim for Relief)*

In their Tenth Claim for Relief, Plaintiffs allege that all Defendants violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.*, by obtaining their personal information from the Wisconsin Department of Transportation and disclosing it to third parties. (Third. Am. Compl. ¶¶ 1485–94.) Under the DPPA, it is "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use" not permitted by the DPPA. 18 U.S.C. § 2722(a). An individual whose personal information has been obtained or disclosed in violation of the DPPA may bring a civil action for damages in federal court. 18 U.S.C. § 2724.

The Plaintiffs allege that Defendant Roy, who was trained to access motor vehicle records, released to the public unredacted tickets containing information of Plaintiffs' obtained from their motor vehicle records, including addresses, phone numbers, driver's license numbers, date of birth, weigh, height, and eye color. (Third Am. Compl. ¶¶ 877–1069.) Plaintiffs allege that Defendant Ratkowski used personal information obtained from DOT records to create a protestor "target list" and shared it, unsolicited, with various police departments. (Third Am. Compl. ¶¶ 1076–1423.)

Once again, this count suffers from too many plaintiffs suing too many defendants. The Third Amended Complaint only alleges that Defendants Roy and Ratkowski engaged in the DPPA violations. However, like the majority of this complaint, Plaintiffs sue "all defendants." And upon inspection of the allegations in the Third Amended Complaint,

Plaintiffs Fenner, Hernandez Ramirez, Jordan, Matheu, Page, Aidali Rivera, William Rivera, Sabel, Schroeder, Britta Welch, Jayden Welch, and Wilson all fail to allege that any Defendant used or obtained personal information from their motor vehicles records.

For these reasons, Count Ten is likewise dismissed without prejudice, with leave to replead.

## CONCLUSION

Despite drafting 1,523 allegations over the span of 204 pages, and this being the third iteration of the Complaint, every single one of Plaintiffs' sixteen causes of action fail to state a claim upon which relief can be granted. However, because this is the first time that the complaint has been subject to the scrutiny of a motion to dismiss, perhaps Plaintiffs were previously unaware of the fundamental errors plaguing their pleading. That said, as discussed fully here, Plaintiffs should not sue all defendants unless the complaint supports allegations against all defendants. All plaintiffs should not be included in a cause of action unless the plaintiff has allegations to support the claim. Plaintiffs should be clear whether asserting a claim against particular defendants in their individual and/or official capacity, or under *Monell*. Plaintiffs should make clear where particular causes of action are named against John Doe Officers. Forcing both the Court and defendants to wade through a maze of a complaint consumes vast amounts of precious resources that could have been avoided simply with more careful pleading.

Again, I am dismissing the entirety of the complaint, except for Count Twelve, without prejudice. Count Twelve is dismissed with prejudice. Plaintiffs will have **fourteen (14) days** from the date of this decision and order in which to file an amended complaint. This new

complaint must address the deficiencies discussed here. Otherwise, Plaintiffs risk dismissal of this case with prejudice.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** that defendants' motion to dismiss (Docket # 108) is **GRANTED**. Count Twelve is dismissed with prejudice. The remaining counts are dismissed without prejudice. Plaintiffs will have **fourteen (14) days** from the date of this decision and order in which to file an amended complaint.

Failure to timely file an amended complaint consistent with this decision and order will result in the case being dismissed with prejudice.

Dated at Milwaukee, Wisconsin this 1st day of February, 2022.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge