# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

KATHRYN KNOWLTON, et al.,

                      Plaintiffs,

v.                                            Case No. 2020-CV-01660

CITY OF WAUWATOSA et al.,

                      Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(B)(6)

Defendants, City of Wauwatosa, Dennis McBride, Barry Weber, Maria Arbiter, Jeffrey Farina, Joseph Lewandowski, Daniel Mitchell, George Opelt, Robert Piehl, Dominick Ratkowski, Russell Richardson, Joseph Roy, George Schimmel, James Short, Brian Skornia, Luke Vetter, Timothy Warren, Shane Wrucke, and Kelly Zielinski, by their attorneys, Wirth + Baynard, submit the following brief in support of their Motion to Dismiss Plaintiffs' Fourth Amended Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief may be granted.

## BACKGROUND

The original complaint in this matter was filed on November 2, 2020. (Dkt. 1) Since that time, Plaintiff's have amended and attempted to amend their complaint 5 times. See generally (Dkts. 24, 47, 54-1, 56 and 155) On September 8, 2021, Plaintiffs filed a Third Amended Complaint alleging 16 causes of action. (Dkt. 56) In response, Defendants filed a motion to dismiss which was granted in whole by the Court. (Dkt. 152) The complaint was dismissed without prejudice (except as to Count Twelve which was dismissed with prejudice), and the Court generously granted Plaintiffs leave to re-file consistent with the decision. *Id.* at p. 1.

Plaintiffs then filed this Fourth Amended Complaint alleging 14 causes of action: (1) First

Amendment Violation (Curfew Order), (2) Violation of the Driver's Privacy Protection Act, (3) Violation of Fourteenth Amendment – Denial of Due Process, (4) First Amendment and Fourteenth Amendment (Protester List), (5) First Amendment – Retaliation, (6) Deliberate Indifferent, (7) First Amendment Violation – Excessive Force and Arrest, (8) Excessive Force September 5, 2020, October 8 – 1-, 2020, (9) Unlawful Arrest, (10) Unlawful Search and Seizure (cars and phones), (11) Violation of Title VI, (12) Equal Protection, (13) Malicious Prosecution (Wisconsin State Law), and 14) Violation of the Driver's Privacy Protection Act. Plaintiffs Fourth Amended Complaint named an additional 10 defendants and included 4 new claims. At the onset, adding new defendants and new claims does not appear to be consistent with the latitude afforded Plaintiffs in the prior Order and for that reason alone those defendants and claims should be dismissed. (*See* Dkt. 152, p. 1)

## MOTION TO DISMISS STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a Complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, [the court should] accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 129 S.Ct. at 1951). In other words, the Supreme Court explained that any legal conclusions must be supported by factual allegations in the complaint.

Therefore, to survive a motion to dismiss, a plaintiff must plead in the Complaint "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 129 S.Ct. at 1951 (citing *Twombly*, 550 U.S. at 556). A court should essentially parse out the conclusory allegations and "determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *McCauley*, 671 F.3d at 616. "The degree of specificity required [of the factual allegations] is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *Id*. (quoting *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010)). "A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson*, 614 F.3d at 405. If allegations of a complaint give rise to an "'obvious alternative [legitimate] explanation'" for the conduct which is allegedly wrongful, the claim fails to meet the plausibility requirement and must be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

### I. PLAINTIFFS' CLAIMS AGAINST JOHN DOES 1-100 MUST BE DISMISSED.

At the outset, the Court should dismiss any identified unknown officers in Plaintiff's Fourth Amended Complaint. Plaintiffs' failure to identify John Does 1-100 after over sixteen months of litigation warrants dismissal of those individuals from this lawsuit. *See, e.g., Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007); *see also Strauss v. City of Chicago*, 760 F.2d 765, 770 (7th Cir. 1985). Situations arise where the identity of alleged defendants will not be known prior to the filing of a complaint and in such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants. *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995) This case does not present such a circumstance. Plaintiffs had the responsibility to identify those officers—a responsibility substantially supported by the discovery mechanisms available to them during the pendency of this lawsuit—but have failed to

3

do so. *Strauss* at 770. While Plaintiffs name 100 John Does the complaint does not give proper notice as to which of the 100 John Does plaintiff is referring and what allegations are against specific John Does. This deficiency was specifically addressed in the Court's prior order. *Id.* at p. 7. Plaintiffs have completed all discovery in the case (Dkt. 139-2) and this Court has made it clear the parties will not be allowed to re-start with discovery. (Dkt. 153, p. 2)

Furthermore, the court has no jurisdiction over parties who have not been named or served with a summons and complaint. *United States ex rel. Lee v. Illinois*, 343 F.2d 120 (7th Cir. 1965); *Delgado v. Sheriff of Milwaukee County Jail*, 487 F.Supp. 649 (E.D. Wis. 1980).

## II.  PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF SHOULD BE DISMISSED.

Plaintiffs' requests for equitable relief are confusingly pled but nonetheless fail for several reasons. Plaintiffs seek the following declaratory relief:

(1) "An order finding the City of Wauwatosa's curfew of October 7 - 12, 2021 was unlawful and illegally enacted; (2) "An order finding the City of Wauwatosa's October 7 – 12, 2020 curfew unconstitutional"; (3) "A declaration that Defendants' conduct violated the First, Fourth, and Fourteenth Amendments of the United States Constitution"; and (4) "Declare that Defendants' practice of obtaining personal information through the DOT without probable cause or reasonable suspicion as arbitrary and as such violated the DPPA."

