**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

Kathryn KNOWLTON, Dana McCORMICK et al,

     Plaintiffs,

     v.                 Case No. 20 CV 01660

CITY OF WAUWATOSA, Dennis McBRIDE,
     Barry WEBER, et al,

     Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION**
**TO DISMISS**
**(REQUEST FOR ORAL ARGUMENTS)**

---

Plaintiffs, Knowlton et al, submit the following response to Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim. Plaintiffs assert that Defendants' motion be denied and request oral arguments.

## BACKGROUND

The City of Wauwatosa through its Police Department has spent the past two years engaged in a political campaign against those who call for justice and reform. This campaign has included the use of violence, conducting unwarranted criminal investigations, civil forfeitures, surveillance, and efforts to harass and intimidate those who call for change. Sixty-eight (68) Plaintiffs and one unincorporated entity brought these actions to call out various constitutional violations including invasions of their privacy, violation of their right to assemble and to exercise free speech, and to bring to light the corrupt use of state force in pursuit of political gain. Plaintiffs have brought these actions to tell their story.

1

## MOTION TO DISMISS STANDARDS

Pursuant to Fed. R. Civ. P. 12(b)(6) a motion to dismiss challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a). The federal rules "do not require a plaintiff to include much factual detail in a complaint." *Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the plaintiff is not required to make "detailed factual allegations"). Dismissal is appropriate only if the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009).

At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Twombly*, 550 U.S. at 555 ("[A]ll the allegations in the complaint are [assumed] true (even if doubtful in fact)"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (Rules "do[] not countenance dismissals based on a judge's disbelief of a complaint's factual allegations"). It is not the Court's role to determine if Plaintiffs' accounts will ultimately hold up:

> "Plausibility" . . . does not imply that the district court should decide whose version to believe, or which version is more likely than not. . . . [T]he Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, *not* did they happen. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Plaintiffs' Fourth Amended Complaint far exceeds these standards.

2

**<u>ARGUMENT</u>**

I.     PLAINTIFFS' CLAIMS AGAINST JOHN DOES 1-100 SHOULD NOT BE DISMISSED

Defendants argue that at the Motion to Dismiss timing of a case, that John Doe Defendants need already be named. If this were a Motion for Summary Judgment, Defendants would likely prevail, but given the current posture of the case, this request is premature.

In *Hall v. Norfolk Southern Ry.* 469 F. 3d 590*, 596 (7th Cir.2006), the court noted that "it is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires." Wisconsin has a three year statute of limitations to file a lawsuit involving injury "to the character or rights of another, not arising on contract" Wis. Stat. § 893.53. The Supreme Court noted in *Wilson v. Garcia*, 471 U.S. 261, 105 S. Ct. 1938, 85 L.Ed.2d 254 (1985), that federal courts must use the period of limitations adopted by the states for personal-injury suits. Such statute of limitations as enumerated in Wisconsin Statute §893.53 and are applicable to 42 USC 1983 actions. *Hemberger v. Bitzer*, 216 Wis. 2d 509, 574 N.W.2d 656 (1998).

Of all  claims for relief in Plaintiffs' 4th Amended Complaint, including those involving John Doe officers, none exceed the three year statute of limitations enumerated in Wis. Stat. §893.53, including the 2nd, 5th, 8th-10th, 12th and 13th claims for relief. All allegations in Plaintiffs' 4th Amended Complaint are a result of actions and injuries that occurred from May 25, 2020 onwards.

In *Hall*, as in this matter, Plaintiffs at this point lack the specific identity knowledge of some of the defendants, though all allegations stem from actions  which occurred on and since May 25, 2020. Thus, any applicable statute of limitations do not currently preclude these claims.

Defendants are correct that this matter has thus far exceeded sixteen months of litigation, with the identity knowledge of some officers still unknown.. In January, 2022, this Court noted

3

that it, "will not set a new scheduling order until Plaintiffs have filed an amended complaint and Defendants have responded. As such, (the court) will stay further discovery at this point." (ECF #153, p. 2). This order has not absolved Defendants from their legal and procedural obligation to comply with discovery, and in fact, it confirms that discovery is not concluded. Nonetheless, Defendants failure in discovery production is directly responsible for Plaintiffs' lack of specificity The Court's order to stay discovery should not be interpreted as the door closing to discover the specific names of officers for whom actions are attributable and against whom violations are properly alleged in the complaint. Good faith and standard-practice compliance with discovery rules and procedures is still required, precisely to ensure full compliance with the standards of pleading. Lack of identifying information is not ripe to trigger dismissal in large part because Defendants' are culpable in failing to timely turn over requested discoverable documents that were requested over a year prior to the courts order to stay discovery on February 1, 2022. Thus Defendants' argument must fail.

More troubling, this is not the first time Wauwatosa has failed to keep records which would permit a Plaintiff from naming an individual officer arising from these very protests. In *Radke v. Wauwatosa*, Wauwatosa also failed to name the individual officer who shot Paige Radke with a rubber bullet because of a failure to maintain records. Wauwatosa then sought to take advantage of their own failures in discovery and moved to dismiss claims against John Does, exactly as here. *Radke v. Wauwatosa*, 21-CV-00247, ECF #34, p. 2 & 3. This is a troubling strategy that Defendants have apparently zeroed in on as a basis for avoiding responsibility. To grant this request would be to reward them for either failures in responding to discovery or failures in knowing which of their officers commit acts of excessive force.

4

In *Billman*, the court recognized the distinct disadvantages that a prison inmate may have in identifying persons before filing a complaint and acknowledged that "if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous." *Billman v. Indiana Dep't of Corr.,* 56 F. 3d 785, 789 (7th Cir 1995). It was further noted that this principle is not limited to prisoner cases and that "it applies to any case in which, usually because the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery." *Palmer v. Board of Education,* 46 F.3d 682, 688 (7th Cir. 1995). Defendants' argument to dismiss all claims against John Does must be rejected, as courts recognize that to grant it would be to upend any ability for unequally situated parties to have access to justice.

