UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KATHRYN KNOWLTON, et al.,

                                 Plaintiffs,

v.                                                 Case No. 2020-CV-01660

CITY OF WAUWATOSA, et al.,

                                 Defendants.

---

**DEFENDANTS' REPLY TO THEIR MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. PROC. 11**

---

      Defendants, by and through their counsel Wirth + Baynard submit the following Reply Memorandum in Support of their Motion for Sanctions. In reading the Response, it would be easy for this Court to forget the actual basis of Defendants' motion for sanctions. Contrary to the lengthy diatribe of Plaintiffs' counsel—on entirely irrelevant issues—when the Response is stripped of irrelevant arguments and futile attempts to deflect, Plaintiffs indeed concede many of the actual issues as discussed in detail below.

      But first, what is equally important as the basis of the motion is the "why." Setting aside the resources spent investigating their allegations, Plaintiffs' conduct precluded Defendants from making specific arguments in their pending motion to dismiss. Take for example, Plaintiffs' assertion that their municipal citations were termed in their favor for "lack of probable cause to charge." For purposes of a motion to dismiss, it is assumed true and foreclosed some defense arguments. Further, Plaintiffs persistence in pursuing meritless claims that were addressed by Defendants in a prior motion to dismiss required Defendants to re-brief the issues.

      Despite, the Response's portrayal of defense counsel, undersigned counsel genuinely hoped Plaintiffs would take advantage of the 21-day safe harbor provision and remedy the Fourth

Amended Complaint. Had Plaintiffs done so, there would be no motion for sanctions and the "why" of Defendants motion would have been satisfied. This motion is not an attempt to silence Plaintiffs—it is a request for Plaintiffs to truthfully present facts in pleadings and limit their claims to those with merit as required by Rule 11.

1. **PLAINTIFFS' REQUEST FOR AN ORDER FROM THIS COURT FINDING THE CURFEW WAS ILLEGALLY ENACTED UNDER STATE LAW IS NOT WARRANTED BY EXISTING LAW.**

Plaintiffs' respond to Defendants claim that Plaintiffs have no Constitutional right to state mandated procedures by asserting "this contention is unrelated to a 'claim, defense, or legal contention'" and therefore not sanctionable. (Dkt. 184 p. 4) Their assertion is directly contradicted by their Fourth Amended Complaint wherein they request:

> WHEREFORE, Plaintiffs respectfully pray that judgment be entered against Defendants, jointly and severally, and request that the Court award the following relief:
>
> 1. An order finding the City of Wauwatosa's curfew of October 7 - 12, 2021 was unlawful and illegally enacted; …

(Dkt. 155, pp. 134-135) Clearly, their request for relief is related to their claims and legal contentions. Plaintiffs' alternative argument is that the request for relief was "unintentionally duplicative." (Dkt. 184, p. 5) Setting aside the dichotomy of the two arguments, if the relief was in fact "unintentionally duplicative" Plaintiffs had 21 days after receiving the safe harbor letter to correct it—they did not.

Plaintiffs also boldly argue they are "correct that Defendant McBride failed to follow state law." (Dkt. 184, p. 4) Not only has such a determination not been made, but the Response wholly misses the point. The point is not if they are correct—the point is that they cannot seek such a determination from this Court based on the Fourth Amended Complaint.

2

To further distract, Plaintiffs spend considerable time tackling the common meaning of "unlawful" and defending their First Amendment curfew claims. (Dkt. 184, p. 5) Neither of which formed a basis for Defendant's motion for sanctions.

2. **PLAINTIFFS' MALICIOUS PROSECUTION CLAIM IS NOT WARRANTED BY EXISTING LAW.**

Here, Plaintiffs defend against sanctions by suggesting "prosecutorial immunity is not absolute" and does not apply when "giving legal advice during police investigations" which for the first time Plaintiffs' claim is their theory. (Dkt. 184, p. 7) Plaintiffs' defense fails because the Fourth Amended Complaint does not include that legal theory—every allegation against Defendant Schimmel relates solely to his prosecution of Plaintiffs' municipal citations.

Apart from this, the Response again incorporates additional arguments and facts that are equally distracting, confusing, and irrelevant to the merits of Defendants' motion. Plaintiffs argue no contract exists for Defendant Schimmel which they deem "likely in direct violation of Wisconsin Supreme Court Rules of Professional Conduct for Attorneys Ch. 20:1.5" dealing with written retainer agreements. Defendants are wholly confused as to how this is relevant. To the extent Plaintiffs are arguing Defendant Schimmel is not the City's prosecutor—their Fourth Amended Complaint admits he "was acting within the scope of his employment" (Dkt. 155, ¶ 100) as the contract attorney for the City prosecuting plaintiffs. (*Id.* at ¶¶ 145, 147). Moreover, Attorney Motley knows he is the prosecutor because she represented Plaintiffs in those municipal court proceedings. Equally irrelevant, Plaintiffs address 28 U.S.C. § 1367 (a) and suggest Defendants seek to "upend this settled legal standard." (Dkt. 184, p. 8) Notably, Defendants did not seek sanctions for the inclusion of state law claims in the Fourth Amended Complaint.

