IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

KATHRYN KNOWLTON, et al.,

                Plaintiffs,

v.                                            Case No. 2020-CV-01660

CITY OF WAUWATOSA et al.,

                Defendants.

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(B)(6)**

Defendants, by their attorneys, Wirth + Baynard, submit the following Reply brief in support of their Motion to Dismiss Plaintiffs' Fourth Amended Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief may be granted. As a starting point, Plaintiffs concede that their 7th Claim for Relief should be dismissed. (Dkt. 187, p. 15)

**I.     PLAINTIFFS CONCEDE DISMISSAL BY THEIR FAILURE TO RESPOND.**

Plaintiffs' Response Brief makes no substantive argument addressing a number of Defendants' arguments. Plaintiffs' failure to respond to these arguments constitutes waiver on those issues. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ('Failure to respond to an argument ... results in waiver.') Thus, these claims must be dismissed:

- Plaintiffs Tenth claim for relief against James Skornia, who is not a named defendant, and Joseph Lewandowski, who is listed as a Defendant in the claim, but not further identified in the allegations, must be dismissed. (Dkt. 178, p. 28)

- The lack of any factual support for any allegation involving Plaintiff, Kamila Ahmad. *Id.* at 25. As such, plaintiff should be dismissed from case.

- Plaintiffs cannot bring a facial challenge to the curfew order. *Id.* at 14.

- There was no Fourteenth Amendment due process violation. *Id.* at 15.

- Adding ten new defendants and four new claims is not consistent with the latitude afforded Plaintiffs in the prior Order allowing an amended complaint and for that reason alone those defendants and claims should be dismissed. (See Dkt. 178, p. 2)

## II.    JOHN DOE DEFENDANTS SHOULD BE DISMISSED.

In addressing dismissal of the John Doe defendants, plaintiffs equate themselves to a prison inmate struggling to identify defendants before filing a complaint or a plaintiff who has not been afforded the benefit of pretrial discovery. *Id.* at p. 5. As explained below, neither is comparable.

Plaintiffs contend their deadline for naming the John Doe defendants is controlled by the statute of limitations. Plaintiffs provide no citation to legal authority for this position and their position is contrary to Federal Rules of Civil Procedure Rule 16 and the scheduling order of this Court. Pursuant to this Court's scheduling order, the deadline to amend pleadings and name John Does was August 20, 2021. (*See* Dkts. 33, 42) On August 21, 2021, Plaintiffs filed an amended complaint but failed or elected not to name the John Doe defendants. (Dkt. 47) Plaintiffs did not request further extension of the John Doe deadline.

Plaintiffs now seek to benefit from the Court granting Defendants' motion to dismiss by arguing they can name John Doe defendants until expiration of the statute of limitations. For good reason, the deadline for naming John Does was separate and preceded the discovery deadline in this case. While plaintiffs' assert that Defendants' "procedural strategy has reopened the case" (Dkt. 187, p. 5) the generosity of this Court in allowing plaintiffs to file an amended complaint should not further benefit plaintiffs by extending a deadline they missed on August 20, 2021.

While irrelevant and inappropriate for this motion, plaintiffs refer to this as "a troubling strategy that Defendants have apparently zeroed in on as a basis for avoiding responsibility" (Dkt. 187, p. 4) referring to *Radke v. Wauwatosa* where those Defendants put forth similar arguments.

Notably, the plaintiff in *Radke* responded to those arguments by stipulating to the dismissal of her claims against the John Does. (21-cv-00247, Dkt. 36)

### III. PLAINTIFFS CLAIMS FOR EQUITABLE RELIEF SHOULD BE DISMISSED.

In their Response, Plaintiffs make no substantive argument in response to Defendant's contention that their requests for injunctive relief are not sufficiently constrained and that they cannot obtain declaratory and injunctive relief from the defendants in their individual capacities.

Regarding equitable relief pertaining to the curfew which ended on October 12, 2020, Plaintiffs argue "the City's violation of Wisconsin statute 323.11 in preparing, publishing, and enforcing the curfew order absent an emergency, demonstrates a calculated and ongoing potential threat to all citizen's constitutional rights and thus, injunctive relief is proper." (Dkt. 187, p. 7) As argued initially, a "potential threat" to "all citizen's constitutional rights" based on past exposure to illegal conduct is pure speculation and insufficient to establish equitable relief.

