# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

KATHRYN KNOWLTON, et al.,

    **Plaintiffs,**

    v.                                    **Case No. 20-CV-1660**

CITY OF WAUWATOSA, et al.,

    **Defendants.**

---

## DECISION AND ORDER ON DEFENDANTS'
## MOTION TO DISMISS FOURTH AMENDED COMPLAINT

---

Plaintiffs represent a group of approximately sixty-three individuals, as well as a single unincorporated entity, engaged in a variety of actions throughout 2020, particularly in the City of Wauwatosa, aimed at opposing police violence. (Fourth Am. Compl., Docket # 155.) The plaintiffs sue the City of Wauwatosa (the "City"), former Wauwatosa Police Department ("WPD") Chief of Police Barry Weber, City of Wauwatosa Mayor Dennis McBride, WPD employee Dominick Ratkowski, Wauwatosa Municipal Court prosecutor George Schimmel, WPD Officers Maria Arbiter, Jeffrey Farina, Joseph Lewandowski, Daniel Mitchell, George Opelt, Robert Piehl, Russell Richardson, Joseph Roy, James Short, Brian Skornia, Luke Vetter, Timothy Warren, Shane Wrucke, Kelly Zielinski, and John Doe Officers 1-100 (the "John Doe Officers") (collectively "the defendants") for numerous constitutional and other federal and state law violations. On February 1, 2022, apart from count twelve, I dismissed plaintiffs' Third Amended Complaint without prejudice. (Docket # 152.) The plaintiffs filed a Fourth Amended Complaint (Docket # 155), and the defendants now renew their motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Docket # 177).

For the reasons below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

On February 2, 2020, 17-year-old Alvin Cole was shot and killed by former WPD Officer Joseph Mensah at the Mayfair Mall in Wauwatosa. (Fourth Am. Compl. ¶ 129, Docket # 155.) On May 25, 2020, George Floyd, a Black man, was shot and killed at the hands of a white police officer in Minnesota. (*Id.* ¶ 128.) In their Fourth Amended Complaint, plaintiffs allege that in the wake of these deaths and others, throughout the summer of 2020, the United States was "immersed in the largest social justice movement in history. In a repudiation of anti-Black racism, white supremacy, police violence, mass criminalization, and mass incarceration, millions joined demonstrations around the globe in solidarity against police violence which was inspired by the tragic deaths of people such as George Floyd, Alvin Cole, Jay Anderson Jr. and Breonna Taylor." (*Id.* ¶¶ 2, 4, 5, 7.)

Plaintiffs allege that they, as well as thousands of others, engaged in a wide variety of actions throughout the summer and fall of 2020, including rallies, marches, and other "creative protests" to oppose police violence. (*Id.* ¶ 5.) Plaintiffs allege that one political protest movement emerging in Wisconsin after George Floyd's death was called The People's Revolution ("TPR"). (*Id.* ¶ 6.) TPR organized and began protesting in May 2020, after George Floyd's death. (*Id.* ¶¶ 6–7.) Then, in response to the peaceful protests, plaintiffs allege that on or around May 25, 2020, Ratkowski, a city of Wauwatosa employee who works at the WPD, created a "TPR Target List," containing the names of persons Ratkowski perceived to be affiliated with TPR. (*Id.* ¶ 10.) The Target List allegedly contained the names, photos, addresses, dates of birth, and other personal information of those listed, and Ratkowski allegedly indiscriminately distributed the list to local, state, and federal agencies. (*Id.*)

2

Then, on June 1, 2020, Officer Mensah's identity and role in the shooting of Alvin Cole were made public. (*Id.* ¶ 137.) As a result, Wauwatosa became the center of several protests while the Alvin Cole shooting was under review by the Milwaukee County District Attorney's office. (*Id.* ¶ 138.) On July 15, 2020, Wauwatosa's Police and Fire Commissioner suspended Officer Mensah with pay. (*Id.* ¶ 141.) Protests subsequently occurred in the City of Wauwatosa on August 13 and 14 and September 5, 2020. (*Id.* ¶ 144.) On August 23, 2020, Jacob Blake was shot in the back by a police officer in Kenosha, Wisconsin. (*Id.* ¶ 240.)

On September 30, 2020, Wauwatosa Mayor McBride signed a "Proclamation of Emergency" (the "Emergency Order") which enacted a curfew restricting pedestrian and vehicular traffic on Wauwatosa streets from 7:00 p.m. to 6:00 a.m. from October 7 to October 12, 2020. (*Id.* ¶ 235.) Mayor McBride allegedly instituted the curfew in anticipation of the October 7, 2020 announcement from the Milwaukee County District Attorney's Office that Officer Mensah would not be criminally charged for Cole's death and because of the "unexpected tragic incidents" that occurred during protests in Kenosha in the wake of Blake's shooting. (*Id.* ¶¶ 234–35, 240.) Despite the curfew, protests occurred in the City of Wauwatosa on October 8, 9, 10, and 11, 2020. (*Id.* ¶¶ 304–888.) Plaintiffs allege that thirty-eight of them were given non-criminal tickets by WPD Officers for violating the Emergency Order during that time frame. (*Id.* ¶ 144.)

