# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KATHRYN KNOWLTON,** *et al.*,

    **Plaintiffs,**

v.                                                       Case No. 20-CV-1660

**CITY OF WAUWATOSA,** *et al.*,

    **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SANCTIONS

On February 1, 2022, I granted the defendants' motion to dismiss the plaintiffs' Third Amended Complaint. (Docket # 152.) Plaintiffs, however, were granted leave to re-plead the complaint consistent with the Court's decision. (*Id.*) Plaintiffs filed their Fourth Amended Complaint on February 15, 2022. (Docket # 155.) On March 28, 2022, counsel for defendants sent plaintiffs' counsel a "safe harbor" letter pursuant to Fed. R. Civ. P. 11(c)(2), along with a proposed draft motion for sanctions, requesting plaintiffs withdraw portions of the complaint defendants' counsel asserted were legally and factually inaccurate. (Declaration of Kiley B. Zellner ("Zellner Decl.") ¶ 5, Exs. A and B, Docket # 182.) Plaintiffs' counsel did not respond to defendants' counsel's correspondence. (*Id.* ¶ 6.)

On April 18, 2022, defendants filed a motion to dismiss plaintiffs' Fourth Amended Complaint (Docket # 177) and on April 20, 2022, filed the instant motion for sanctions (Docket # 179). Defendants argue that plaintiffs continue to maintain frivolous factual and legal allegations in the Fourth Amended Complaint and thus sanctions are warranted under

Rule 11. Plaintiffs oppose the motion. For the reasons explained below, the defendants' motion for sanctions is granted.

## LEGAL STANDARD

Fed. R. Civ. P. 11 provides that by "signing, filing, submitting, or later advocating" to the court a pleading, written motion, or other paper, an attorney certifies that to the best of the person's knowledge, information, and belief, "formed after an inquiry reasonable under the circumstances," that the "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Rule 11(b)(2), (3).

A party seeking to impose sanctions under Rule 11 must make a motion describing the specific conduct that allegedly violates Rule 11(b), must serve the motion on the party without filing the motion with the court, and must give the party an opportunity to correct the alleged violations within 21 days after service. Rule 11(c)(2). Then, after the party has notice and a reasonable opportunity to respond, if the court finds that Rule 11(b) has been violated, the court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Rule 11(c)(1). The rule states that:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Rule 11(c)(4). Rule 11's purpose is punitive rather than compensatory, and the goal of a Rule 11 sanction is specific and general deterrence. *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 645

2

Case 2:20-cv-01660-NJ   Filed 09/02/22   Page 2 of 16   Document 191

(7th Cir. 1992). The district court enjoys broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11. *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003) ("In an effort to deter future conduct, it may impose a flat sanction, it may strike offensive pleadings, or—more commonly—it may direct the offending party to pay the other party's reasonable attorney's fees.").

## ANALYSIS

Defendants argue Rule 11 sanctions are warranted because plaintiffs knowingly filed their Fourth Amended Complaint with causes of action contrary to the law and allegations contrary to known facts. I will address each argument in turn.

    1.    *Causes of Action Contrary to Law*

First, defendants argue that plaintiffs' allegations that Mayor McBride lacked a sufficient factual basis to declare the emergency order are not warranted by existing law because plaintiffs merely allege that McBride acted in contravention of state law. (Docket # 180 at 4.) Second, defendants argue that plaintiffs continued to sue Schimmel and Farina despite the clear law giving them absolute immunity. (*Id.*) And third, defendants argue that the Fourth Amendment allows for a variety of exceptions, including searches incident to arrest, that made plaintiffs' Fourth Amendment claims clearly frivolous. (*Id.* at 5–6.)

        1.1    First Amendment Claim Against McBride

As to the claim against Mayor McBride, in the Third Amended Complaint, the Sixteenth Claim for Relief alleged that the City and Mayor McBride violated the plaintiffs' First Amendment right to assemble when McBride effectively declared all protests in the City unlawful for the week of October 7, 2020 by enacting the emergency order. (Third Am. Compl. ¶¶ 1517–23, Docket # 56.) In its motion to dismiss, defendants argued that this claim

3

failed because it was premised on McBride's failure to follow state law in declaring a state of emergency or curfew, and § 1983 does not provide a remedy for the failure to follow state law. (Docket # 152 at 26.) I agreed and dismissed the claim without prejudice, finding that plaintiffs' theory as to how the City and McBride violated their First Amendment right to assemble was unclear as the allegations only suggested that McBride had no sufficient factual basis to declare the emergency order as contemplated by state law. (*Id.*)