*Id.* at 135-136. As for injunctive relief Plaintiffs seek:

"An order requiring immediate cessation of law enforcement surveillance and monitoring of peaceful protest activity, including a prohibition of law enforcement maintaining files on the views and expressive activities"; (2) "An injunction prohibiting the Wauwatosa Police Department from sharing its existing files with any other law enforcement or non-law enforcement agencies or municipalities"; (3) "A preservation order that the files on activists and peaceful protests be preserved as they are potential evidence in future litigation"; (4) "An order enjoining Defendants from enforcing a policy ordering dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those through law enforcement"; (5) "An order that Defendants and other law enforcement agencies whom the Defendants engaged, permanently delete any fabricated arrest records, booking photos, arrest information, fingerprint cards, and any and all data that they have regarding Plaintiffs"; (6) Order the Wauwatosa Police Department to make a

4

public accounting of the scope and nature of files subject of this lawsuit"; (7) "An order requiring notification to individuals listed on any files, lists, or other monitoring/intelligence document, including on the TPR Target List, of the existence and opportunity to that individual to review the information"; (8) "An order requiring the Wauwatosa Police Department to destroy the Target List and any protestor monitoring files and all of its contents with written confirmation after all subjects have been notified and provided an opportunity to review"; (9) "Order the Wauwatosa Police Department to contact any third-party entities who received the Target List and any protestor monitoring files to destroy it and all of [sic]"; (10) "An injunction prohibiting the Defendants from sharing with third parties any of Plaintiffs personal information and highly restricted personal information retrieved from their motor vehicle records and without their consent that is not for a permissible lawful purpose; (11) "Enter a preliminary and permanent injunction preventing and restraining Defendants (and any of their attorneys, employees, agents, representatives or anyone acting on their behalf) from disclosing or using the personal information about Plaintiffs, and requiring Defendants to destroy all personal information about Plaintiff that Defendants have in the possession, custody or control; and (12) "Require Defendants to identify under penalty of perjury all manners how the personal information of Plaintiffs has been used or disclosed and confirming that all personal information about Plaintiffs has been destroyed.

(Dkt. 155, 135-136)

### A. Plaintiffs lack standing and their claims are nonjusticiable and moot.

Standing requires that (1) a plaintiff has suffered an injury in fact; (2) there exists a causal connection between the injury and the conduct of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff must establish "that he is in immediate danger of sustaining some direct injury." *Robinson v. City of Chicago*, 868 F.2d 959, 966 (7th Cir.1989). As the Supreme Court stated in *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974): "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." In *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, (7th Cir. 2003), the court held that "the complete repeal of a challenged law renders a case moot, unless there is evidence creating a reasonable expectation that

5

the City will reenact the ordinance or one substantially similar."

Plaintiffs' request for equitable relief pertaining to the curfew is moot because the emergency curfew ended on October 12, 2020—making any concern over a future curfew, arrest, or other irreparable harm, based purely on speculation and insufficient to establish equitable relief. *O'Shea* at 495–96. *See also Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) (holding that plaintiff's argument that he might be pulled over, arrested, and again subjected to an unconstitutionally long detention "is layered with hypothetical and nowhere near certain.")

Plaintiffs' requests for injunctive relief are not sufficiently constrained and would improperly entangle this Court into becoming the overseer of the City of Wauwatosa Police Department in violation of the principles of comity. In *Younger v. Harris, 401 U.S. 37, 44 (1971)*, the Supreme Court wrote that federalism requires "sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Accordingly, the Court should abstain from granting Plaintiffs' claims for equitable relief. *See Yarls v. Bunton*, 231 F. Supp. 3d 128, 131 (M.D. La. 2017) ("Any declaratory judgment or injunction entered by this Court would inevitably lead it to become the overseer of the Orleans Parish criminal court system, a result explicitly condemned by the United States Supreme Court in *Younger* and *O'Shea*.").

### B. Plaintiffs sued the wrong defendants.

In addition to their lack of justiciability, Plaintiffs equitable claims must fail because Plaintiffs sued the improper defendants. In their complaint, Plaintiffs sue defendants in their individual capacity for "declaratory and injunctive relief only." (Dkt. 155, ¶¶ 90-106). However, the equitable relief Plaintiffs request—an injunction barring the defendants from implementing the

policy in the future or changing policies—<u>can be obtained only from defendants in their official capacities, not as private individuals</u>. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir.1987); *see also, Feit v. Ward*, 886 F.2d 848, 858 (7th Cir.1989)(proper defendants for purposes of injunctive relief were supervisory officials of government agency)(emphasis added). Here, some defendants are not even alleged to be current employees of the City. (Dkt. 155, ¶¶ 90, 92)

Thus, Plaintiffs' attempt to obtain declaratory and injunctive relief from the defendants in their individual capacities fails to state a claim upon which relief may be granted. Moreover, defendants Barry Weber, Maria Arbiter, Jeffrey Farina, Joseph Lewandowski, Daniel Mitchell, George Opelt, Robert Piehl, Dominick Ratkowski, Russell Richardson, Joseph Roy, George Schimmel, James Short, Brian Skornia, Luke Vetter, Timothy Warren, Shane Wrucke, Kelly Zielinski, and Dennis McBride are only named for "declaratory and injunctive relief." Accordingly, Plaintiffs have no remaining claims against these defendants, and they must be dismissed from the case.

## III. ALL OF PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE CITY OF WAUWATOSA SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT AND CANNOT ALLEGE A BASIS FOR MUNICIPAL LIABILITY.

Plaintiffs' Fourth Amended Complaint fails to state a claim upon which any relief can be granted against the City of Wauwatosa. The City of Wauwatosa is named as a defendant in Plaintiffs' First, Third, Seventh, and Eleventh Claim for Relief—but only the Third Claim for Relief is designated as a *Monell* claim. It is unclear whether Plaintiffs are alleging separate *Monell* claims but, regardless, all of Plaintiffs' constitutional claims against the City should be dismissed because no City policy or practice caused the alleged unconstitutional conduct giving rise to those claims.

To pursue liability against the City of Wauwatosa, Plaintiffs must satisfy the standard first

7

set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for establishing municipal liability. Liability under *Monell* may be premised on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). With a *Monell* claim, there also must be a causal connection between the alleged unconstitutional policy or practice and the claimed injury. Facts indicating the existence of the policy must be specifically plead. *Looper Maintenance Service, Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) ("[b]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient").

A plaintiff cannot recover against a municipality under § 1983 for acts of its employees under a theory of *respondeat superior* or vicarious liability. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). Furthermore, it must be remembered that there can be no liability against the City if none of its employees caused any constitutional injury. The Seventh Circuit holds to the rule that there must be an alleged constitutional injury by an individual municipal employee: "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)

To adequately allege a *Monell* claim, the plaintiff must "plead factual content that allows the Court to draw the reasonable inference that [City of Wauwatosa] maintained a policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Here, Plaintiffs' attempt to establish *Monell* claims against the City by

8

including buzz words without sufficient factual support are insufficient to meet the standards set forth in *Twombly/Iqbal.*

Plaintiffs' Fourth Amended Complaint makes no mention, whatsoever, of municipal liability based on an express written policy. (*See generally*, Dkt. 155) Even though no express policy caused the alleged violations, Plaintiffs seemingly argue that the City is still liable under *Monell* because certain violations resulted from the directives of City officials with "final policymaking authority." Plaintiffs allege McBride (as Mayor and chief executive for the city of Wauwatosa) and Weber (as Chief of Police for Wauwatosa) to be final policy makers. *Id.* at ¶¶ 90, 242, 910. These allegations, even if true, cannot support a "final policymaker" theory of municipal liability against the City. Final policymaking authority is equated with legislative power and, for a municipality, usually rests with the city council, not the Mayor or the Police Chief. *See Auriemma* 957 F.2d at 399. Further, to be a final policymaker under §1983, a City employee must have final policymaking authority in the area at issue. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988). To be acting with final policymaking authority, a City employee must implement City policy, not frustrate, or violate it. *Taylor*, 214 F.3d at 791.