Defendants further argue that "Plaintiffs have completed all discovery in the case." (ECF #179 pg. 4). This statement is inaccurate. Plaintiffs actually stated, "discovery closed on December 31, 2021." (ECF #139-2) Plaintiffs assertion was based upon the most recent scheduling order filed on July 29, 2021 in which it was ordered  that, "all discovery in this case must be completed by December 31, 2021." (ECF #42, p.1). However, given that Defendants filed a Motion to Dismiss and Plaintiffs have filed an Amended Complaint, it is not clear that discovery has concluded. Defendants could have filed a Motion for Summary Judgment, but instead their procedural strategy has reopened the case, including for the purposes of discovery.

Defendants seem to argue "that the court has no jurisdiction over parties who have not been named or served with a summons and complaint." (ECF #178 pg. 4). It is certainly true that the court lacks jurisdictions over unnamed parties indefinitely, however defendants must comply with discovery rules in order for Plaintiffs to get this knowledge in pretrial discovery. In *Bivens*, the

5

court noted that, "Plaintiffs must discover the names of the defendants in order to serve summonses on them and thus establish the court's personal jurisdiction, without which the suit must be dismissed." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 390 n. 2, 91 S. Ct. 1999, 2001 n. 2, 29 L.Ed.2d 619 (1971). In *Bivens* the court noted that, the initial inability to identify the injurers is not by itself a proper ground for the dismissal of the suit. *Id*. Dismissal would gratuitously prevent him from using the tools of pretrial discovery to discover the defendants' identity. *Id*. Plaintiffs current inability to identify John Doe officers is not for a lack of trying, it is unfortunately in large part due to the lack of discovery compliance and is not proper grounds to dismiss claims against John Doe officers.

## II.     PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF SHOULD NOT BE DISMISSED

A.     Plaintiffs have standing and the claims are justifiable and on-going. *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983). The Court in *Lyons* reasoned that to invoke Article III jurisdiction, a plaintiff seeking injunctive relief must show that he is in immediate danger of sustaining some direct injury. Relying upon *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974), the Court stated that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." The *Lyons* Court found that while the plaintiff may have had standing to seek damages against the individual officers and even the City, he could not establish a real threat that an officer would choke him again:

> [T]o establish an actual controversy ... *Lyon*s would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter ... or (2) that the City ordered or authorized police officers to act in such manner. *Id.*

6

In this instant case, the City's violation of Wisconsin statute 323.11 in preparing, publishing and enforcing the curfew order absent an emergency, demonstrates a calculated and on-going potential threat to all citizen's constitutional rights and thus, injunctive relief is proper. Additionally and specifically, the nature of the Defendant City, as with the official authority and responsibility of other named Defendants against which injunctive relief is sought, make injunctive relief appropriate and just and necessary as a check to the abuse of power for those in "official capacities" and titles, as well as the potentially impervious nature of an entity (City). Indeed, injunctive relief is most appropriate in securing and safeguarding against constitutional violations by state forces specifically organized to work collectively, and thus able to avoid personal identification and responsibility. In addition to this, there is an ongoing threat in that Defendants Dominick Ratkowski and John Doe officers continue to information of plaintiffs and distribute the target list in violation of the DPPA. Similarly, Defendant Roy also continues to share information of plaintiffs in violation of the DPPA.

B.      Defendants sued by Plaintiffs are correct

Plaintiffs' Fourth Amended Complaint should not be dismissed because of an error in the parties section to the lawsuit. Such would be counter to the interest of justice, as Plaintiffs have made clear throughout the entirety of this litigation that they intend to bring suit against Defendants for money damages. Plaintiffs were given two weeks to redraft a complaint on behalf of more than (65) sixty-five Plaintiffs (14) fourteen claims arising from a long scheme by Defendants to target protestors identified as being anti-police and as being sympathetic to black lives matter. Plaintiffs intentionally removed official capacity claims against the individual Defendants, but due to the exceedingly tight timeframe, apparently made an oversight in failing to remove the official capacity relief request from the perfunctory parties section. Plaintiffs take responsibility to

7

immediately amend this complaint to correct this oversight, but to dismiss all of Plaintiffs' claims against the individual Defendants for a multitude of constitutional violations would be exceedingly unjust and in contravention of the pleading standards of the Federal Rules of Civil Procedure.

III. PLAINTIFFS FEDERAL CONSTITUTIONAL CLAIMS AGAINST WAUWATOSA SHOULD NOT BE DISMSSED AS PLAINTIFFS ALLEGE MUNICIPAL LIABILITY IN THEIR CLAIMS

Municipal liability for a Section 1983 violation is governed *by Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and its progeny. *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997). "Before the City can be liable under 1983, the plaintiff must show either "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). Further, inadequacy of police training may serve as the basis for Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of those with whom the police come into contact. Lanigan, 110 F.3d at 479 (citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). Where a municipality's failure to train its employees evidences a deliberate indifference to the rights of its inhabitants, such a shortcoming can be properly thought of as a city's policy or custom actionable under Section 1983. Lanigan, 110 F.3d at 479 (citing City of Canton, 489 U.S. at 389)

In Plaintiffs 1st Claim for Relief against the City of Wauwatosa and Dennis McBride, thirty-one Plaintiffs claim 1st Amendment Violations for the Curfew Order.[1] (ECF #155 §§904-

---

[1] Plaintiffs First claim for relief against the City of Wauwatosa and Dennis McBride is alleged by thirty-one Plaintiffs who include Jacqueline Bogenberger, Raine Cich, Tahudah Cole, Taleavia Cole, Tracy Cole, Ann Delessio-Parson,

929). Plaintiffs have alleged that a written proclamation, which is an express policy, violated their rights under the First Amendment. Additionally, this express policy was created by the chief executive. Accordingly, Wauwatosa is an appropriate Defendant under Claim One.