In short, Plaintiffs provided no opposition to the basis of the motion—that the claims against Defendant Schimmel in the Fourth Amended Complaint are not warranted by existing law based on prosecutorial immunity.

### 3. PLAINTIFFS' ILLEGAL SEARCH AND SEIZURE CLAIMS ARE NOT WARRANTED BY EXISTING LAW.

Plaintiffs nominally address Defendants contention that certain illegal search and seizure claims in the Fourth Amended Complaint are not warranted by existing law. Despite Defendants' motion directly citing to the specific allegations in the Fourth Amended Complaint (Dkt. 180, p. 6) Plaintiffs simply argue "it is unclear the specificity of these arguments and to which Plaintiffs the Defendants refer." Again, Plaintiffs provided no opposition to the merits of the argument and if the specific allegations were unclear Plaintiffs had 21 days to clarify.

### 4. PLAINTIFFS CONCEDE THEIR MUNICIPAL COURT CITATIONS WHERE NOT TERM "FOR THE LACK OF PROBABLE CAUSE TO CHARGE."

First and foremost, Plaintiffs do not dispute that their municipal citations were NOT termed in their favor for "lack of probable cause to charge" as alleged in the Fourth Amended Complaint. (Dkt. 184, p.p. 9-10) Rather, Plaintiffs accuse Defendants of "deliberate misleading" and failure to "properly cite" Plaintiffs' complaint. (Dkt. 184, p. 9) Plaintiffs then cite the same language, yet incredibly contend they "never asserted" there was a ruling on probable cause to charge in municipal court. (Dkt. 184, p. 10) Certainly that is what they asserted, their words cannot reasonably be interpreted another way.

While again entirely irrelevant to the bases of Defendants' motion for sanctions, Plaintiffs cite *Thompson v. Clark* which clarified that a Plaintiff need only show that the criminal prosecution ended without conviction—not some affirmative indication of innocence. (Dkt. 184, p. 10) Noticeably, the decision in *Thompson* came months after Plaintiffs filed their Fourth Amended Complaint—which means at the time of the filing, Plaintiffs likely believed they needed to show

4

some affirmative indication of innocence. Here again, Plaintiffs Response misses the point—regardless of if Plaintiffs needed to say it—they did say it and it was not true.

5. **PLAINTIFFS CONCEDE THEY HAD MUNICIPAL COURT CONVICTIONS AT THE TIME THE FOURTH AMENDED COMPLAINT WAS FILED.**

Plaintiffs concede that at the time the Fourth Amended Complaint was filed Joanna Geisler, William Schroeder, and Mariah Smith had been found guilty in Wauwatosa Municipal Court. (Dkt. 184, p. 10) However, Plaintiffs attempt to avoid sanctions by referencing Wisconsin's municipal appeal process and a subsequent dismissal that occurred on May 10, 2022. Firstly, nothing about what happened on May 10, 2022—changes the accuracy of facts pled on February 15, 2022. Moreover, as Plaintiffs are aware eight days before the Fourth Amended Complaint was filed all their municipal appeals had been dismissed.[1] The municipal appeals were not reopened until March 10, 2022.

6. **PLAINTIFFS CONCEDE ATTORNEY SCHIMMEL ATTEMPTED TO CORRECT THE MUNICIPAL TICKET FORFEITURE AMOUNT.**

Plaintiffs concede Attorney Schimmel attempted as early as July of 2021 to amend the curfew citations and correct the amount despite alleging in February of 2022 that he continues "to maliciously and unlawfully prosecute these [curfew] tickets for the unlawful amount of $1,321." In defense, Plaintiffs argue Attorney Motley is not "under any obligation to agree to any proposed stipulation." (Dkt. 184, p. 13) Defendants do not argue that Attorney Motley is obligated to sign the stipulation, just that she is obligated to the duties imposed by Rule 11. Those duties, ensure that the machinery of the federal judiciary "[is] engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose." *N. Ill.*

---

[1] Fourth Amended Complaint filed February 15, 2022 and their municipal appeals were dismissed February 7, 2022. See CCAP Record in Milwaukee County Case Numbers 2022FO000106, 2022FO000102, 2022FO000110, 2022FO000115.

*Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017). What "proper purpose" could exist for refusing to sign a stipulation—fixing the amount—to instead bring a federal civil rights action against the proponent of the stipulation alleging ongoing malicious conduct for not fixing the amount.