Plaintiffs' respond to Defendants' argument that they only sued certain Defendants for declaratory and injunctive relief by blaming the tight timeframe for their "oversight in failing to remove the official capacity relief requests from the perfunctory parties section." (Dkt. 187, p. 7) Plaintiffs indicate they "take responsibility" and then offer to "amend this complaint to correct this oversight…" *Id.* at p.p. 7-8. Foremost, Plaintiffs concede the only relief sought against those Defendants is for declaratory and injunctive relief. Contrary to Plaintiffs' contention they "have made clear throughout the entirety of this litigation that they intend to bring suit against those Defendants for money damages" (Dkt. 187, p. 7) in all prior versions, Defendants were also named "for declaratory and injunctive relief only." (Dkt. 1, 47, 54, 56)

## IV. ALL OF PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE CITY OF WAUWATOSA SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT AND CANNOT ALLEGE A BASIS FOR MUNICIPAL LIABILITY.

Plaintiffs have not sufficiently pled in the Fourth Amended Complaint factual content that would allow this Court to draw the reasonable inference that the City caused any constitutional or other harm to occur. Plaintiffs' conclusory allegation that "the City has a widespread practice and an express policy…" is wholly insufficient wherein the allegation includes no citation to any ordinance, order, or other written or verbal policy of the City. (Dkt. 187, p. 9) Plaintiffs do not say out what the "express policy" is. *See Looper Maintenance Service, Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) ("[b]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient").

On the subject of the protestor list, Plaintiffs' Response remains limited to the existence of a protestor list and other "threadbare recitals." As argued, *Monell* presupposes that a violation occurred by an employee and asks whether a municipal policy existed that caused the violation. *See, e.g., Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997). Plaintiffs still have not identified any specific policy or custom, which when enforced, was causal of their alleged constitutional violations.

On the subject of *Monell* liability for Chief Weber establishing the rules of engagement for police deployments, Plaintiffs' do not identify the specific rules of engagement implemented by Weber and how those caused the alleged constitutional violations. The bottom line is that Plaintiffs' Fourth Amended Complaint is lacking in allegations as to the City and whether there existed any official policy, practice, or custom which was the cause of any injury.

About the curfew, while Plaintiffs dispute the curfew was content neutral, the curfew as cited is clearly unrelated to content and the regulation was only regarding pedestrian and vehicular traffic on Wauwatosa streets from 7pm to 6am. (Dkt. 155, ¶ 235) Further, Defendants did not and

4

do not argue that plaintiffs can never challenge a curfew as a violation of the First Amendment. Defendants argued that while emergency curfews can impact the rights of speech and assembly by generally precluding all types of public activity during a portion of the day courts apply a particularly yielding reasonableness test when evaluating an emergency curfew and that here, Plaintiffs' Complaint fails to state a claim for relief that is plausible on its face.

As to if the complaint pled sufficient facts to demonstrate that the curfew was not narrowly tailored to serve a significant government purpose—Plaintiffs mistakenly argue that because they "have alleged that the curfew covered the entire city and provided no alternative channels for political protest" this Court must take that as true. (Dkt. 187, p. 13) As argued in Defendant's moving brief, well pled facts in the complaint are taken as true but legal conclusions must be supported by factual allegations in the complaint. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) Here, plaintiffs rely on legal conclusions without factual support.

The Response concedes that "William Rivera did not allege a policy, custom or practice" to support a claim for municipal liability. (Dkt. 178, p. 9) Instead, the Response argues this claim is exempt from the requirements of *Monell* relying on *Smith v. Metropolitan School District Perry Township*—which dealt with claims against an educational institution. *Id.* at p.p. 9-10. Plaintiff's reliance on *Smith* is misplaced as the court in *Smith* recognized:

> In *Monell*, the Supreme Court held that a municipality could not be held liable under § 1983 based on the common-law agency theory of respondeat superior because the statute and legislative history were devoid of any intent to create a federal law of respondeat superior. The Supreme Court reasoned that since § 1983 prohibited a person (which included municipalities) from causing" a deprivation of constitutional rights, for recovery against a municipality it must have been the municipality that "caused" the deprivation: "[T]he language [of § 1983] plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights. At the same time, that language cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.

> Title IX's language also provides no basis for creating a standard of liability based on agency principles. Just as the municipality must "cause" the discrimination, and not merely a municipal employee, so too must a "program or activity" "cause" the discrimination, and not merely an employee of the program or activity. Just as the Supreme Court refused to impute an employee's actions to the municipality in *Monell* based on agency principles, so too do we refuse to impute a teacher's actions to a School District or School Board.