Plaintiffs allege that they were ticketed, arrested, and/or targeted in and by the City of Wauwatosa and its employees for being physically present or engaging in peaceful protests in the wake of the homicides of George Floyd, Alvin Cole, and the shooting of Jacob Blake, and for peacefully protesting the inequitable treatment imposed upon persons of color who have been severely hurt or killed by police officers. (*Id.* ¶ 7.) Plaintiffs further allege that Mayor

3

McBride signed the emergency proclamation on September 30, 2020 and declared the curfew without the knowledge or approval of Wauwatosa's Common Council, the local governing body in Wauwatosa, and lacked the legal authority to do so. (*Id.* ¶¶ 237, 243.) They allege that at the time McBride signed the Emergency Order, there were no credible threats to the City of Wauwatosa. (*Id.* ¶ 238.)

Plaintiffs allege that the Emergency Order gave rise to the WPD, Wauwatosa City Agencies, and other operational partners responding to the demonstrations with unconstitutional tactics that were clearly intended to injure, silence, and intimidate the plaintiffs as well as all citizens. These abusive tactics included violently beating protestors, engaging in false arrests, the creation of false arrest records, use of chemical agents, and kettling protestors in enclosed areas. (*Id.* ¶ 15.) Plaintiffs allege that the police response also included unlawful surveillance, monitoring, and targeting of protestors, particularly those associated with TPR. (*Id.* ¶¶ 140, 937, 952.)

STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though

4

this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

In their Fourth Amended Complaint, plaintiffs bring fourteen causes of action pursuant to 42 U.S.C. §1983; the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721; Title VI; and Wisconsin state law.[1] I will address each category of claims in turn.

---

[1] Plaintiffs concede that the Seventh Claim for Relief should be dismissed. (Pls.' Resp. Br. at 15, Docket # 187.) As such, the Seventh Claim for Relief (Fourth Am. Compl. ¶¶ 996–1031) is dismissed.

5

*1.      Section 1983 Claims*

Plaintiffs bring the following causes of action pursuant to 42 U.S.C. § 1983: First Amendment Violation (Curfew Order) (Claim One); Fourteenth Amendment – Due Process Denial (Claim Three); First and Fourteenth Amendment (Protestor List) (Claim Four); First Amendment Retaliation (Claim Five); Deliberate Indifference (Claim Six); Excessive Force (Claim Eight); Unlawful Arrest (Claim Nine); Unlawful Search and Seizure of Cars, Phones (Claim Ten); and Equal Protection (Claim Twelve).

1.1      Section 1983 Claims – Against Individual Defendants

1.1.1   Named Defendants

As an initial matter, defendants argue that because defendants Weber, Arbiter, Farina, Lewandowski, Mitchell, Opelt, Piehl, Ratkowski, Richardson, Roy, Schimmel, Short, Skornia, Vetter, Warren, Wrucke, Zielinski, and McBride are only named in their individual capacities for "declaratory and injunctive relief only," and because injunctive and declaratory relief under § 1983 is only available against parties in their *official* capacities, the fourth amended complaint fails to state a claim against these individuals. (Defs.' Br. at 6–7.)

Defendants are correct that "injunctive relief against a state official may be recovered only in an official capacity suit." *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991); *see also Dertz v. City of Chicago*, 912 F. Supp. 319, 328 (N.D. Ill. 1995)*, on reconsideration in part,* No. 94 C 542, 1997 WL 85169 (N.D. Ill. Feb. 24, 1997) ("Moreover, the equitable relief that the plaintiffs request—a declaration that the defendant's policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals."). In the fourth amended complaint, with the exception of McBride, who is sued in "his individual

capacity for declaratory and injunctive relief only and in his individual capacity for punitive damages," (Fourth Am. Compl. ¶ 89), each individual defendant is sued in his or her individual capacities for "declaratory and injunctive relief only" (*id.* ¶¶ 90–106).

Plaintiffs seemingly recognize their quandary, noting they made "an error" in the parties section of the complaint. (Pls.' Resp. Br. at 7.) Plaintiffs argue that they "have made clear throughout the entirety of this litigation that they intend to bring suit against Defendants for money damages," and because they were only given two weeks to redraft their complaint, they "apparently made an oversight in failing to remove the official capacity relief request from the perfunctory parties section." (*Id.*) Plaintiffs state that they "take responsibility to immediately amend this complaint to correct this oversight" and argue that "to dismiss all of Plaintiffs' claims against the individual Defendants for a multitude of constitutional violations would be exceedingly unjust and in contravention of the pleading standards." (*Id.* at 7–8.)