Defendants argue in their sanctions motion that despite my instruction in the decision dismissing the Third Amended Complaint, plaintiffs continued to seek relief under § 1983 for McBride's alleged failure to follow state law when enacting the curfew order. (Docket # 180 at 4.) I disagree. In the Fourth Amended Complaint, plaintiffs now make clear that they are not alleging that the defendants violated the First Amendment by failing to follow state law in enacting the emergency order. Rather, the Fourth Amended Complaint now specifically alleges that McBride was a final policymaker who enacted the October 2020 curfew with the express intent of restricting plaintiffs' right to engage in political protests. (Fourth Am. Compl. ¶¶ 910–11.) Plaintiffs allege that the curfew discriminated on the basis of viewpoint and was enacted with the specific intent to quiet those who protest police violence. (*Id.* ¶ 913.) In addressing the defendants' motion to dismiss plaintiffs' Fourth Amended Complaint, I allowed plaintiffs' First Claim for Relief against McBride for money damages to go forward. (Docket # 190.) Thus, I do not find sanctions are warranted on this basis.

### 1.2 Prosecutorial Immunity

Defendants next argue that despite addressing the issue of prosecutorial immunity in their prior motion to dismiss, the plaintiffs continued to sue Schimmel and Farina for malicious prosecution. (Docket # 180 at 4–5.) In addressing defendants' motion to dismiss

the Fourth Amended Complaint, I agreed with defendants that under Wisconsin law, Schimmel was entitled to absolute immunity while acting within the scope of a prosecutor for the City of Wauwatosa. (Docket # 190 at 20–22.) As to Farina, however, I found that the law was not clear that he was entitled to absolute immunity in his role as a law enforcement officer, and to the extent he was entitled to qualified immunity, I could not address that issue on a motion to dismiss. (*Id.* at 22–23.) As such, I allowed plaintiffs' claim for malicious prosecution against Farina to go forward. (*Id.* at 25.)

As to Schimmel, Wisconsin law is quite clear that "prosecuting attorneys, when acting within the scope of their prosecutorial functions, are absolutely immune from damages, the theory being that in so acting they are performing a quasi-judicial function." *Riedy v. Sperry*, 83 Wis. 2d 158, 168, 265 N.W.2d 475, 480 (1978). The law is also clear that "[j]udicial officers acting in the exercise of their jurisdiction are exempt from civil liability for malicious prosecution irrespective of the existence of malice or corrupt motives. A public prosecutor acting in his official capacity is absolutely privileged to initiate or continue criminal proceedings." *Bromund v. Holt*, 24 Wis. 2d 336, 341, 129 N.W.2d 149, 152 (1964).

Despite this law, which has existed for decades prior to plaintiffs bringing these claims, plaintiffs sued Schimmel for malicious prosecution. In their response to defendants' sanctions motion, plaintiffs rather incredibly argue that Schimmel may not have actually been acting as a prosecutor for the City of Wauwatosa because defendants have failed to produce Schimmel's employment contract that would indicate such things as whether he had basic prosecutorial training. (Docket # 184 at 5–6.) Plaintiffs also argue that prosecutorial immunity is not absolute, as in situations where prosecutors give legal advice to police officers

during investigations, and plaintiffs argue that they have received evidence that Schimmel was perhaps giving legal advice to the police officers during their investigation. (*Id.* at 6–7.)

But plaintiffs' arguments are belied by what they pled in the Fourth Amended Complaint. While plaintiffs now question whether Schimmel was a legitimate prosecutor, they specifically pled that Schimmel was acting within the scope of his employment when prosecuting Rivera, Baldwin, and Rogers for ordinance violations. (Fourth Am. Compl. ¶¶ 100, 1093–1102.) And while plaintiffs now assert that perhaps Schimmel was assisting the police during their investigation, their cause of action for malicious prosecution stems *solely* from Schimmel's actions in prosecuting municipal citations. (*See id.*)

Thus, plaintiffs' cause of action against Schimmel for malicious prosecution is clearly a frivolous claim with no basis in law. In their "safe harbor" letter and motion, defendants cite plaintiffs to relevant Wisconsin law regarding prosecutorial immunity. (Zellner Decl. ¶ 5, Ex. B.) Plaintiffs clearly chose to disregard this law, and their explanations as to why they maintained the cause of action itself borders on frivolous. Sanctions are warranted on this ground.