In the present case, Plaintiffs allege Chief Weber had final policymaking authority for establishing the rules of engagement for police deployments responding to protests and civil unrest. However, plaintiffs do not allege what rules of engagement Weber implemented and how those caused their alleged constitutional violations.

Plaintiffs' allegations are confusing as to which allegations are against Mayor McBride in his individual capacity and which form the basis of their *Monell* claim against the City. Plaintiffs seem to intertwine these two when they allege that Mayor McBride did not follow the correct procedure for implementing a curfew, yet in their attempt to create the appearance of liability on

9

the City—Plaintiffs refer to him as a final policymaker for the City. Despite Plaintiffs' attempt to confuse the issue, the issue is easily resolved as the curfew was not unconstitutional and this deficiency was specifically addressed in the Court's prior order:

> Plaintiffs' theory as to how the City and Mayor McBride violated their First Amendment right to assemble is unclear. Plaintiffs' allegations only suggest that Mayor McBride had no sufficient factual basis to declare the emergency order as contemplated by state law. However, the "federal government is not the enforcer of state law. *Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

(Dkt. 152, p. 26)

Finally, Plaintiffs have not adequately pled a custom or practice claim. To maintain a widespread practice or custom claim, Plaintiffs must adequately allege a custom or practice "so persistent and widespread [such that it has] the force of law" *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 (1970). The critical issue is whether there was a particular custom or practice that was so well-settled that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. *Board of County Comm'r v. Brown*, 520 U.S. 397 (1997). *See, e.g., Jenkins v. Bartlett*, 487 F.3d 482 (7th Cir. 2007) (four deadly force incidents was not enough to provide the city with actual or constructive knowledge); *Gable v. City of Chicago*, 296 F.3d 531, 538-539 (7th Cir. 2002)

In addition to establishing widespread conduct, a plaintiff must also allege and show deliberate indifference. Under this stringent standard, "it is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once." *Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006). Deliberate indifference is a high bar to plead and prove. For example, in *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011), the Seventh Circuit held the complaint failed to meet the pleading standards under *Twombly/Iqbal*. The core allegation in *McCauley* was that the City of Chicago "failed to have

adequate policies in place for the protection of female victims of domestic violence." *Id.* at 614. The Seventh Circuit determined the complaint failed to state a claim:

> The allegations … do not plausibly suggest that the City maintained a policy or practice of selective withdrawal of police protection. To the contrary, the complaint alleges that the City failed to have particularized practices in place for the special protection of domestic violence victims. In essence, the complaint alleges that the City failed to promulgate specific policies for this particular class of crime victims, not that the City denied this class of victims equal protection. At most, the factual allegations in the complaint plausibly suggest the uneven allocation of limited police-protection services; they do not plausibly suggest that the City maintained an intentional policy or practice of omitting police protection from female domestic-violence victims as a class. *Id.* at 618-19.

Plaintiffs bring a *Monell* claim against the City of Wauwatosa for maintaining a protestor list. (Dkt. 155, p. 109) Plaintiffs do not identify any particular policy but seemingly rely on the creation of the protestor as evidence of the City's de facto policies, practices, and customs. *Id*. at ¶ 942. Such reliance fails because *Monell* presupposes that a violation occurred by an employee and asks whether a municipal policy existed that caused the violation. *See, e.g., Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997) (unconstitutional action by a municipal employee "is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy).

Moreover, the allegations are nearly identical to those addressed in *McCauley*, alleging the City failed to have particularized practices in place for the special protection of individuals placed on the list not that the City maintained an intentional policy or practice of violating constitutional rights. Plaintiffs also fail to allege facts showing widespread conduct (Plaintiffs do not point to any other instances of compiling protestor lists) or deliberate indifference.

William Rivera also brings a Title VI Claim against the City of Wauwatosa seemingly based on the conduct of a John Doe officer. (Dkt. 155, p. 129) The allegation is "Wauwatosa's discriminatory law enforcement practices violate Title VI." *Id.* at ¶ 1084. As discussed *supra*, the

"allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing the municipality." *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir.1981). Rivera fails to even allege a City practice caused the officers conduct, much less what the widespread practice was and is claim cannot stand when he has not pled facts apart from those surrounding his own arrest.

His claim further fails because it is entirely dependent on a nonviable claim against the John Doe officer. *See Smith v. Metropolitan School District Perry Township*, 128 F.3d 1014, 1019 (7th Cir. 1997) (holding a Title IX claim can only be brought against a grant recipient and not an individual.) Liability cannot attach to a municipality in the absence of an actionable constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). If there is no violation of the plaintiff's constitutional rights by a police officer, "it is inconceivable" that the municipality could maintain liability pursuant to a *Monell* claim.

In sum, the City cannot be held liable for any of Plaintiffs' constitutional claims because no express policy, widespread practice, or policymaker caused the alleged violations. Moreover, as addressed below, there are no constitutional violations by a municipal employee.

IV. **EVEN IF THE *MONELL* CLAIMS WERE APPROPRIATELY PLED, THE UNDERLYING CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW.**

A. **The curfew was a reasonable time, place, and manner restriction.**

Plaintiffs bring a First Amendment claim against Dennis McBride alleging that he violated their First Amendment right to freedom of speech by imposing the emergency curfew and prohibiting their presence on city streets in Wauwatosa during the hours of 7:00 p.m. to 6:00 a.m. on October 7, 2020. (Dkt. 155, First Claim for Relief, ¶¶ 235, 911) As discussed supra, McBride is named in his individual capacity but the claims are that he proclaimed the curfew as chief

executive and policy maker for the City which seemingly would be an official capacity claim. This error was specifically addressed in the Court's prior order. (Dkt. 152 at p. 9)

While the First Amendment prohibits the government from generally prohibiting speech, this guarantee is not absolute or unfettered. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002); *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942). The government – federal, state, or local – may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 (1984).