Plaintiffs' 3rd Claim for Relief is against the City of Wauwatosa by fifty Plaintiffs and includes the Monell Claim alleging 14th Amendment violations for the target list.[2] (*Id*. at ¶941 – 950) Plaintiffs alleged that the City has a widespread practice and an express policy that deprived them of their 14th Amendment rights. (ECF #155 ¶942 & 948) In this claim. Wauwatosa through the WPD condoned, ratified and adopted de facto polices and customs which included targeting Plaintiffs because they were engaged in constitutionally protected activity and maintaining a Target List of Plaintiffs of personal information received from their motor vehicle records, sharing information, failing to training members of the WPD on how to use the list in a manner that did not violate Plaintiffs constitutional rights under the 4th and 14th. (ECF #155 ¶942) Plaintiffs 3rd claim for relief should not be dismissed.

Defendants also move to Dismiss the 11th Claim for Relief on the basis that Plaintiff William Rivera did not allege a policy, custom or practice. However, as this Court is aware, a claim under Title VI cannot proceed against an individual, and instead must be brought against a

---

Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Destiney Jones, Kathryn Knowlton, Sonora Larson, Holly Lavora, Dana McCormick, Molly Neilson, Carmen Palmer, Palmer Doe 1, Palmer Doe 2, Leah Porter, Jose Ramirez, Hector Rodriguez, Nathan Sabel, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriela Vitucci, Susan Wells, Kathleen Wojnar, and Sonja Worthy, and The People's Revolution.

[2] Plaintiffs Third claim for relief against the City of Wauwatosa is alleged by forty-nine and includes Plaintiffs Andrew Aaron, Robert Agnew, Kamila Ahmed, Isiah Baldwin, Jacqueline Bogenberger, Lavita Booker, Rebecca Burrell, Raine Cich, Khalil Coleman, Tahudah Cole, Taleavia Cole, Tracy Cole, Oscar Rodriguez, Steven Conklin, Lauren Cross, Erik Fanning, Jessica Fenner, Breon Foster, Christine Groppi, Gaige Grosskreutz, Joseph Hayes, Percy Hayes, Adante Jordan, Mary Kachelski, Sean Kafer, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Vaun Mayes, Molly Nilssen, Shawn Page, Carmen Palmer, Juvenile (male) Palmer, Juvenile (female) Palmer, Rosalind Rogers, Madeline Schiweitzer, Mariah Smith, Peter Sparks, Tiffany Stark, Angel Vega, Gabriella Vitucci, Tristiana Walls, Oscar Walton, Jayden Welch, Britta Welch, Brandon Wilborn, Trisha Wilson, Kathelyn Wojnar, and members of the People's Revolution

municipality. *Smith v. Metropolitan School District Perry Township*, 128 F.3d 1014, 1019 (7th Cir. 1997). Accordingly, Defendants' argument against *Monell* liability in 11th Claim for relief fails.

In the complaint, Plaintiffs note that Wauwatosa receives numerous federal funds including the Emergency Preparedness Grant "as well as over $20 million in funds from the American Rescue Plan." (ECF #155 ¶1081). Plaintiff Rivera, who was unlawfully arrested while trying to go to his home in Wauwatosa, was told by a John Doe Officer that "at this point (arresting him) doesn't matter because you are black." (*Id.* at ¶1083). Both elements have been met in Plaintiffs complaint. Dismissal at this juncture would be improper.

For all the aforementioned reasons, all claims for relief against the city should not be dismissed.

## IV. MONELL CLAIMS WERE APPROPRIATELY PLEAD AND THE CONSTITIONAL CLAIMS ARE APPROPRIATE AGAINST DEFENDANT MCBRIDE in THE 1st CLAIM FOR RELIEF

### A. The curfew was unreasonable as to its time, place, and manner restrictions

Defendants' first argument appears to be that because Defendant McBride was acting as Mayor when he proclaimed the Emergency Curfew Order declaring the protesting of police brutality unlawful in Wauwatosa for five nights, he therefore could not be sued in his individual capacity. However, "[i]ndividual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Carmody v. Bd. of Trs. Of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018). Here, Plaintiffs have alleged that Defendant McBride, through his own actions, announced the curfew in order to silence protesters. (ECF #155. ¶ 234-235). Plainly, Plaintiffs allege that through his own conduct, in proclaiming a curfew aimed at stopping protest activity, his actions violated First Amendment rights. In fact, had Defendant McBride not-violated their First Amendment rights while acting as Mayor, Plaintiffs' 1983 claim would have failed as his

conduct would not have been under color of state law. Plaintiffs have also brought suit against the City of Wauwatosa for this order because it represented an express policy of the City under *Monell*. *See Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

In Plaintiffs 1st Claim for Relief of First Amendment Violations, against the City of Wauwatosa and Dennis McBride, Defendants argue that McBride should have also been sued in his official capacity.[3] "Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d at 977 (7th Cir. 2008); *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L.Ed.2d 301 (1991)

In *Kentucky v. Graham*, the court noted "that as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159 (1985). Therefore, when a § 1983 complaint asserts a claim against a municipal entity and municipal official in her official capacity, federal district courts routinely dismiss the official capacity claim as duplicative or redundant. *See, e.g.*, *Cotton v. District of Columbia*, 421 F. Supp. 2d 83, 86 (D.D.C. 2006); *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003); *McCachren v. Blacklick Valley Sch. Dist.*, 217 F. Supp. 2d 594, 599 (W.D. Pa. 2002). Here Plaintiffs 1st Claim for relief is against Defendants City of Wauwatosa and Dennis McBride in his individual capacity. For Plaintiffs' claims specific to McBride, as the chief executive policymaker for Wauwatosa, unlawfully, proclaimed a discriminatory curfew in violation of the First Amendment with the express intent to restrict Plaintiffs' political protests. (ECF #155, ¶¶ 910-913,) Thus this claim has been properly plead and should not be dismissed because McBride is named in his individual capacity, and the municipality has been put on notice.

---

[3] See Footnote 7.

Plaintiffs have brought suit against both Defendant McBride, in his individual capacity and Defendant Wauwatosa as a municipality for violating their First Amendment rights to protest by proclaiming the curfew on October 6, 2020. Plaintiffs have properly named each Defendant for their actions and have properly stated a claim for relief under the First Amendment.