7. **PLAINTIFFS CONCEDE AN ATTEMPT TO GET A SEARCH WARRANT FOR TALEAVIA COLE'S PHONE.**

In their motion, Defendants argued Plaintiffs assertion that "Defendants never attempted to get a search warrant for Taleavia Coles' phone" was knowingly inaccurate. (Dkt. 180, p. 10) While Plaintiffs flip-flop their arguments here, they do ultimately concede that Defendant Lewandowski made at least a "contrived 'attempt'" to get a search warrant on October 29, 2020. (Dkt. 184, p. 15) This concession comes after Plaintiffs argue:

> Defendant Lewandowski **did not** attempt to get a search warrant for Plaintiff Taleavia Cole's phone. Despite properly served and propounded discovery demands, Defendants have not produced anything to counter this allegation.

(Dkt. 184, p. 14) Regarding the lack of discovery to counter the allegation, Plaintiffs admittedly have the search warrant application and Defendant Lewandowski's email communication with the Milwaukee County District Attorney's Office. In addition to having the documents, the search warrant application and electronic process was covered by Plaintiffs' counsel during the deposition of both Defendant Wrucke and Defendant Lewandowski.[2] The relevant portions of Defendant Wrucke's August 20, 2021, deposition was as follows:

> Q You didn't do basic investigation 101 to justify keeping Taleavia Cole's phone for three weeks like questioning her, doing a basic warrant, things like that; isn't that correct?
>
> A Not correct. We attempted to get two search warrants for that phone …

(Wrucke Depo. p.p. 22-23)

---

[2] The deposition transcript for Lewandowski was requested but will not be prepared until June 3, 2022.

6

Case 2:20-cv-01660-NJ   Filed 05/25/22   Page 6 of 8   Document 188

Q Okay. But you are sure that the Wauwatosa Police Department applied for two search warrants of Taleavia Cole's phone?

A The Wauwatosa Police Department was involved in the process of one. The Greenfield Police Department was in process of the other.

Q Now, we're getting somewhere. So who is the Wauwatosa Police Department officer who applied for a search warrant of Taleavia Cole's phone?

A I believe it would have been Detective Lewandowski at the time.

Q And to apply for a search warrant this is a written paperwork that he has to put in; is that correct?

A Yes.

Q Okay. And do you know who he serve this paperwork to?

A So I don't know, specifically, the process if --specifically, that process, if there was a draft submitted or who it was submitted to.

Q Okay. But who would that normally be submitted to?

A There's not one point of contact at the DA's office that reviews search warrants.

Q Okay. So who are the -- name all of the points of contacts in the DAs office who review search warrants?

A It could be any assistant district attorney.

Q Okay. Just give me some names so I know who to depose next.

(Wrucke Depo. p. 24)

Q …So if her phone was taken October 8th, 2020. Do you recall how soon after unlawfully taking her phone that you applied for a search warrant?
…
A The -- I believe the final conversation that we had with the DA's office regarding both the warrants occurred late the day before the hearing to have it returned.

(Wrucke Depo. p. 27)

Q In regards to Taleavia Cole's phone, specifically, the search warrant is something that you had applied for in writing, correct?

A Yes, typically.

7

Q And is that typically a form you fill out or is that e-mail?

A It is typically handled -- I believe they, with COVID, they are electronically submitted by e-mail.

(Wrucke Depo. p. 35) Nonetheless, Plaintiffs still contend they "have received no evidence" to contradict their allegation that "Defendants never attempted to get a search warrant for Talevia Coles' phone."

## CONCLUSION

Throughout the course of the litigation, and in Response to the motion for sanctions Plaintiffs have continued to include false accusations and inappropriate diatribes, where they repeatedly accuse undersigned counsel of lying, lack of candor to the Court, bad faith and abuse of the civil process. Contrary to Plaintiffs contention that Defendants are "trying to impose sanctions as well—*for the tenth time in eight months*" this is Defendants only Rule 11 motion for sanctions. Unfortunately, this is not the first-time Defendants have been forced to address misrepresentations made by Plaintiffs' counsel with this Court. (*See* Dkts. 86, 122, 149-1) Out of respect for the Court, the rule of law, and professionalism such behavior should no longer go undeterred. For all the foregoing reasons, the Court should sanction Plaintiffs and counsel for Plaintiffs.

Dated at Wauwatosa, Wisconsin this 25th day of May 2022.

**Wirth + Baynard**
Attorneys for Defendants

BY: ___/s/ Kiley B. Zellner___
Kiley B. Zellner, WI Bar No. 1056806
T: 414) 291-7979 / F: (414) 291-7960
Email: kbz@guntalaw.com