*Smith*, at 1027-1028. Even under *Smith*, the City must be responsible for the discrimination in order to be liable under Title VI. As previously argued, Plaintiff's allegation that a John Doe officer discriminated against him is a claim of respondeat superior liability. Thus, this claim must be dismissed.

As seen by even a cursory view of the Fourth Amended Complaint, Plaintiffs' allegations fall far short of what is required to plead a *Monell* claim against a specific municipality. Plaintiffs' "threadbare recitals" are exactly the conclusory allegations the Supreme Court warned of in *Iqbal*. As such, Plaintiffs' *Monell* claims fail as a matter of law and must be dismissed.

V. **EVEN IF DEFENDANTS HAD BEEN NAMED FOR RELIEF OTHER THAN DECLARATORY AND INJUNCTIVE, THE CLAIMS WOULD FAIL AS A MATTER OF LAW.**

As discussed *supra*, the individual defendants are sued in their individual capacity for "declaratory and injunctive relief only." However, should the court consider the merit of those claims, they are discussed below.

A. **Plaintiffs' Driver's Privacy Protection Act claims should be dismissed.**

In addressing that the DPPA permits "use by any government agency, including any court or law enforcement agency, in carrying out its functions" plaintiffs argue that having similar fears as law enforcement officers' "about the ability of defendants, that they had helped prosecute; to surveil them at their place of employment and get their license plate number, and in turn trace that number through the state division of motor vehicles to get their home addresses" (Dkt. 187, p.p.

6

15-16) defeats a clearly permissible use by Defendant Ratkowski.

Moreover, plaintiffs wholly fail to address that they allege Defendant Ratkowski obtained their personal motor vehicle information while he was engaged in his law enforcement duties. (*See* Dkt. 155, ¶ 148) Instead, plaintiffs cite to their conclusory allegation that it was "a pretext for surveillance" and then boldly conclude it was "not for a permissible purpose" without any developed support and without providing the Court guidance as to the grounds. As already explained, "labels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. *Iqbal,* at 1949. Plaintiffs ask the Court to speculate and conclude—that the purpose of Defendant Ratkowski was impermissible—despite the legislative history of the DPPA indicating that Congress intended to preserve broad discretion for government entities and agents in accessing motor vehicle records. As a result, this Court should not infer from bare, conclusory allegations that defendant's purpose was improper.

Regarding Defendant Roy, contrary to plaintiffs claim that their complaint alleges that "Defendant Roy on and after January 7, 2021 did ***knowingly*** disclose plaintiffs' personal information for a purpose not permitted under the DPPA …" (Dkt. 187, p. 16) the complaint does not allege, nor does it support an inference that Defendant Roy "knowingly" disclosed such information. Moreover, plaintiffs have not connected the act of disclosing "police reports, arrest and booking information, noncriminal tickets and interrogation videos" and a plausibly inference that Defendant Roy knowingly disclosed personal information others obtained from plaintiffs' motor vehicle records.

While *Senne v. Village of Palatine,* is factually and legally distinguishable because it does not address the application of the DPPA in connection with a request for information under state public records law, on remand, the district court determined disclosure of all the personal

information on the ticket furthered the purposes listed in both 18 U.S.C. §§ 2721(b)(1) and (4), finding it a permissible use of information under the DPPA, even if police made no use of personal information on motorist's parking ticket and the Seventh Circuit affirmed that conclusion on appeal. *Senne v. Village of Palatine*, 784 F.3d 444, 448 (2015).

The more comparable case cited by Plaintiffs is *New Richmond Newspaper,* which involved allegations that the police department violated public records law by failing to provide unredacted accident and incident reports to a newspaper. As discussed therein, the DPPA contains an exception allowing the disclosure of personal information from DMV records "[f]or any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety*." New Richmond News v. City of New Richmond*, 2016 WI App 43, ¶ 34. After analyzing Wisconsin's public records law, the court held the police department was authorized to disclose unredacted copies of accident reports under the state law exception to the DPPA.

In addition to allowing for disclosure of unredacted accident reports, Wisconsin's open record law allows for disclosure of arrest records. In *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, (1979), the Wisconsin Supreme Court held "as a matter of law that the harm to the public interest in the form of possible damage to arrested persons' reputations does not outweigh the public interest in allowing inspection of the police records which show the charges upon which arrests were made." *Id.* at 440. Moreover, information that is obtained from another source and subsequently verified using DMV records is not subject to the DPPA, if, upon verification, the information is not substantively altered to conform to the DMV records. *Id.* at ¶ 51.