Plaintiffs' arguments are not persuasive. As an initial matter, plaintiffs' assertion about a "tight timeframe" is a nonstarter. This is the plaintiffs' fourth attempt at re-drafting a proper pleading. Furthermore, if plaintiffs needed additional time to file their fourth amended complaint, they could have simply requested such leave from the Court. They did not. Moreover, I am unconvinced that the plaintiffs "have made clear" throughout the litigation that they were seeking money damages against the individual defendants. In the first iteration of the complaint against Weber and McBride, plaintiffs specifically pled they were suing the defendants in their official capacities for declaratory and injunctive relief only. (Compl. ¶¶ 9–10, Docket # 1.) In the amended complaint, the plaintiffs sued Weber, McBride, and the John Doe Officers each "in his official capacity for declaratory and injunctive relief only." (Am. Compl. ¶¶ 63–65, Docket # 24.)

7

On August 21, 2021, however, when the plaintiffs filed their second amended complaint (mistakenly titled third amended complaint), the plaintiffs specifically sued McBride "in his official capacity for declaratory and injunctive relief only and in his individual capacity for punitive damages"; whereas the remaining defendants were sued in their "official capacity for declaratory and injunctive relief only." (Second Am. Compl. ¶¶ 81–91, Docket # 47.)  Plaintiffs then filed a Third Amended Complaint (titled the "Corrected Third Amended Complaint") on September 8, 2021, again suing all defendants in their "official capacity for declaratory and injunctive relief only," with the exception of McBride, who was sued "in his official capacity for declaratory and injunctive relief only and in his individual capacity for punitive damages." (Third Am. Compl. ¶¶ 81–91, Docket # 56.)

After alerting plaintiffs that their official capacity suits against the individual defendants are treated as suits brought against the government entity itself and thus are redundant to their claims against the City, the plaintiffs amended their complaint to sue McBride in "his individual capacity for declaratory and injunctive relief only and in his individual capacity for punitive damages," (Fourth Am. Compl. ¶ 89), and to sue each other individual defendant in his or her individual capacity for "declaratory and injunctive relief only" (*id.* ¶¶ 90–106).

Plaintiffs seem to argue that what they *meant* to plead was they were suing each individual defendant in his or her individual capacity for money damages only. (Pls.' Resp. Br. at 7–8.) But that is not what the plaintiffs pled, either in this iteration of the complaint or in the previous four iterations. Rather, plaintiffs were clear they were suing the individual defendants under § 1983 for declaratory and injunctive relief only, and in fact, *did* specify which defendant they intended to sue for money damages—Mayor McBride. Plaintiffs

8

specifically changed their pleading to include a claim for money damages against McBride in their second amended complaint, but the claims against the other individual defendants remained the same.

As stated in the previous decision, while "[i]t is true that the pleading rules favor decisions on the merits rather than technicalities[,] . . . these general principles have some limits." (Docket # 152 at 8, quoting *Stanard v. Nygren*, 658 F.3d 792, 800–01 (7th Cir. 2011).) "Leave to replead need not be allowed in cases of 'repeated failure to cure deficiencies by amendments previously allowed.'" *Id.* at 801 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiffs will not be allowed to file yet another amended complaint. After failing to correct its deficiencies in four attempts, I have little confidence that yet another amendment would do anything beyond causing further delay in this case. Thus, the plaintiffs' § 1983 claims against defendants Weber, Arbiter, Farina, Lewandowski, Mitchell, Opelt, Piehl, Ratkowski, Richardson, Roy, Schimmel, Short, Skornia, Vetter, Warren, Wrucke, and Zielinski are dismissed.

As to defendant McBride, plaintiffs' § 1983 claims requesting injunctive relief against McBride in his individual capacity are dismissed. However, plaintiffs' claim against McBride in his individual capacity for money damages (First Claim for Relief) can go forward. Plaintiffs allege that McBride illegally enacted the Emergency Order for the express purpose of violating the plaintiffs' First Amendment rights. (Fourth Am. Compl. ¶¶ 911–16.) "Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 401 (7th Cir. 2018) (internal quotations and citations omitted). The Fourth Amended Complaint

9

sufficiently alleges McBride's personal involvement in the constitutional deprivation to go forward.

### 1.1.2   John Doe Officers

Plaintiffs also bring claims five, eight, nine, ten, and twelve against John Doe Officers. The complaint does not specify whether the claims are brought against the John Doe Officers in their individual capacities, or whether they are requesting injunctive, declaratory, and/or monetary relief against them. Defendants argue that the plaintiffs' failure to identify John Does 1-100 after sixteen months of litigation warrants dismissal of those individuals from this lawsuit. (Defs.' Br. at 3.) Plaintiffs counter that the statute of limitations has not yet run on their claims, discovery has not yet concluded, and the City has failed to keep proper records, all of which have impeded plaintiffs' ability to identify the unknown officers. (Pls.' Resp. Br. at 3–6.)

While discovery was stayed on February 1, 2022 (Docket # 153), the John Doe defendants have been parties to this action since the amended complaint filed on March 6, 2021 (Docket # 24). There was ample opportunity to conduct discovery during this nearly year-long time frame. In fact, by January 2022, the parties had conducted numerous depositions as well as exchanged written discovery. And the plaintiffs specifically requested in Document Request No. 4 on January 5, 2021, for the defendants to provide: the "names of all the Wauwatosa Police Officers, and the names of any local, state, or federal law enforcement officers who assisted the Wauwatosa Police Department and the City of Wauwatosa during the curfew from October 7, 2020 to October 12, 2020." (Docket # 37.) The defendants provided the plaintiffs with City of Wauwatosa staffing lists from the relevant October dates on February 18, 2021. (Docket # 37-1 at 5.) When plaintiffs filed a motion to

compel discovery responses on July 7, 2021, they specifically *did not* challenge the defendants'
response to Document Request No. 4. (Docket # 37.)