### 1.3 Fourth Amendment Claims

In the Fourth Amended Complaint, plaintiffs sue several officers for the unlawful search and seizure of their cars and phones. (Tenth Claim for Relief, Fourth Am. Compl. ¶¶ 1072–77.) Defendants argue that the law clearly allows searches and seizures incident to arrest, which is what occurred in the plaintiffs' situations. (Zellner Decl. ¶ 5, Ex. B.) Plaintiffs counter that they asserted in good faith that the arrests were unlawful (either pretextual or unsupported by probable cause) and thus the searches were unlawful by extension. (Docket # 184 at 8–9.) Count Ten has been dismissed, with prejudice. (Docket # 190 at 23.) And while

defendants are correct that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment,'" *United States v. Robinson*, 414 U.S. 218, 235 (1973), plaintiffs alleged the officers searched their phones and vehicles, not their persons. While defendants make various other arguments as to why the search and/or seizure of the plaintiffs' phones and vehicles *could* fall under an exception to the Fourth Amendment (Docket # 180 at 5–6), the law is not so clear under the circumstances the plaintiffs allege as to make their claim clearly frivolous. Thus, I will not award sanctions on this ground.

    2.    *Allegations Contrary to Fact*

Defendants further argue that plaintiffs make several factual allegations in the Fourth Amended Complaint that are clearly without evidentiary support, contrary to Rule 11(b)(3). Defendants' challenges can be broken down into four categories: (1) false assertions regarding municipal court proceedings against various plaintiffs being dismissed for lack of probable cause to charge; (2) allegations plaintiffs were arrested without probable cause when plaintiffs were ultimately found guilty in municipal court for said violations; (3) false assertions that Schimmel continues to maliciously and unlawfully prosecute thirty-eight plaintiffs for curfew tickets in the amount of $1,321; and (4) false assertions that defendants never attempted to get a search warrant for Taleavia Cole's cell phone. (Docket # 180 at 7–10.) I will address each category of claims in turn.

    2.1    Dismissal of Municipal Court Proceedings for Lack of Probable Cause

Defendants argue that plaintiffs' allegations contained in paragraphs 189, 201, 231, and 691 of the Fourth Amended Complaint were clearly false at the time the complaint was filed. These paragraphs allege that the municipal tickets of Gabriella Vitucci, Khalil Coleman,

7

Brandon Wilborn, Rosalind Rogers, Isiah Baldwin, and Aidali Rivera were all dismissed in municipal court for a "lack of probable cause to charge." Defendants assert that as to each of these individuals, there was never a ruling on probable cause to charge in municipal court.

### 2.1.1 Plaintiffs Vitucci, Coleman, and Wilborn

As to Vitucci, Coleman, and Wilborn, paragraphs 189 and 201 of the Fourth Amended Complaint allege as follows:

> After several unnecessary court appearances, hiring an attorney and the stress that comes with going to court to fight unlawful tickets Plaintiffs Vitucci and Coleman tickets for obstruction was terminated in favor of Plaintiffs on the day it was scheduled for a trial in Wauwatosa's Municipal Court for the lack of probable cause to charge. (Fourth Am. Compl. ¶ 189.)

> After several unnecessary court appearances, hiring an attorney and the stress that comes with going to court to fight unlawful tickets Plaintiff Brandon Wilborn's ticket for special permit required was terminated in favor of Wilborn for the lack of probable cause to charge. (Fourth Am. Compl. ¶ 201.)

Defendants assert that Vitucci, Coleman, and Wilborn's tickets were all dismissed on the prosecutor's motion, but not for lack of probable cause to charge. (Declaration of George M. Schimmel ("Schimmel Decl.") ¶¶ 2–4, Exs. A, B, and C, Docket # 181.) Attorney Motley represented all three individuals during their municipal proceedings. (*Id.*)

Plaintiffs do not address the substance of defendants' assertions, specifically, that the plaintiffs' allegations, as pled, lead one to believe that these municipal citations were dismissed because there was a finding that there was never probable cause to issue them in the first place, when that was not the reason for the dismissal. Rather, plaintiffs respond by arguing that the tickets were dismissed on the day of the municipal court trial, and they are making "good faith arguments" as to these claims. (Docket # 184 at 9.) But as represented in the complaint, that the tickets were dismissed for lack of probable cause is not an argument. It is an allegation of fact. Additionally, *when* the tickets were dismissed does not alter *why* they