Despite Plaintiffs' threadbare allegations the curfew imposed any restrictions based on speech content, it is indisputable that the curfew does not plainly regulate expressive conduct:

> Mayor McBride signed a "Proclamation of Emergency" for the City of Wauwatosa which enacted a curfew restricting "pedestrian and vehicular traffic on Wauwatosa streets" from 7pm to 6am, to commence on October 7 and continue until October 12, 2020.

(Dkt. 155, ¶ 235) If the purpose of the regulation is unrelated to content, then regulation on speech is deemed neutral even if it has an incidental effect on certain speakers or messages. *See Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47–48 (1986). As to purpose, Plaintiffs admit:

> Defendant McBride instituted the curfew because of the Alvin Cole decision that was going to come down from the DA's office, and also based on the unexpected tragic incidents in Kenosha on August 23, 2020, after Jacob Blake was shot in the back by a police officer, and also because of the death of George Floyd in Minneapolis by police officers on May 25, 2020.

(Dkt. 155, ¶ 240) Notably, courts considering the emergency curfews in Kenosha following the Jacob Blake shooting and in Minneapolis following the death of George Floyd have rejected similar curfew challenges. *See Larson v. City of Minneapolis*, No. 21-CV-714, 2021 WL 4895275,

13

at *1 (D. Minn. Oct. 20, 2021); *Akindes v. City of Kenosha*, No. 20-cv-1353, 2021 WL 4482838, at *8 (E.D. Wis. Sept. 30, 2021).

The complaint also fails to plead sufficient facts to demonstrate that the curfew was not narrowly tailored to serve a significant government purpose. The requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985). It cannot be genuinely disputed that the government has a significant interest in maintaining public order and safety for its citizens. *Hill v. Colorado*, 530 U.S. 703, 715 (2000).

Further, analysis of the constitutionality of the breadth of a government-imposed curfew must involve consideration and evaluation of the circumstances surrounding its implementation. *Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005) (upholding a 96-hour continuous curfew for a portion of Seattle in the face of large-scale civil unrest). The curfew here was intentionally limited only to five overnight curfews. With these tailoring measures indisputably in place, any argument that the curfew was unconstitutionally overbroad, impermissibly ignores critical context and overlooks the significant realities that confronted the City of Wauwatosa.

Plaintiffs could not sustain a facial challenge to the alleged overbreadth of the curfew order because it was self-terminating and is no longer in effect; therefore, Plaintiffs cannot bring a facial challenge to the alleged overbreadth of the curfew order that would not be overbroad as applied to them. *Bigelow v. Virginia,* 421 U.S. 809, 818 (1975).

Courts also recognized that judicial review of an executive's decision to impose a nighttime curfew in response to civil violence and disorder is uniquely deferential. *United States v. Chalk*, 441 F.2d 1277 (4th Cir. 1971). The *Chalk* court explained:

> It is clear that the executive's decision that civil control has broken down to the point where emergency measures are necessary is not conclusive or free from

judicial review. But we think the scope of our review in a case such as this must be limited to a determination of whether the mayor's actions were taken in good faith and whether there is some factual basis for his decision that the restrictions he imposed were necessary to maintain order.

The responsibility for maintaining public peace on a day-to-day basis is lodged with the executive branch of government. As we recently have become all too painfully aware, public peace in our cities may be suddenly breached by massive civil disorder. Dealing with such an emergency situation requires an immediacy of action that is not possible for judges. We think it would be highly inappropriate for us, removed from the primary responsibility for maintaining order and with the benefit of time for reflection not available to the mayor, to substitute our judgment of necessity for his.

*Id.* at 1281. The *Chalk* standard has been applied by other federal courts reviewing constitutional challenges to curfew orders or similar restrictions. *See e.g., Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996), *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, (1998); *Moorhead v. Farrelly*, 723 F. Supp. 1109, 1113–15 (D.V.I. 1989); *ACLU of W. Tenn., Inc. v. Chandler*, 458 F. Supp. 456, 461 (W.D. Tenn. 1978).

The curfew did not violate the First Amendment according to even the usual standards, and if it did it certainly did not violate the more deferential approach under *Chalk*.

### B.      There was no Fourteenth Amendment due process violation.

Plaintiffs bring a Fourteenth Amendment denial of due process claim against the City and Defendant Ratkowski. (Dkt. 155, Fourth Claim for Relief, p. 112) It is significant that Plaintiffs do not identify the specific liberty or property interest at issue. Their due process claim appears to center around the creation of a protestor list consisting of photos, names, and identifying personal information. *Id.* at ¶942. Plaintiffs allege inclusion on the list "is stigmatizing particularly to other law enforcement officers and harmful to their reputation." *Id.* at ¶ 944. Plaintiffs' due process claims fail because 1) they are not adequately pled; and 2) under well-established case law, the protestor list did not interfere with any liberty or property interest.

15

The Supreme Court has recognized the Bill of Rights as fundamental rights falling under the protection of the substantive due process clause, along with some other limited rights, such as the right to marry and have an abortion. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1998). The Supreme Court "has never held that the disclosure of private information denies due process." *See Wolfe v. Schaefer*, 619 F.3d 782, 784–85 (7th Cir. 2010). More, the Supreme Court "has held that reputation is not part of the liberty that the due process clauses protect, even though concern with reputation is one of the principal reasons people don't want personal information about themselves broadcast to strangers." *Id.*

A defendant does not interfere with a liberty interest merely by making available information that may harm an individual's reputation, even when the information makes it more difficult for that person to get a job. Instead, a liberty interest is only implicated when an injury to reputation is coupled with a "change in legal status," a legal rule the Seventh Circuit refers to as the "stigma-plus" test. *Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015). The protestor list causes no change in legal status, and thus Plaintiffs cannot prove the "plus" element of the stigma-plus test.

The "stigma-plus" line of cases descends from *Paul v. Davis*, 424 U.S. 693 (1976), in which the Supreme Court held that "the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Id.* at 712. *Paul* involved a police department that posted photos of the plaintiff identifying him as an "active shoplifter." *Id.* 695. The Supreme Court held that the plaintiff did not have a viable due process claim, and distinguished prior cases as having involved "a right or status previously recognized by state law [that] was distinctly altered or extinguished." *Id.* at 711.