Defendants next argue that the curfew was a content neutral restriction. Plaintiffs, however, contest this characterization – the purpose of the curfew on its face was plainly to stop protests. As a preliminary matter, this curfew was announced in anticipation of protests. (ECF #155 ¶ 240). In announcing the curfew on the same day as the DA's announcement to not charge an officer in the killing of Alvin Cole, a seventeen year old Black male, while referencing other protests against police brutality, it is clear that this curfew was put in place specifically to stop protesters. *Id*. ¶ 264. But the curfew Order clearly states its intention: to curtail protests. It states that the proclamation of the curfew is "based upon recent experience with protests concerning the continued employment of Officer Mensah by the WPD and upon community response to decisions and actions regarding police officers nationwide, most recently in Kenosha, Wisconsin, and Louisville, Kentucky." (ECF #47-4 ¶2). Further, the timing of a protest matters – the ability to protest the DA's decision in the immediate aftermath of his decision is critical to Plaintiffs' political expression. Denying protesters the right to protest his decision until well after his decision is made, significantly impacts their message. Any content-based exclusion of speech in a public forums is subject to strict scrutiny, meaning that the government must show the exclusion "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 44, 45 (1983). Defendants have failed to argue that Defendants' conduct constituted a compelling state interest and that the curfew satisfied strict scrutiny. Accordingly, Defendants' Motion to Dismiss as it relates to Claim One should be denied.

Defendants' argument on Claim One instead rests on its assertion that the curfew order was content-neutral in spite of its language. Government may enforce reasonable time, place, and manner restrictions provided they are content neutral, they are narrowly tailored to serve a significant government interest, and ample alternative channels of communication exist. *Perry educ. Ass'n*, 460 U.S. at 45. First, Defendants argue that a curfew in response to a protest does not violate the First Amendment. In support they point to two district court decisions, one decided on jurisdictional grounds (*Larson*) and the second granted with leave to amend for lack of clarity. But the Defendants fail to acknowledge that the Seventh Circuit has already addressed a Plaintiff's right to challenge a curfew as a violation of their First Amendment rights. In *Hodgkins ex Rel. Hodgkins v. Peterson*, 355 F.3d 1048 (7th Cir. 2004), the Seventh Circuit held that a curfew order did call into question a Plaintiff's first amendment rights – that "[b]eing out in public is a necessary precursor to almost all public forums for speech, expression and political activity" and that "[i]ts relationship to expressive conduct is intimate and profound. Seventh Circuit caselaw is clear on this – a curfew order necessarily calls into questions the first amendment rights of those whose conduct it limits.

Lastly, Defendants contest that the curfew order was narrowly tailored to serve a significant government interest. Plaintiffs have alleged that the curfew covered the entire city and provided no alternative channels for political protest. (ECF #155. ¶ 918). Taken as true, which is the standard under 12(b)(6), it is reasonable to conclude that a curfew which covered an entire town and provided no alternatives is sufficient to state a claim. While Defendants would like to present defenses – and they will get that opportunity at later stages in this matter – at the Motion to Dismiss stage, such arguments are inappropriate and cannot form the basis for the granting of a motion to dismiss.

B. Plaintiffs' 14th Amendment due process violation should not be dismissed against Defendant Dominick Ratkowski

In Plaintiffs' Fourth Claim for Relief, forty-nine Plaintiffs sue Defendant Dominick Ratkowski[4] (ECF #155 ¶¶ 951 – 955), for a violation of their right to privacy pursuant to the DPPA and equal protection under the law. "…[N]o State shall . . . deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Plaintiffs allege that Defendant Ratkowksi in essence created a class of persons based on his own subjective assignments, that of perceived political affiliation - and then discriminated against them, interfered with their fundamental rights, and caused others to interfere with their fundamental rights, in violation of the equal protection clause. *Srail v. Vill. of Lisle, Ill*., 588 F.3d 940, 943 (7th Cir. 2009). It is significant to note that through discovery, a group of people perceived to be of a different political affiliation than that of Plaintiffs, were specifically excluded from the "target" list created by Defendant Ratkowski and thus protected from consequential discrimination and potential violations. Defendants cannot argue a lack of a "class" identification and membership which would be entitled to equal protection under the Constitution simply because the class was one which was created by one of the Defendants.

Plaintiffs indeed maintain their equal protection claim precisely because Defendants' actions in subjectively and arbitrarily assigning some political affiliation and/or motive to create a specified group, and treating the personally identifying information of that group unlawfully, and differently than others, were motivated by Defendants' own discriminatory/subjective purpose. As alleged, this withstands a dismissal standard and Plaintiffs look forward to proving same.

C. Plaintiffs First Amendment excessive force claim should be dismissed in the 7th Claim for Relief

---

[4] See Footnote13.

Defendants' argue that Plaintiffs Seventh Claim for Relief should be dismissed because it Redundant to Plaintiff's Fifth Claim of First Amendment Retaliation and the Eighth Claim of Excessive Force. (ECF #178, pg. 18). Plaintiffs concede that the 7th Claim for Relief should be dismissed.

## V.     PLAINTIFFS CLAIMS DO NOT FAIL AS A MATTER OF LAW

A.     Defendants violated the Driver's Privacy Protection Act and the 2nd and 14th claims for relief should not be dismissed.

In Plaintiffs' 2nd Claim for Relief, Plaintiffs state that Dominick Ratkowski and John Doe Officers violated the DPPA.[5] (ECF #155 ¶930 – 940) On or around May 25, 2020 Defendant Dominick Ratkowski, created a "Target List" in which Plaintiffs were placed on that knowingly contained their personal and/or highly restricted personal information obtained from their motor vehicle records. This was subsequently disclosed and distributed to third parties without Plaintiffs' consent and without any permissible purpose pursuant to the DPPA. (*Id.* at ¶160, 161). "Ratkowski freely disseminated the Target List unlawfully to numerous persons," including to "various other third parties outside of the Wauwatosa Police Department." (*Id*. at ¶154).