In summary, neither the complaint nor Plaintiffs' Response sufficiently explains how the release of "police reports, arrest and booking information, noncriminal tickets and interrogation

videos" establishes that Defendant Roy knowingly disclosed personal information others obtained from plaintiffs' motor vehicle records.

> **B.  Plaintiffs' First Amendment protestor list claims should be dismissed.**

Plaintiffs' Response does not identify any factual bases in the complaint supporting the existence of a "surveillance program" or Defendant Ratkowski's role, if any, in one nor does it identify any allegation in the Fourth Amendment Complaint that the conduct of Ratkowski chilled the exercise of their first amendment rights or resulted in any specific effect to plaintiffs.

Plaintiffs limit their response to arguing that *Tatum* is inapplicable because it involves policing not army surveillance. (Dkt. 187, p. 20) Plaintiffs provide no citation to legal authority to support their contention that "[c]ourts are often wary to restrict the ability of the military to pursue its functions" and "policing is different." *Id.* Thus, plaintiffs have waived this argument. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.")

> **C.  Plaintiffs' First Amendment retaliation claims should be dismissed.**

In response to Defendants' contention that the majority of plaintiffs entirely fail to allege they were engaged in First Amendment activity at the time of the deprivation, plaintiffs' baldly respond "what is important is that Plaintiffs were arrested while at protests." (Dkt. 187, p. 22) What is important on a motion to dismiss is what the complaint adequately alleges and as outlined in detail by Defendants, the majority of plaintiffs do not allege they engaged in activity protected by the First Amendment. Rather than respond to what the complaint actually alleges, plaintiffs simply contend without citation to the complaint that the complaint says something it does not. Plaintiffs' failure to respond to Defendants claim that the complaint lacks any factual content as to

9

plaintiff, Kamila Ahmad perfectly illustrates this approach.

### D. Plaintiffs' Deliberate Indifference claim against Chief Weber should be dismissed.

As a starting point, Plaintiffs do not respond to any of the arguments made by Defendants regarding § 1983 not itself being a source of substantive rights. Confusingly, Plaintiffs cite to *Farmer v. Brennan*, in support of this claim. *Farmer* involved allegations of "deliberate indifference" by prison officials to the safety of an inmate in violation of the Eighth Amendment. Here, Plaintiffs claim does not involve the Eighth Amendment or prison officials which is significant because the Eighth Amendment imposes duties on prison officials, to provide humane conditions of confinement; including to "take reasonable measures to guarantee the safety of the inmates." *Id.* at 832. No such duty was imposed on Chief Weber regarding Plaintiffs.

Moreover, Plaintiffs do not respond to the argument that Aidali Rivera, William Rivera, Hector Rodriguez, Lazarito Matheu, and Peter Sparks were not alleged to be engaged in protesting police violence—which Plaintiffs claim was the factor creating the known risk.

### E. Plaintiff Conception's unlawful arrest claim against Farina should be dismissed.

Plaintiff does not offer a substantive response to Defendants' assertion that the complaint fails to allege Farina was actually involved in his arrest. (Dkt. 178, p. 27) Rather the Response attempts to create liability for Defendant Farina by referencing conduct alleged against John Doe officers not Farina.

### F. Taleavia Cole's unlawful seizure claim should be dismissed.

Defendants do not misstate the complaint, nor do they argue that they "understand the Fourth Amendment to permit them to search the digital contents of phones without a warrant" as asserted by Plaintiffs. (Dkt. 187, p. 26) Rather, Defendants contend that the allegations against

10

Defendants Wrucke and Arbiter are limited to a seizure of the phone incident to Taleavia Cole's arrest and that probable cause for such a seizure is not required. *(*Dkt. 178, p. 28) As such, the allegations of the complaint fail to plausibly allege that Defendants Wrucke and Arbiter violated Cole's constitutional rights by seizing her phone. Plaintiffs' Response concedes as much— "Plaintiff Cole's phone might be seized, but a search of such phone is not permitted under this exception." (Dkt. 187, p. 26*)*

Moreover, Plaintiffs do not respond to Defendants argument that the limited allegations against Defendant Warren in the complaint regarding a search of the phone are too vague and conclusory. Failure to respond constitutes waiver on those issues. Thus, these claims must be dismissed.