Even in their most recent motion for sanctions filed on January 21, 2022 for alleged
discovery violations, plaintiffs do not challenge the defendants' response to Document
Request No. 4 as to the names of the officers who assisted the WPD during the October 2020
curfew. (Docket # 137-17 at 4.) Rather, plaintiffs state that the responsive documents that
have not been handed over include the "executed contracts" or "executed agreements"
between various entities and the City or WPD. (*Id.*) These documents relate to the first part
of Document Request No. 4, not the second part, which covers the names of the officers who
assisted during the curfew. (*Id.*)

Thus, while plaintiffs argue that their failure to identify the John Doe officers "is not
for a lack of trying," but is "unfortunately in large part due to the lack of discovery
compliance" (Pls.' Resp. Br. at 6), this statement does not comport with the record. Plaintiffs
had defendants' response as to the names of the officers who worked that night and did not
challenge the defendants' response. If the plaintiffs could not properly ascertain the John Doe
Officers' identities with the responses given in the year-long timeframe given, it is unclear
how additional discovery will change this. For these reasons, I will dismiss the John Doe
Officer defendants.

In summary, the following claims are dismissed, with prejudice:

- Fourth Claim for Relief

- Fifth Claim for Relief

- Sixth Claim for Relief

- Eighth Claim for Relief

- Ninth Claim for Relief

- Tenth Claim for Relief

- Twelfth Claim for Relief

What remains is plaintiffs' First Claim for Relief against McBride in his individual capacity for money damages.

### 1.2 Section 1983 Claims – Against City of Wauwatosa

The plaintiffs name the City of Wauwatosa in their first and third claims for relief. In *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local governmental bodies are "persons" within the meaning of § 1983. *Id.* at 689. However, a municipality is not liable under § 1983 unless the alleged deprivation of constitutional rights was caused by a municipal policy or custom. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."). A plaintiff may establish municipal liability by showing "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009).

### 1.2.1 First Claim for Relief – Curfew Order

The plaintiffs allege that the City enacted an unconstitutional Emergency Order on September 30, 2020. (Fourth Am. Compl. ¶ 12.) They claim that the City had an official policy of enforcing the Emergency Order and that this policy violated their First Amendment Rights.

12

(*Id.* ¶¶ 905–909, 922, 925.) Defendants argue that the Fourth Amendment Complaint "makes no mention, whatsoever, of municipal liability based on an express written policy." (Defs.' Br. at 9.) Plaintiffs allege, however, that the power to grant an emergency order flows from Wis. Stat. § 323.11, which provides that the "governing body" of "any local unit of government" can declare an emergency existing within the local government unit whenever certain conditions arise. (Fourth Am. Compl. ¶ 244.) Plaintiffs allege that McBride lacked the legal authority to unilaterally declare the Emergency Order without the approval of the Common Council. (*Id.* ¶ 245.) They further allege that McBride enacted the Emergency Order with the express intent to quell the plaintiffs' political speech, as no condition existed which would lead him to believe that violence or property destruction was imminent. (*Id.* ¶¶ 911–16.) I find that these allegations sufficiently claim that the City had an express policy that causes a constitutional deprivation when enforced.

Plaintiffs also proceed against the City under a "final policymaker" theory. Plaintiffs allege that McBride, as Mayor and chief executive for the City, is the final policymaker. (*Id.* ¶ 910.) They also allege, however, that McBride unilaterally signed the Emergency Order in violation of the law. (*Id.* ¶¶ 12, 253–56.) Defendants argue plaintiffs cannot have it both ways, either McBride lacked the authority to sign the Emergency Order (and thus arguably is not the final policymaker) or he did have the final policymaking authority to enact the Emergency Order. (Defs.' Br. at 9–10.)

Whether an official has local-government policymaking authority is a question of state law. *Burger v. Cnty. of Macon*, 942 F.3d 372, 375 (7th Cir. 2019). Plaintiffs allege that the proper procedure for enacting an emergency order is found in Wis. Stat. § 323.11, which requires that an emergency order be enacted by the "governing body" of a "local unit of government."

13

(Fourth Am. Compl. ¶ 244.) Plaintiffs further allege that Wis. Stat. § 323.14 provides an emergency exception that permits an executive to declare an emergency where the emergency necessitating the proclamation prevents the governing body from meeting. (*Id.* ¶ 249.) While plaintiffs clearly allege that McBride was acting contrary to law when he enacted the Emergency Order (*id.* ¶¶ 243–50), the complaint also alleges that McBride, as the executive, *did* sign the Emergency Order, the Order went into effect, and law enforcement followed it. At this stage, the question is whether plaintiffs have plead sufficient facts to allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. I find the complaint alleges sufficient facts for the plaintiffs to proceed on a "final policymaker" *Monell* liability theory as well.