8

were dismissed. Wilborn's ticket was dismissed on March 3, 2021, and Vitucci's and Coleman's tickets were dismissed on February 2, 2022. (Schimmel Decl. ¶¶ 2–4, Exs. A, B, and C.) These individuals were represented by Attorney Motley during these proceedings. (*Id.*) The Fourth Amended Complaint was signed by Attorney Motley on February 15, 2022, subsequent to these proceedings. (Docket # 155.) Perhaps plaintiffs intended to plead that upon information and belief, Schimmel moved to dismiss the citations because he determined that the tickets lacked probable cause. But that is *not* what was alleged in the complaint, nor do plaintiffs argue this in response to defendants' sanctions motion. The allegations in the complaint that the tickets were dismissed for lack of probable cause are at best misleading, and Attorney Motley either knew or should have known that there was never a finding that the City lacked probable cause to charge any of these citations. Thus, sanctions are warranted on this ground.

### 2.1.2 Plaintiffs Rogers, Baldwin, and Rivera

As to Rogers, Baldwin, and Rivera, the Fourth Amended Complaint alleges in paragraphs 231 and 691 as follows:

> After several unnecessary court appearances, hiring an attorney and the stress that comes with going to court to fight unlawful tickets Plaintiffs Rosalind Rogers and Isiah Baldwin's tickets for special permit required was terminated in favor of both Plaintiffs for the lack of probable cause to charge. (Fourth Am. Compl. ¶ 231.)

> Aidali [Rivera] after being arrested, having several unnecessary court hearings, hiring an attorney and the stress that comes with going to court to fight an unlawful ticket Plaintiff Aidali suffered damages and her ticket was terminated in her favor on February 3, 2021 for the lack of probable cause to charge. (Fourth Am. Compl. ¶ 691.)

As with the other three individuals above, defendants assert that all three citations were dismissed on the prosecutor's motion, and not for lack of probable cause to charge. (Schimmel

9

Decl. ¶¶ 5–7, Exs. D, E, and F.) All three of these tickets were dismissed by March 2021 with Attorney Motley representing the individuals during the municipal proceedings. (*Id.*)

Again, plaintiffs do not address defendants' allegations of falsehood; rather, they argue that they never asserted that "there was never a ruling on probable cause to charge in municipal court." (Docket # 184 at 10.) They argue that to maintain a malicious prosecution claim, a plaintiff need not show some affirmative indication of innocence; rather, they need only show the prosecution ended without conviction, which is what happened here. (*Id.*)

Plaintiffs' argument is nonsensical. What, then, did they mean when they pled that the tickets were terminated in favor of the plaintiffs *for the lack of probable cause to charge* if they did not intend the reader to think that there was a ruling on probable cause by the court? Again, did they mean to plead that they *assume* that the prosecutor must have dismissed the citations because he lacked probable cause to charge? If that was the case, then they should have at least pled that "upon information and belief" the prosecutor dismissed the citation because he lacked probable cause to charge. This is not a hypertechnical reading of the Fourth Amended Complaint. Words matter. As pled, the Fourth Amended Complaint alleges that the citations were dismissed for lack of probable cause. And given Attorney Motley's presence at these municipal court hearings, it is inexplicable the complaint was pled as it was. Again, sanctions are warranted on this ground.

### 2.2 Unlawful Arrest Without Probable Cause

#### 2.2.1 Plaintiffs Schroeder and Geisler

In paragraphs 638 and 639, the Fourth Amended Complaint alleges as follows:

Plaintiff Schroeder and Plaintiff Geisler were unlawfully arrested and given municipal tickets in the amount of $1,321 each for Disobeying A Lawful Order signed by Defendant Jeffrey Farina. (Fourth Am. Compl. ¶ 638.)

10

> Plaintiffs Geisler and Schroeder were both lawfully protesting in Wauwatosa on 10/9/20 at 6:32 p.m. and were arrested while they were engaged in constitutionally protected activity and had not violated any ordinance or criminal laws. (Fourth Am. Compl. ¶ 639.)