> It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke

the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. *Id.*

In *Hinkle*, the Seventh Circuit held that the plaintiff (a sheriff) did not meet this standard when the defendants (state police officers) spread falsehoods about him sexually assaulting his stepdaughter and committing arson that "permeated the public sphere." *Id.* at 765–66. The plaintiff in *Hinkle* alleged that this defamatory information caused police departments not to hire him when he applied for positions. *Id.* at 767. The Seventh Circuit—even while recognizing the horribly defamatory nature of the officers' conduct—upheld the dismissal of Hinkle's claim because "[e]ven if that defamation seriously impaired his future employment prospects, the state did not alter his legal status." *Id.* at 768. Even though "Hinkle showed a serious stigma, without the 'plus,' he cannot maintain a due process claim for the denial of a liberty interest." *Id.*

In this case, as in *Hinkle*, there is no "plus" to go along with the alleged stigma of having been listed on the protestor list. While the complaint alleges generally that Plaintiffs suffered "deprivations of employment" (Dkt. 155, ¶ 946) the complaint does not allege any facts to support the allegation and fails to identify what Plaintiffs suffered a "deprivation of employment." Thus, Plaintiffs have not sufficiently alleged a due process violation; however, even if potential employers might have been less likely to hire Plaintiffs, nothing that the City or Ratkowski did "'distinctly alter[ed]' or extinguish[ed]' a right or status previously recognized by state law." *Id.* at 770. Thus, there is no constitutional violation even if being listed caused "deprivations of employment." *See id.* at 769.

It is vague as to whether Plaintiffs are also making an Equal Protection Claim as snippets of the allegations appear to allege a violation of their equal protection rights guaranteed "by the same Amendment" without elaboration or explanation. (Dkt. 155, ¶ 948, 952) Beyond deficient

17

pleading, an equal protection claim exists only to the extent that "(1) the defendant intentionally treated [Plaintiffs] differently from others similarly situated, (2) the defendant intentionally treated [Plaintiffs] differently because of his membership in the class to which he [or she] belonged, and (3) the difference in treatment was not rationally related to a legitimate state interest." *Smith v. City of Chicago*, 457 F.3d 643, 650-51 (7th Cir. 2006). Plaintiffs fail the first prong because they do not allege, they were treated differently from others similarly situated. Plaintiffs also cannot meet the second prong as the complaint fails to clearly state what protected class the Plaintiffs are alleged to fall under, and the law does not recognize protestors affiliated with the People's Revolution as a protected class. *See Srail*, 588 F.3d at 943 ("Suspect classes include race, alienage, and national origin."). This deficiency was specifically addressed by the Court previously. (Dkt. 152, p. 25)

Accordingly, all Plaintiffs' Fourteenth Amendment claims for relief should be dismissed with prejudice.

### C.    There is no First Amendment excessive force claim.

Plaintiffs bring a First Amendment excessive force and arrest claim. (Dkt. 155, Seventh Claim for Relief, p. 118) Initially, this claim should be dismissed because it is redundant of Plaintiffs' Fifth Claim for Relief—First Amendment Retaliation; and Eighth Claim for Relief—Excessive Force. Moreover, the Supreme Court has held that "all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) In light of this precedent, Plaintiffs' claims of excessive force should be analyzed under the Fourth Amendment, not the First Amendment. Finally, the complaint does not allege Dennis

18

McBride, George Opelt, Barry Weber, or Timothy Warren personally participated in an arrest or use of force against these Plaintiffs and while certain Plaintiffs allege, they were arrested, they do not identify the individuals involved in their arrest. (Dkt. 155, ¶ 1025)

## V. EVEN IF DEFENDANTS HAD BEEN NAMED FOR RELIEF OTHER THAN DECLARATORY AND INJUNCTIVE THE CLAIMS WOULD FAIL AS A MATTER OF LAW.

As discussed *supra*, the individual defendants are sued in their individual capacity for "declaratory and injunctive relief <u>only</u>." (Dkt. 155, ¶¶ 90-106). On this basis alone, all claims against the individual defendants must be dismissed. However, should the court consider the merit of the remaining claims, they are discussed below.

### A. There was no violation of the Driver's Privacy Protection Act.

Plaintiffs allege Ratkowski obtained the "personal information from a motor vehicle record" within the meaning of 18 U.S.C. §§ 2722 & 2725(1), (3) without their express consent and for no lawful purpose; (Dkt. 155, Second Claim for Relief, ¶¶ 935-940) and Roy "publicly disclosed 53 Plaintiffs' personal information and/or highly restricted personal information without their express consent and for a purpose not permitted by the DPPA" (Dkt. 155, Fourteenth Claim for Relief, ¶¶ 1111, 1112) when he disclosed to third parties police reports, arrest & booking information, noncriminal tickets, and interrogation videos which contained personal information and/or highly restricted personal information that was obtained from their motor vehicle records. *Id.* at ¶ 893. Plaintiffs' claims under the DPPA should be dismissed because the actions were permissible under the statute.

The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA. The statute permits "use by any government agency, including any

19

court or law enforcement agency, in carrying out its functions" 18 U.S.C. §§ 2721(b)(1). The Act intentionally includes a broad definition of the ability of law enforcement agencies to access and use motor vehicle record information so long as the agency is "carrying out" a law enforcement "function." § 2720(b)(1).

Although the Act was intended to "prevent stalkers, harassers, would-be criminals, and other unauthorized individuals from obtaining and using personal information from motor vehicle records," it was not intended to impede the ability of law enforcement officers to carry out their duties. *Margan*, 250 F.Supp.2d at 68 (citing 140 Cong. Rec. H2527 (Apr. 20, 1994) (statement of Rep. Goss) ("[T]he intent of this bill is simple and straightforward: We want to stop stalkers from obtaining the name and address of their prey before another tragedy occurs ... [T]he Driver's Privacy Protection Act ... is a reasonable and practical crime-fighting measure.")). Congressional hearing transcripts indicate that lawmakers discussed the breadth of access law enforcement officers should be given under the Act. Senator Harkin, who supported the bill, made the following statement:

> Mr. President, I want to clarify my understanding of the provisions of the Driver's Privacy Protection Act concerning law enforcement access to driver's personal information. Under section 2720(b)(2)1, law enforcement agencies have unrestricted access to this information in carrying out its [sic] functions.