"The DPPA was enacted as a public safety measure, designed to prevent stalkers and criminals from utilizing motor vehicle records to acquire information about their victims.**"** *Dahlstrom v. Sun-Times Media* 777 F. 3d 937 7th Circuit (2015) At congressional hearings on the proposed legislation, Police sergeant Donald L. Cahill, testified and spoke on behalf of the Fraternal Order of Police, commented on the importance of the DPPA by sharing that,

"Numerous law enforcement officers over the years [have] had concerns about the ability of defendants, that they had helped prosecute; to surveil them at their place of employment and get their license plate number, and in turn trace that number through the state division of motor vehicles to get their home addresses." The Driver's Privacy Protection Act of 1993: Hearing on H.R. 3365 Before the Subcommittee. on Civil & Constitutional Rights

---

[5] See Footnote 1.

of the H. Comm. on the Judiciary, 103d Cong., 1994 WL 212833 (Feb. 3, 1994) (statement of Donald L. Cahill, Legislative Chairman, Fraternal Order of Police).

These Plaintiffs have similar fears to the unfettered access and unlawful dissemination of their personal and highly personal information obtained through their motor vehicle records for an impermissible purpose by Defendant Ratkowski, simply because of their perceived affiliation with protesting for police reform. Included on the target list were a variation of information about Plaintiffs including their driver's license photos, address, phone numbers, license plate numbers, and dates of birth knowingly obtained from Plaintiffs' motor vehicle records by Defendant Ratkowski, which he and John Doe officers disseminated and made available to hundreds of people including various third parties outside of the WPD and not for a permissible purpose. (ECF #155 ¶¶153, 154, 155, 159, 935, 936, 937, and 938)

To prove liability under the DPPA, Plaintiffs must show that the defendants "1) knowingly 2) obtained, disclosed, or used personal information, 3) from a motor vehicle record, 4) for a purpose not permitted." *Loeffler v. City of Anoka*, 893 F.3d 1082, 1085 (8th Cir. 2018) (internal quotation omitted). As alleged in the 4th Amended Complaint, Plaintiffs claim that Defendant Ratkowski knowingly obtained and disclosed their personal information for a purpose not permitted under the DPPA pursuant to 18 U.S.C. 2721(b)(1). (ECF #155 ¶¶153-155, and 937)

Defendants next argue that Roy, "was permitted to disclose the information while carrying out his law enforcement duties," when responding to open records requests. (ECF #178 pg. 21). This argument must fail as simply inaccurate and certainly fact-dependent. As alleged in the 4th Amended Complaint, Defendant Roy on and after January 7, 2021 did knowingly disclose plaintiffs' personal information for a purpose not permitted under the DPPA pursuant to 18 U.S.C. 2721(b)(1). (*Id.* at ¶¶893, 895, 896, 898, 899, 900, 1105, 1110-1114). In *New Richmond Newspaper v. City of Richmond* the newspaper unsuccessfully sued the city of Richmond for

unredacted police accident reports. *New Richmond Newspaper v. City of Richmond*, 2016 WI App 43 (May 10, 2016). The Newspaper argued that since it was asking for such information through FOIA, this was also an agency function of the police through the DPPA which should allow for them to receive unredacted motor vehicle reports. *Id* at ¶40. The court reasoned that,

> "Permitting the DMV to disclose personal information every time a public records request was made would eviscerate the protection provided by the DPPA, which was enacted to limit the circumstances in which state DMVs could disclose drivers' personal information in order to protect their safety and privacy." *See Maracich*, 133 S. Ct. at 2191; *Kehoe*, 421 F.3d at 1210

The court further reasoned that to interpret exception argued by the *Newspaper* that they should have "unfettered disclosure of personal information in response to public records requests—would be inconsistent with the manifest purpose of the DPPA and would therefore be unreasonable." *Id*. at ¶43 ; See *Kalal*, 271 Wis. 2d 633, ¶46 (statutory language interpreted to avoid absurd or unreasonable results). Ultimately, the court rejected the argument that Defendants attempt here, and held that "a state FOIA or public records request is not, in and of itself, a sufficient basis to obtain personal information protected by the DPPA." *Newspaper*, 2016 WI App 43 ¶46 (May 10, 2016).

As cited by Defendants, any individual whose address was obtained from a motor vehicle record is a proper plaintiff, regardless of whether that person is law enforcement personnel or not if the purpose is not permissible. In this instant case, Defendant Dominick Ratkowski, a non-law enforcement officer, and Defendant Joseph Roy, a law enforcement officer, are both alleged to be liable for releasing/disseminating plaintiffs' personal information that was obtained from motor vehicle records for a use that was not permissible. Pursuant to 18 U.S.C. 2724(a) violations of the DPPA creates a private right of action for individuals whose personal information is unlawfully disclosed. Thus, these plaintiffs maintain an action under the DPPA.[10] Therefore, Plaintiffs 2nd

and 14th Claims for violation of the DPPA as to Defendants Dominick Ratkowski, Joseph Roy, and John Doe Officers should not be dismissed and do not fail as a matter of law.

Defendants also argue that Joseph Roy and Dominick Ratkowski, disclosed and/or obtained Plaintiffs motor vehicle information for a permissible purpose and while carrying out their law enforcement duties and that doing so was for a permissible purpose. (ECF #178 pg. 20-21) This argument must fail. The DPPA does not give limitless access for law enforcement officers to obtain and/or disclose citizens' personal information received from their motor vehicle records for an impermissible use to third parties. The DPPA was enacted in 1994 to "limit the release of an individual's personal information contained in his [or her] driver's license record to those who had a legitimate and lawful need for the information." *Kehoe v. Fidelity Fed. Bank & Trust,* 421 F.3d 1209, 1210 (11th Cir. 2005).

In *Senne v. Village of Palatine*, 695 F.3d at 600 the 7th Cir. Reviewed en banc and interpreted and applied the DPPA's agency functions exception. The 7th Circuit noted that parking tickets containing personal information obtained from DMV records and placed under the windshield wipers of vehicles parked on public streets were disclosures under the DPPA. *Id.* The court then considered whether the disclosures were permitted under either the agency functions exception in 18 U.S.C. § 2721(b)(1) or the exception in § 2721(b)(4). (*Id.* at 605). The Village argued "as long as it can identify a subsection of the [DPPA] under which some disclosure is permitted, any disclosure of information otherwise protected by the statute is exempt, whether it serves an identified purpose or not." *Id.* The 7th Circuit soundly rejected this argument and stated that, "[w]hen a particular piece of disclosed information is not used to effectuate [the purpose identified in one of the DPPA's exceptions] in any way, the exception provides no protection for the disclosing party." *Id.* at 606. The court reasoned the purpose of the DPPA, "clear from its

18

language alone, is to prevent all but a limited range of authorized disclosures of information contained in individual motor vehicle records." *Id*. at 605. The court stated it was necessary to "respect this textually explicit purpose" when evaluating "the coverage of the exceptions within the [DPPA's] broad mandate." *Id*.