### G. Plaintiffs' state law malicious prosecution claim should be dismissed.

Plaintiffs have not sufficiently pled in the Fourth Amended Complaint factual content that would allow this Court to draw the reasonable inference that prosecutorial immunity does not apply to Defendant Schimmel. According to plaintiffs, prosecutorial immunity "is not absolute" and does not apply when giving legal advice to police officers during investigations" nor "when they swear to a factual affidavit submitted with an information for the purpose of obtaining an arrest warrant." *Id.* at 27-28. However, Plaintiffs do not contend nor does their complaint contain any such allegation against Defendant Schimmel. The claims in the Fourth Amended Complaint against Defendant Schimmel are limited to his prosecution of Plaintiffs' municipal citations—for which there is no dispute that prosecutorial immunity applies.

To confuse the issues, plaintiffs also argue that Defendant Schimmel cannot claim prosecutorial immunity if he fails "to meet the most basic requirements to be a prosecutor." According to plaintiffs, the "most basic requirements" is compliance with a Wisconsin Supreme

Court Rule of Professional Conduct regarding written communications as to the purpose of retainers and advanced fees. (Dkt. 187, p. 28) It is significant that plaintiffs provide no citation to legal authority for this argument. Thus, plaintiffs have waived this argument. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.") Assuming *arguendo* that waiver did not apply, it would still fail because plaintiffs' complaint alleges—he is the contract prosecuting attorney for the City.

Regarding Defendant Farina, Plaintiffs do not respond to Defendants' arguments that the same immunity is, in general, extended to the police and other law enforcement officers acting within the scope of their duties who perform official functions in the judicial process. (Dkt. 178, p.p. 29, 30) Instead, Plaintiffs analyze the doctrine of qualified immunity—which is inapplicable to their state law claims. Thus, these claims must also be dismissed.

### H. Plaintiffs' Fourteenth Amendment equal protection claims should be dismissed.

Even in their Response, Plaintiffs seem to confuse and intertwine a Fourteenth Amendment Due Process claim with an Equal Protection claim. As a starting point, Plaintiffs do not respond to any of the arguments made by Defendants regarding their denial of due process claim against the City and Defendant Ratkowski. (*See* Dkts. 187 and 178, p.p. 15-17) Plaintiff's failure to respond to these arguments constitutes waiver on those issues. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) Thus, those claims must be dismissed.

Regarding their equal protection claim, Plaintiffs do not argue they are members of a suspect class. Rather, Plaintiffs seemingly attempt a class-of-one equal protection claim stating "Defendant Ratkowksi in essence created a class of persons based on his own subjective assignments, that of perceived political affiliation…" (Dkt. 187, p. 14) As argued in Defendants'

12

moving brief, a class-of-one claim only has merit when it alleges that plaintiffs have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Significantly, the Fourth Amended Complaint lacks any allegation that similarly situated individuals were treated differently. Moreover, including a bald assertion in their Response brief (i.e., "through discovery, a group of people perceived to be of a different political affiliation than that of Plaintiffs, were specifically excluded from the "target" list created by Defendant Ratkowski…" *Id.* at 14) does not save a deficient complaint from a motion to dismiss and such argument should not even be considered, as the allegations were not alleged in the Fourth Amended Complaint.

Moreover, Plaintiffs claim would fail for another reason under *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008). There the Supreme Court explained that to be cognizable, a class-of-one theory requires "a clear standard against which departures, even for a single plaintiff [can] be readily assessed." *Id.* at 2153. Important to the analysis here, the Court reasoned:

> There are some forms of state action, however, which by their nature involve discretionary decision-making based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 2154. Here, Plaintiffs very argument is that Defendant Ratkowski made subjective individualized assessments on who to include in the protestor list. Thus, this claim must also be dismissed.

**CONCLUSION**

In deciding the prior motion to dismiss—the Court generously granted Plaintiffs leave to file an amended complaint, noting "perhaps Plaintiffs were previously unaware of the fundamental errors plaguing their pleading." (Dkt. 152, p. 31) The Court warned "if Plaintiffs cannot remedy these errors as articulated in this decision, Plaintiffs risk having this complaint dismissed with prejudice." *Id.* This is the second motion to dismiss filed by Defendants and Plaintiffs have still failed to address fundamental errors plaguing their pleadings. For all the reasons stated above, Defendants respectfully request that all claims alleged against them be dismissed with prejudice for failure to state a claim.

Dated at Wauwatosa, Wisconsin this 6th day of June 2022.

**WIRTH + BAYNARD**
Attorneys for Defendants

*/s/ Kiley B. Zellner*
Kiley B. Zellner, WI Bar No. 1056806
Email: kbz@guntalaw.com