Finally, while defendants also argue that the underlying First Amendment claim fails as a matter of law (Defs.' Br. at 12–15), this is an argument more appropriately brought on summary judgment, not on a motion to dismiss. Thus, I find the plaintiffs' fourth amended complaint sufficiently states a *Monell* claim against the City in the First Claim for Relief.

### 1.2.2 Third Claim for Relief – Denial of Due Process

In the Third Claim for Relief, plaintiffs allege that the City violated their rights to due process by maintaining the Target List and failing to provide a process by which individuals could challenge their inclusion on the list. (Fourth Am. Compl. ¶ 942.) To state a procedural due process claim, a plaintiff must allege the existence of a protected liberty or property interest, *see Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 779 (7th Cir. 2008), and that plaintiff was deprived of that interest without due process of law, *Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 939 (7th Cir. 2003).

Plaintiffs allege that labeling one as affiliated with TPR was stigmatizing and harmful to their reputations. (*Id.* ¶ 944.) But this does not properly state a due process claim as "reputation is not a property or liberty interest within the meaning of the due process clauses of the federal Constitution." *Bowens v. Quinn*, 561 F.3d 671, 675 (7th Cir. 2009).

Similarly, plaintiffs allege that they were deprived of a liberty and/or property interest in their personal information that was allegedly disseminated. (Id. ¶ 942.) Plaintiffs allege defendants disseminated their photos, names, and identifying personal information such as home address, phone number, and date of birth. (Id. ¶¶ 153, 942.) Again, for a plaintiff to establish a protectible liberty interest, plaintiff must establish more than stigma; rather, "the plaintiff also must establish the alteration of legal status." *Brown v. City of Michigan City, Indiana*, 462 F.3d 720, 731 (7th Cir. 2006). In other words, the plaintiff must show the alteration or extinguishment of a right or status previously recognized by state law. *Id.* at 730. Plaintiffs make no such allegation here.

Finally, plaintiffs plead that inclusion on the Target List caused deprivations of employment. (Fourth Am. Compl. ¶ 946.) There may be a protectible property interest in employment. *Miyler v. Vill. of E. Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008). However, whether one has a property interest in continued employment depends on the interest being defined by an independent source, such as state law or a contract. *Id.* Here, the complaint does not specify any particular plaintiff losing any particular employment opportunities due to their inclusion on the Target List. Accordingly, the facts as alleged here are woefully inadequate to claim a property right in employment that triggers due process protections.

15

For these reasons, plaintiffs' complaint falls far short of claiming a protectible liberty or property interest of which they were deprived due process. The Third Claim for Relief is dismissed with prejudice.

2.   *Driver's Privacy Protection Act Claims*

The plaintiffs allege that Defendants Ratkowski and Roy violated the Driver's Privacy Protection Act ("DPPA"). (Second and Fourteenth Claims for Relief.) Under the DPPA, it is "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use" not permitted by the DPPA. 18 U.S.C. § 2722(a). An individual whose personal information has been obtained or disclosed in violation of the DPPA may bring a civil action for damages in federal court. 18 U.S.C. § 2724.

Defendants argue that the claims against Ratkowski and Roy must be dismissed because the plaintiffs sue the individual defendants in their individual capacities for declaratory and injunctive relief only. (Defs.' Br. at 19.) I disagree. The distinction between "individual" and "official" capacity claims pertains to § 1983, not to the DPPA. The complaint asserts a claim for damages under the DPPA, citing § 2724(b). (Fourth Am. Compl. ¶¶ 940, 1114.)

Defendants further argue that the complaint fails to state a claim because the officers' actions were permissible under the statute. (Defs.' Br. at 19.) Defendants argue that § 2721(b)(1) states that a permissible use of "personal information" includes: "use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." Defendants argue that the complaint alleges the defendants

16

disclosed the plaintiffs' personal information in the course of their law enforcement duties and as such, the complaint fails to state a claim under the DPPA. (Defs.' Br. at 19–22.)

This argument is unavailing. In *Senne*, the defendant Village of Palatine, Illinois similarly argued that "as long as it can identify a subsection of the law under which *some* disclosure is permitted, *any* disclosure of information otherwise protected by the statute is exempt, whether it serves an identified purpose or not." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 605 (7th Cir. 2012). The court expressly rejected that position. The court explained that the language of § 2721(b)(1) means that:

> [T]he actual information disclosed—i.e., the disclosure as it existed in fact—must be information that is used for the identified purpose. When a particular piece of disclosed information is not used to effectuate that purpose in any way, the exception provides no protection for the disclosing party. In short, an authorized recipient, faced with a general prohibition against further disclosure, can disclose the information only in a manner that does not exceed the scope of the authorized statutory exception. The disclosure actually made under the exception must be compatible with the purpose of the exception. Otherwise, the statute's purpose of safeguarding information for security and safety reasons, contained in the general prohibition against disclosure, is frustrated.