Defendants assert that on December 1, 2021, Geisler was found guilty in municipal court for "Disobey Lawful Order" in violation of Ordinance 7.48.010(4) and that Attorney Motley represented her in the municipal proceedings. (Schimmel Decl. ¶ 8, Ex. G.) Similarly, defendants argue that Schroeder was also found guilty on December 1, 2021 in municipal court for "Disobey Lawful Order" in violation of Ordinance 7.48.010 and that Attorney Motley represented her in the municipal proceedings. (Schimmel Decl. ¶ 9, Ex. H.) As to Geisler and Schroeder, plaintiffs argue that both appealed their decisions to the Milwaukee County Circuit Court, and on May 10, 2022, both citations were ultimately dismissed with prejudice on Schimmel's motion. (Docket # 184 at 10–12.)

As to these allegations, the statements are at best misleading. While paragraph 638 reads more like plaintiffs' argument in this case—i.e., that Schroeder and Geisler were unlawfully arrested— paragraph 639's statement that neither Schroeder nor Geisler violated any ordinance is an incorrect statement of fact. Even if the citations were ultimately dismissed almost three months *after* the Fourth Amended Complaint was filed, that does not change the fact that at the time Attorney Motley signed the complaint on February 15, 2022, both Geisler and Schroeder *had* been legally found to have violated an ordinance, contrary to the express statement in the complaint. Sanctions are warranted on this ground.

### 2.2.2 Plaintiff Smith

In paragraphs 184, 190, 214, and 219, the Fourth Amended Complaint alleges the following as to Smith:

> Defendant Timothy Warren did not have probable cause to ticket Plaintiffs Andrew Aaron, Khalil Coleman, Mariah Smith, or Gabriella Vitucci for their participation in peaceful protests. (Fourth Am. Compl. ¶ 184.) Defendant Mariah Smith continues to fight her ticket despite the lack of probable cause. (*Id.* ¶ 190.) Plaintiff Smith was not in a car but was marching on foot in the protest when she was targeted by Defendant Jeffrey Farina and was placed under arrest with no probable cause that she had committed any crimes. (*Id.* ¶ 214.) Defendant John Doe officers assisted with the arrest of Plaintiff Smith and he searched her despite the lack of probable cause for her arrest. (*Id.* ¶ 219.)

Defendants argue that Smith was found guilty in municipal court on December 15, 2021 of "Obstructing Traffic by Loitering" in violation of Ordinance 756050 and of "Disorderly Conduct" in violation of 947.01 and was represented by Attorney Motley in these proceedings. (Schimmel Decl. ¶¶ 10–11, Exs. I and J.)

Plaintiffs counter that Smith was given a "non-criminal ticket" for disorderly conduct so the statement that there was "no probable cause that she had committed any crimes" is literally true. As with Geisler and Schroeder, upon appealing the tickets, they were ultimately dismissed on the prosecutor's motion on May 10, 2022. (Docket # 184 at 12–13.)

Unlike the allegations as to Geisler and Schroeder, the allegations as to Smith read more like an argument as to the plaintiffs' position, again, that Smith was arrested without probable cause. The allegations as to Smith do not contain the express allegations of fact that the complaint asserts as to Geisler and Schroeder. Given that at the time the Fourth Amended Complaint was signed by Attorney Motley, Smith had in fact been found guilty of "Obstructing Traffic by Loitering" in violation of Ordinance 756050 and of "Disorderly Conduct" in violation of 947.01, the allegations are indeed misleading. However, they are not so misleading as to warrant sanctions on this ground.

### 2.3 Malicious Prosecution Allegations

In Paragraph 280, plaintiffs allege that:

12

> Defendant Schimmel knows that Wis. Stat. 323.28 is the controlling legislation in prosecuting the violation of emergency order tickets for these thirty-eight Plaintiffs and continues to maliciously and unlawfully prosecute these tickets for the unlawful amount of $1,321. (Fourth Am. Compl. ¶ 280.)

Defendants assert that as of at least July 20, 2021, Schimmel had prepared and provided Attorney Motley with a stipulation to amend the curfew citations pending in Wauwatosa Municipal Court to a forfeiture of $200 for thirty-four of the named plaintiffs, while as to the remaining four, Rivera's citation was no longer pending, Fanning's was dismissed, and Geisler and Schroeder were found guilty. (Docket # 180 at 9–10.) Defendants allege Attorney Motely refused to sign the stipulation. (*Id.*) Plaintiffs counter that Attorney Motley is under no obligation to stipulate to anything, and Schimmel should have simply dismissed and reissued the tickets seeking the statutory maximum amount of $200. (Docket # 184 at 13–14.)