139 Cong. Rec. S15962 (Nov. 17, 1993) (remarks of Sen. Harkin). Senator Harkin went on to suggest "with respect to law enforcement agencies, [section 2721(b)(1)] should be interpreted so as not to in any way restrict or hinder law enforcement and crime prevention strategies," even when those strategies might include releasing personal information to the general public. *Id.*

Plaintiffs specifically allege in their complaint that Ratkowski obtained their personal motor vehicle information while he was engaged in his law enforcement duties. (*See* Dkt. 155, ¶ 148 (alleging Ratkowski, "a civilian crime analyst hired by the City of Wauwatosa, created" the

protestor list "while working in his official capacity"); Dkt. 155, ¶¶ 10, 149 (alleging that Ratkowski, a City of Wauwatosa employee who works at the Wauwatosa Police Department created a protestor list containing individuals he perceived to be affiliated with the People's Revolution"); Dkt. 155, ¶ 97 (alleging "at all times pertinent and material to this Complaint, Defendant Ratkowski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.")) Under the DPPA, Ratkowski was permitted to obtain the information while carrying out law enforcement duties. *See* 18 U.S.C. §§ 2721(b)(1).

Likewise, Plaintiffs specifically allege in their Complaint that Roy disclosed their personal motor vehicle information while he was engaged in his law enforcement duties. (See Dkt. 155, ¶ 890 ("Defendant Joseph Roy, was employed by the City of Wauwatosa as a Lieutenant with the WPD, and as part of his duties was and is in charge of the open records division and at all times relevant was working within his official capacity"); Dkt. 155, ¶¶ 10, 149 (alleging "at all times relevant, when Defendant Roy released Plaintiffs' personal information and/or highly restricted personal information from these fifty-three (53) Plaintiffs from their motor vehicle records he was working in his official capacity"); Dkt. 155, ¶ 97 (alleging "at all times pertinent and material to this Complaint, Defendant Ratkowski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.")) Under the DPPA, Roy was permitted to disclose the information while carrying out his law enforcement duties (i.e., responding to an open records request). *See* 18 U.S.C. §§ 2721(b)(1). The Complaint further fails to allege Roy knowingly released information taken from DOT records.

Plaintiffs never allege that Ratkowski or Roy's actions occurred outside of the law enforcement/government capacity, nor do they allege that the actions were unrelated to use by a

law enforcement agency in carrying out its functions. *See Wootten v. Virginia*, No. 6:14-cv-00013, 2015 WL 1345276, at *15 n.11 (W.D. Va. Mar. 23, 2015) (explaining that "plaintiff bears the burden of showing that the obtainment, disclosure, or use of personal information from her motor vehicle records was not for a purpose enumerated in [18 U.S.C. § 2721]").

Thus, taking the allegations in the Complaint as true, Plaintiffs have failed to state a plausible claim for relief under the DDPA.

### B.    The Protestor List does not violate the First Amendment.

Plaintiffs bring a First Amendment claim against Defendant Ratkowski alleging "Defendant Ratkowski's surveillance program and the creation, maintenance, and distribution of the Target List infringed and interfered with Plaintiffs' ability to enjoy and exercise fully and freely their rights to freedom of speech, freedom of the press, freedom of assembly, freedom of association, and freedom to petition their government for redress of grievances, as well as their rights to privacy, due process, and the equal protection of the laws, as protected by the First and Fourteenth Amendments to the United States Constitution." (Dkt. 155, Fourth Claim for Relief, ¶ 952) First, there is no factual bases in the complaint supporting the existence of a "surveillance program" or Defendant Ratkowski's role, if any, in one.

Further, under the authority of *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318 (1972), the Plaintiffs have no standing to bring this claim because it is nonjusticiable. In *Laird v. Tatum*, the plaintiffs had alleged that the mere existence of an Army surveillance system that investigated lawful and peaceful civilian activity chilled the exercise of their first amendment rights. The Supreme Court held, in a 5–4 decision, that "in the absence of a showing of objective harm or a specific threatened future harm," any claimed chill is merely "subjective" and therefore not justiciable.

Case 2:20-cv-01660-NJ    Filed 04/18/22    Page 22 of 30    Document 178

In *Tatum*, when news publications were insufficient to satisfy Army intelligence needs, the Army, which apparently was not claiming to have had any suspicion of criminal conduct, properly kept its surveillance limited to the public domain. The Court emphasized the public scope of the investigation as follows:

> The information itself was collected by a variety of means, but it is significant that the principal sources of information were the news media and publications in general circulation. Some of the information came from Army Intelligence agents who attended meetings that were open to the public and who wrote field reports describing the meetings, giving such data as the name of the sponsoring organization, the identity of speakers, the approximate number of persons in attendance, and an indication of whether any disorder occurred. And still other information was provided to the Army by civilian law enforcement agencies.

408 U.S. at 6. It was in this context that the plaintiffs in *Tatum* claimed that the compilation and storage of the acquired information chilled their exercise of first amendment rights. The Court felt that the intrusions the plaintiffs were objecting to were unlike and much less significant than those the Court had previously condemned on first amendment grounds, so any "chill" the plaintiffs claimed to be suffering was purely "subjective." The types of intrusions that the Court felt would cause an objective chill occurred in cases like *Baird v. State Bar of Arizona*, 401 U.S. 1 (1971) (state may not compel a person to disclose that person's associations in order to be admitted to state bar); *Keyishian v. Board of Regents*, 385 U.S. 589 (1967) (state may not discharge employees because of their political associations); *Lamont v. Postmaster General*, 381 U.S. 301 (1965), and *Baggett v. Bullitt*, 377 U.S. 360 (1964). In those cases, "the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging." 408 U.S. at 11, 92 S.Ct. at 2324. By contrast, the chill involved in *Tatum*, based as it was on knowledge of the mere existence of a surveillance system, which collected data from information open to the public, and which caused no tangible harm to plaintiffs, could only have

23

caused a subjective chill and was therefore nonjusticiable.

Here, Plaintiffs have failed to establish a justiciable controversy. They do not even allege that the conduct of Ratkowski chilled the exercise of their first amendment rights (Dkt. 155, ¶¶ 951-955) or that the record-keeping resulted in any specific effect, (*See Id*. at ¶ 955 alleging only that it caused "Plaintiff to suffer damages") or was conducted in any of the ways which courts have previously identified as relevant to rendering the chill objective. Finally, the conduct is not alleged to be illegal or otherwise an invasion of some reasonable expectation of privacy and there is certainly nothing illegal or unconstitutional about collecting data, even in the absence of some reasonable suspicion of criminal conduct.

### C.    Plaintiffs' First Amendment retaliation claims fail.

To bring a First Amendment retaliation claim (Dkt. 155, Fifth Claim for Relief, p. 113) plaintiffs must show that: (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the police officer's decision. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir.2012). The protected conduct "cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected [activity]" *O'Connor v. Chicago Transit Auth*., 985 F.2d 1362, 1369–70 (7th Cir.1993).

Here, the majority of Plaintiffs entirely fail to allege they were engaged in First Amendment activity at the time of the deprivation. (*See i.e*., Kathryn Knowlton and Dana McCormick "were sitting and reading books on the lawn of Wauwatosa City Hall on picnic blankets" (Dkt. 155, ¶ 770); Tahudah Cole and Tracy Cole were "trying to leave a protest in Wauwatosa" in Tahudah's car (Dkt. 155, ¶¶ 306, 309); Taleavia Cole was trying to leave a protest in Wauwatosa and was pulled out of her vehicle (Dkt. 155, ¶¶ 338, 345); Plaintiff Anne Delessio-

Parson talked to a few of the officers and, while talking with the officers, another John Doe officer came from behind the shields and arrested her (Dkt. 155, ¶¶ 734-736); Jackie Bogenberger, Raine Cich, Angel Vega, Gabriella Vitucci, and Katelyn Wojnar were all in the City of Wauwatosa when they witnessed the police deploying tear gas and all decided to leave Wauwatosa and walk because they did not have vehicle transportation and the police were not allowing cars to drive in the area (*Id*. at ¶¶ 696-698); Rachel Dulay and Jose Ramirez "were driving in Wauwatosa on October 8, 2020" and "while at a stop sign, the police surrounded their car, placing "stop sticks" underneath the wheels preventing them from leaving (*Id*. at ¶¶ 573-574); Erik Fanning and Sonora Larson were attempting to leave in a car (*Id*. at ¶¶ 407-409); Breon Foster "was trying to leave Wauwatosa" when he was arrested (*Id*. at ¶¶ 749-750); Leah Porter, Christina Vitolo Haddad, and Sonja Worthy were arrested after providing "social service assistance to various persons" and left "to go home around 7:30pm" (*Id*. at ¶¶ 819-829); Suzanne Wells was in a vehicle trying to leave Wauwatosa when she was arrested (*Id*. at ¶¶ 599-599); Destiney Jones was driving her vehicle to leave Wauwatosa when she was arrested (*Id*. at ¶¶ 390-398); Carmen Palmer was driving with Palmer 1 and 2 when she was forced to stop and prevented from leaving (*Id*. at ¶¶ 606-608); Nathan Sabel and Holly Lavora were in the city and were blocked in by an unmarked police car which prevented them from leaving when they were arrested (*Id*. at ¶¶ 373-374); Hector Rodriguez was driving home from picking William Rivera up from work when he was arrested (*Id*. at ¶¶ 642-644); and Peter Sparks was attempting to record police action and protesting in the City of Wauwatosa when he rode his bicycle near the Wauwatosa Library (*Id*. at ¶¶ 852-853). The complaint lacks any factual support for any allegation involving Plaintiff, Kamila Ahmad and therefore fails to plead any claim for relief as to Plaintiff Ahmad.

Moreover, "[i]n most cases, probable cause to arrest defeats a claim of retaliatory arrest."

*Lund v. City of Rockford*, 956 F.3d 938, 941 (7th Cir. 2020). Typically, if a police officer had probable cause to arrest a person, that person cannot bring a successful claim of First Amendment retaliation under § 1983. *Id.* Plaintiffs Joanna Geisler and William Schroeder's claims fail because the municipal proceedings stemming from their citations resulted in a finding of guilty for "Disobey Lawful Order" in violation of Ordinance 7.48.010.[1] Likewise, Plaintiff Mariah Smith was found guilty in municipal court for "Disorderly Conduct" in violation of § 947.01.[2]

For these reasons, Plaintiffs have not adequately alleged a First Amendment retaliatory claim.

### D. Plaintiffs' deliberate indifference claim fails as a matter of law.

The complaint alleges a "42 U.S.C. 1983-Delibrate Indifference" claim against Defendant Weber alleging by the morning of October 9, 2020, he knew or should have known that the officers of the WPD were engaged to silence the voices of those who protested police violence and that they used excessive force and retaliated against protesters based on their viewpoints. (Dkt. 155, Sixth Claim for Relief, ¶¶ 983-995) First, the statute is not "itself a source of substantive rights, but merely provides a means for vindicating federal rights elsewhere conferred," *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

Next, in *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir.1985), the court explained that § 1983 held a supervisor liable only for individual wrongdoing. As an example of such misconduct, the court mentioned "evidence ... that [the supervisor] rewrote the guards' manual to eliminate

---

[1] *See* Joanna L Geisler Milwaukee County Case Number 2022FO000106
https://wcca.wicourts.gov/caseDetail.html?caseNo=2022FO000106&countyNo=40&mode=details;
William E Schroeder 2022FO000102
https://wcca.wicourts.gov/caseDetail.html?caseNo=2022FO000102&countyNo=40&mode=details

[2] *See* Mariah R Smith Milwaukee County Case Number 2022FO000115
https://wcca.wicourts.gov/caseDetail.html?caseNo=2022FO000115&countyNo=40&index=0&mode=details

some safety precaution in the event of fire." *Id.* In other words, if the supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act. There are no such facts pled here. Moreover, the complaint does not even allege that Aidali Rivera, William Rivera, Hector Rodriguez, Lazarito Matheu, or Peter Sparks were engaged in protesting. (Dkt. 155, ¶ 642, 989)

Therefore, Plaintiffs could not proceed against Chief Weber in his individual capacity for failure to plausibly allege personal involvement in the cause of their constitutional deprivation.

### E. Plaintiff Conception's unlawful arrest claim should be dismissed.

Plaintiff, Oscar Rodriguez Conception, brings an unlawful arrest claim against Defendant Farina alleging a lack of probable cause to arrest him for violation of the curfew because he was driving Uber at the time. (Dkt. 155, Ninth Claim for Relief, ¶1068) A finding of probable cause is an absolute defense to a § 1983 claim against an officer for an unlawful arrest claim. *Fleming v. Livingston County, Ill*., 674 F.3d 874, 878 (7th Cir.2012).

> A police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within [his] knowledge and of which [he] has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense.

*Id.* at 878–79. "This standard does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Id*.

The complaint does not even allege Farina was involved in the arrest. *See Id.* at ¶ 288 (National Guard members and John Doe Officers ran to Plaintiff's car, demanding that he get out immediately, and threatened to break the car windows); *Id.* at ¶ 289 (As Rodriguez tried to get out of the car, he was dragged out by John Doe officers thrown on the ground and was handcuffed extremely tightly); *Id.* at ¶ 290 (Defendant Jeffrey Farina of the WPD approached Rodriguez and said, "He's one of the leaders.") All the complaint alleges is that Farina commented to officers

<u>after</u> Rodriguez had been removed from his vehicle and arrested. Plaintiff concedes he was arrested because he was out past the curfew establishing probable cause (or at least arguable probable cause) to arrest, further precluding any claim of false arrest against Farina.

### F. Taleavia Cole's unlawful search and seizure claim should be dismissed.

Taleavia Cole brings an unlawful search and seizure claim against Shane Wrucke, James Skornia, Maria Arbiter, and Timothy Warren for searching and seizing her phone without probable cause.[3] (Dkt. 155, Tenth Claim for Relief: pp. 128-129) The allegations against Wrucke and Arbiter are limited to a seizure of her phone incident to her arrest. *Id.* at ¶ 355. A complaint fails to meet the plausibility requirement and must be dismissed if allegations give rise to an "obvious alternative explanation" for the allegedly wrongful conduct. *Iqbal* at 678. Plaintiff's arguments allege lack of probable cause for the seizure. (Dkt. 155, ¶ 1073) However, the Fourth Amendment permits warrantless searches and seizures incident to custodial arrests. U*nited States v. Robinson*, 414 U.S. 218 (1973) This rule extends to personal effects found on the arrestee's person at the time of arrest. *Id.* at 236. Officers can also seize and secure cell phones to prevent destruction of evidence while seeking a warrant. *See Illinois v. McArthur*, 531 U.S. 326, (2001). The allegations of the complaint fail to plausibly allege that Wrucke and Arbiter violated Cole's constitutional rights by seizing her phone.

The complaint does allege Warren searched the phone. (Dkt. 155, ¶ 366) Though it may technically be a factual assertion, the sentence raises more questions than it provides answers (*i.e.,* what part was searched, how was it searched, when was it searched) and the limited material in the complaint is too vague and conclusory.

---

[3] James Skornia is not a named defendant. While Joseph Lewandowski is listed as a Defendant in this claim, he is not further identified in the allegations. (Dkt. 155 ¶ 1072-1077)

### G. Plaintiffs' state law malicious prosecution claim must be dismissed.

The Court should deny that state-law claim for lack of jurisdiction because, as argued above, the Court should dismiss all of Plaintiffs' federal claims. *See* 28 U.S.C. § 1367(c)(3); *Olive Can Co., Inc. v. Martin*, 906 F.2d 1147, 1153 (7th Cir. 1990) Even if the Court decides to address the state-law claim on the merits, it should still dismiss the claim for failure to state a claim.

According to the Fourth Amended Complaint, George Schimmel is the contracted Attorney for the City of Wauwatosa who is prosecuting "all municipal non-criminal tickets given to the fifty (50) Plaintiffs because of their being involved in protests or being present in Wauwatosa in 2020. (Dkt. 155, ¶¶ 145, 147, 186-187, 202-203, 232-233, 279, 302, 689-690, 692, 804, 836, 1093-1102) Plaintiffs further allege he has not corrected the forfeiture amount on the citations. (Dkt. 155, ¶ 280) The complaint specifies "at all times pertinent and material to this Complaint, Schimmel was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin." *Id.* at ¶ 100. The complaint makes no allegation from which to infer that Plaintiffs' claims arose from any function other than the initiation and prosecution of civil municipal charges and "prosecutors possess absolute immunity with respect to the initiation and pursuit of prosecution." *Ford v. Kenosha County*, 160 Wis.2d 485, 504 (1991). The immunity applies equally to individuals acting "under color of law" who perform official functions in the judicial process, such as judges or prosecutors, as well as police officers (*Briscoe v. LaHue*, 460 U.S. 325, 329 (1983)) and applies irrespective of the existence of malice or corrupt motives. *Bromund v. Holt, 24 Wis. 2d 336, 341, (1964).*

Likewise, the gist of the asserted cause of action against Farina is that he improperly issued ordinance citations which caused Plaintiffs to be subject to judicial proceedings for which there was no probable cause. (Dkt. 155, ¶¶ 1093, 1094, 1097, 1098). As noted above, the same immunity

is, in general, extended to the police and other law enforcement officers acting within the scope of their duties who perform official functions in the judicial process. *Dowd at* 556. As such, the complaint is also legally insufficient as to Farina.

<u>**CONCLUSION**</u>

In deciding the prior motion to dismiss—the Court generously granted Plaintiffs leave to file an amended complaint, noting "perhaps Plaintiffs were previously unaware of the fundamental errors plaguing their pleading." (Dkt. 152, p. 31) The Court warned "if Plaintiffs cannot remedy these errors as articulated in this decision, Plaintiffs risk having this complaint dismissed with prejudice." *Id.* This is the second motion to dismiss filed by Defendants and Plaintiffs have still failed to address fundamental errors plaguing their pleadings: Plaintiffs have again sued the wrong defendants in the wrong capacities; Plaintiffs have brought causes of action against the City—not through *Monell*; Plaintiffs have sued defendants in their individual capacity, without personal involvement; Plaintiffs bring *Monell* like claims against individual defendants; Plaintiffs do not identify the *de facto* policy or how it proximately cause injuries; Plaintiffs continue to seek the enforcement of state law from this Court; and Plaintiffs make equal protection claims without alleging a suspect class, and Plaintiffs continue to bring claims that fail as a matter of law. For all the reasons stated above, Defendants respectfully request that all claims alleged against them be dismissed with prejudice for failure to state a claim.

Dated at Wauwatosa, Wisconsin this 18th day of April 2022.

**WIRTH + BAYNARD**
Attorneys for Defendants

*/s/ Kiley B. Zellner*
Kiley B. Zellner, WI Bar No. 1056806
Email: kbz@guntalaw.com

30