As Plaintiffs stated multiple times in their pleadings, starting from  January 7, 2020 onwards, Defendant Joseph Roy knowingly disclosed fifty-three Plaintiffs' personal information and/or highly restricted personal information that was obtained from their motor vehicle records and disclosed such information not for a use permitted by the DPPA. (ECF #155, ¶893-902, 1110-1113). The DPPA allows a civil suit to be brought against any person who knowingly obtains, discloses, or uses personal information, from a motor vehicle record, for a purpose not permitted" pursuant to 18 U.S.C. §2724(a). *Engebretson v. Aitkin Cnty*., U.S. District Court of Minnesota Civil no. 14-1435 (9/26/2016). DPPA, 18 U.S.C. §2721(b) specifically talks about permissible uses of law enforcement agencies in carrying out its functions as it relates to,

> "Personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti-Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301, 305, and 321–331 of title 49, and, subject to subsection (a)(2),…" DPPA, 18 U.S.C. §2721(b)

In this matter, Defendant Roy starting from January 7, 2021 onwards, knowingly disclosed to third parties "police reports, arrest & booking information, non-criminal tickets and interrogation videos (including those of two juvenile plaintiffs) which contained these fifty-three Plaintiffs' personal information and/or highly restricted personal information that was obtained from their motor vehicle records, and disclosed such information not for a use permitted by the

DPPA."[6] (ECF #155 ¶893) DPPA, 18 U.S.C. §2721(a). Such information disclosed from the motor vehicle records of adult and juvenile Plaintiffs included personal information that identified an individual including their names, addresses, phone numbers, etc. all in violation of 18 U.S.C §2721.

B.    The protestor list violates the 1st Amendment and should not be dismissed.

Defendants here defend the development and maintenance, by the WPD, through Defendant Ratkowski, of a list of people thought to have political views that are critical of police. (ECF #155 ¶ 149). The complaint makes clear that this was done based on perceived political association and provides no other basis for the creation and maintenance of such a list. Although Defendants would like to offer facts outside of the Complaint, this is an inappropriate standard under F.R.C.P. 12(b)(6).

Defendants cite *Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318 (1972) which held "that Plaintiffs have no standing to bring this claim because it is nonjusticiable." (ECF #178 p. 3 ¶ 3). This case is explicitly distinguishable from *Tatum*. The most glaring difference is that *Tatum* was about the ability to contest a domestic surveillance system run by the Army. Courts are often wary to restrict the ability of the military to pursue its functions. Policing is different and on that basis alone, *Tatum* is inapplicable. *Tatum*, 408 U.S. at 14-15 (stating that allowing the claim to proceed "would have the federal courts as virtually continuing monitors of the wisdom and soundness of

---

[6] Plaintiffs Fourteenth claim for relies is alleged by fifty-three Plaintiffs who include Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Rebecca Burrell, Raine Cich, Khalil Coleman, Taleavia Cole, Steven Conklin, Anne Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Percy Hayes, Destiney Jones, Adante Jordan, Mary Kachelski, Sean Kafer, Kathelyn Knowlton, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Holly Lavora, Lazarito Mathieu, Vaun Mayes, Dana McCormick, Molly Nilssen, Carmen Palmer, (juvenile male) Palmer 1, (juvenile female) Palmer 2, Leah Porter, Jose Hernandez Ramirez, William Rivera, Hector Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Jayden Welch, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, and Sonja Worthy

20

Executive action"). It appears based on the Court's reasoning that this decision on the basis of justiciability rests on the Judiciary's ability to restrict the Executive branch. In this case, Justiciability is not at issue as the Defendants here are a municipality and individual Defendants, not a coequal branch of the Federal government. Additionally, Plaintiffs have alleged that Defendant Ratkowski used nonpublic information retrieved from their motor vehicle records in addition to public information, in his targeting of Plaintiffs on the basis of his singular perception of their political viewpoints.

Defendants seem to allege that Plaintiffs suffered no harm as a result of being surveilled and placed on a target list by Defendant Ratkowski. The Court in *Tatum* distinguished earlier cases where the government interfered with political association from the case of the Army surveillance system by describing the harm alleged as "subjective." This is the standard under the first amendment and does nothing to undermine Plaintiffs' claims. Plaintiffs rather allege that surveillance on the basis of political association, including one's attendance at protests, would be likely to chill an ordinary person of reasonable firmness. Simply put, would an ordinary person be less likely to attend a protest if they knew that the police would create a file on them, including their driver's license picture and license plate number, simply for their protest activity. (ECF #155. ¶ 153). Plaintiffs have properly plead the second claim for relief and it should not be dismissed.

C.      Plaintiffs 5th claim for 1st Amendment retaliation should not be dismissed.

To state a first Amendment retaliation claim, the plaintiffs must allege that they engaged in activity protected by the First Amendment, that adverse action was suffered, the same would likely deter First Amendment activity in the future; and that the protected activity motivated the adverse action. *Bridges v. Gilbert*, 557 F. 3d 541 (7th Cir. 2009); *Rowe v. Buss*, No. 21-1182, 2021 WL 5232512, as *2 (7th Cir. Nov. 10, 2021).

Defendants first argue that Plaintiffs do not satisfy the first prong of a retaliation claim because they were not arrested while protesting. While it is correct that most Plaintiffs were arrested while attempting to leave the protest, what is important is that Plaintiffs were arrested while at protests. Defendants argue can only mean that so long as police wait for the end of a protest, they can target and arrest protesters without risking a Retaliation claim. This cannot be correct. The activity that Plaintiffs were engaged in, and which forms the basis for Defendants' retaliation, was their protest activity. Whether Plaintiffs were literally marching when arrested is not important to the analysis. Plaintiffs were arrested while they were attending protests and for their protest activity and such conduct is protected activity.

The Complaint contains no allegations which would lead to a finding that Defendants had probable cause to arrest, and indeed, Plaintiffs are contesting their arrests as well. Moreover, the Court in *Nieves* instructs District Courts to apply the exceptions "commonsensically." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1734 (2019) (Gorsuch, J., concurring in part and dissenting in part). The Court held that "other kinds of evidence, such as admission [that an action was taken in retaliation], might be enough to allow a claim to proceed. *Id*. "A court "must consider each set of facts as it comes . . . and in assessing whether the facts supply objective proof of retaliatory treatment… common sense must prevail." *Brewer v. Town of Eagle*, No. 20-CV-1820-JPS, at *1 (E.D. Wis. Aug. 6, 2021), *citing Nieves*, 139 S. Ct. at 1734. This is a fact-intensive standard which is not ripe for final analysis through this premature motion. Plaintiffs 5th Claim for relief should not be dismissed.

D.      Plaintiffs 6th claim of deliberate indifference does not fail as a matter of law.

Plaintiffs' Sixth claim for relief of deliberate indifference should not be dismissed because

22

Defendant Weber knew or should have known that officers with the WPD were engaged in tactics to silence those who were protesting against police reform and that they also used excessive force to retaliate against protestors based upon their viewpoints. (ECF 178 pg. 26).

In *Farmer v. Brennan* the Supreme Court determined that, "A prison official may be held liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825 (1994). To determine if an official acted with deliberate indifference, we look into his or her subjective state of mind. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) (citing *Farmer*, 511 U.S. at 842). Plaintiffs have alleged and look forward to proving Defendant Weber's breadth of knowledge and self-proclaimed responsibility for actions of and by law enforcement as alleged in the Complaint during and around the curfew order. Dismissal on this ground is again, not ripe, and pursuant to standards of 12(b)(6), Plaintiffs stand on their allegations.

Defendants next argue that Weber, as the chief of police for the WPD should not be liable because he was not personally involved in the acts against the Plaintiffs. This argument must fail. By Defendant Weber's own testimony, he was the "chief policymaker" and implemented and oversaw all law enforcement activity during the duration of alleged violations. His admissions alone provides proper grounds to reject such argument.

In *Childress v. Walker*, the court noted that although "an individual must be personally responsible for a constitutional deprivation in order to be liable, personal responsibility is not limited to those who participate in the offending act…." *Childress v. Walker*, 787 F.3d 433, 439-40 (7th Cir. 2015). "Liability extends to those who, having a duty under the Constitution to the plaintiff, act[ ] or fail[ ] to act with a deliberate or reckless disregard of plaintiff's constitutional

rights." *Id*. at 440 (internal quotation omitted). "Liability can also attach if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Id*. In this matter, it is clear that Defendant Weber was the Chief of Police and chief policymaker for the WPD, he "had final responsibility for establishing the rules of engagement for police deployments responding to protests and civil unrest" (ECF 155 ¶90 & 1016). Furthermore, Plaintiffs' have received evidence that Weber as the supervisor was getting real time knowledge and was even watching the actions of officers within the WPD whom plaintiffs allege he knew were engaged in activity that violated the constitutional rights of Plaintiffs and was deliberately indifferent to their actions. (ECF 155, ¶991) Plaintiffs also allege that Weber had an obligation to address these constitutional violations which he knew were occurring and failed to act. (ECF 155, ¶992) Defendant Weber was aware that, "WPD officers were using excessive force and were retaliating against protesters on the basis of their viewpoints or their perceived viewpoints." (ECF 155 ¶987). Defendant Weber was deliberately indifferent to the needs of Plaintiffs, whom officers perceived to be protesting for police reform and the actions of Weber occurred while acting under color of State law and caused damage to Plaintiffs. (ECF 155 ¶987 and 994). For all of these reasons, Defendants' request to dismiss the deliberate indifferent claim against Weber must fail.

   E. Plaintiff Oscar Concepcion's unlawful arrest in the 9th claim should not be dismissed.

  Plaintiff, Oscar Rodriguez Conception, sufficiently pleads in the 9th Claim for Relief against Defendant Farina and John Doe officers for lack of probable cause to arrest him in violation of the curfew, as he was driving Uber at the time. (ECF #155 Ninth Claim for Relief, ¶1068)  According to the Emergency Proclamation persons going "to and from work" were exempted from the arrest during the curfew on October 7, 2020.  (ECF #155 ¶301). Plaintiffs provided sufficient allegations to sustain this claim.

In the case of Plaintiff Concepcion, Defendant Farina and John Doe officers had reasonably trustworthy information that they lacked probable cause in arresting him and did not behave as a prudent person would in believing that he had committed or was committing an offense. When Plaintiff Concepcion told Defendants Farina and John Doe Officers that he was driving for Uber and "tried to show them his phone," he was simply ignored. (ECF #155 ¶291). When Plaintiff Concepcion asked for the names of the officers who arrested him, he was again ignored and observed  black tape over their name tags. (ECF #155 ¶291). Defendant Farina and John Doe officers had reasonable and trustworthy information that Plaintiff Concepcion was exempt from the curfew because he was working. Defendants ignored Plaintiff Conception, they refused to look at his phone, they ignored the UBER decal on his car, and they refused to answer any of his questions when he was unlawfully detained and labeled by Defendant Farina as "one of the leaders." (ECF #155 ¶290).  Defendants did not behave as prudent people would when they arrested him without probable cause on October 7, 2020.  Plaintiffs have sufficiently pled the 9th Claim for relief on behalf of Oscar Concepcion and it should not be dismissed.

F.     Taleavia Cole's unlawful search and seizure in the 10th claim for relief should not be dismissed.

For the purposes of the Fourth Amendment, a search occurs "either when the government physically intrudes without consent upon a constitutionally protected area in order to obtain information . . . or when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Thompson*, 811 F.3d 944, 948(7th Cir. 2016) (internal quotation marks and citations omitted). Property is seized "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

Defendants seem to misstate the Complaint. Plaintiff Taleavia Cole has alleged that Defendants searched her phone without a warrant. Searching a phone is not allowed without a warrant. A warrantless search incident to a custodial arrest is limited to the person arrested and their immediately surrounding areas. Plaintiff Cole's phone might be seized, but a search of such phone is not permitted under this exception. *United States v. Mitchell*, 82 F.3d 146 (7th Cir. 1996). In *Riley v. California*, 573 U.S. 373 (2014), the Court concluded, "[o]ur holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Riley* 573 at 401." Defendants' argument that they understand the Fourth Amendment to permit them to search the digital contents of phones without a warrant only supports Plaintiffs' claims that the WPD engaged in an unlawful search of Cole's Phone.  The 10th claim for relief against Taleavia Cole should not be dismissed.

G.      Plaintiffs 13th Claim for malicious prosecution should not be dismissed.

Plaintiffs Isiah Baldwin, Aidali Rivera, and Rosalind Rogers sufficiently pled in the 13th Claim for Relief Malicious Prosecution against Defendants Jeffrey Farina, George Schimmel and John Doe Officers. (ECF #155 ¶1090-1102). In a recent Supreme Court decision of *Thompson v. Clark*, the court held that,

> To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need not show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that his prosecution ended without a conviction.

*Thompson v. Clark et al,* No. 20-659 April 4, 2022.

The arrests by John Doe officers and municipal tickets given by Defendant Farina and prosecuted by Defendant Schimmel against Plaintiffs Aidali Rivera, Isiah Baldwin, and Rosalind

Rogers lacked probable cause. Ultimately, the proceedings were terminated in Plaintiffs favor and the tickets were dismissed. (ECF #155 ¶1095, 1099, & 1101).

There are six elements in a malicious prosecution claim: (1) there was a prior legal proceeding against the malicious prosecution plaintiff, (2) the prior proceeding was brought by the malicious prosecution defendant, (3) the prior proceeding terminated in favor of the malicious prosecution plaintiff, (4) the malicious prosecution defendant initiated the prior proceeding with malice, (5) there was a lack of probable cause to initiate the prior proceeding, and (6) the prior proceeding harmed the malicious prosecution plaintiff. *Wisconsin Pub. Serv. Corp. v. Andrews*, 2009 WI App 30, ¶23, 316 Wis. 2d 734, 766 N.W.2d 232. As alleged in the complaint, Defendant's Schimmel, Farina, and John Doe officers brought legal proceedings with malice that was terminated in Plaintiffs favor and Plaintiffs were so harmed by the malicious prosecution. (ECF 155 ¶¶1098 -1102).

Defendants argument in citing *Olive* is confusing. *Olive Can Co., Inc. v. Martin*, 906 F.2d 1147, 1153 (7th Cir. 1990)  In *Olive* the court noted that, "When the federal claims are disposed of before trial, the state claims should be dismissed without prejudice almost as a matter of course." *Id.*, *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.,* 805 F.2d 663, 682 (7th Cir. 1986). Furthermore, pursuant to 28 U.S.C. 1367 Supplemental jurisdiction is proper in that this court may exercise supplemental jurisdiction over state-law claims as this claim is part of the same case over which this court has original jurisdiction. (ECF #155, ¶1091).

Defendants seem to argue that Schimmel, Farina, and John Doe officers cannot be prosecuted as they have "absolute immunity." Prosecutorial immunity is not absolute. In *Foreman*, the court noted that, "[p]rosecutors do not enjoy absolute immunity when giving legal

advice to police officers during investigations," *Burns v. Reed* , 500 U.S. 478, 496, 111 S. Ct. 1934, 114 L.Ed.2d 547 (1991), nor when they swear to a factual affidavit submitted with an information for the purpose of obtaining an arrest warrant, *Kalina*, 522 U.S. at 120-21, 130-31, 118 S. Ct. 502, *Foreman v. Wadsworth* , 844 F. 3d 620 (7th Cir. 2016). Furthermore, Attorney Schimmel has never had a written contract or a written terms of reference outlining his job duties with the City of Wauwatosa since being hired in 1992. (ECF #155, ¶146). This is in direct violation of Wisconsin Supreme Court Rule of Professional Conduct for Attorneys Ch. 20:1.5 (b)(2), which states,

> "If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing."

Defendants cannot claim prosecutorial immunity on one hand while failing to meet the most basic requirements to be a prosecutor on the other. For all the foregoing reasons, Plaintiffs claim for malicious prosecution must not be dismissed.

With regards to the officers, The doctrine of qualified immunity protects government officials from liability provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mordi v. Zeigler*, 770 F.3d 1161, 1162 (7th Cir. 2014). Qualified immunity balances the interests of holding public officials accountable for the irresponsible use of power and shielding those officials from liability when they perform their responsibilities reasonably. Id. In order to defeat a defense of qualified immunity, a plaintiff must establish first, that the facts alleged describe violation of a protected right, and second, that said right was clearly established at the time of the defendant's alleged misconduct. *Mordi*, 770 F.3d at 1164.

Here, Plaintiffs allege that Farina, and John Doe officers arrested and ticketed Plaintiffs without probable cause for violations that were dismissed in their favor. Plaintiffs 13th claim for relief was properly pled and should not be dismissed.

## CONCLUSION

For all the reasons stated herein, Plaintiffs respectfully request this Court deny Defendants' motion to dismiss.

Respectfully submitted this 23rd day of May, 2022.

s://Attorney Kimberley Cy. Motley
MOTLEY LEGAL SERVICES
State Bar No.: 1047193
2206 Bonnie Butler Way
Charlotte, North Carolina 28270
Email : kmotley@motleylegal.com
Telephone : (704) 763-5413

Attorney Kathryn Knowlton
KNOWLTON LAW GROUP
State Bar No: 1032814
7219 West Center Street
Wauwatosa, WI 53210
Email: kate@knowltonlawgroup.com
Telephone: 414-202-2444


Attorney E. Milo Schwab
Ascend Counsel
3000 Lawrence Street
Denver, CO 80205

**ATTORNEYS FOR PLAINTIFFS**