*Id.* at 606. The Seventh Circuit noted that the DPPA was passed predominantly as a public safety measure and "[n]ot surprisingly, the Act's expanded authority for law enforcement was an important part of the same narrative." *Id.* at 607. The court further noted, however, that in the Congressional records, Senator Harkin qualified that the exception for law enforcement use "'is not a gaping loophole in this law.'" *Id.* (quoting 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen. Harkin)). Rather, the exception "'provides law enforcement agencies with latitude in receiving and disseminating this personal information,' when it is done '*for the purpose of deterring or preventing crime or other legitimate law enforcement functions*.'" *Id.* at 608 (quoting 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen.

Harkin)) (emphasis in original). Thus, "[g]iven the concern of Congress for these safety and security issues, the disclosed information actually must be used for the purpose stated in the exception." *Id.* at 609.

The complaint alleges that Ratkowski and Ray took "personal information," as defined by the DPPA, in the form of driver's license photos, addresses, telephone numbers, and dates of births, compiled a list, and then disseminated the information to hundreds of people, including WPD officers, Wauwatosa elected officials, employees, and various other third parties outside of the WPD. (Fourth Am. Compl. ¶¶ 935–37, 153–54, 893–95, 1103–14.) They allege that the information was used to effectively create a list of people to harass and surveil. (*Id.* ¶ 937.) It is entirely unclear how dissemination of this information served a role in some legitimate law enforcement function, such as deterring, preventing, or investigating crimes. Thus, at this juncture, I find the plaintiffs sufficiently state claims under the DPPA. As such, the Second and Fourteenth Claims for Relief will go forward.

### 3.    *Title VI Claim*

In the Eleventh Claim for Relief, plaintiff William Rivera sues the City under Title VI. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d. "To state a claim under Title VI, plaintiffs must allege facts satisfying two elements: (1) that they have been intentionally discriminated against on the grounds of race; and (2) that defendants are recipients of federal financial assistance." *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015).

18

In the complaint, plaintiffs allege that the City receives federal financial assistance for its programs and activities that are subject to the requirements of Title VI; specifically, the City has received federal funds and has been awarded the Emergency Preparedness Grant as well as over $20 million in funds from the American Rescue Plan from the federal government. (Fourth Am. Compl. ¶¶ 1080–81.) Plaintiffs further allege that Rivera was arrested while trying to return home from work during the curfew on October 9, 2020. (*Id.* ¶ 1082.) Plaintiffs allege that Rivera was told by the arresting officer that he was arresting him because of his race. (*Id.* ¶ 1083.)

The defendants' argument for dismissal of this claim appears to confuse Title VI with § 1983. Defendants argue that Rivera's claim fails because he sued a John Doe officer, and because he failed to allege a widespread illegal practice. (Defs.' Br. at 11–12.) But in the Fourth Amended Complaint, plaintiffs now correctly sue the City, not individual officers, after being previously instructed that "the mere fact that the Defendants are employed by the government . . . does not mean that they are recipients of federal funds." (Docket # 152 at 29, quoting *Rogers v. Off. of the Att'y Gen.*, No. 1:16-CV-429-TLS, 2017 WL 2864950, at *3 (N.D. Ind. July 5, 2017).)

And *Monell* does not apply to municipal liability under Title VI, it applies to municipal liability under § 1983. The complaint sufficiently alleges facts necessary to state a claim under Title VI—(1) that plaintiff Rivera was intentionally discriminated against based on his race and (2) that the City is a recipient of federal financial assistance. For these reasons, plaintiff Rivera's Title VI claim will go forward.

19

4. *Malicious Prosecution Claim*

In the Thirteenth Claim for Relief, plaintiffs Isiah Baldwin, Aidali Rivera, and Rosalind Rogers sue Farina and Schimmel for malicious prosecution under Wisconsin state law. There are "six essential elements" of a claim for malicious prosecution under Wisconsin law:

> (1) there must have been a prior institution or continuation of some regular judicial proceedings against the plaintiff; (2) such former proceedings must have been by, or at the instance of, the defendant; (3) the former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution; (4) there must have been malice in instituting the former proceedings; (5) there must have been want of probable cause for the institution of the former proceedings; and (6) there must have been injury or damage resulting to the plaintiff in the former proceedings.

*Whispering Springs Corp. v. Town of Empire*, 183 Wis. 2d 396, 404, 515 N.W.2d 469, 472 (Ct. App. 1994). As to defendant Schimmel, plaintiffs allege that Schimmel, while acting within the scope of his employment (Fourth Am. Compl. ¶ 100), maliciously prosecuted Rivera, Baldwin, and Rogers without probable cause, that the judicial proceedings were ultimately terminated in favor of the three plaintiffs, and Schimmel's actions caused the plaintiffs damage (*id.* ¶¶ 1093–1102). As to defendant Farina, the plaintiffs allege that Farina, while acting within the scope of his employment (*id.* ¶ 92), ticketed the plaintiffs without probable cause, leading to initiation of judicial proceedings against them that caused them damages (*id.* ¶¶ 1093–1102).

The defendants argue that the plaintiffs specifically allege that both Schimmel and Farina were acting within the scope of their employment while issuing and prosecuting the citations and thus, under Wisconsin law, they have absolute immunity for their actions, irrespective of the existence of malice or corrupt motives. (Defs.' Br. at 29–30.)

20

As to Schimmel, under Wisconsin law, "[i]t has been recognized that prosecuting attorneys, when acting within the scope of their prosecutorial functions, are absolutely immune from damages, the theory being that in so acting they are performing a quasi-judicial function." *Riedy v. Sperry*, 83 Wis. 2d 158, 168, 265 N.W.2d 475, 480 (1978). The Wisconsin Supreme Court has stated that: "Judicial officers acting in the exercise of their jurisdiction are exempt from civil liability for malicious prosecution irrespective of the existence of malice or corrupt motives. A public prosecutor acting in his official capacity is absolutely privileged to initiate or continue criminal proceedings." *Bromund v. Holt*, 24 Wis. 2d 336, 341, 129 N.W.2d 149, 152 (1964). In *Ford v. Kenosha Cnty.*, 160 Wis. 2d 485, 466 N.W.2d 646 (1991), the Wisconsin Supreme Court, quoting Judge Learned Hand, explained that the theory of immunity is that "it is better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Id.* at 495, 466 N.W.2d at 650.

The cases plaintiffs cite do not counsel otherwise. Plaintiffs cite *Burns v. Reed*, 500 U.S. 478 (1991) and *Kalina v. Fletcher*, 522 U.S. 118, 120 (1997), for the proposition that prosecutorial immunity is not absolute. (Pls.' Resp. Br. at 27–28.) But in both of those cases, the Supreme Court found the defense unavailable when prosecutors were performing a function *other than* serving as an advocate in judicial proceedings. *See Kalina*, 522 U.S. at 126–27. In *Burns*, the Court found that absolute immunity was unavailable when prosecutors were giving legal advice to police during their pretrial investigation of the facts. 500 U.S. at 492–96. And in *Kalina*, the Court addressed prosecutorial immunity in the context of a prosecutor making false statements of fact in an affidavit supporting an application for an arrest warrant. 522 U.S. at 120. The *Kalina* Court reiterated, however, that "[w]e do not depart from our

21

prior cases that have recognized that the prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate." *Id.* at 131.

The Fourth Amended Complaint alleges that Schimmel was acting within the traditional functions of an advocate while prosecuting citations for the City of Wauwatosa. Thus, under Wisconsin law, he is immune from damages for malicious prosecution. As such, the plaintiffs' complaint against Schimmel is dismissed with prejudice.

As to Farina, plaintiffs argue that as a law enforcement officer, he is not entitled to absolute immunity, only qualified immunity. (Pls.' Br. at 28.) Defendants respond that the doctrine of qualified immunity is inapplicable to their state law claims (Defs.' Reply Br. at 12, Docket # 189), citing *Bromund* in support (Defs.' Br. at 29). In *Bromund*, the Wisconsin Supreme Court stated that: "Although there is authority to the contrary, the same immunity is, in general, extended to the police and other law enforcement officers acting within the scope of their duties, with the possible exception of a situation where they themselves initiate the complaint or concoct false evidence." 24 Wis. 2d at 341, 129 N.W.2d at 152.

In *Yarney v. State, Dep't of Health & Soc. Servs.*, 1998 WL 345030, at * 5, 220 Wis. 2d 715, 583 N.W.2d 673 (Ct. App. 1998) (unpublished), the Wisconsin Court of Appeals noted that it saw no reason to analyze a defendant's state malicious prosecution claim differently from his federal claims under 42 U.S.C. §§ 1981 & 1983. The *Yarney* court found that under federal law, a nonjudicial officer, such as an investigator for the district attorney's office, who undertakes ministerial actions intimately related to the judicial process at the express direction and control of the prosecutor, enjoys absolute immunity. *Id.* at *4. If, however, the investigator initiates actions on his own, or carries out the investigatory functions of the prosecutor, he loses his absolute immunity and is entitled only to qualified immunity. *Id.* And

22

"[t]he qualified immunity evaporates only if the challenged actions are deemed to be clearly violative of the complainant's rights." *Id.*

I do not find that the facts as alleged show that Farina is entitled to absolute immunity. While Farina may be entitled to qualified immunity, I will not decide that issue at this juncture. *See Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020) ("[D]ismissal under Rule 12(b)(6) is not . . . always (if ever) the most suitable procedural setting to determine whether an official is qualifiedly immune, because immunity may depend on particular facts that a plaintiff need not plead to state a claim."). The complaint alleges that Farina violated the plaintiffs' clearly established constitutional right to speak and gather when he allegedly issued tickets to the plaintiffs with the intent to intimidate, dissuade, and chill their right to protest. (Fourth Am. Compl. ¶ 204.) Thus, I cannot resolve the issue of qualified immunity at this juncture. The plaintiffs' claim against Farina will go forward.

4. *Dismissal of Claims with Prejudice*

As noted above, the following claims are being dismissed, with prejudice:

- The Third Claim for Relief;

- The Fourth Claim for Relief;

- The Fifth Claim for Relief;

- The Sixth Claim for Relief;

- The Eighth Claim for Relief;

- The Ninth Claim for Relief;

- The Tenth Claim for Relief;

- The Twelfth Claim for Relief; and

- The Thirteenth Claim for Relief as to Schimmel

23

Once again, this Fourth Amended Complaint represents the complaint's fifth iteration, and its fourth amendment. In the February 1, 2022 Decision and Order dismissing the plaintiffs' Third Amended Complaint and granting leave to re-plead, the plaintiffs were warned that continued failure to properly remedy the complaint's errors risked dismissal with prejudice. (Docket # 152 at 8.) This case has been pending for nearly two years, and only now do we have a proper operative complaint. For these reasons, I find it appropriate to dismiss the above claims with prejudice. *See DJM Logistics, Inc. v. FedEx Ground Package Sys., Inc.*, 39 F.4th 408, 414 (7th Cir. 2022) ("Dismissal with prejudice of the fourth complaint was warranted because the amendment of the third complaint failed to comply with the district court's earlier order.").

As to the Seventh Claim for Relief, the plaintiffs conceded that it should be dismissed as redundant to the Fifth and Eighth claims for relief. (Pls.' Br. at 15.) Although voluntary dismissal under Rule 41(a)(2) is generally a dismissal without prejudice, given the plaintiffs' agreement that the Seventh Claim for Relief is merely redundant of the Fifth and Eighth claims, which are dismissed with prejudice, Claim Seven is also dismissed with prejudice.

With the dismissal of these claims, defendants Weber, Schimmel, Arbiter, Lewandowski, Mitchell, Opelt, Piehl, Richardson, Short, Skornia, Vetter, Warren, Wrucke, Zielinski, and John Doe Officers 1-100 are dismissed from the case.

5.    *Summary of Remaining Claims*

The following claims remain in the case and will go forward:

- The First Claim for Relief as to the City of Wauwatosa;

- The First Claim for Relief as to McBride, in his individual capacity, for money damages;

24

- The Second and Fourteenth Claims for Relief as to Ratkowski and Roy;

- The Eleventh Claim for Relief; and

- The Thirteenth Claim for Relief as to Farina.

Defendants Farina, McBride, Roy, Ratkowski, and the City of Wauwatosa remain as parties to the case.

6.    *Outstanding Discovery Motions*

Nearly two years into the case, we finally have an operative complaint. The clerk's office will contact the parties regarding scheduling a conference. The parties are ordered to meet and confer prior to the conference to discuss, given the claims and parties remaining in the case, what additional discovery needs to be conducted. Particularly, given the remaining claims and parties, I will revisit the allowable number of depositions. The parties should confer on which depositions, if any, remain and be prepared to address this. As stated in the February 1, 2022 Order, the parties *will not* be allowed to completely re-start discovery. The parties must also propose an amended schedule for closing discovery, filing dispositive motions, and conducting a jury trial. The proposal must be filed three (3) days prior to the conference. The parties should aim to file a joint proposed schedule. Only if, after working together in good faith, the parties are unable to jointly agree on dates, should the parties file separate proposals.

Finally, given the new operative complaint, it is unclear which discovery motions remain relevant.  I will therefore deny the pending discovery motions without prejudice:

- Plaintiffs' Motion to Compel (Docket # 37);

- Defendants' Motion to Quash (Docket # 79);

- Defendants' Motion to Quash (Docket # 86);

- Defendants' Motion for Protective Order (Docket # 116);

- Defendants' Motion to Compel (Docket # 131);

- Plaintiffs' Motion for Sanctions (Docket # 136); and

- Defendants' Motion for Protective Order (Docket # 142)

The parties are ordered to confer in good faith on any remaining discovery issues to allow this litigation to move forward. Any relevant discovery issues that remain will be addressed at the conference.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion to dismiss the plaintiffs' fourth amended complaint (Docket # 177) is **GRANTED IN PART AND DENIED IN PART**. Counts Three, Four, Five, Six, Seven, Eight, Nine, Ten, Twelve, and Thirteen (as to Schimmel) are dismissed with prejudice.

**IT IS FURTHER ORDERED** that defendants Weber, Schimmel, Arbiter, Lewandowski, Mitchell, Opelt, Piehl, Richardson, Short, Skornia, Vetter, Warren, Wrucke, Zielinski, and John Doe Officers 1-100 are **DISMISSED**.

**IT IS FURTHER ORDERED** that the discovery motions (Docket # 37, 79, 86, 116, 131, 136, and 142) are **DISMISSED**.

**IT IS FURTHER ORDERED** that the clerk's office will contact the parties to set a scheduling conference. The parties are ordered to meet and confer prior to the conference to discuss what additional discovery is needed and to propose an amended scheduling order.

Dated at Milwaukee, Wisconsin this 24th day of August, 2022.

BY THE COURT

_____

NANCY JOSEPH
United States Magistrate Judge

Case 2:20-cv-01660-NJ   Filed 08/24/22   Page 27 of 27   Document 190