To the extent the complaint alleges that Schimmel maliciously prosecuted these tickets, as explained above, he is protected by absolute immunity and thus this allegation lacks a sufficient legal basis. To the extent plaintiffs allege that Schimmel unlawfully continues to prosecute the tickets for the unlawful amount of $1,321, Attorney Motley is clearly aware that Schimmel attempted to correct the error, albeit not in the manner that the plaintiffs desire. Thus, to say he continues to unlawfully prosecute the tickets for an unlawful amount is misleading and warrants sanctions on this ground.

### 2.4 Allegations Regarding Search Warrant

In paragraph 365 of the Fourth Amended Complaint, plaintiffs allege that:

> For over three weeks Taleavia tried unsuccessfully to get her phone back from Defendants Shane Wrucke, Brian Skornia, and Maria Arbiter who unlawfully and maliciously refused to give it back despite the lack of probable cause to hold it and they never attempted to get a search warrant for her phone.

(Fourth Am. Compl. ¶ 365.) Defendants assert that on October 29, 2020, Lewandowski attempted to get a search warrant for the phone. (Zellner Decl. ¶ 9, Ex. C.) Defendants contend that plaintiffs were provided with this information during discovery and deposed Lewandowski who testified that he submitted the document to the Milwaukee County District Attorney for Approval. (*Id.*) The search warrant that defendants provide is unsigned. (*Id.*)

Plaintiffs counter that they have never seen the signed search warrant and that when Cole's phone was returned to her on October 30, 2020 pursuant to a Court order, this confirms that there was never a proper attempt to get a search warrant. (Docket # 184 at 14–15.) Once again, plaintiffs' allegations are misleading. Even without the signed version of the warrant, plaintiffs deposed Wrucke on August 20, 2021, who testified that the officers attempted to get two search warrants for Cole's phone. (Docket # 188-1 at 22–23.) If plaintiffs did not believe his sworn testimony, as is their right, perhaps the complaint should have alleged that "on information and belief" the City never attempted to get a search warrant. But whether the warrant was ultimately granted or whether the warrant was later found to be legally deficient are different issues from whether the officers *attempted* to get a warrant. Given the information the plaintiffs had at the time the Fourth Amended Complaint was signed, the allegations in the complaint are also misleading and warrant sanctions.

   3.   *Remedy*

Lawyers owe a duty of zealous advocacy to their clients. That advocacy, however, must comport with the requirements of Fed. R. Civ. P. 11 that arguments be nonfrivolous and that the facts alleged be grounded in evidentiary support or in the likelihood of evidentiary support. Further, Fed. R. Civ. P. 11 gives attorneys who may have, perhaps inadvertently,

14

made false statements of law or fact in a pleading before the court an opportunity to correct these errors before a motion for sanctions is filed—a "safe harbor." The defendants in this case did just that (Zellner Decl. ¶ 5, Ex. B), but the plaintiffs did not respond (*id.* ¶ 6) until the defendants' sanctions motion was filed. And rather than correcting their errors at this point, the plaintiffs doubled down on their misleading statements, offering explanations that were weak, at best.

This case has been plagued with discord and inefficiency from the very beginning, and only now, nearly two years after this case was first filed, do we have a proper operative complaint. Having to address motions such as this one eats up the precious resources of both the court and the parties. Both parties are on notice that these distractions will not be tolerated going forward.

As to the defendants' instant motion, given that plaintiffs' counsel could have addressed the issues raised in the motion prior to the sanctions motion being filed, sanctions under Rule 11 are warranted. Rule 11(c)(4) provides that the Court may order payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation. I will award the defendants their reasonable attorneys' fees expended in bringing this sanctions motion. Defendants must submit an affidavit detailing the **reasonable** fees expended in bringing this motion no later than **September 9, 2022**. Plaintiffs may file a response no later than **September 16, 2022**.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that defendants' motion for sanctions (Docket # 179) is **GRANTED**. Defendants are granted their reasonable attorneys' fees expended in bringing this motion for sanctions.

**IT IS FURTHER ORDERED** that the defendants must submit an affidavit detailing the reasonable fees expended in bringing this motion no later than **September 9, 2022**. Plaintiffs may file a response no later than **September 16, 2022**.

Dated at Milwaukee Wisconsin this 2nd day of September, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge