**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**


KATHRYN KNOWLTON, ANDREW AARON, KAMILA AHMED, ROBERT AGNEW, ISIAH BALDWIN, JACQUELINE BOGENBERGER, LAVITA BOOKER, REBECCA BURRELL, RAINE CICH, TAHUDAH COLE, TALEAVIA COLE, TRACY COLE, KHALIL COLEMAN, STEVEN CONKLIN, LAURYN CROSS, RACHEL DULAY, ANNE DELESSIO-PARSON, ERIK FANNING, JESSICA FENNER, JILL FERGUSON, BREON FOSTER, JOANNA GEISLER, CHRISTINE GROPPI, GAIGE GROSSKREUTZ, JOSEPH HAYES, PERCY HAYES, DESTINEY JONES, ADANTE JORDAN, MARY KACHELSKI, SEAN KAFER, JOEY KOEPP, JOHN LARRY, ALEX LARSON, SONORA LARSON, HOLLY LAVORA, LAZARITO MATHEU, VAUN MAYES, DANA McCORMICK, MOLLY NILSSEN, SHAWN PAGE, CARMEN PALMER, (JUVENILE) PALMER 1, (JUVENILE) PALMER 2, LEAH PORTER, AIDALI RIVERA, WILLIAM RIVERA, HECTOR RODRIGUEZ, JOSE HERNANDEZ RAMIREZ, OSCAR CONCEPCION RODRIGUEZ, ROSALIND ROGERS, NATHAN SABEL, WILLIAM SCHROEDER, MADELIENE SCHWEITZER, MARIAH SMITH, PETER SPARKS, TIFFANY STARK, ANGEL VEGA, CHRISTINA VITOLO-HADDAD, GABRIELLA VITUCCI, TRISTIANA WALLS, OSCAR WALTON, JAYDEN WELCH, BRITTA WELCH, SUZANNE WELLS, BRANDON WILBORN, TRISHA WILSON, KATELYN WOJNAR, SONJA WORTHY, and MEMBERS OF THE PEOPLE'S REVOLUTION, AN UNINCORPORATED ENTITY, hereinafter referred to as (TPR), on behalf of themselves and all others similarly situated,


      Plaintiffs.


      v.                        Case No. 20 CV 01660


CITY OF WAUWATOSA, DENNIS McBRIDE in his individual capacity, BARRY WEBER, in his individual capacity as the Former Chief of Police of the Wauwatosa Police Department, MARIA ARBITER in her individual capacity JEFFREY FARINA in his individual capacity, JOSEPH LEWANDOWSKI in his individual capacity, DANIEL MITCHELL in his individual capacity, GEORGE OPELT in his individual capacity, ROBERT PIEHL in his individual capacity, DOMINICK RATKOWSKI in his individual capacity, RUSSELL RICHARDSON in his individual capacity, JOSEPH ROY in his individual capacity, ~~GEORGE SCHIMMEL in his individual capacity~~, JAMES SHORT in his individual capacity, BRIAN SKORNIA in his individual capacity, LUKE VETTER in his individual capacity, TIMOTHY WARREN in his individual capacity, SHANE WRUCKE in his individual capacity, KELLY ZIELINSKI in his individual capacity, and JOHN DOES POLICE OFFICERS 1 – 100


      Defendants.


1

## FOURTH AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiffs, by their undersigned attorneys of record, allege as follows:

## I.     INTRODUCTION

1.      The City of Wauwatosa through its Police Department has spent the past two years engaged in a political campaign against those who call for justice and reform. This campaign has included the use of violence, criminal and civil charges, surveillance, and efforts to harass and intimidate those who call for change. Plaintiffs bring this action to call out these invasions of their privacy, violations of their right to assemble and to exercise their free speech, and to bring to light the corrupt use of state force in pursuit of political gain.

2.      These are civil rights actions challenging the unconstitutional actions of the City of Wauwatosa employees, an elected official, and members of the Wauwatosa Police Department ("WPD") against these sixty-eight Plaintiffs and one unincorporated entity, many of whom were tragically inspired to peaceably protest after the untimely deaths of George Floyd, Alvin Cole, Jay Anderson Jr., Breonna Taylor, and so many others who have died at the hands of police. The vast majority of these Plaintiffs were present during protests and/or an unlawful curfew while invoking their constitutional rights in standing up against police violence, insisting on police reform, and fighting for  anti-racial policies and/or practices in the City of Wauwatosa who were summarily arrested, targeted, and punished by police officers, elected officials, and city employees starting on or around May 25, 2020 through present.

3.      These civil actions are brought pursuant to 42 U.S.C. §1983. Plaintiffs seek damages for injuries sustained by Plaintiffs as a result of Defendants' violation of their constitutional rights. Plaintiffs also seek to enjoin the City of Wauwatosa and Wauwatosa Mayor

2

Dennis McBride from issuing unlawful emergency orders and other Wauwatosa Police Officers from issuing and enforcing unlawful policies including dispersal orders to peaceful citizens based on alleged unlawful assembly or other group misconduct by others.

4.     Throughout the summer of 2020, the United States was immersed in the largest social justice movement in history.  In a repudiation of anti-Black racism, white supremacy, police violence, mass criminalization, and mass incarceration, millions joined demonstrations around the globe in solidarity against police violence.

5.     Many of the Plaintiffs as well as thousands of other organizers, activists, and community leaders throughout the State of Wisconsin - multi-racial, varying gender orientations, and intergenerational in composition - engaged in a wide variety of actions throughout 2020, which included rallies, marches, and other creative protests that consistently opposed police violence and demanded police accountability within the criminal justice system.

6.     One political protest movement emerged in Wisconsin after the murder of George Floyd on May 25, 2020 called The People's Revolution, hereinafter referred to as "TPR."

7.     Plaintiffs are citizens of the U.S. who were ticketed, arrested, and/or targeted in and by the City of Wauwatosa and its employees for being physically present or engaging in peaceful protests in the wake of the homicides of George Floyd, Alvin Cole, and the shooting of Jacob Blake, peacefully protesting the inequitable treatment imposed upon persons of color who have been severely hurt or killed by police officers.

8.     The protests that occurred in Wauwatosa primarily occurred as a result of the actions of former WPD officer Joseph Mensah "Mensah" and the inactions of the City of Wauwatosa in holding him accountable for killing three males of color within his five years with the WPD.  On February 2, 2020, Mensah shot and killed Alvin Cole at Mayfair Mall.  Mensah also shot and killed Jay Anderson, Jr. on June 23, 2016 and Antonio Gonzales on July 15, 2015.  In his

3

five years with the WPD, Mensah fired his weapon nineteen times that resulted in these three deaths. He is the only WPD officer who has killed anyone within the last twelve (12) years. Mensah has never been held accountable by the WPD for these deaths despite WPD's cursory admissions that Mensah failed to follow some departmental policies and procedures in his involvement with the shootings and he has never been criminally charged.

9. Ultimately, because of the lack of accountability regarding the three shootings that Mensah was involved in, several peaceful protests occurred in the City of Wauwatosa starting on or around May 25, 2020 onwards in which persons or persons perceived to be affiliated with The People's Revolution "TPR" were ticketed, targeted, and monitored by members of the WPD, Wauwatosa elected officials, and city employees.

10. In response to these peaceful protests, on or around May 25, 2020 Dominick Ratkowski, a city of Wauwatosa employee who works at the WPD, created a TPR Target List ("Target List"). This Target List contained persons whom Ratkowski perceived to be affiliated with the People's Revolution ("TPR") and had their name, photos, addresses, dates of birth, and other personal information. This Target List was indiscriminately distributed by Ratkowski and other Wauwatosa city employees, local, state, and federal agencies often with no explanation or guidance on who the people were on the Target List or why they were on their.

11. Although the protests from May 25, 2020 onwards were overwhelmingly peaceful, the Wauwatosa Police Department ("WPD") and its officers often used violent crowd control tactics against peaceful protestors.

12. This case largely focuses on the City of Wauwatosa's Emergency Order unlawfully and unilaterally passed and signed by the Defendant Mayor Dennis McBride, on September 30, 2020.

13. Defendant McBride based upon the civil unrests that occurred in Kenosha after the

4

Jacob Blake shooting and in Minneapolis after the George Floyd shooting, McBride anticipated that there would be unrest in Wauwatosa and manufactured an emergency following the release of the Milwaukee County District Attorney's findings in the matter of Mensah's killing of Alvin Cole on February 2, 2020.

14.    The Mayor's Order gave rise to the WPD's response to which Wauwatosa Captain Luke Vetter, the second in command for the WPD under Former Chief Weber, was the Operational Supervisor for the police operations in Wauwatosa which included the mobilization of over forty-five (45) regional, state and federal operational partners, including but not limited to the Wisconsin Department of Justice, the FBI (Federal Bureau of Investigations), the ATF (the Bureau of Arms, Tobacco, Firearms and Explosives), the Wisconsin National Guard, the United States Marshalls, etc.

15.    The WPD, Wauwatosa City Agencies, and other operational partners responded to the demonstrations with unconstitutional tactics that were clearly intended to injure, silence, and intimidate Plaintiffs as well as all citizens.  These abusive tactics included violently beating protestors, engaging in false arrests, the creation of false arrest records, use of chemical agents, and kettling protestors in enclosed areas.

16.    The WPD targeted nonviolent protesters, medics, journalists, and individuals recording the demonstrations with retaliatory and unlawful police tactics.

17.    The actions of the WPD have gone unchecked by the City of Wauwatosa.  In particular the  Mayor of Wauwatosa and its Police and Fire Commissioners ("PFC") have done little to nothing to address the decades of inequitable policing to persons of color and violence against protestors.

18.    From 8/13/2020 through 12/31/20 there were no less than four written citizen

5

complaints made to Wauwatosa PFC regarding excessive force used by the WPD police officers against peaceful protestors and none of those complaints were addressed, responded to, or investigated by the PFC.

19.     On January 7, 2021, one day after the U.S. Capitol insurrection, the WPD, through Wauwatosa Police Lt. Joseph Roy, decided to publicly release hundreds of pages of unredacted documents of fifty-three (53) Plaintiffs without their express consent, which contained their personal information and highly restricted personal information obtained from their motor vehicle records.

## II.     JURISDICTION AND VENUE

20.     This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343(a)(3) and (4) (civil rights jurisdiction), 28 U.S.C. §§2201, 2202 (declaratory judgment jurisdiction), and 28 U.S.C. §1367 (supplemental jurisdiction).

21.     Plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a) over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

23.     Venue is proper in the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. §1391(b)(1) and (2) because defendants (including entities) are therein located, and because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

## III.     THE PARTIES TO THIS COMPLAINT

24.     Plaintiff Andrew Aaron is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

25.     Plaintiff Robert Agnew is a Wisconsin resident who resides in the City and County

6

of Milwaukee, State of Wisconsin.

26. Plaintiff Kamila Ahmed is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

27. Plaintiff Isiah Baldwin is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

28. Plaintiff Jacqueline Bogenberger is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

29. Plaintiff Lavita Booker is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

30. Plaintiff Rebecca Burrell is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

31. Plaintiff Raine Cich is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

32. Plaintiff Tahudah Cole is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

33. Plaintiff Taleavia Cole is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

34. Plaintiff Tracy Cole is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

35. Plaintiff Khalil Coleman is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

36. Plaintiff Oscar Concepcion Rodriguez is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

37. Plaintiff Steven Conklin is a Wisconsin resident who resides in the City of

7

Watertown and County Jefferson of State of Wisconsin.

38.    Plaintiff Lauryn Cross is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

39.    Plaintiff Anne Delessio-Parson is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

40.    Plaintiff Rachel Dulay is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

41.    Plaintiff Erik Fanning is a Wisconsin resident who resides in the City of Wauwatosa and County of Milwaukee, State of Wisconsin.

42.    Plaintiff Jill Ferguson is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

43.    Plaintiff Breon Foster is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

44.    Plaintiff Joanna Geisler is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

45.    Plaintiff Christine Groppi is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

46.    Plaintiff Gaige Grosskreutz is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

47.    Plaintiff Christina Vitolo-Haddad is a Wisconsin resident who resides in the City of Madison in Dane County in the State of Wisconsin.

48.    Plaintiff Joseph Hayes is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

49.    Plaintiff Percy Hayes is a Wisconsin resident who resides in the City and County

8

of Milwaukee, State of Wisconsin.

50.     Plaintiff Jose Hernandez Ramirez is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

51.     Plaintiff Destiney Jones is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

52.     Plaintiff Mary Kachelski is a Wisconsin resident who resides in  Wauwatosa in Milwaukee  County in the State of Wisconsin.

53.     Plaintiff Sean Kafer is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

54.     Plaintiff Kathryn Knowlton resides in the City of Wauwatosa, Milwaukee County in the State of Wisconsin.

55.     Plaintiff Joey Koepp resides in the City of Greenfield, Milwaukee County in the State of Wisconsin.

56.     Plaintiff John Larry resides in the City of Wauwatosa, Milwaukee County in the State of Wisconsin.

57.     Plaintiff Alex Larson resides in the City of Wauwatosa, in Milwaukee County in the State of Wisconsin.

58.     Plaintiff Sonora Larson is a Wisconsin resident who resides in the City Boston in Suffolk County, State of Massachusetts.

59.     Plaintiff Holly Lavora is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

60.     Plaintiff Lazarito Matheu is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

61.     Plaintiff Vaun Mayes is a Wisconsin resident who resides in the City and County

9

of Milwaukee, State of Wisconsin.

62.     Plaintiff Dana McCormick resides in the City of Wauwatosa, Milwaukee County in the State of Wisconsin.

63.     Plaintiff Molly Nilssen is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

64.     Plaintiff Carmen Palmer is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

65.     Plaintiff (Juvenile) female Palmer #1  is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

66.     Plaintiff (Juvenile) male Palmer #2  is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

67.     Plaintiff Leah Porter is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

68.     Plaintiff Aidali Rivera is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

69.     Plaintiff William Rivera resides in the City of Wauwatosa Milwaukee County in the State of Wisconsin.

70.     Plaintiff Hector Rodriguez is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

71.     Plaintiff Rosalind Rogers is a Wisconsin resident who resides in the City and County  of Milwaukee, State of Wisconsin.

72.     Plaintiff Nathan Sabel is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

73.     Plaintiff William Schroeder is a Wisconsin resident who resides in the City and

County of Milwaukee, State of Wisconsin.

74.     Plaintiff Madeline Schweitzer is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

75.     Plaintiff Mariah Smith is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

76.     Plaintiff Peter Sparks is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

77.     Plaintiff Tiffany Stark is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

78.     Plaintiff Angel Vega is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

79.     Plaintiff Gabriella Vitucci is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

80.     Plaintiff Tristiana Walls is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

81.     Plaintiff Oscar Walton is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

82.     Plaintiff Suzanne Wells is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

83.     Plaintiff Brandon Wilborn is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

84.     Plaintiff Trisha Wilson is a Wisconsin resident who resides in the City and County of Milwaukee, State of Wisconsin.

85. Plaintiff Katelyn Wojnar resides in the City of Stevens Point, Portage County in the State of Wisconsin.

86. Plaintiff Sonja Worthy resides in the City of Madison, Dane County in the State of Wisconsin.

87. Plaintiffs the People's Revolution (TPR) is an unincorporated entity consisting of individuals who participated in various actions throughout the State of Wisconsin during 2020 that originated in Wisconsin created after the George Floyd killing which took place on May 25, 2020.

88. Defendant City of Wauwatosa is a municipality incorporated in the State of Wisconsin.

89. Defendant Dennis McBride is the Mayor of Wauwatosa, located at the Wauwatosa City Hall at 7725 West North Avenue, Wauwatosa, WI 53213, County of Milwaukee, State of WI., with a phone number of 414-479-8917 and an email of dmcbride@wauwatosa.net, and is, on information and belief, an adult resident of the State of WI. residing in Milwaukee County, within the Eastern District of WI. Defendant McBride is the chief executive officer of Wauwatosa, responsible to direct the Chief of Police. He is named in his individual capacity ~~for declaratory and injunctive relief only and in his individual capacity for punitive damages~~. At all times pertinent and material to this Complaint, Defendant McBride was acting within the scope of his position and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

90. Defendant Barry Weber was the Chief of Police during all the dates relevant to this complaint for the WPD located at 1700 North 16th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and an email of bweber@wauwatosa.net, and is, on information and belief an adult resident of the State of Wisconsin residing in Washington County, within the Eastern District of Wisconsin. Defendant Weber was the Chief of Police for Wauwatosa and in that capacity had final responsibility for

12

establishing the rules of engagement for police deployments responding to protests and civil unrest and as directed by the Mayor. Weber is named in his individual ~~capacity for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Weber was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

91.     Defendant Maria Arbiter is an officer with the WPD located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of WI., with a phone number of 414-471-8430 and an email of, and is, on information and belief, an adult resident of the State of WI. residing in Milwaukee County, within the Eastern District of WI. Defendant Arbiter is named in her individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Ms. Arbiter was acting within the scope of her employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

92.     Defendant Jeffrey Farina was a law enforcement officer with the WPD located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of WI., with a phone number of 414-471-8430 and an email of, and is, on information and belief, an adult resident of the State of WI. residing in Milwaukee County, within the Eastern District of WI. Defendant Farina is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Farina was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

93.     Defendant Joseph Lewandowski is an officer with the WPD, located at 1700 North 116th Street, Wauwatosa, WI. 53226, County of Milwaukee, State of WI., with a phone number of 414-471-8430, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of WI.. Lewandowski is named in his

individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Lewandowski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

94.     Defendant Daniel Mitchell is an officer with the WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Mitchell is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Mitchell was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

95.     Defendant George Opelt is an officer with the WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Opelt is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Opelt was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

96.     Defendant Robert Piehl is an officer with the WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Piehl is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Piehl was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

14

97. Defendant Dominick Ratkowski is an employee of the City of Wauwatosa who worked at the WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of WI., with a phone number of 414-471-8430 and an email of dratkowski@wauwatosa.net , and is, on information and belief, an adult resident of the State of WI. residing in Milwaukee County, within the Eastern District of WI. Ratkowski is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Ratkowski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

98. Defendant Russell Richardson is a law enforcement officer with the WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of WI. with a phone number of 414-471-8430 and is, on information and belief, an adult resident of the State of WI. residing in Milwaukee County, within the Eastern District of Wisconsin. Richardson is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Richardson was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

99. Defendant Joseph Roy is a law enforcement officer with the WPD, located at 1700 North 116th Street, Wauwatosa, WI. 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and is, on information and belief, an adult resident of the State of WI. residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Roy is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Roy was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of WI.

100. ~~Defendant George Schimmel is a non-employee and outside contracted Attorney for the City of Wauwatosa, located at the Wauwatosa City Hall at 7725 West North Avenue,~~

Wauwatosa, Wisconsin 53213, County of Milwaukee, State of Wisconsin., with a phone number of 414-881-8559 and an email of gschimmel@schimmel-law.com, and is, on information and belief, an adult resident of the State of WI. residing in Milwaukee County, within the Eastern District of WI. Defendant Schimmel is named in his individual capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Schimmel was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

101. Defendant James Short is a law enforcement officer with the WPD located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and an email of, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Short is named in his individual capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Zielinski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

102. Defendant Brian Skornia is an officer with WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Skornia is named in his individual capacity for declaratory and injunctive relief only. At all times pertinent and material to this Complaint, Defendant Skornia was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

103. Defendant Luke Vetter is a Captain with the WPD, located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number

16

of 414-471-8430 and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Vetter is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Vetter was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

104. Defendant Timothy Warren is an officer with the WPD located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Warren is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Warren was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

105. Defendant Shane Wrucke is a law enforcement officer with the WPD located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and an email of, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Wrucke is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Wrucke was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

106. Defendant Kelly Zielinski is a law enforcement officer with the WPD located at 1700 North 116th Street, Wauwatosa, WI 53226, County of Milwaukee, State of Wisconsin, with a phone number of 414-471-8430 and an email of, and is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of

17

Wisconsin. Defendant Zielinski is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Zielinski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

107.    John Does 1-100 are individual police officers and employees of the City of Wauwatosa, who enabled, supported and/or effectuated arrests, caused bodily harm, created false arrest records, and/or ticketed individuals at issue in this case.  Their identities are currently unknown to Plaintiffs but are known to Defendant City of Wauwatosa. They are each public employees of Wauwatosa who were operating under the color of state law. When their identities are determined, this Complaint will be amended to name each individual officer to the extent that they violated the rights contemplated in this suit.

## IV.    HISTORICAL BACKGROUND OF RACIAL ISSUES IN WAUWATOSA AND THE WAUWATOSA POLICE DEPARTMENT

108.    The City of Wauwatosa unfortunately has a long and sordid history of racial issues. From 1920 through the 1950's Wauwatosa was known as a restrictive zoning city in which African Americans were not welcome.[1] Even well into the 1960s it was common to see signs in Wauwatosa excluding black people or seeing property deeds which explicitly "excluded non-whites from purchasing, owning, leasing or occupying."[2]

109.    In 1989 the City of Wauwatosa hired an outside research firm, to conduct a comprehensive study of the Wauwatosa Police Department hereinafter "WPD."

110.    The study  concluded that there was an "inadequacy of leadership," as well as "inefficient training of officers and misallocation of personnel."  Additionally, it was noted that

---

[1] https://www.jsonline.com/story/news/solutions/2019/06/18/centuries-old-racism-haunts-efforts-treat-milwaukee-trauma-epidemic/2580146002/

[2] Id.

18

Case 2:20-cv-01660-NJ    Filed 09/21/22    Page 18 of 138    Document 204-13

Wisconsin. Defendant Zielinski is named in his individual capacity ~~for declaratory and injunctive relief only~~. At all times pertinent and material to this Complaint, Defendant Zielinski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

107.    John Does 1-100 are individual police officers and employees of the City of Wauwatosa, who enabled, supported and/or effectuated arrests, caused bodily harm, created false arrest records, and/or ticketed individuals at issue in this case.  Their identities are currently unknown to Plaintiffs but are known to Defendant City of Wauwatosa. They are each public employees of Wauwatosa who were operating under the color of state law. When their identities are determined, this Complaint will be amended to name each individual officer to the extent that they violated the rights contemplated in this suit.

## IV.    HISTORICAL BACKGROUND OF RACIAL ISSUES IN WAUWATOSA AND THE WAUWATOSA POLICE DEPARTMENT

108.    The City of Wauwatosa unfortunately has a long and sordid history of racial issues. From 1920 through the 1950's Wauwatosa was known as a restrictive zoning city in which African Americans were not welcome.[1] Even well into the 1960s it was common to see signs in Wauwatosa excluding black people or seeing property deeds which explicitly "excluded non-whites from purchasing, owning, leasing or occupying."[2]

109.    In 1989 the City of Wauwatosa hired an outside research firm, to conduct a comprehensive study of the Wauwatosa Police Department hereinafter "WPD."

110.    The study  concluded that there was an "inadequacy of leadership," as well as "inefficient training of officers and misallocation of personnel."  Additionally, it was noted that

---

[1] https://www.jsonline.com/story/news/solutions/2019/06/18/centuries-old-racism-haunts-efforts-treat-milwaukee-trauma-epidemic/2580146002/

[2] Id.

18

the police non-supervisory union was too powerful. The study advised that the union should

relinquish some of its power (which they never did) and called for the City of Wauwatosa to

expedite the removal of then police chief Roy Wellnitz, who had held this position since for

nearly fifteen years.   See Wauwatosa Times Article January12, 1989



111.    Police Chief Wellnitz was forced to leave in August 1989, and left the WPD amid

controversy in Wauwatosa for racially insensitive actions by officers working within the police

force and was replaced by Interim Chief Fred Basting who served as chief until May 1990.

112.    In 1989 John Kutz, a civilian clerk,  reported to the Wauwatosa's Police and Fire

Commission ("PFC")  that Wauwatosa Police officers were hosting and attending racist events

labeled as the Martin Luther King Parties ("MLK parties.")

113.    There is no dispute that these racially divisive parties occurred in 1988 and 1989

and were hosted by former WPD Sqt. John Bozevich and attended by at least twelve WPD officers.

114.    At the MLK parties Mr. Kutz reported that WPD officers wore nametags of

minorities, advertised the parties using pictures of minorities who had been arrested, and that Ku

Klux Klan materials and Confederate flags were prominently displayed at these parties.

Wauwatosa Times 03/29/90

19

 

115. Former WPD Sqt. Bozevich who hosted at least two MLK parties was given a twenty-day suspension and former WPD Officer James Zalewski who attended at least two of these parties was given a thirty-day suspension while the matter was being investigated.

116. Amid this controversy, the City of Wauwatosa hired WPD's most recent former Chief Barry Weber in May 1990. He was the chief of the WPD at all times relevant to this complaint and retired on June 1, 2021 replaced by James MacGillis.

117. While the investigation into the MLK parties was taking place, Defendant Chief Weber promoted Bozevich, who unquestionably hosted the MLK parties and Bozevich quickly became second in command with the WPD for many years. During the investigation into the MLK was ongoing, Weber also promoted many of the WPD officers who attended these parties and who were also harassing John Kutz, the whistleblower.

118. The Wauwatosa Police and Fire Commission ("PFC") in 1991 reversed the suspensions of the thirteen (13) WPD officers who hosted and/or attended the MLK parties, returned back pay to the officers, and did nothing against the officers.

119. In September 1990 and January 1991, John Kutz filed a complaint to Wauwatosa PFC against newly hired Chief Weber and others, claiming that Weber harassed him. Kutz's complaint also noted the promotions of WPD officers who hosted and attended these

parties while also sharing the racial harassment Kutz received at work. Wauwatosa Times
09/13/90




120.    Wauwatosa's PFC also dismissed Kutz's complaint against Weber in 1991.

121.    According to the latest U.S. census of Wauwatosa as of August 13, 2021,

122.    Wauwatosa has a population of approx.. 48,387 and is a little over 13 sq. miles.

123.    Since April 2010 the population of Wauwatosa has stayed relatively constant, with about a 3.6% increase over the ten-year period.  Ethnically, the population is 84.4% white, 5.3% black, 4.1% Asian, 2.9% Hispanic, with the remaining 3.3% identifying with two or more races.[3]

124.    According to the arrest data, 83% of the arrests in Wauwatosa in 2018 were of African Americans, 16% were of whites, and 1% were other. See graph below.

[3] https://www.census.gov/quickfacts/fact/table/wauwatosacitywisconsin,US/RHI225219

21



125.     In Wauwatosa, white drivers are stopped an average of 13 minutes and 17 seconds while black drivers are stopped on average 15 minutes and 26 seconds.

126.     From 2015 – 2017, of those stops where racial data was recorded, 64% of people stopped by officers in the WPD were African Americans. See graphs below.



127.     Defendant Mayor McBride stated on October 29, 2020 that, "The Wauwatosa of today is not a racist community.  Wauwatosa is a welcoming community.  There are lots of nice people.  We are facing a difficult time here.  But it's a place where people want to come."

22

## V. BACKGROUND OF PROTESTING IN WAUWATOSA and the KILLIN of ALVIN COLE, JAY ANDERSON, and ANTONIO GONZALES

128.     Following the George Floyd killing in Minneapolis on May 25, 2020, the city of Wauwatosa, along with cities across the country, began to experience protests calling for police reform and accountability for unlawful police violence.

129.     On February 2, 2020 former WPD officer Joseph Mensah "Mensah" shot and killed Alvin Cole at Mayfair Mall.

1.     130.          Prior to this, but still while employed as an officer for the WPD, Officer Mensah killed Jay Anderson, Jr. on June 23, 2016, and Antonio Gonzales on July 15, 2015.



131.     Mensah is the only WPD officer who has killed anyone within the last twelve (12) years and he  has never been held accountable by the WPD for these deaths despite WPD's cursory admissions that Mensah did fail to follow some departmental policies and procedures.

132.     Mensah was only on the WPD force for seven months when he shot and killed Antonio Gonzales on July 15, 2015 and the Milwaukee County DA's office investigated this matter for one month and decided there was no probable cause to charge Mensah.

23

133. Eleven months after Antonio Gonzales was killed, on June 23, 2016 Mensah shot and killed Jay Anderson, Jr who had been sleeping in his car at Madison Park.

134. While Mensah was being investigated for the Jay Anderson shooting, Defendant Barry Weber in August 2016 at a WPD annual event awarded Mensah with a Metal of Valor for having killed Antonio Gonzales the year prior.

135. It should be noted that the Jay Anderson, Jr. family conducted a John Doe Hearing into the shooting of Anderson and on July 28, 2021 a Milwaukee County Circuit Court Judge Glenn Yamahiro found that there is probable cause to charge Mensah with a crime for killing Jay Anderson in June 23, 2016. As a result, the Judge appointed two Special Prosecutors to investigate this matter.

136. From February 2, 2020 through October 7, 2020 the Milwaukee County District Attorney's Office was investigating the shooting of Alvin Cole at the hands of Mensah.

137. On June 1, 2020 it became public that former WPD Officer Joseph Mensah shot and killed Alvin Cole on February 2, 2020.

138. Since May 25, 2020 Wauwatosa has been the center of several protests while the Alvin Cole shooting was under review by the Milwaukee County District Attorney's office.

139. On June 18, 2020 the three families of Alvin Cole, Jay Anderson, and Antonio Gonzales filed a police citizen complaint with Wauwatosa's PFC requesting an internal investigation into the three shootings and demanding that Mensah be fired from the WPD.

140. Although the protests in Wauwatosa were overwhelmingly peaceful, the WPD police response to protests have been to enact unlawful surveillance, and to monitor and target protestors, particularly people believed to be affiliated with The People's Revolution ( "TPR").

24

141.    On July 14, 2020 Wauwatosa's Common Council held a special meeting in which a resolution calling for the "City to facilitate the transition of Officer Joseph Mensah from employment by the Wauwatosa Police Department." And on July 15, 2020 the Wauwatosa's PFC suspended Mensah with pay.

142.    The Wauwatosa Peace Officers Association "WPOA" is the exclusive bargaining unit for officers with the WPD and is comprised of over 77% of the WPD police force for all times relevant to these matters.

143.    The WPOA shortly thereafter publicly criticized members of the Common Council, Mayor McBride, and the PFC for suspending Mensah with pay and some of its members have even gone as far to say to not call the WPD if there are any problems.

144.    Twelve (12) Plaintiffs were given non-criminal municipal tickets by WPD officers for being involved in peaceful protests on August 13 & 14 and September 5, 2020.  And thirty-eight (38) Plaintiffs were given non-criminal curfew tickets for the October 7 – 12, 2020 by WPD Officers.

145.    Attorney George Schimmel has been the outside Contract Attorney for the City of Wauwatosa since 1992.

146.    Attorney Schimmel has never had a written contract or a written terms of reference outlining his job duties with the City of Wauwatosa since being hired in 1992.

147.    All municipal non-criminal tickets given to the fifty (50) Plaintiffs is a result of their being involved in protests or being present in Wauwatosa in 2020 are being prosecuted by ~~Defendant~~ George Schimmel.



## VI.  TPR TARGET LIST – May 25, 2020 to Present

### A.  BACKGROUND

148.    On or around May 25, 2020, shortly after the murder of George Floyd, Defendant Dominick Ratkowski, a civilian crime analyst hired by the City of Wauwatosa, created the "TPR (The People's Revolution) Target List" hereinafter referred to as  the "Target List" while working in his official capacity.

149.    Defendant Ratkowski put over two hundred people on this Target List including forty-nine (49) it whom he put on this list because he believed they were affiliated with the People's Revolution and based on their political speech of calling for police reform.

150.    Since creating the Target List, Defendant Rakowski is the only person who can add individuals to the list and has never deleted anyone off of it.

151.    The WPD had no basis for believing that these individuals were engaged in criminal activity, other than a pervading belief within the WPD that the simple act of associating with the BLM and TPR movements makes an individual a criminal.

152.     Defendant Ratkowski is supervised by Defendant Shane Wrucke, Defendant Luke Vetter, and Defendant Barry Weber, once they became aware of the Target List, never stopped Ratkowski from developing this list, never instructed him on how he should use this list, and never provided any directions on who should get the Target List.

153.     Defendant Ratkowski put forty-nine Plaintiffs on this Target list which contained their personal information and/or their highly restricted personal information that he retrieved from their motor vehicle records such as their driver's license photo, address, phone number, and date of birth.

154.     Defendant Ratkowski made the Target list available to hundreds of people including all WPD officers, Wauwatosa elected officials, employees, and various other third parties outside of the WPD.

155.     John Doe officers freely disseminated the Target List unlawfully to numerous persons.

156.     Ratkowski freely disseminated the Target List unlawfully to numerous persons.

157.     Defendant Ratkowski's supervisors Defendants Wrucke, Vetter, Keck, and Weber knew about the Target List and condoned Defendant Ratkowski updating information on the list and also condoned him giving it out to third parties without their approval.

158.     Defendant Ratkowski's supervisors, Defendants Weber, Vetter, and Wrucke were aware of the list and encouraged his continued work, maintenance and updating of same.

B.     PLAINTIFFS ALLEGATIONS

PLAINTIFFS Andrew Aaron, Robert Agnew, Kamila Ahmed, Isiah Baldwin, Jacqueline Bogenberger, Lavita Booker, Rebecca Burrell, Raine Cich, Khalil Coleman, Tahudah Cole, Taleavia Cole, Tracy Cole, Steven Conklin, Lauren Cross, Erik Fanning, Jessica Fenner, Breon Foster, Christine Groppi, Gaige Grosskreutz, Joseph Hayes, Percy Hayes, Adante Jordan, Mary Kachelski, Sean Kafer, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Vaun Mayes, Molly Nilssen, Shawn Page, Carmen Palmer, Juvenile (male) Palmer, Juvenile (female) Palmer,

27

Oscar Rodriguez, Rosalind Rogers, Madeline Schweitzer, Mariah Smith, Peter Sparks, Tiffany Stark, Angel Vega, Gabriella Vitucci, Tristiana Walls, Oscar Walton, Jayden Welch, Britta Welch, Brandon Wilborn, Trisha Wilson, and Kathelyn Wojnar

159.     Plaintiff notes that on or around May 25, 2020 Defendant Ratkowski placed Plaintiffs Andrew Aaron, Robert Agnew, Kamila Ahmed, Isiah Baldwin, Jacqueline Bogenberger, Lavita Booker, Rebecca Burrell, Raine Cich, Khalil Coleman, Tahudah Cole, Taleavia Cole, Tracy Cole, Steven Conklin, Lauren Cross, Erik Fanning, Jessica Fenner, Breon Foster, Christine Groppi, Gaige Grosskreutz, Joseph Hayes, Percy Hayes, Adante Jordan, Mary Kachelski, Sean Kafer, Joseph Koepp, John Larry, Alex Larson, Sonora Larson,Vaun Mayes, Molly Nilssen, Shawn Page, Carmen Palmer, Juvenile (male) Palmer, Juvenile (female) Palmer, Oscar Rodriguez, Rosalind Rogers, Madeline Schiweitzer, Mariah Smith, Peter Sparks, Tiffany Stark, Angel Vega, Gabriella Vitucci, Tristiana Walls, Oscar Walton, Jayden Welch, Britta Welch, Brandon Wilborn, Trisha Wilson, and Kathelyn Wojnar (hereinafter collectively referred to as "Target List Plaintiffs)" on a Target List of persons who were affiliated with the People's Revolution.

160.     Defendant Ratkowski did not have a permissible purpose for obtaining these forty-nine Target List Plaintiffs personal information and/or highly restricted personal from their motor vehicle records and to distribute it to third parties.

161.     Defendant Ratkowski unlawfully obtained, disclosed, or used these forty-nine (49) Target List Plaintiffs personal and/or highly restricted personal information from their motor vehicle records, without their express consent, and not for a permissible DPPA purpose.

162.     Mere affiliation with TPR justified Defendant Ratkowski putting a person on the Target List and did not require a person to be violent or even be present at any protests.

163.     Defendant Ratkowski never actually witnessed persons at any protests or protestor events and based his criteria for placing these forty-nine (49) Target List Plaintiffs and others on the list solely on social media.

164.     Defendant Ratkowski believes it is appropriate for the government to keep lists of people who attend protests.

165.     Defendant Ratkowski unlawfully obtained, disclosed, or used these forty-nine (49) Target List Plaintiffs personal information from their motor vehicle records by making false representations to the Wisconsin Department of Transportation.

166.     Defendant Ratkowski with willful or reckless disregard for the law obtained, disclosed, or used these forty-nine (49) Target List Plaintiffs personal information and/or highly restricted personal information from their motor vehicle records.

167.     Defendant Ratkowski did not have the express consent of these forty-nine (49) Target List Plaintiffs to obtain, disclose, or use their personal information and/or highly restricted personal information from their motor vehicle records and to share with third parties .

168.     Defendant Ratkowski did not have a DPPA permissible purpose to obtain, disclose, or use these forty-nine (49) Target List Plaintiffs personal information and/or highly restricted information..

169.     Defendant's Wrucke, Vetter, and Weber knew that Ratkowski had unlawfully obtained, disclosed, or used these forty-nine Target List Plaintiff's information from their motor vehicle records and condoned and encouraged Ratkowski to disseminate the Target List to third parties not for a DPPA permissible purpose.

**VII. CITY OF WAUWATOSA's PEACEFUL PROTESTS AUGUST 13, 2020**

      A.     BACKGROUND

170.    Sometime in August 2020, Defendant Officer Joseph Lewandowski created inappropriate PowerPoint slides that contained obscene and defamatory language about the People's Revolution, protestors, and labeled certain persons including Mayor McBride as High Value Targets which he shared with multiple people.

171.    In the PowerPoint slides, Defendant Lewandowski noted that McBride, "Continually provides outright lies and misleading information to the public." (See below HVT Power Point Slide Created in August 2020 by Defendant Joseph Lewandowski.)



HVT

- Dennis McBride
  - Sanctioned violence against Mensah,
  - Alleged to have met privately with Coleman, Motley and Vishny and Brian Anderson.
  - Close connection to David Bowen, was willing to meet and provide an investigative update until stopped by City Attorney,
  - Continually provides outright lies and misleading information to the public,
  - Permitted the People's Revolution to run City of Wauwatosa meetings, has had discussions and Q&A sessions not outlined on meeting agendas, in violation of Open Meetings laws.
  - No PC for involvement in Mensah shooting…yet.

172.    On January 7, 2021 Defendant Lewandowski's power point slides were accidentally released to a journalist as part of an open records request for emails in which the slides were an attachment to an email.

173.    Once the HVT slide became public on or around January 10, 2021 it was widely reported by the news media shortly thereafter, and then the WPD launched a performative internal investigation in which Defendant Lewandowski was given a written reprimand.

174.    A few weeks after the WPD internal investigation about the power point slides concluded, Defendant Lewandowski was promoted to Sergeant by former Defendant Chief Weber.

30

175. On the early afternoon of August 13, 2020 the WPOA, publicly shared that approximately 99% of its members voted they had no confidence in Defendant Mayor McBride.

176. The WPOA, through its president WPD Officer John Milozky, reported on August 13, 2020 that "four out of five police officers and detectives are seeking to leave the WPD" and that "these numbers represent failed political leadership and they represent the consequences of politically motivated actions."

177. After the WPOA press conference also on August 13, 2020, Defendant Mayor McBride announced that the WPD will be enforcing all Wauwatosa ordinances and will begin restricting protests in the city from 12pm to 8pm.

178. On Thursday August 13, 2020 there were peaceful protests in Wauwatosa and no one was arrested, no one was charged with a crime, and no one was given a ticket that day.

B. PLAINTIFF'S ALLEGATIONS on AUGUST 13, 2020

**PLAINTIFFS Andrew Aaron, Khalil Coleman, Mariah Smith, and Gabriella Vitucci**

179. Plaintiffs Andrew Aaron, Khalil Coleman, Mariah Smith, and Gabriella Vitucci attended a number of protests throughout Wisconsin after May 25, 2020. Plaintiffs attended these events to protest for police reform and to protest police brutality against black and brown people.

180. On August 13, 2020 Plaintiffs Aaron, Coleman, Smith, and Vitucci were peacefully protesting in Wauwatosa and none of them were ticketed on this day, arrested, or charged with a crime.

181. Several weeks later, Plaintiff Andrew Aaron, was mailed a non-criminal ticket for Disorderly Conduct  by Defendant Timothy Warren in the amount of $1,321

182. Several weeks later, Plaintiffs Khalil Coleman, was mailed a noncriminal ticket for Obstruction of Traffic by Loitering in the amount of $691 by Defendant Timothy Warren.

183. Several weeks later Plaintiff Gabriella Vitucci and Mariah Smith were mailed noncriminal tickets for Obstruction of Traffic by Loitering by Defendant Timothy Warren in the amount of $439.

184. Defendant Timothy Warren did not have probable cause to ticket Plaintiffs Andrew Aaron, Khalil Coleman, Mariah Smith, or Gabriella Vitucci for their participation in peaceful protests

185. Defendant Warren tickets given to Plaintiffs Aaron, Coleman, Smith, and Vitucci lacked probable cause and was given with the intent to intimidate, dissuade, and chill their right to protest.

186. ~~Defendant~~ George Schimmel maliciously prosecuted Defendants Vitucci and Coleman for an ordinance violation of obstruction of justice despite the lack of probable cause.

187. ~~Defendant~~ Schimmel instituted court proceedings and acted maliciously in instituting proceedings against Plaintiffs Vitucci and Coleman with the intent to intimidate, dissuade, and chill their right to protest.

188. Defendants Vitucci and Coleman went to court and also had an attorney come to court on their behalf no less than two times for tickets which lacked probable cause.

189. After several unnecessary court appearances, hiring an attorney and the stress that comes with going to court to fight unlawful tickets Plaintiffs Vitucci and Coleman tickets for obstruction was terminated in favor of Plaintiffs on the day it was scheduled for a trial in Wauwatosa's Municipal Court for the lack of probable cause to charge.

190. Defendant Mariah Smith continues to fight her ticket despite the lack of probable cause.

## VIII.   CITY OF WAUWATOSA's PEACEFUL PROTESTS AUGUST 14, 2020

### A.   BACKGROUND

191.	On Friday August 14, 2020 Defendant Mayor McBride announced that the WPD would enforce the law and numerous WPD officers showed up in riot gear during protests in Wauwatosa.

192.	On August 14, 2020 there were protests in Wauwatosa no one was charged with a crime.

B.	PLAINTIFF'S ALLEGATIONS on AUGUST 14, 2020

**PLAINTIFFS Isiah Baldwin, Khalil Coleman, Joseph Hayes, Sean Kafer, Gabriella Vitucci, and Brandon Wilborn**

193.	Plaintiffs Isiah Baldwin, Khalil Coleman, Joseph Hayes, Sean Kafer, Gabriella Vitucci, and Brandon Wilborn attended a number of protests throughout Wisconsin after May 25, 2020.  Plaintiffs attended these events to protest for police reform and to protest police brutality against black and brown people.

194.	On August 14, 2020 Plaintiffs Isiah Baldwin, Khalil Coleman, Joseph Hayes, Sean Kafer, Gabriella Vitucci, and Brandon Wilborn were peacefully protesting in Wauwatosa.

195.	At approximately 7:00p.m. on August 14, 2020 Plaintiffs Isiah Baldwin, Khalil Coleman, Joseph Hayes, Sean Kafer, Gabriella Vitucci, and Brandon Wilborn were all protesting in Wauwatosa marching with other protestors.

196.	Sometime after 7:00p.m. many John Doe WPD officers showed up in riot gear at the protests which were peaceful.

197.	Plaintiffs Baldwin, Coleman, Hayes, Kafer, Vitucci, and Wilborn were all peacefully protesting, they were not arrested, never charged with a crime, and none of them were given a ticket for protesting that day. And a few weeks later Plaintiffs were mailed tickets from Defendant Jeffery Farina for peacefully protesting in Wauwatosa on August 14, 2020.

198.    Plaintiffs Coleman, Kafer, and Vitucci were all mailed a noncriminal tickets for Obstruction in the amount of 1,321 signed by Defendant Jeffrey Farina.

199.    Plaintiffs Hayes and Baldwin were given tickets for Disorderly Conduct in the amount of $1,321 signed by Defendant Jeffery Farina.

200.    Plaintiff Brandon Wilborn was given a ticket for Special Permit Required in the amount of $1,321 signed by Defendant Jeffery Farina.

201.    After several unnecessary court appearances, hiring an attorney and the stress that comes with going to court to fight unlawful tickets Plaintiff Brandon Wilborn's ticket for special permit required was terminated in favor of Wilborn for the lack of probable cause to charge.

202.    ~~Defendant~~ George Schimmel maliciously prosecuted Defendant Brandon Wilborn for not having a permit to protest despite the lack of probable cause.

203.    ~~Defendant~~ Schimmel instituted court proceedings and acted maliciously in instituting proceedings against Plaintiffs Wilborn with the intent to intimidate, dissuade, and chill their right to protest.

204.    Defendant Farina did not have probable cause to ticket Plaintiffs Isiah Baldwin, Khalil Coleman, Joseph Hayes, Sean Kafer, Gabriella Vitucci or Brandon Wilborn for their participation in peaceful protests and the tickets were given with the intent to intimidate, dissuade, and chill their right to protest.

## IX.    CITY OF WAUWATOSA's PEACEFUL PROTEST SEPTEMBER 5, 2020

### A.    BACKGROUND

205.    On September 5, 2020 persons there was an event for persons sympathetic to TPR's movement celebrating one hundred consecutive days of protesting primarily throughout the state of Wisconsin for police reform and to protest police brutality against black and brown people.

206.    As part of its 100 consecutive days of protesting, there was a picnic held in the City of Milwaukee which was well attended by citizens in the community, politicians, legal observers, and the media.

207.    Also in celebration of the 100 days of consecutive protests, there were t-shirts made with the People's Revolution celebrating 100 days written on them which many people wore.

208.    Despite this celebration being held in Milwaukee, members of the WPD surveilled persons at the picnic throughout the entire day.

209.    John Doe Officers with the WPD surveilled persons at the 100-day celebration in Milwaukee.

210.    Later in the evening of September 5, 2020 people marched to Wauwatosa to peacefully protest.  Plaintiffs Mariah Smith, Rosalind Rogers, and Isiah Baldwin were all a part of the peaceful protest march in Wauwatosa on September 5, 2020 .

B.    PLAINTIFFS ALLEGATIONS

**Plaintiffs Isiah Baldwin, Rosalind Rogers, and Mariah Smith**

**i.**  Plaintiff Mariah Smith - September 5, 2020

211.    Plaintiff Mariah Smith attended the 100-day picnic celebration in Milwaukee and was wearing a t-shirt  that had "TPR celebrating 100 days" prominently written on it.

212.    While peacefully marching in Wauwatosa, members of the WPD were closely watching the group.

213.    At some point during the protests in Wauwatosa on September 5, 2020, unknown John Doe officers were putting down spike strips in front of cars kettling vehicles in which forced many to either stop their cars or drive in a particular direction.

214.    Plaintiff Smith was not in a car but was marching on foot in the protest when she was targeted by Defendant Jeffrey Farina and was placed under arrest with no probable cause that she had committed any crimes.

215.    Plaintiff Smith was arrested and slammed to the ground by Defendants Jeffrey Farina and Luke Vetter.  Defendant Vetter put a knee to the back of her head and she suffered substantial injuries as a result.

216.    Defendant Officer George Opelt forcefully put a knee to Smith's ribs and jaw while other John Doe officers were on her also causing her great bodily harm and causing her to pass out.

217.    After Smith came to she was told by Defendant Vetter after she was arrested and still on the ground that "Mariah you knew something like this was going to happen."

218.    The excessive force by Defendants Vetter, Farina, Opelt, and John Doe Officers against Mariah Smith was objectively unreasonable in light of the facts and circumstances confronting them.

219.    Defendant John Doe officers assisted with the arrest of Plaintiff Smith and he searched her despite the lack of probable cause for her arrest.

220.    WPD Officer Stephen Mills took Smith into custody, who vomited, for an ordinance disorderly conduct violation.  She was then put in the back of the WPD van for hours and Officer Mills repeatedly told by Smith and others that she needed to go to the hospital and that she was dizzy, light-headed, and in extreme pain.

221.    Instead of taking Smith to a hospital or providing her with any immediate medical assistance, Mills arrested Smith taking her to the WPD where she was held for hours and then released with a Disorderly Conduct ticket signed by Defendant Opelt.

222.    As a result of the excessive force deployed by Defendants Vetter,  Farina, Opelt, and John Doe Officers, Plaintiff Smith had numerous damages including a concussion, bruised ribs, multiple injuries throughout her body, and substantial pain to her jaw.

ii.    Plaintiffs Isiah Baldwin and Rosalind Rogers – September 5, 2020

223.    Plaintiffs Isiah Baldwin and Rosalind Rogers attended the 100-day picnic in the City of Milwaukee on September 5, 2020 and were wearing a t-shirt  made with TPR celebrating 100 days prominently written on it.

224.    After the picnic, Plaintiffs Baldwin and Rogers went to Wauwatosa to peacefully protest.

225.    While Plaintiffs Baldwin and Rogers were protesting their vehicle was stopped by Defendant Jeffrey Farina.

226.    Plaintiffs Baldwin and Rogers were both wearing a TPR 100-day celebration t-shirt and Defendant Farina said to Rogers,  "if that shirt is gang related I will put you in a cell."

227.    Plaintiffs Baldwin and Rogers were placed under arrest by WPD Officers Matthew Martell, Stephen Mills, and Defendant Farina who had no probable cause to arrest them for peacefully protesting.

228.    Mills took Baldwin and Rogers into custody for an ordinance violation for failure to have a special event permit to protest.

229.    Defendants Baldwin and Rogers were unlawfully arrested for protesting and the failure to not have a special permit ticket in the amount of $691 signed by Defendant Farina which was given to intimidate them from protesting in the future.

230.    Defendants Baldwin and Rogers were forced to come to court no less than two times for the tickets which lacked probable cause

231. After several unnecessary court appearances, hiring an attorney and the stress that comes with going to court to fight unlawful tickets Plaintiffs Rosalind Rogers and Isiah Baldwin's tickets for special permit required was terminated in favor of both Plaintiffs for the lack of probable cause to charge.

232. ~~Defendant~~ George Schimmel maliciously prosecuted Defendants Rogers and Baldwin for not having a permit to protest despite the lack of probable cause.

233. ~~Defendant~~ Schimmel instituted court proceedings and acted maliciously in instituting proceedings against Plaintiffs Baldwin and Rogers with the intent to intimidate, dissuade, and chill their right to protest.

## X. CITY OF WAUWATOSA's Curfew From October 7 - 12, 2020

### A. BACKGROUND

234. On October 7, 2020 Milwaukee County DA John Chisholm announced that he was not going to criminally charge Joseph Mensah for the killing of Alvin Cole on February 2, 2020.

235. On September 30, 2020, Mayor McBride signed a "Proclamation of Emergency" for the City of Wauwatosa which enacted a curfew restricting "pedestrian and vehicular traffic on Wauwatosa streets" from 7pm to 6am, to commence on October 7 and continue until October 12, 2020.

236. Defendant Mayor McBride is the chief executive and chief policy maker for the city of Wauwatosa for all times relevant.

237. Defendant McBride alone signed the emergency proclamation on September 30, 2020 and declared the curfew without the knowledge or approval of Wauwatosa's Common Council, the local governing body in Wauwatosa for all times relevant.

238. At the time that Mayor McBride signed the emergency declaration there weren't any credible threats to the City of Wauwatosa.

38

239.    Defendant McBride never communicated to Defendant Weber the existence of any credible threats in Wauwatosa on September 30, 2020 or any time after.

240.    Defendant McBride instituted the curfew because of the Alvin Cole decision that was going to come down from the DA's office, and also based on the unexpected tragic incidents in Kenosha in August 23, 2020 after Jacob Blake was shot in the back by a police officer, and also because of the death of George Floyd in Minneapolis by police officers on May 25, 2020.

241.    Defendant Weber also recommended a curfew for October 7 – 12, 2020 to Defendant McBride.

242.    Defendant Weber is the chief policymaker of the WPD, he speaks for the WPD, and the "buck stops with him" when it comes to statements and policy decisions on behalf of the WPD.

243.    Defendant McBride lacked the legal authority to unilaterally declare an emergency in Wauwatosa as promulgated in the Proclamation of Emergency signed on September 30, 2020.

244.    According to Wis. Stat. 323.11, an emergency order may only be declared under two circumstances. The primary circumstance provides that:

> "The governing body of any local unit of government may declare, by ordinance or resolution, an emergency existing within the local unit of government whenever conditions arise by reason of a riot or civil commotion. The period of the emergency shall be limited by the ordinance or resolution to the time during which the emergency conditions exist or are likely to exist."

245.    There were no emergencies existing in Wauwatosa by reason of riot of civil commotion that prevented the Common Council from making such a declaration by ordinance or resolution from September 30, 2020 through October 7, 2020.

246.    At no time did Defendant McBride attempt to meet with the Common Council to discuss a curfew from July 1, 2020 through October 12, 2020.

247.     Defendant McBride started planning for the October 7 – 12, 2020 curfew sometime in July 2020.

248.     Defendant McBride testified and claimed that the decision to have the curfew in Wauwatosa from October 7 – 12, 2020 came from him and Governor Evers jointly.

249.     Wis. Stat. §323.14(4)b provides an emergency exception that permits an executive to declare an emergency *only where the emergency necessitating the proclamation prevents the governing body from meeting. **(emphasis added).***

250.     No emergency conditions existed in Wauwatosa from September 15, 2020 through October 6, 2020 which prevented the Common Council from meeting.

251.     Defendant McBride, intentionally did not tell the Common Council about the curfew because, "loose lips sink ships" and he did not trust that certain members of the Common Council would keep the manufactured emergency in Wauwatosa a secret.

252.     Despite not sharing, discussing, or mentioning the existence of the emergency proclamation to Wauwatosa's Common Council before it was publicly announced on October 7, 2020, Defendant McBride did share information about the curfew and the emergency proclamation with Milwaukee Mayor Tom Barrett on October 6, 2020. (See email below)



EXHIBIT
2 P
6-23-21  ns

| From: | Dennis McBride <dmcbride@wauwatosa.net> |
|---|---|
| Sent: | Tuesday, October 6, 2020 5:58 PM |
| To: | mayor@milwaukee.gov |
| Subject: | CONFIDENTIAL: Emergency Declaration |
| Attachments: | City - Emergency Declaration.10-7-20.pdf |

Tom:

As promised, my Emergency Declaration is attached.  It will be issued tomorrow following
the DA's announcement.

Dennis R. McBride
Mayor, City of Wauwatosa
7725 West North Avenue
Wauwatosa, WI 53213
mayor@wauwatosa.net
(414) 479-8915

253.     Under Wis. Stat. §323.14(4)b, when an executive issues such an emergency order, a meeting of the governing body must be called as soon as possible.

254.     Defendant McBride failed to call a meeting as soon as possible with the Common Council when he issued the emergency order on September 30, 2020.

255.     No meeting of the Wauwatosa Common Council was called until the regularly scheduled meeting of October 6, 2020.

256.     The conditions required under Wisconsin law which permit an executive in narrow circumstances to declare a state of emergency did not exist in Wauwatosa on from June 5, 2020 onwards.

257.     On October 6, 2020, one week after Defendant McBride's signing of his executive order, the Wauwatosa Common Council held two (2) meetings and McBride purposefully did not mention or inform them of the curfew as he was legally obligated.



258.    Defendant Weber has a legal obligation not to follow unlawful orders even if they come from Mayor McBride.

259.    Chief Weber knew that the Proclamation of Emergency that justified the curfew was an unlawful order.

260.    Defendant Luke Vetter, who was the second in command of the WPD under Chief Weber during the curfew of October 7 – 12, 2020, was the operational supervisor and organized the police operations in Wauwatosa during the curfew.  Weber was in the command center every day of the curfew watching real time video footage and received multiple law enforcement briefings of law enforcement actions.

261.    From October 7 through October 12, 2020 the scale and scope of the police presence and the unnecessary means of force deployed in the streets of Wauwatosa against protesters and the weapons used including rubber bullets, chemical agents, police vehicles, and full body contact was excessive.

262.    Defendant Weber knew before September 30, 2020 that DA Chisholm was not going to charge Mensah for shooting and killing Alvin Cole and he shared this information with Defendant McBride.

263.    If DA Chisholm had chosen to criminally charge former WPD officer Mensah for killing Alvin Cole, Defendant McBride would have cancelled the manufactured "emergency" in Wauwatosa and would not have imposed the curfew from October 7 – 12, 2020.

264.    Defendant McBride discriminatorily enacted the curfew against those who were protesting for Mensah to be criminally charged for killing Alvin Cole on February 2, 2020.

265.    The Defendant McBride and City of Wauwatosa imposed this curfew between October 7 – 12, 2020 against the above Plaintiffs without accommodating or attempting to accommodate the right to peaceable assembly and protest.

266.    Defendant officers and John Doe Officers enforced the curfew in a discriminatory manner against those who were present for the protests and particularly focused on those they believed to be affiliated with TPR.

267.    Defendant officers and John Doe Officers routinely broke up protests through the use of excessive force that often was objectively unreasonable.

268.    The violence and aggressive arrest tactics employed against those who were present during the protests constituted a policy of practice adopted by Defendant City of Wauwatosa.

269.    Defendant McBride did not have the legal authority to impose the curfew.

270.    Defendant City of Wauwatosa manifested a failure to adequately train and supervise its police officers to respect the First Amendment rights of individuals attending or participating in protests.

271.    Defendant City of Wauwatosa exhibited deliberate indifference to the unconstitutional conduct of Defendant officers.

B.    PLAINTIFFS' ALLEGATIONS

1).    *Curfew in Wauwatosa from October 7, 2020 – October 12, 2020*

**PLAINTIFFS Isiah Baldwin, Jacqueline Bogenberger, Raine Cich, Tahudah Cole, Taleavia Cole, Tracy Cole, Rachel Dulay, Anne Delessio-Parson, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geisler Joseph Hayes, Destiney Jones, Kathelyn Knowlton, Sonora Larson, Holly Lavora, Dana McCormick, Lazarito Matheu, Molly Nilssen, Carmen Palmer, Palmer (Juvenile) female 1, Palmer (Juvenile) male 2, Leah Porter, Aidali Rivera, William Rivera, Hector Rodriguez, Jose Hernandez Ramirez, Oscar Rodriguez, Nathan Sabel, William Schroeder, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Suzanne Wells, Katelyn Wojnar, and Sonja Worthy.**



272.    A total of thirty-eight Plaintiffs were arrested and ticketed for protesting or being present during protests in Wauwatosa from October 7 – 12, 2020.

273.    Thirty-six Plaintiffs Isiah Baldwin, Jacqueline Bogenberger, Raine Cich, Tahudah Cole, Taleavia Cole, Rachel Dulay, Anne Delessio-Parson, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geisler Joseph Hayes, Destiney Jones, Kathelyn Knowlton, Sonora Larson, Holly Lavora, Dana McCormick, Lazarito Matheu, Molly Nilssen, Carmen Palmer, Palmer (Juvenile) female 1, Palmer (Juvenile) male 2, Leah Porter, William Rivera, Hector Rodriguez, Jose Hernandez Ramirez, Oscar Rodriguez, Nathan Sabel, William Schroeder, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Suzanne Wells, Katelyn Wojnar, and Sonja

44

Worthy from October 7, 2020 through October 11, 2020 were all arrested, booked, questioned by police and/or the FBI, and were given non-criminal ordinance tickets by members of the WPD in the amount of $1,321, with the exception of Plaintiff Isiah Baldwin who was given a ticket in the amount of $1,956, for violation of an emergency order pursuant to Wis. Stat. 323.28.

274.    Two Plaintiffs, Tracy Cole and Aidali Rivera both were arrested and  taken to the hospital and given non-criminal ordinance tickets by members of the WPD in the amount of $1,321,

275.    All of these thirty-eight (38) curfew tickets were signed by Defendant Jeffrey Farina and are being prosecuted by ~~Defendant~~ George Schimmel.

276.    All thirty-eight (38) Plaintiffs continue to experience post-traumatic stress and fear of on-going retaliation by the WPD and other law enforcement officers as a result of their unlawful arrests.

277.    According to Wis. Stat. 323.28 the maximum forfeiture that can be given for violation of an emergency order is $200.

278.    Wis. Statute 323.28 states:

> "Whoever intentionally fails to comply with an order issued by an agent of the state or of a local unit of government who is engaged in emergency management activities under this chapter, including training exercises, is subject to a forfeiture of not more than $200."

279.    ~~Defendant~~ Schimmel is the prosecuting attorney for all thirty-eight (38) Plaintiffs for violation of an emergency order pursuant to Wis. Stat. 323.14.

280.    ~~Defendant~~ Schimmel knows that Wis. Stat. 323.28 is the controlling legislation in prosecuting the violation of emergency order tickets for these thirty-eight Plaintiffs and continues to maliciously and unlawfully prosecute these tickets for the unlawful amount of $1,321.

45

281.     Defendant Luke Vetter was the second in command during the October 7 – 12, 2020 curfew under Defendant Barry Weber.

282.     Defendant Luke Vetter instructed WPD officers during the curfew of October 7 – 12, 2020 to hide their names by wearing black tape over their names.

283.     It is the policy of the WPD that arresting officers are required to give their names if asked by the person whom they are arresting.

284.     The WPD does not have any policies or procedures that allow for its officers to purposefully hide their names from the public to identify who they are.

*2).     OCTOBER 7, 2020*

**i.      PLAINTIFF Oscar Concepcion Rodriguez - October 7, 2020**

285.     Plaintiff Oscar Rodriguez was in Wauwatosa working as an UBER driver on October 7, 2020 and around 9 p.m. Plaintiff picked up a passenger in Wauwatosa.

286.     While he was on 101st and Lisbon Rodriguez saw National Guard, police dressed in military-style fatigues, and citizens in the streets.

287.     In the course of his job as an Uber driver, Plaintiff tried to leave the area but was trapped by unidentified members of the National Guard and John Doe officers who were throwing tear gas at the crowd.

288.     Immediately after tear gas was thrown unidentified National Guard members and John Doe Officers ran to Plaintiff's car, demanding that he get out immediately, and threatened to break the car windows.

289.     As Rodriguez tried to get out of the car he was dragged out by John Doe  officers thrown on the ground, and was handcuffed extremely tightly.

290.     Defendant Jeffrey Farina of the WPD approached  Rodriguez and said, "He's one of the leaders."

46

291.     Rodriguez told all the officers and Defendant Farina that he was driving Uber and even tried to show them his phone but was ignored.  Plaintiff Rodriguez asked the officers for their names which they all refused to give and he tried to identify other officers and saw that they had black tape over their name tags.

292.     Against WPD Tow Policy,  Rodriguez's car was towed from the area.

293.     Plaintiff Rodriguez asked why he was being arrested,  he asked to speak to his attorney, and did not receive an answer from any of the John Doe Officers or Farina.  One of the John Doe officer took a picture of him and he observed that police were entering some information on their phones.

294.     Plaintiff Rodriguez was put in the back of a SWAT car by John Doe officers which drove around for about 45 minutes.  This car then met up with a van and the cars met bumper to bumper and was driven around for a long time.

295.     Plaintiff was never not told by Defendant Farina or any of the other John Doe Officers why he was arrested or where he was being taken.

296.     Plaintiff Rodriguez was taken to the West Allis Police Department where he was booked, photographed, and made to talk to the FBI.

297.     After hours of waiting to be released by the West Allis Police Department, a John Doe officer told Rodriguez that it was taking long to release him based on a ticket because they were waiting on the WPD to approve the release which the John Doe officer told Rodriguez that it, "made no sense."

298.     There was no probable cause that Rodriguez committed any State or Federal crimes to justify his arrest or the police and FBI trying to interrogate him.

299.     Rodriguez invoked his right to remain silent and asked to speak to his attorney but the  FBI agent ignored him and continued to ask him questions.

4/

300. Plaintiff Rodriguez was given a ticket signed by Defendant Jeffrey Farina for violation of an Emergency Order in the amount of $1,321

301. According to the Emergency Proclamation signed by Mayor Dennis McBride on 9/30/20 persons going "to and from work" were exempted from the arrest during the curfew on October 7, 2020.

302. ~~Defendant~~ Schimmel and Defendant Farina knows that going to and from work is an exception to being exempt from the curfew and even with this knowledge Schimmel is still maliciously prosecuting Plaintiff Rodriguez.

303. Plaintiff Rodriguez continues to experience post-traumatic stress and fear of on-going retaliation.

*3) OCTOBER 8, 2020*

**PLAINTIFFS Tahudah Cole, Taleavia Cole, Tracy Cole, Rachel Dulay, Erik Fanning, Joseph Hayes, Destiney Jones, Sonora Larson, Holly Lavora, Carmen Palmer, Palmer (female) Juvenile 1, Palmer (male) Juvenile 2, Jose Hernandez Ramirez, Nathan Sabel, Suzanne Wells,**

**i.  PLAINTIFF Tracy Cole and Tahudah Cole – October 8, 2020**

304. On October 8, 2020 Plaintiffs Tahudah Cole and Tracy Cole were protesting in Wauwatosa.

305. Plaintiff Tracy Cole is the mother of Alvin Cole, Tahudah Cole is the sister of Alvin Cole.

48



306.    On October 8, 2020 at around 7:00p.m. Tahudah was trying to leave a protest in Wauwatosa with Tracy.

307.    Since Alvin Cole's death on February 2, 2020, Tracy Cole and her family have been staunch advocates against the type of police violence that killed her son and frequently goes to protests to support her desired political change

308.    Around 7:00p.m. armored vehicles and lines of armored military-style personnel wearing riot gear, helmets, shields, without identifying badges or names on their uniform entirely blocked the streets of Wauwatosa where peaceful protestors were outside and were shooting rubber bullets at them and others who were in Wauwatosa on October 8, 2020.



309.    Plaintiffs Tracy and Tahudah attempted to leave Wauwatosa but were prevented from leaving and were "kettled" in by WPD Officer Benjamin Rebholz, Defendant James Short,

unknown members of the national guard, and other John Doe officers who deployed stop sticks on the ground in front of Tahudah's car, preventing them from leaving the area and safely driving away.

310. WPD Officer Martin Keck yelled at Tracy and Tahudah, to "Get out the fucking car before I bust your windows!"

311. Plaintiff Tahudah Cole was forced out of the car by WPD Officer Benjamin Rebholz, Martin Keck, and P.O. Finley.

312. WPD Officers Defendant Daniel Mitchell and Defendant Robert Piehl violently pulled Plaintiff Tracy Cole out of the car from the passenger seat.

313. Defendant Piehl forcefully pulled Tracy out of the car , grabbed her hair, kneed her in her thigh, and threw her to the ground with the assistance of Defendant Mitchell.

314. Tracy Cole was also punched in the face several times and her head was bleeding.

315. Defendant Mitchell threw Tracy to the ground and put his knee to the back of her head while other John Doe officers also were on her back while she was on the ground.

316. Defendant Mitchell tased Tracy several times and arrested her without probable cause. Defendant Piehl handcuffed Tracy excessively tight while other John Doe Officers assisted.

317. While on the ground, Tracy repeatedly told Defendants Piehl, Mitchell, and other John Doe officers that could not breathe and was in so much pain due to the assault and the handcuffs that she thought that her arm was broken. None of the officers changed their positions and they continued to put pressure on her back and neck.

318. The excessive force used by Defendants Mitchell, Piehl, and other John Doe Officers against Plaintiff Tracy was objectively unreasonable in light of the facts and circumstances confronting them.

319.    Tracy screamed her name at least four times and officers claimed they did not know who she was.  At one point she also screams, ""I can't believe y'all did this to me. Y'all killed my son."

320.    About a minute later, Tracy can be heard on video saying: "He hit me in my head and pulled my hair. One of these cops over here. My head is bleeding."

321.    One John Doe officer who was previously heard giving Tracy orders responded with, "Well, that's too bad."

322.    While officers were taking these actions they repeatedly yelled to Tracy, to "stop resisting."  At no time was Plaintiff Tracy Cole resisting arrest.

323.    Tracy Cole sustained several visible injuries captured by multiple journalists and witnesses who were at the scene that night that resulted in her being hospitalized and being taken away on  stretcher in an ambulance.



(Tracy Cole on a stretcher taken by a TMJ4 photographer)

https://www.tmj4.com/news/local-news/alvin-coles-mother-arrested-during-protest-in-wauwatosa)

324.   Tracy Cole went to Froedtert Hospital late in the evening of October 8, 2020 where she was treated for multiple injuries including head trauma, cuts to her face, swelling of her forehead, and a sprained arm.

325.   In addition to the physical injuries, Plaintiff Tracy Cole is still seeking medical assistance for the extreme mental trauma that she experienced from Defendants Piehl, Mitchell, and other John Doe Officers on October 8, 2020.

326.   Tracy was never given any tickets or citations on the evening of October 8, 2020.

327.   On December 10, 2020, without any notice to Tracy through her counsel first learned that she had a court hearing in the Wauwatosa municipal court docket for violating an emergency order and resisting an officer both signed by Defendant Farina.

328.   Plaintiff Tahudah Cole was arrested by the police and taken to the West Allis Police Department by John Doe officers who refused to identify themselves.

329.   Tahudah Cole and others tried to identify police officers but none of the officers had legible name badges on and those that did had black tape over their names.

330.   Plaintiff Tahudah Cole's hand restraints were extremely tight. She asked repeatedly that they be loosened and was ignored.

331.   Tahudah Cole repeatedly asked the officers why she was under arrest and to speak to her attorney who she specifically named as Kimberley Motley. She received no response from any officers and was told she had to talk to the FBI which she did not want to do.

332.   Despite Tahudah Cole's repeated assertions of her right to remain silent and to an attorney whom she specifically named, the FBI agents continued to ask her questions, including what happened; why she was protesting; and was she with TPR.

333.   Before leaving the West Allis County Jail, a few hours after her arrest, Tahudah was given a municipal ticket for Violation of an Emergency Order signed by Defendant Farina.

52

334.     Plaintiff Tahudah Cole went back to the area where she left her car and discovered that it had been towed.

335.     Towing of Tahudah's car was a violation of Wauwatosa's Towing policy and she had to pay $68.58 to get her back.

336.     Due to the violent actions of Defendant Piehl, Mitchell, and other John Doe Officers, as well as the subsequent unlawful tickets issued by Defendant Farina, Tracy Cole, suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, head trauma, bruises throughout her body, significant emotional distress and trauma, as well as other long term medical issues due to the actions of the defendants. including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention on October 8, 2020.

337.     Plaintiffs Tracy and Tahudah Cole continue to experience post-traumatic stress and fear of on-going retaliation.

### ii.  PLAINTIFF Taleavia Cole – October 8, 2020

338.     On October 8, 2020 at around 7:00p.m. Taleavia Cole, the sister of Alvin Cole, was trying to leave a protest in Wauwatosa.

339.     Since Alvin Cole's death on February 2, 2020, Taleavia Cole, who is the most outspoken member of the Cole family, has been a staunch advocate against the type of police violence that killed her brother and frequently goes to protests to support her desired political change.

340.     From May 25, 2020 through present Taleavia Cole  has been unlawfully targeted, harassed, and heavily monitored by members of the WPD.

341.     On September 16, 2020 Defendant Timothy Warren provided multiple misrepresentations in an affidavit filed with Judge Michell Havas that served as the basis for

53

getting a search warrant and conducted numerous unlawful searches of Plaintiff Taleavia Cole's Facebook account.

342.    This pattern and practice of members of the WPD targeting, harassing, and monitoring Plaintiff Taleavia has been encouraged and condoned by its supervisors Defendant Luke Vetter and Defendant Barry Weber at all times relevant to this action.

343.    On October 8, 2021 around 7:00p.m. armored vehicles and lines of armored military-style personnel wearing riot gear, helmets, shields, without identifying badges or names on their uniform entirely blocked the streets of Wauwatosa where peaceful protestors were outside.

344.    Plaintiff Taleavia attempted to leave Wauwatosa but was prevented from leaving and was "kettled" in by Benjamin Rebholz, Defendant James Short, unknown members of the national guard, and other John Doe officers who deployed stop sticks on the ground in front of Taleavia's car, preventing her from leaving the area and safely driving away.

345.    Plaintiff Taleavia, who was filming on her phone, was violently pulled out of her vehicle by Defendant Russell Richardson and a John Doe officer believed to be a member of the US Marshals.  Defendant Richardson and the John Doe officer threw Taleavia to the ground and pointed a gun at her head.  This excessive force that was objectively unreasonable in light of the facts and circumstances confronting Defendant Richardson and John Doe Officer.

346.    Defendant Richardson and John Doe Officers pointing their guns at Plaintiff Taleavia Cole constitutes excessive force which was objectively unreasonable in light of the facts and circumstances confronting them.

347.    Plaintiff Taleavia Cole was not a threat to Defendant Richardson or any of the John Doe officers at any time during their detention and subsequent arrests.

348.    Plaintiff Cole was being stopped for a noncriminal nonviolent curfew violation and were subsequently ticketed for it and released from custody hours later.

349.    Plaintiff Cole never resisted detention nor did she ever attempt to flee from Defendant Richardson or John Doe Officers at any time.

350.    While Taleavia was laying on the ground, Defendant Richardson, a John Doe U.S. Marshall, and multiple John Doe officers put their knees on the back of Taleavia's neck causing her great bodily harm.

351.    A John Doe U.S. Marshall arresting Taleavia Cole for a non-criminal municipal violation is outside the statutory framework and legal authority that govern this collection.

352.    Taleavia was recording on her phone the immediate interactions with the police until a John Doe officer took her phone away and was looking through it without her permission.

353.    Against WPD Policy, the officers refused to identify themselves to Taleavia who asked for their names several times.  She also tried to identify police officers but either the officers did not have name badges on or there was black tape over their names.

354.    It is against WPD policy for arresting officers to not identify themselves when asked by the person whom they are arresting.

355.    Defendant Maria Arbiter took Taleavia's phone and refused to give it back.

356.    Taleavia's hand restraints were extremely tight. She asked repeatedly that they be loosened; her request was denied. She also repeatedly asked John Doe officers why she was under arrest and was ignored.  She also stated that she wanted to talk to her attorney, Kimberley Motley, but was denied.

357.    Taleavia was taken in a van with others persons arrested and taken by John Doe Officers to somewhere on Mayfair Road, where the police van parked for about an hour and then she was taken to the Waukesha County Jail where they sat in the van for another hour and where they took her picture.

358.     Plaintiff Taleavia was eventually taken inside the Waukesha County Jail building where she was forced to strip naked and change into an orange jail uniform in front of a John Doe officer who stayed in the room watching her remove all of her clothes to humiliate her.

359.     Taleavia repeatedly told the John Doe Officers that she wanted to talk to her attorney and repeatedly asked why she was under arrest.

360.     Taleavia was told that she had to talk to the FBI.  She repeatedly told John Doe officers and John Doe FBI agents that she wanted to talk to her attorney and repeated asserting her right to remain silent and the FBI agents continued to ask her questions.

361.     The FBI asked several questions including what happened; why she was protesting; why the Wauwatosa Police Department wanted her phone; and was she with TPR.

362.     After Taleavia's release, Defendant Maria Arbiter  continued to seize her phone and her phone was eventually given to Shane Wrucke who for weeks also continued to  seize Taleavia's phone without her permission and without any probable cause that she had committed any crimes.

363.     Taleavia Cole was released from the jail hours later and Defendants Wrucke, Skornia, Lewandowski, and John Doe officers kept her phone and she was given a municipal ticket for Violation of an Emergency Order by Defendant Farina.

364.     Taleavia Cole went back to the area where her car was parked and discovered that it had been towed.  The towing of Taleavia Cole's car was in violation of WPD's towing policy and she had to pay $68.58 to get her car back.

365.     For over three weeks Taleavia tried unsuccessfully to get her phone back from Defendants Shane Wrucke, Brian Skornia, and Maria Arbiter who unlawfully and maliciously refused to give it back despite the lack of probable cause to hold it  and they never attempted to get a search warrant for her phone.

366. Plaintiff Taleavia's phone was searched by Defendant Warren and other John Doe Officers while it was in the possession of the WPD and she did not give consent for Defendants Wrucke, Skornia, Warren, or any other John Doe officers to seize, retain, or search her phone.

367. As a result of Defendant Wrucke and Skornia's refusal to return her phone, Plaintiff Taleavia, filed a motion to return her property with the Milwaukee County District Court Judge Pocan's Court 20 CV 6184.

368. On October 30, 2020 in Judge Pocan's court the WPD through its attorney Hanna Kolberg agreed to immediately return Plaintiff Taleavia's phone as they had no legal basis to keep her phone for over three weeks.

369. On December 22, 2020 Judge Pocan agreed that the WPD had no legal basis to keep Taleavia's phone especially as long as they did and imposed the maximum sanctions of $200 against the WPD as allowed by law to be awarded to Taleavia for the WPD's unlawful seizure of her phone.

370. While the phone was in the custody of the WPD through Defendants Wrucke, Arbiter, Skornia, Lewandowski, Warren, and other John Doe Officers, Taleavia's Facebook account, photos, videos – including the video she recorded of the police interactions on October 8, 2020 – and other videos have disappeared.

371. Defendant Timothy Warren unbeknownst to Taleavia

371. Plaintiff Taleavia at the hands of Defendant Richardson and other John Doe Officers suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, head trauma, and significant emotional distress and trauma, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

57

372.    Plaintiffs continue to experience post-traumatic stress and fear of on-going retaliation.

### iii.    PLAINTIFFS Holly Lavora and Nathan Sabel - October 8, 2020

373.    Plaintiffs Nathan Sabel and Holly Lavora were in the city of Wauwatosa on October 8, 2020 at around 6:30p.m. and were blocked in by an unmarked police car which prevented them from leaving.

374.    Several John Doe officers told them to get out of the car, which they did, and without probable cause they were arrested and Plaintiff Lavora's car was unlawfully searched without her consent .

375.    There was no probable cause to arrest Sabel and Lavora and neither consented to the vehicle being searched.

376.    While Plaintiff Lavora was under arrest another John Doe Officer drove her car, which was legally parked, to Wauwatosa's City Hall and which is against the WPD towing policy.

377.    Plaintiff's car was then towed and she had to pay $157.50 to get it back.

378.    The towing and driving of Plaintiff's car by the John Doe Officer was in violation of WPD's towing policy.

379.    The John Doe officer  seized and searched Lavora's cell phone without her consent.

380.    Plaintiffs were told by John Doe officers to stand on the grass, which they did, while they waited for transport to the site of their detention.

381.    Plaintiffs were driven in a police van to the parking lot of what they believed was a school they were ordered out of the van and were then placed into another car. Plaintiffs were not told where they were being taken. The officers who transported them refused to identify themselves and they were ultimately taken to the West Allis police station.

382.     Officers at the West Allis police station complained to Plaintiff Lavora that the Wauwatosa Police did not provide information on the procedures and were "taking too long" and to Plaintiff Sabel the John Doe West Allis officer stated that the WPD "just threw this on us."

383.     Despite the lack of probable cause for state and federal crimes, Plaintiffs Lavora and Sabel were both forced to sit and talk to FBI agents which they did not want to do.

384.     Before leaving West Allis police station, Lavora asked for her phone and the John Doe officer refused to give it back and she was told that she would have to work it out with the WPD.

385.     Plaintiff Lavora repeatedly tried to get her phone back from the WPD in the ensuing days and was denied. She was told by a WPD John Doe officer that the WPD could keep her phone as long as they wanted and that they did not have a search warrant but would get one shortly. John Doe officers at the WPD never obtained a warrant for Lavora's phone which they unlawfully searched.

386.     Plaintiffs Lavora and Sabel were arrested at 6:32p.m. and there was no probable cause to arrest them for a curfew violation which started at 7:00p.m.

387.     Despite the lack of probable cause. Plaintiffs Lavora and Sabel were given tickets by Wauwatosa Police Lt. Jeffrey Farina for violation of an emergency order in the amount of $1,321.

388.     Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, significant emotional distress, and trauma, including fear of where they would be taken and what would be done to them, from their unlawful arrest and detention.

389.     Plaintiffs continue to experience post-traumatic stress and fear of on-going retaliation.

59

### iv.    PLAINTIFF Destiney Jones - October 8, 2020

390.    Plaintiff Destiney Jones was in Wauwatosa on October 8, 2020.

391.    While she was in Wauwatosa driving her car and trying to leave, a John Doe officer approached her car with a gun pointed at her head.

392.    Pointing a gun at Plaintiff Destiney Jones's head constitutes excessive force which was objectively unreasonable in light of the facts and circumstances confronting John Doe officers.

393.    Plaintiff Destiney Jones was not a threat to any of the John Doe officers at any time during her detention and subsequent arrest.

394.    Plaintiff Jones was being stopped for a noncriminal nonviolent curfew violation and was subsequently ticketed for it and released from custody hours later.

395.    Plaintiff Jones never resisted detention nor did she ever attempt to flee John Doe Officers at any time.

396.    The John Doe officer ordered her to get out of the car which she did.

397.    Plaintiff Jones' car was searched without her permission.

398.    A female John Doe officer believed to be Defendant Maria Arbiter unlawfully arrested Plaintiff Jones and made the hand restraints extremely tight hand restraints and refused to loosen them when Jones repeatedly complained.  Defendant Arbiter with another John Doe officer then drove her to the Waukesha County Jail.

399.    Jones was put into a van for hours and taken to the Waukesha County Jail where she was forced to strip naked and change into an orange jail uniform in front of a female John Doe officer who stayed in the room watching her remove all of her clothes to humiliate her.

400.    Jones was photographed, fingerprinted, and made to talk with an FBI agent, despite the lack of probable cause that she had committed any State or Federal crimes.

60

401.    Plaintiff Jones repeatedly told the police and the FBI that she wanted to talk to her attorney and repeatedly asserted her right to remain silent.

402.    Plaintiff Jones was released after midnight. John Doe officers kept her phone without explanation.

403.    Plaintiff was given a municipal ticket for Violation of an Emergency Order signed by Defendant Jeffrey Farina for $1321.

404.    While Plaintiff was under arrest her car was towed, the towing of Plaintiff's car was in violation of WPD's towing policy and she had to pay $121.33 to get it back

405.    Plaintiff Jones suffered physical discomfort and significant emotional distress and trauma, including fear about where she would be taken and what would be done to her while she was being unlawfully arrested and detained.

406.    Plaintiff continues to experience post-traumatic stress and fear on-going retaliation.

   **v.   PLAINTIFFS Erik Fanning and Sonora Larson - October 8, 2020**

407.    Plaintiffs Erik Fanning and Sonora Larson were in the City of Wauwatosa on October 8, 2020.

408.    While Plaintiffs Erik Fanning and Sonora Larson were attempting to leave Wauwatosa after 7:00p.m. they were prevented from leaving the city and were "kettled" in by Benjamin Rebholz, Defendant James Short, unknown members of the national guard, and other John Doe officers who deployed stop sticks on the ground in front of the car they were traveling in, preventing them from leaving the area and safely driving away.

409.    Several law enforcement officers including WPD Officer James Short threatened to break the windows of the car, pointed his rifle(s) at the rear driver-side window, and used excessive force to pull Plaintiffs Fanning and Larson out of the car.

500.   Defendant James Short pointing his gun at Plaintiffs Erik Fanning and Sonora Larson constitutes excessive force which was objectively unreasonable in light of the facts and circumstances confronting them.

501.   Plaintiffs Erik Fanning and Sonora Larson were not a threat to Defendant Short nor any of the John Doe officers at any time during their detention and subsequent arrests.

582.   Plaintiffs Fanning and Larson were being stopped for a noncriminal nonviolent curfew violation and were subsequently ticketed and released from custody hours later.

582.   Plaintiffs Larson and Fanning never resisted detention nor did they ever attempt to flee from Defendant Short or John Doe Officers at any time.

557.   Fanning was dragged across the pavement by John Doe officers and struck with blunt object(s) while face-down on the ground.

558.   Plaintiff Fanning and Larson's phones were seized by John Doe officers without legal justification or probable cause.

559.   Plaintiffs were then made to get into a WPD van by John Doe officers.  Plaintiffs Larson and Fanning were next taken to an unknown rendezvous point. Plaintiffs were transferred to a Waukesha County Jail van and taken to the Waukesha County Jail by WPD Officer Maria Albiter and a Waukesha County Sheriff's Deputy.

560.   Plaintiffs were kept in close proximity to each other persons arrested, while their hands were tightly bound in zip ties, for hours.

561.   Plaintiffs were around multiple John Doe police officers, who refused to identify themselves, and who were not wearing masks. Officers also refused to give Plaintiffs masks.

562.   While at the Waukesha County Jail, Plaintiffs Larson and Fanning were told that they had to talk to the FBI.

563.    Plaintiffs Larson and Fanning were made to change into inmate clothing, photographed, fingerprinted, and made to talk with several FBI agents present at the jail that evening.

564.    Plaintiff Larson was eventually taken inside the Waukesha County Jail building where she was forced to strip naked and change into an orange jail uniform in front of a female John Doe officer who stayed in the room watching her remove all of her clothes to humiliate her.

565.    Despite the lack of probable cause that Plaintiffs had committed any State or Federal crimes, they were both individually forced to sit and talk to FBI agents.

566.    Despite Plaintiff's repeated assertions of their right to remain silent and their right to an attorney, the FBI agents continued to question them.

567.    While at the Waukesha County Jail for hours, Plaintiffs were denied water and use of the bathroom.

568.    Plaintiffs were released from the jail around 1:00a.m. Defendant Marie Arbiter refused to give them their phones back and told them that Wauwatosa needed their phones for "evidence."

569.    The Waukesha Police officers did not allow them to call for a ride and released them from the station after 1:00a.m.

570.    At no time were Plaintiffs given their *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention and Interrogation.

571.    Plaintiffs suffered physical injuries, discomfort, and significant emotional distress and trauma, including the fear about where they would be taken and what would be done to them while being unlawfully arrested and detained.

572.    Plaintiffs continue to experience post-traumatic stress, and fear on-going retaliation by the Wauwatosa Police Department.

63

### vi. PLAINTIFFS Rachel Dulay and Jose Hernandez Ramirez - October 8, 2020

573. Plaintiffs Rachel Dulay and Jose Ramirez were driving in Wauwatosa on October 8, 2020.

574. While at a stop sign, the police surrounded their car, placing "stop sticks" underneath the wheels preventing them from leaving.

575. Defendants Cory Wex and Defendant Joseph Lewandowski arrested Plaintiffs Dulay and Ramirez.

576. While stopped, the officers asked Plaintiff Ramirez to take the keys out of the car, which he immediately did. Defendant Lewandowski forcefully pulled Ramirez out of the car ripping his shirt while yelling 'stop resisting,' threw him to the ground, and Lewandowski pointed his gun at Ramirez'.

577. Defendant Lewandowski pointing a gun at Plaintiff Ramirez constitutes excessive force which was objectively unreasonable in light of the facts and circumstances confronting them.

578. Defendant Lewandowski continually yelled 'stop resisting'; neither Plaintiffs Ramirez nor Dulay ever resisted.

579. Plaintiff Dulay was trying to record the interaction on her phone. Defendant Lewandowski pointed his gun at Plaintiff Dulay told her to not to record, seized her phone, and searched it without her permission.

580. Defendant Lewandowski a gun at Plaintiff Dulay constitutes excessive force which was objectively unreasonable in light of the facts and circumstances confronting them.

581. Plaintiff Dulay got out of the car. John Doe officers and Defendant Lewandowski threw her to the ground, refusing to tell her why she was arrested, and refusing to identify themselves.

582.     Plaintiffs Rachel Dulay and Jose Ramirez were not a threat to any of the John Doe officers and Defendant Lewandowski at any time during their detention and subsequent arrests.

583.     Plaintiffs Dulay and Ramirez were being stopped for a noncriminal nonviolent curfew violation and were subsequently ticketed for it and released from custody hours later.

584.     Plaintiffs Dulay and Ramirez never resisted detention nor did they ever attempt to flee from the John Doe Officers and Defendant Lewandowski.

585.     Plaintiffs were told not to speak and their hands were bound for hours with wrist restraints that were extremely tight and asked the police to loosen the restraints which they didn't.

586.     Plaintiffs were forced into a van and were not told where they were being taken.

587.     Plaintiff Dulay's car was searched. Dulay did not give permission to search her car. While Plaintiff was under arrest her car was towed, the towing of Plaintiff's car was in violation of WPD's towing policy.

588.     Plaintiffs were taken to West Allis Police Department and were told they had  to talk to the FBI.

589.     The FBI asked Plaintiffs Dulay and Ramirez individually if they were "members of a terrorist group like TPR, BLM, or Antifa."

590.     Plaintiff Dulay laughed when told that TPR is a terrorist organization.  The FBI agent replied that TPR was a terrorist gang because they went to Mensah's house.

591.     Plaintiff Dulay asked for a phone call and was denied.

592.     John Doe officers told Plaintiff multiple times that her car had not been towed.

593.     While Plaintiff was under arrest her car was towed and she had to pay $121.33 to get it back.

594.     The towing and driving of Plaintiff Dulay's car was in violation of WPD's towing policy

595. Plaintiffs were given tickets for violation of an emergency order by Defendant Jeffrey Farina in the amount of $1,321.

596. Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having their arms tied behind their backs, and significant emotional distress and trauma, including fear about where they would be taken and what would be done to them from his unlawful arrest and detention.

597. Plaintiffs continue to experience post-traumatic stress and fear on-going retaliation.

### vii.    PLAINTIFF Suzanne Wells – October 8, 2020

598. Suzanne Wells was in Wauwatosa protesting on October 8, 2020.

599. While Plaintiff Wells was trying to leave Wauwatosa, the car that she was traveling in was being "kettled" by numerous, unidentifiable law enforcement vehicles and stop spike strips were thrown in front of her car forcing her to stop and preventing her from leaving.

599. The police put wrist restraints on Plaintiff which was extremely tight and they refused to loosen up.  Eventually a police van showed up and they were driven to the parking lot of what she believed to be a school.

600. She was then told to get out of the van and taken into another car and was not told where she was going to be taken and the officers who transported her did not identify themselves.

601. Eventually she was taken to the West Allis police station, where she was photographed, fingerprinted, and made to sit with the FBI despite their being no probable cause that she had committed any federal crimes to justify talking to them.

602. Eventually Plaintiff Wells was released by the West Allis police department and they refused to return her phone.  She was told that they could keep her phone as long as they wanted and they were trying to get a search warrant which they never did.

603.    When Plaintiff was eventually released from she was given a violation of an emergency order ticket in the amount of $1,321.

604.    While Plaintiff was under arrest her car was towed.  The towing of Plaintiff's car was in violation of WPD's towing policy

605.    Plaintiff suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, significant emotional distress and trauma, including fear of where they would be taken and what would be done to them, from their unlawful arrest and detention.

### viii.    PLAINTIFFS Carmen Palmer, (Juvenile Male) Palmer, and (Juvenile Female) Palmer – October 8, 2020

606.    Carmen Palmer and her two teenaged children, were in Wauwatosa protesting on October 8, 2020.

607.    While Plaintiff Palmer was driving she was "kettled" and then trapped in by numerous, unidentifiable law enforcement vehicles and stop spike strips were thrown in front of her car forcing her to stop and preventing her from leaving.

608.    Police then pointed guns at Plaintiff Palmer and her two children and forced them all out of the car.

609.    John Doe Officers pointing a gun at Plaintiffs Carmen Palmer, Juvenile female Palmer 1, and Juvenile male Palmer 2, constitutes excessive force which was objectively unreasonable in light of the facts and circumstances confronting them.

610.    Plaintiffs Carmen Palmer, Juvenile female Palmer 1, and Juvenile male Palmer 2, were not a threat to any of the John Doe officers at any time during their detention and subsequent arrests.

67

611.    Plaintiffs Carmen Palmer, Juvenile female Palmer 1, and Juvenile male Palmer 2, were being stopped for a noncriminal nonviolent curfew violation and were subsequently ticketed for it and released from custody hours later.

612.    Plaintiffs Carmen Palmer, Juvenile female Palmer 1, and Juvenile male Palmer 2, never resisted detention nor did they ever attempt to flee from any of the John Doe Officers.

613.    Plaintiff Carmen Palmer and her two children were all forcefully pulled out of the car and thrown down on the ground.

614.    Plaintiff's kids were trying to record the incident but the police stopped them.

615.    Plaintiff Carmen told the officers that she wanted to call someone to get her children and was told to shut up.

616.    The John Doe officers put handcuffs on Plaintiff Carmen and the two juvenile Palmer kids which were extremely tight and the officers refused to loosen it up.

617.    John Doe officers took three phones of the Palmer family Plaintiff's and refused to return it to them immediately upon their release.

618.    Eventually Plaintiffs Palmer family were taken to the West Allis police station where they were photographed, fingerprinted, and made to talk with the FBI despite there being no probable cause that any of the Plaintiffs had committed any federal crimes.

619.    There were no acts by Plaintiffs Palmer family, nor acts by any other people that the Plaintiff's witnessed, which could constitute non peaceable assembly. They were simply protesting and trying to leave a peaceful protest against police brutality.

620.    When Plaintiffs were eventually released from West Allis each of them were given a violation of an emergency order ticket in the amount of $1,321 signed by Defendant Jeffrey Farina.

621.    While Plaintiff Carmen Palmer was under arrest her car was towed, the towing of her car was in violation of WPD's towing policy.

622.    When Plaintiff Carmen went to get her car out of the tow lot she saw that it had been completely ram sacked, all of her windows were down, and that it had been searched without her permission.

623.    Plaintiff did not give anyone permission to search her car.

624.    Plaintiff continues to experience post-traumatic stress and fear of on-going retaliation.

625.    Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, significant emotional distress and trauma, including fear of where they would be taken and what would be done to them, from their unlawful arrest and detention.

3.    *OCTOBER 9, 2020*

**PLAINTIFFS Jacqueline Bogenberger, Raine Cich, Anne Delessio-Parson, Breon Foster, Joanna Geisler, Sonora Larson, Lazarito Matheu, Aidali Rivera, William Rivera, Hector Rodriguez, William Schroeder, Angel Vega, Gabriella Vitucci, and Kathlyn Wojnar**

i.    **PLANITFFS Joanna Geisler and William Schroeder - October 9, 2020**

626.    Plaintiffs Joanna Geisler and William Schroeder are members of the Milwaukee Alliance who were together in Wauwatosa on October 9, 2020 at around 6:00p.m.

627.    While they were protesting peacefully Plaintiffs were both holding banners which read, "Stop Police Crimes Now".

628.    At approximately 6:38 p.m., while walking in the crosswalk, Plaintiff Schroeder was arrested by WPD Officer Ralph Salyers and other John Doe officers. Plaintiff Geisler was arrested by WPD Officer Shannon Gee and other John Doe officers. Both were given tickets for disobeying a lawful order.

69

629. Plaintiffs asked what they were arrested for and were told rioting. Plaintiffs were not rioting or committing any other crimes and their phones were seized.

630. Plaintiffs were handcuffed with the ties extremely tight and repeatedly asked that the ties be loosened which they were not for hours.

631. As a result of the extremely tight wrist ties Plaintiff Schroeder sustained injuries to his wrist.



632. Plaintiffs were transported by John Doe officers where they were photographed, fingerprinted, and made to talk to the FBI.

633. The FBI agent continued to ask Plaintiff Geisler questions, despite her asserting her right to remain silent.

70

634. At the conclusion of their detention, Plaintiff Geisler and Schroeder both wanted to leave the police station on their own but were told by a John Doe officer who refused to identify himself that they must take a ride from the police, who were going to take them to their car.

635. The John Doe Officer refused to return Plaintiffs' phones.

636. Plaintiffs did not want a ride from the police and told that them that they could leave the police station on their own.

637. Once Plaintiffs were in the police car, the unidentified officer in the car said, "Don't be mad but my lieutenant said we have to drop you off on 35th and Kilbourne."

638. Plaintiff Schroeder and Plaintiff Geisler were unlawfully arrested and given municipal tickets in the amount of $1,321 each for Disobeying A Lawful Order signed by Defendant Jeffrey Farina.

639. Plaintiffs Geisler and Schroeder were both lawfully protesting in Wauwatosa on 10/9/20 at 6:32p.m. and were arrested while they were engaged in constitutionally protected activity and had not violated any ordinance or criminal laws.

640. Plaintiffs suffered physical discomfort and significant emotional distress and trauma, including the fear about where they would be taken and what would be done to them while being unlawfully arrested and detained.

641. Plaintiffs continue to experience post-traumatic stress and fear of on-going retaliation.

ii. **PLAINTIFFs William Rivera, Aidali Rivera, Hector Rodriguez, and Lazarito Matheu - October 9, 2020**

642.    On October 9, 2020, at around 7:30p.m. William Rivera, Aidali Rivera, Hector Rodriguez, and Lazarito Mathew were driving home from work in the City of Wauwatosa.

643.    Plaintiff William Rivera worked as a security guard and had just finished his shift at 7:00 P.M. on October 9, 2020.

644.    After work, William was picked up by his mother Aidali Rivera, Lazarito Matheu, and Hector Rodriguez who were taking him home.

645.    On October 9, 2020 Plaintiff William Rivera lives in Wauwatosa.

646.    While Plaintiffs were driving on North Avenue, a crowd of people started running towards them making it difficult for them to move for fear they would hit someone.

647.    Not wanting to hurt anyone, Lazarito, who was driving, stopped the car owned by Plaintiff Aidali Rivera and John Doe officers and John Doe National Guard approached their vehicle.

648.    Plaintiff Lazarito, who was driving, tried to back his vehicle up and out of nowhere and without warning an armored vehicle driven by an unidentified John Doe officer rammed Plaintiffs' car with Aidali, William, Hector, and Lazarito in it.

649.    Unidentified John Doe officers surrounded the car, pointing guns at the four Plaintiff occupants who all put their hands outside of the windows.

650.    Plaintiffs William Rivera, Aidali Rivera, Hector Rodriguez, and Lazarito were all unaware of the curfew in Wauwatosa.

651.    John Doe Officers pointing their guns at Plaintiffs Aidali Rivera, William Rivera, Lazarito Matheu, and Hector Rodriguez constitutes excessive force which was objectively unreasonable in light of the facts and circumstances confronting them.

652.    Plaintiffs Aidali, William, Lazarito, and Hector, were not a threat to any of the John Doe officers at any time during their detention and subsequent arrests.

72

653. Plaintiffs were being stopped for a noncriminal nonviolent curfew violation and were subsequently ticketed for it and released from custody hours later.

654. Plaintiffs Aidali Rivera, William Rivera, Lazarito Matheu, and Hector Rodriguez never resisted detention nor did they ever attempt to flee from any of the John Doe Officers at any time.

655. Because the car was rammed on the back-passenger side, the car was so damaged that William who was sitting behind the front passenger seat and Aidali who was seated in the passenger seat had to climb over the driver's side to get out of the car.

656. John Doe officers pointed their guns at Plaintiffs threatening to shoot Plaintiffs in the car and all four Plaintiffs repeatedly told the John Doe officers that they were trying to drop William off at his home in Wauwatosa and all four Plaintiffs were unlawfully arrested.

657. Plaintiffs Aidali, William, Hector, and Lazarito individually and collectively tried to explain to the National Guard and the law enforcement officers that they were not participating in any protest, but were taking William Rivera home, giving the officers his Wauwatosa address.

658. As can be seen below, William Rivera is pictured (seated farthest left), still in his security guard uniform, next to Lazarito and Hector seated on the far right.



659.    Plaintiff William Rivera told one of the arresting officer, pictured below and filmed by CBS58 News, that he was on his way home from work. In response, the officer, John Doe officer said to Mr. Rivera "at this time it doesn't matter because you are black."



660.    John Doe officers police put zip ties on Plaintiffs' William, Aidali, Lazarito, and Hector wrists extremely tightly, causing bruising as can be seen in the photo below.



661.    All four Plaintiffs complained repeatedly about the wrist ties being too tight to John Doe officers and were ignored.

662.    The John Doe Officers put Aidali, Lazarito, and Hector on one side of the street, while William Rivera was put on the other side of the street.

663.    William, Hector, and Lazarito suffered significant injuries as a result of the excessive force that was  objectively unreasonable in light of the facts and circumstances confronting  the John Doe officers by these Plaintiffs.

664.    Aidali Rivera suffered significant injuries as a result of the car being intentionally rammed by the armored vehicle as a result of the objectively unreasonable excessive force that the John Doe officer intentionally imposed on her she went to Froedtert Hospital.

665.    Plaintiff's Aidali Rivera car unlawfully searched and driven by a John Dow officer to a nearby parking lot and when she went back the next day she discovered that it had been towed.

666.    The towing of Plaintiff's car was in violation of WPD's towing policy.



667.    Plaintiff Aidali was put into a paddy wagon by a John Doe officers and was in extreme pain due to the car crash and the extremely tight wrist ties.

668.    There was no probable cause to arrest Plaintiffs Aidali, William, Lazarito, and Hector.

669.    Plaintiff Aidali Rivera was taken to Froedtert in an ambulance and later learned that she had a ticket for violation of an emergency order by Defendant Jeffrey Farina.

670.    Plaintiffs William, Lazarito, and Hector were placed under arrest and put into a van by a John Doe officer and taken to the WPD.

671.    When Plaintiffs William, Lazarito, and Rodriguez arrived at the WPD they repeatedly told John Doe officers that they were not part of the protests and that they were trying to drop William from work at his home in Wauwatosa.

672.    Once William, Hector, and Lazarito arrived at the Wauwatosa Police Department the John Doe  Officers seized Plaintiffs' cell phones.

673.    Plaintiff William  told the John Doe officers his current Wauwatosa address.

674.    Plaintiff William was told by a WPD John Doe officer to take off his work security shirt and to only wear his white t-shirt before a John Doe officer took his booking photo.

675.    Plaintiffs were all forced to talk with the FBI individually and they each said that they wanted a lawyer.

676.    William, Hector, and Lazarito were all individually questioned by John Doe FBI agents and were asked if they were a part of TPR and why they were out there.  After questioning a FBI John Doe agent that, "I don't  think they are supposed to be here."

677.    Nonetheless a John Doe officer kept Plaintiffs cellphone refusing to give it back and kept them at the WPD until around 3:00a.m., and refusing to give them a phone call.

678.    Without probable cause, William, Hector, and Lazarito were all given tickets by Defendant Dexter Schleis for Violating an Emergency Order in the amount of $1,321.

76

679.     After Plaintiffs were released from custody, on October 10, 2020 a John Doe officer told William, Lazarito, and Hector that they could not be outside of the WPD, refused to give them their phones, and the John Doe Officer said that he would take them home.

680.     Plaintiffs did not want to go with the WPD but were told they had no choice and were arrested for the second time, handcuffed, and got in the squad car.

681.     The John Doe officers did not take them to their home and instead drove William, Hector, and Lazarito to 35th and Kilbourn in Milwaukee at 3 a.m. driving past Plaintiff William's house in Wauwatosa. This intersection is a high crime area, far from their home.

682.     The next day Plaintiffs Aidali and Lazarito who were told by a John Doe officer that their car had not been towed discovered that was towed.

683.     Plaintiffs Aidali and Lazarito went to Dennis Transportation Service tow lot where they were told that they would need to pay $299.25 and could not view the car before they paid.

684.     After paying $299.25 for the car, Plaintiffs Aidali and Lazarito were told by an unidentified attendant that the car came in without a key and that a John Doe officer told them that it had crashed into a fence.

685.     Aidali and Lazarito went to the car and saw that it had a flat tire, had been searched, money was missing, her driver's license had been torn, and there was even more damage than when the John Doe Officers took possession of it and after it had been rammed by an armored vehicle.



686.    Lazarito and Aidali asked the tow lot manager what happened, and the manager threatened Plaintiff Lazarito, calling him the "n" word and pulling out his gun.

687.    Aidali and Lazarito immediately left the tow lot, left the car there, and have not been back since.

688.    Defendant Dexter Schleis knew there was no probable cause to ticket Plaintiffs William, Hector, and Lazarito for violation of an emergency order in the amount of $1,321.

689.    ~~Defendant~~ George Schimmel maliciously prosecuted Plaintiff Aidali Rivera for an ordinance violation of violation of an emergency order despite the lack of probable cause.

690.    ~~Defendant~~ Schimmel maliciously instituted court proceedings against Plaintiff Aidali for a civil violation of an emergency order that he knew lacked probable cause.

691.    Aidali after being arrested, having several unnecessary court hearings, hiring an attorney and the stress that comes with going to court to fight an unlawful ticket Plaintiff Aidali suffered damages and her ticket was terminated in her favor on February 3, 2021 for the lack of probable cause to charge.

692.    ~~Defendant~~ Schimmel knows there is no probable cause to prosecute Plaintiffs Lazarito, Hector, and William.  Schimmel continues to unlawfully prosecute Plaintiffs.

693.    Plaintiffs Aidali, Hector, Lazarito, and William suffered physical discomfort and injury, including soreness and bruising from being hit by an armored vehicle and having their arms handcuffed behind their backs, head trauma, and significant emotional distress and trauma, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

694.    Plaintiffs continue to experience post-traumatic stress and fear on-going retaliation.

695.    At no time were William Rivera, Aidali Rivera, Hector Rodriguez, and Mathew Lazarito provided *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention, and interrogation.

### iii.    PLAINTIFFS Jackie Bogenberger, Raine Cich, Angel Vega, Gabriella Vitucci, and Katelyn Wojnar - October 9, 2020

696.    Jackie Bogenberger, Raine Cich, Angel Vega, Gabriella Vitucci, and Katelyn Wojnar were all in the City of Wauwatosa on October 9, 2020.

697.    While all these five Plaintiffs were in Wauwatosa after 7 p.m. they witnessed the police deploying tear gas near City Hall.  People started running east on North Avenue towards Milwaukee.

698.    Plaintiffs all decided to leave Wauwatosa and walk because they did not have vehicle transportation and the police were not allowing cars to drive in the area.  While walking, Plaintiffs were followed by an unmarked four door truck. An unidentified woman in a red car pulled up to ask if they were all ok.

699.    Plaintiffs Vitucci and Bogenberger were together when John Doe officers approached them while they were in the City of Milwaukee. The officers refused to identify themselves and did not have a badge or a name plate.

700.    Officer Stephen Schmidt arrested Vitucci and Officer Dan Mitchell arrested Bogenberger in Milwaukee.

701.    Officer Mitchell threw Bogenberger to the ground and put his kneeled on her back. Officer Schmidt threw Vitucci to the ground and kneeled her in the back.

702.    An elderly couple came out of their home and asked the officers why they were being so aggressive with the Plaintiffs a John Doe officer took the elderly woman to the ground.

703.    The husband yelled at the John Doe police for tackling his wife and they then arrested him in front of his home in Milwaukee.

704.    Plaintiffs Kathelyn Wojnar and Angel Vega were also arrested in Milwaukee by John Doe officers.

705.    This couple had violated no law and could not be understood to have violated any curfew order.

706.    Officer Schmidt put wrist restraints on Plaintiff Vitucci, which were tight to the point that her hands were turning purple. Officer Schmidt also put wrist restraints on Plaintiff Cich which were tight to the point that her hands were also turning purple. Officer Mitchell put the wrist restraints on Bogenberger tight to the point that her hands were also turning purple.

707.    While both Bogenberger and Vitucci were on the ground, John Doe officers took their picture on their cell phone.

708.    Gabriella was carrying a backpack which contained her phone and Defendant Timothy Warren unlawfully searched her backpack and phone without her permission.

709.    Defendant Warren was teasing Gabriella and Jackie saying, "oh you thought you were going to get away."   Officer Mitchell and Officer Schmidt took both Jackie and Gabriella's ids and compared them, saying "look who we got".

710.    Bogenberger's phone was taken away by Defendant Warren who also searched her phone.

711.    Both Bogenberger and Vitucci asked the officers why they were being arrested and none of the officers answered.  Plaintiffs were all arrested and asked to speak to their lawyer.

712.    At one point, in an effort of disclosure, Vitucci told the arresting one of the John Doe arresting officers that she had a pocketknife in her bag.

713.    Defendant Warren threatened Vitucci and told her that if she had her pocket knife out he was trained to shoot her in the head.

714.    Plaintiffs Cich, Vitucci, and Wojnar were driven by the officers to the parking lot at the WPD where they sat for a couple of hours.

715.    Eventually Cich, Vitucci, and Wojnar were taken to the WPD where they were booked and had their pictures and fingerprints taken.  When fingerprinting Vitucci and Cich the officer doing the finger printing started to make fun of the protesters trying to provoke a reaction by bragging about the non-prosecution of Joseph Mensah as it related to the Alvin Cole case, and talking poorly about the three victims saying he would have reacted the same way Mensah did..

716.    While at the WPD Cich, Vitucci, and Wojnar were all made to talk to the FBI.

717.    Despite their invoking their right to remain silent and their right to an attorney the John Doe officer continued  to ask them questions.  Plaintiffs Cich, Vitucci, and Wojnar all were asked; why are you protesting?  Are you a member of TPR?

718.    Before they left the police station they were given tickets for violation of an emergency order in the amount of $1,321 by Defendant Farina.

719. Plaintiffs Bogenberger and Vega were put in another van. The officer driving the van identified himself as a Waukesha Officer and told them that he did not know what was going on and drove them to a parking lot and then were taken to Mayfair Mall.

720. At Mayfair Mall, Bogenberger and Vega were fingerprinted and booked.

721. While at the Mayfair Mall Bogenberger and Vega were made to talk to the FBI.

722. Despite their invoking their right to remain silent and their right to an attorney the FBI still tried to ask them questions

723. At the end of the booking Bogenberger and Vega were not given their phones back.

724. Plaintiffs were both given a curfew ticket in the amount of $1,321 by Patrolman Hodgson.

725. After Bogenberger and Vega were told that they could leave several John Doe officers refused to allow them to call for a ride.

726. Plaintiffs Bogenberger and Vega wanted to leave the makeshift Mayfair police station but were told that they had to ride back with the police, they were handcuffed again, and were made to accept a "courtesy ride" by the John Doe WPD Officers.

727. Plaintiffs were lied to by the John Doe officer that they were going to be driven back to where they were arrested which was around 67th and North Avenue.

728. Despite Plaintiffs Bogenberger and Vega's repeated objections the police forced them get back in the police car again detaining them without probable cause.

729. A John Doe officer dropped Vega and Bogenberger off after 2:00a.m. with no cell phones around 3rd and Locust which is more than seven miles away from where they were arrested and is a very dangerous neighborhood in Milwaukee especially at midnight on any given day.

730. Plaintiffs Bogenberger, Cich, Vega, Vitucci and Wojnar all suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind

82

their backs, and significant emotional distress and trauma, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

731.    Plaintiffs continue to experience post-traumatic stress and fear on-going retaliation.

732.    Plaintiffs Bogenberger, Cich, Wojnar, and Vitucci have had negative physical reactions/issues as result of the trauma and chemical agents which law enforcement used.

733.    At no time were either of the Plaintiffs provided *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention, and interrogation.

### iv.    PLAINTIFF Anne Delessio-Parson - October 9, 2020

734.    Plaintiff Anne Delessio-Parson was in Wauwatosa on October 9, 2020 at around 6:30p.m.

735.    While in Wauwatosa, Delessio-Parson witnessed the National Guard and officers dressed in military-style fatigues forming a line on 76th Street across North Avenue.

736.    Delessio-Parson talked to a few of the officers, who did not have visible badges or name plates and while talking with the officers, another John Doe officer came from behind the shields and arrested Plaintiff Delessio-Parson.

737.    After officers put wrist restraints on Plaintiff, she was put in the back of the van with two other occupants who asked the officers to keep the door open for air but the officers refused.

738.    Plaintiff and the other van occupants were told that they would move the van once it was "filled up", presumably by other persons whom the police were going arrest.

739.    The van arrived at the WPD and Plaintiff Delessio-Parson was told that she was required to talk to the FBI.

83

740.    Plaintiff Delessio-Parson was photographed, fingerprinted, and made to talk with an FBI agent who stated his name was "Brett."

741.    The FBI agent asked questions. Plaintiff told him she wanted a lawyer and that she did not want to answer any questions.

742.    Delessio-Parson was given a ticket by Officer Dexter Schleis for Violating an Emergency Order in the amount of $1,321.

743.    Plaintiff, having been told she was released, asked to use the police phone to call for a ride and was denied a phone call.

744.    Plaintiff wanted to walk home but was told that she did not have a choice but had to go with a John Doe WPD officer who forced her into a squad car, thus unlawfully detaining her for a second time.

745.    The John Doe officer told Delessio-Parson that they would take her home and instead dropped Plaintiff off at around 35th and Kilbourn, not her home nor near her home after 1:00a.m. This intersection is in an area of high crime particularly during the night. Plaintiff was told to find her way home.

746.    At no time was Plaintiff Delessio-Parson was provided *Miranda* warning, or informed in any way of any legal rights she had incident to an arrest, search, seizure, detention and interrogation.

747.    Plaintiff suffered physical discomfort and significant emotional distress and trauma, including the fear about where she would be taken and what would be done to her while she was being unlawfully arrested and detained.

748.    Plaintiff continues to experience post-traumatic stress and fear of on-going retaliation.

v.    **PLAINTIFF Breon Foster - October 9, 2020**

749.     On October 9, 2020 Breon Foster was peacefully protesting in the City of Wauwatosa.

750.     While he was trying to leave Wauwatosa at around 8:30 p.m. he was violently grabbed by unidentified police officers, who had tape over their names and who refused to identify themselves.

751.     The John Doe officers put zip ties on Plaintiff extremely tight for at least an hour.

752.     Plaintiff was photographed, booked, and fingerprinted while he was at the WPD.

753.     Eventually, plaintiff was taken to the Wauwatosa Police station where he was interrogated by Defendant Joseph Lewandowski and was told that he would be charged for arson, which he wasn't.

754.     Plaintiff Foster was in custody and was interrogated by Defendant Lewandwksi who did not Mirandize him before questioning him.

755.     Despite plaintiff invoking his right to remain silent to Defendant Lewandowski and FBI agents they all continued to question him.

756.     After he was questioned by the FBI, he was then questioned by Wauwatosa's Officer Defendant Joseph Lewandowski.

757.     Before being questioned by Defendant Lewandowski and the FBI, Plaintiff Breon Foster stated that he wanted his lawyer Kimberley Motley before going into the interrogation room.

758.     Despite Plaintiff Foster invoking his constitutional right to remain silent being in subjected to a custodial interrogation Lewandowski ignored plaintiffs rights and continued to question him anyway

759.     Defendant Lewandowski was wearing a "blue lives matter" mask throughout this interview which was very intimidating for Plaintiff.

85

760. During this interrogation, Lewandowski specifically dissuaded Plaintiff Foster from Kimberley Motley being his lawyer.

761. Defendant Lewandowski asked if Plaintiff Foster was a member of TPR.

762. At the end of the interrogation, Defendant Lewandowski took saliva samples for the purpose of getting Plaintiff's DNA and he was later transported to the Milwaukee County Jail.

763. Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having his arms tied behind his back, and significant emotional distress and trauma, including fear about where he would be taken and what would be done to him, from his unlawful arrest and detention.

764. Plaintiff was eventually given a municipal ticket in the amount of $1,321 for Violation of an Emergency Order signed by Defendant Farina.

765. Plaintiff continues to experience post-traumatic stress and fear on-going retaliation.

v. Sonora Larson – October 9, 2020

766. On October 9, 2020 Sonora Larson was peacefully protesting in the City of Wauwatosa.

767. While she was protesting she was violently shot with multiple rubber bullets deployed by various John Doe officers including when she was on the ground.

768. The excessive force actions of the John Doe officers was objectively unreasonable.

769. As a result of the Defendant John Doe officer's actions, Plaintiff Larson had various bruises on her legs and back.

 

*4.     OCTOBER 10, 2020*

**PLAINTIFFS Isiah Baldwin, Katelyn Knowlton, Christina Vitolo-Haddad, Molly Nilssen, Dana McCormick, Leah Porter, Pete Sparks, and Sonja Worthy**

    **i.     PLAINTIFFS Kate Knowlton & Dana McCormick – October 10, 2020**

770.     On October 10, 2020, at approximately 6:50pm, Plaintiffs were sitting and reading books on the lawn of Wauwatosa City Hall on picnic blankets.  Plaintiffs were under a tree, on no street or thoroughfare and blocking no entrance or exit.  There were no other persons within approximately 50 to 100 yards of the plaintiffs.

771.     Armored vehicles and lines of armed military-style personnel in riot gear including helmets and shields, entirely blocked both North Avenue westbound, and 76th Street southbound from the intersection of 76th Street and North Avenue, making those streets completely impassible.

772.     At approximately 7:00pm, flood lights were trained on the lawn, and directly into the eyes of the Plaintiffs  from the line of armed military personnel and vehicles from North Avenue.  Knowlton stood up and requested to speak to a Wauwatosa police officer.

87

773.     Knowlton saw that the line of personnel and vehicles spanning across the entire Southbound 76th Street had expanded into and across the lawn of City Hall to the wall of the actual building and was approximately 20-30 yards away from Plaintiffs' picnic blanket. The line was "shoulder to shoulder" and provided no egress to Plaintiffs.



774.     A bull horn announcement stated that plaintiffs were in violation of Wisconsin Statute 947.06 for unlawful assembly, and if they did not disperse, they would be subject to arrest.  Knowlton stated that there were only two people on the lawn, and that the statute required three or more people, and again requested to speak to a Wauwatosa police officer. There was no response.

775.     Plaintiffs were nonetheless ordered to disperse without cause and forcibly arrested without the ability to comply with the dispersal order, in violation of their Fourth Amendment right to be free from unreasonable seizures.



776.    The line continued to move toward the Plaintiffs. Knowlton again asked for a Wauwatosa police officer as the line approached her. At least four armed personnel without any identifying insignia grabbed both of her arms and forcibly pulled her through the line of personnel toward the South parking lot of the Wauwatosa City Hall. Knowlton asked what was going on and asked again for a Wauwatosa police officer. There was no response.

777.    McCormick was following Knowlton and stated to the John Doe police officers, "I'm going home, it's that way" and pointed South. John Doe officers in riot gear responded, "Oh no you're not" without providing any further information.

778.    Two other riot-geared personnel pulled McCormick's arms behind her back and forcibly moved her forward going in the same direction as Knowlton.

779.    Knowlton continued to ask at least three more times for a Wauwatosa police officer and asked "What is going on?" No response was provided.

780.    Throughout this entire episode, there were no acts by Plaintiffs Knowlton nor McCormick, nor acts by any other people that they witnessed, which could constitute non-peaceable assembly.

781.     Knowlton and McCormick were brought to the back of a Wauwatosa police truck by a John Doe officer and were handcuffed with plastic zip-ties, and searched.

782.     Knowlton's back pockets were searched and her cell phone was taken.  A John Doe officer directed Knowlton to get in the back of the truck she asked why she was arrested and was told, "unlawful assembly." Knowlton responded that there were only two people on the lawn and this was an unlawful arrest.

783.     Knowlton stated that she wanted to speak to an attorney immediately. The John Doe officer responded, "it doesn't work that way, you can talk to an attorney after you are released." Knowlton stated, "I am an attorney and I want to speak to my attorney right now." No one responded or said anything else.

784.     McCormick was directed to get into the truck without any further explanation or questions and at no time were either Plaintiffs McCormick or Knowlton advised of their rights.

785.     At no time was McCormick asked her name or any other identifying information.

786.     Plaintiffs asked John Doe Officers where they were being taken and told, "you'll find out when you get there."

787.     The truck drove around for some time, and then stopped to pick up an additional person, who was loaded into the truck in handcuffs, crying and asking why she had been arrested and where the truck was going. Again, John Doe officers did not respond and stated that they would not disclose any location.

788.     The truck drove for another 10-15 minutes and stopped again in a dark and a parking lot. Law enforcement opened the back of the truck and stated that another vehicle would be transporting Plaintiffs and the additional person to yet another location which they would not disclose.

789. A Brookfield police truck arrived and at that point, for the first time, McCormick was asked her name by a John Doe Brookfield officer.

790. McCormick was then separated from Knowlton and put into the back of a police squad car alone. She was not advised any further, but she was then able to identify that location as Our Redeemer Lutheran Church on North Avenue in Wauwatosa.

791. After being transport for about 10 minutes, Plaintiffs Knowlton and McCormick and the additional person were brought into what appeared to be a police processing room. There were no identifying signs as to where or what this location was.

792. Four John Doe Wauwatosa-uniformed officers proceeded with an additional search, including under the clothes, and seized Plaintiffs' shoes and handcuffs were removed.

793. Two John Doe FBI agents interviewed Plaintiffs Knowlton and McCormick.

794. John Doe officers photographed them and Plaintiffs were also asked for their social security numbers, employment, family history, and if Plaintiffs Knowlton and McCormick were members of "Antifa" and "the People's Revolution."

795. After another hour or so, Plaintiffs and the additional person were each issued tickets for being in violation of an emergency order by Lt. Jeffrey Farina and a listed forfeiture of $1321.

796. WPD John Doe officers told Knowlton, McCormick and the third detainee that they would be leaving in a police van and dropped off at a point of law enforcement's choosing. The additional person became upset and asked why she was not free to leave on her own. Officers stated that "policy" required law enforcement transport as a "courtesy." Law enforcement further stated that Defendant Weber did not want people gathering at the police station.

797.    When the additional person cried and expressed fear and claustrophobia in having to get back into a police transport, she was told that she was risking additional arrest for a curfew violation, and it would be "safer" to take the law enforcement "courtesy" transport.

798.    Knowlton and McCormick understood that they were not free to go and were forced to be unlawfully arrested again by a John Doe officers and had no choice but to go with them.

799.    McCormick then asked to be taken to "our homes" (to avoid risk of arrest because of curfew violation), she was told "no, we will drop you off in Wauwatosa."

800.    Plaintiffs were then given their shoes and told to leave the building with two John Doe officers who would do the transporting.

801.    Plaintiffs' property was given to the John Doe officers. Once outside, the Joe Doe officer said he was going to use handcuffs again and stated that it was required "policy." McCormick stated Plaintiffs would rather walk. The other John Doe officer then stated something like "forget it, let it go," and Plaintiffs were told to get into the back of the truck.

802.    Plaintiffs McCormick and Knowlton were not dropped off at their homes in Wauwatosa but were dropped off near Wauwatosa East High School.

803.    Defendant Farina knows there is no probable cause to ticket Plaintiffs McCormick and Knowlton for violation of an emergency order in the amount of $1,321.

804.    ~~Defendant~~ Schimmel knows there is no probable cause to prosecute Plaintiffs Knowlton and McCormick.  Despite, knowing this, Schimmel continues to unlawfully prosecute Knowlton and McCormick.

805.    Plaintiffs suffered physical discomfort and injury, including soreness and bruising from having their arms handcuffed behind their backs, and significant emotional distress and trauma, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

806.  At no time were either of the Plaintiffs provided *Miranda* warning, or informed in any way of any legal rights they had incident to an arrest, search, seizure, detention, and interrogation.

807.  Plaintiffs continue to experience post-traumatic stress and fear on-going retaliation.

### ii. PLAINTIFF Molly Nilssen – October 10, 2020

808.  Plaintiff Nilssen was in the city of Wauwatosa on October 10, 2020 peacefully protesting when she was hit with rubber bullets and tear gassed.

809.  Nilssen was arrested by a John Doe officers who took her phone away.

810.  Plaintiff Nilssen's wrist restraints were extremely tight and the officers did not seem to care and she was put in a police van with two other detainees.

811.  Plaintiff was eventually taken to the WPD and while there, she was photographed, fingerprinted, and despite the lack of probable cause that Plaintiff had committed any state or Federal crimes was still forced to sit and talk to John Doe FBI agents.

812.  Plaintiff Nilssen repeatedly asserted her right to remain silent and her right to an attorney the FBI agents continued to ask her questions.

813.  The FBI asked several questions including: what happened; why she was protesting; what group she with; and if she was with TPR.

814.  After the questions, Plaintiff was told by the officers that she would be leaving in a police van and dropped off at a point of law enforcement's choosing.

815.  Plaintiff Nilssen was upset and asked why she would not be free to leave on her own.  The John Doe officer stated that "policy" required law enforcement transport as a "courtesy." and that Defendant Weber did not want people gathering at the police station.

816. Plaintiff Nilssen was told that if she continued to be upset she would be arrested again for a curfew violation, and that it would be "safer" to take the law enforcement "courtesy" transport.

817. Plaintiff was walked out of the parking lot accompanied by a John Doe officer and given a ticket for Violation of an Emergency Order by Defendant Farina.

818. At no time was Plaintiff provided *Miranda* warning, or informed in any way of any legal rights she had incident to an arrest, search, seizure, detention and interrogation.

### iii.   PLAINTIFFS Leah Porter, Christina Vitolo Haddad, and Sonja Worthy October 10, 2020

819. Leah Porter, Christina Vitolo Haddad, and Sonja Worthy were in the City of Wauwatosa on October 10, 2020.

820. The three came to Wauwatosa to as social service workers, who were exempt from the Emergency Proclamation, and brought the necessary equipment to triage general issues.

821. Plaintiffs Porter, Haddad, and Worthy attended a candlelight vigil outside Wauwatosa's City Hall which continued past 7pm.

822. Plaintiffs witnessed the National Guard and various law enforcement agencies in armored vehicles and wearing tactical gear.

823. Sometime after 7p.m. the police issued dispersal orders.

824. While at Wauwatosa City Hall Plaintiffs Porter, Haddad, and Worthy provided social service assistance to various persons and left the City Hall area to go home around 7:30pm.

825. While they were walking to their car shortly after dispersal orders were given, Plaintiffs were stopped by John Doe police officers in a car.

826. One officer did not have a visible name tag or badge but had a "blue lives" matter tattoo on his forearm asked them where they were going.

827. Plaintiffs Porter, Worthy and Haddad told the John Doe officers that they were medics and their medical bags were searched and their cellphones seized.

828. At no time did Plaintiffs Haddad, Porter, or Worthy give consent to search their cell phones or their bags.

829. Plaintiffs Haddad, Porter, and Worthy were unlawfully arrested by John Doe officers and the officers took a picture of all three Plaintiffs with their cell phones.

830. Plaintiff Haddad repeatedly told John Doe officers that she was not going to answer any questions. The officers continued to ask her questions. One John Doe officer stated, "Uh oh ladies it sounds like the feds want to talk to you."

831. Plaintiffs were taken to Mayfair Mall where there was a makeshift police station and were booked in by an unidentified female police officer.

832. Haddad, Porter, and Worthy all together were forced to talk to two John Doe FBI agents despite their previous assertions that they did not want to answer any questions.

833. While in custody Plaintiffs were asked by the FBI agents if they were affiliated with the People's Revolution.

834. One of the FBI agents took a picture of Plaintiffs with his cellphone.

835. After FBI agents stopped questioning them, Plaintiffs were given tickets by WPD despite their being no probable cause to charge them.

836. ~~Defendant~~ George Schimmel knows there is no probable cause to prosecute Plaintiffs and is continuing to prosecute them.

837. A Dane County officer drove Plaintiffs Haddad, Porter, and Worthy back to their car.

838. Before dropping them off the officer said, 'Ladies you're not going to do anything like this again, right?'

839.    At no time were Plaintiffs given their *Miranda* rights and were denied their right to an attorney and to remain silent.

840.    Plaintiffs suffered physical discomfort and injury, including fear about where they would be taken and what would be done to them, from their unlawful arrest and detention.

841.    Plaintiffs Haddad, Porter, and Worthy continue to experience post-traumatic stress and fear of on-going retaliation.

### iv.    PLAINTIFF Isiah Baldwin - October 10, 2020

842.    Plaintiff Isiah Baldwin was in Wauwatosa on October 10, 2020 peacefully protesting for police accountability and was arrested.

843.    Plaintiff Baldwin was photographed, fingerprinted, and made to talk with an FBI.

844.    The FBI agent asked questions. Plaintiff told him he wanted a lawyer and that he did not want to answer any questions.

845.    Plaintiff Baldwin having been told he was released, asked to use the police phone to call for a ride and was denied a phone call.

846.    Plaintiff wanted to walk home but was told that he did not have a choice but to be dropped off at home by a  John Doe officer.

847.    After being released, a John Doe officer handcuffed Baldwin and forced him in the car for his "courtesy" ride home.

848.    The John Doe officer dropped Baldwin off around 12:30a.m. around Sherman and Hampton,  not his home nor near his home. This intersection is in an area of high crime particularly at night.

849.    At no time was Plaintiff Baldwin provided *Miranda* warning, or informed in any way of any legal rights he had incident to an arrest, search, seizure, detention and interrogation.

96

850. Plaintiff Baldwin was given a ticket for Violation of an Emergency Order in the amount of $1,956.00 by Defendant Farina.

851. Plaintiff suffered physical discomfort and significant emotional distress, trauma, and fear of on-going retaliation.

### v. PLAINTIFF Pete Sparks – October 10, 2021

852. Plaintiff Sparks was attempting to record police action and protesting in the City of Wauwatosa on October 10, 2020.

853. Plaintiff rode his bicycle near the Wauwatosa Library and an unmarked car with their lights off, was driving very fast next to him and Sparks fearing for his life thought they were counter protestors targeting him

854. John Doe officers did not identify themselves and they used their car to kettle him towards the cemetery on 76th and Burleigh. Out of nowhere, several unidentified people in military fatigues came running out of the area yelling at Plaintiff to stop, jumping at him and knocking him off his bicycle.

855. Plaintiff later learned that these unidentified people were police and they cuffed him tightly with zip ties before ever announcing that they were police officers.

856. Plaintiff Sparks told them that they never announced themselves as police officers and he was dragged into the cemetery where WPD Officer Defendant Kelly Zielinski and other John Doe officers started beating and kicking him, causing him pain and numerous injuries.



857. John Doe officers repeatedly pulled and bent Plaintiff's knee backward, which was extremely painful and took his cellphone.

858. The officers at the scene also damaged plaintiff's bike which made it immobile and also had several broken pieces when he recovered it.

859. Plaintiff Sparks repeatedly asked the officers at the scene to identify themselves which they refused and he was eventually taken to the WPD.

860. The amount of force used against Plaintiff was excessive and was objectively unreasonable in light of the facts and circumstances confronting Defendant Zielinski and John Doe Officers.

861. Plaintiff was photographed, fingerprinted, and booked at the WPD.

862. Plaintiff was made to talk to the FBI despite their being no probable cause that he had committed any federal crimes to justify talking to them.

863. Plaintiff was eventually given a municipal ticket in the amount of $1,321 for Violation of an Emergency Order signed by Lt. Jeffrey Farina.

864. Plaintiff suffered physical discomfort and injury, including soreness and bruising from his arms being handcuffed behind his backs, and significant emotional distress and trauma, including fear about what would be done to him, from his unlawful arrest and detention.

865. At no time was Plaintiff Sparks provided *Miranda* warning, or informed in any way of any legal rights he had incident to an arrest, search, seizure, detention, and interrogation.

866. Plaintiff continues to experience post-traumatic stress and fear on-going retaliation.

   5.  *OCTOBER 11, 2020*

   i.  **PLAINTIFF Jill Ferguson - October 11, 2020**

867. Plaintiff Jill Ferguson is an activist who was filming people protesting in Wauwatosa on October 11, 2020.

868. At around 7:30p.m. Plaintiff was videotaping the interactions between the police and protestors from her car.

869. Plaintiff's car has numerous bumper stickers regarding a wide variety of social justice issues including Black Lives Matters ("BLM") insignia on the outside of the car.

870. Plaintiff was immediately stopped and targeted by the John Doe officers in Wauwatosa and while driving, about six unmarked vehicles stopped and surrounded her.

871. After the John Doe officers stopped her car, officers asked Ferguson to step out of her car and immediately took her cell phone.

872. John Doe officers forcefully pushed her on the trunk of car and put extremely tight handcuffs on her. She asked that her handcuffs be loosened and was ignored.

873. John Doe officers at the scene addressed Ferguson as to why she was supporting a "terrorist group", implying that TPR and BLM are terrorist organizations.

874. John Doe officers at the scene asked Ferguson why she was associating with "thugs" in TPR and BLM.

875.    At no time did the officers identify themselves. Officers had black tape over their name badges.

876.    The video that Plaintiff was recording was erased from her phone by one of the John Doe Officers.

877.    At no time did Ferguson give the officers permission to search her phone.

878.    Plaintiff was taken to the WPD where she was photographed and fingerprinted. While at the WPD Plaintiff was made to talk to the FBI.

879.    Despite asserting her right to remain silent, the FBI asked her if she "was a member of a terrorist group like TPR, BLM, or Antifa."

880.    Plaintiff was released from the WPD and tried to leave the police station on her own.   But was told by a John Doe Officer that they would give her a "courtesy ride" to her car.

881.    Despite Plaintiff's objections the police made her get back in the police car essentially arresting her again with no probable cause.

882.    A John Doe officer told Plaintiff that her car had not been towed which it was.

883.    The towing of Plaintiff's car was in violation of WPD's towing policy.

884.    Plaintiff Fergusons' car was towed by Dennis Towing and Transportation and she had to pay $157.75 to get her car back and was told by employees at Dennis Towing that a John Doe officer with the WPD had called to get her car towed.

885.    John Doe Officers dropped Plaintiff off several miles away from her car, with no cell phone, after 2 a.m.

886.    Plaintiff was given a municipal ticket in the amount of $1,321 for Violation of an Emergency Order signed by Lt. Jeffrey Farina.

887.    Plaintiff continues to experience post-traumatic stress and fear on-going retaliation.

888. Plaintiff suffered physical discomfort and injury, including soreness and bruising from having her arms tied behind her back, and significant emotional distress and trauma, including fear about where she would be taken and what would be done to her from his unlawful arrest and detention.

## XI.     RELEASE OF PLAINTIFFS PERSONAL INFORMATION FROM MOTOR VEHICLE RECORDS IN VIOLATION OF THE DPPA

### A.     BACKGROUND

889. The Driver's Privacy Protection Act (the "DPPA"), 18 U.S.C. 2721 prohibits any person from knowingly obtaining or disclosing personal information from a motor vehicle record. The act defines personal information as information that identifies an individual including an individual's driver identification number, name, address, date of birth, height, weight, hair color, and eye color.

890. On January 7, 2021 Defendant Joseph Roy, was employed by the City of Wauwatosa as a Lieutenant with the WPD, and as part of his duties was and is in charge of the open records division and at all times relevant was working within his official capacity.

891. The WPD had its first written open records policy effective July 27, 2020 as prepared by Lt. Gierach and Defendant Joseph Roy, that was approved by Defendant Barry Weber.

892. On January 7, 2021 Defendant Weber was the official custodian of the records in the WPD until the new WPD Chief MacGillis was hired on or around June 1, 2021.

893. On January 7, 2021 Defendant Joseph Roy disclosed to the third parties police reports, arrest & booking information, noncriminal tickets and interrogation videos which contained these fifty-three (53) Plaintiffs' personal information and/or highly restricted personal information that was obtained from their motor vehicle records. and disclosed such information not for a use permitted by the DPPA.

894. On January 7, 2021 Defendant Roy released to third parties these fifty-three (53) Plaintiffs personal information and/or highly restricted personal information for a use that was not permitted by the DPPA.

895. At all times relevant, when Defendant Roy released Plaintiffs' personal information and/or highly restricted personal information from these fifty-three (53) Plaintiffs from their motor vehicle records he was working in his official capacity.

B.     PLAINTIFFS ALLEGATIONS

**PLAINTIFFS Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Rebecca Burrell, Raine Cich, Khalil Coleman, Taleavia Cole, Tracy Cole, Steven Conklin, Anne Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Percy Hayes, Destiney Jones, Adante Jordan, Mary Kachelski, Sean Kafer, Kathelyn Knowlton, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Holly Lavora, Lazarito Mathieu, Vaun Mayes, Dana McCormick, Molly Nilssen, Carmen Palmer, (juvenile male) Palmer 1, (juvenile female) Palmer 2, Leah Porter, Jose Hernandez Ramirez, William Rivera, Hector Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Jayden Welch, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, and Sonja Worthy**

896. On January 7, 2021 Defendant Roy did not have a permissible purpose for disclosing these fifty-three (53) Plaintiffs Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Rebecca Burrell, Raine Cich, Khalil Coleman, Taleavia Cole, Tracy Cole, Steven Conklin, Anne Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Percy Hayes, Destiney Jones, Adante Jordan, Mary Kachelski, Sean Kafer, Kathelyn Knowlton, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Holly Lavora, Lazarito Mathieu, Vaun Mayes, Dana McCormick, Molly Nilssen, Carmen Palmer, (juvenile male) Palmer 1, (juvenile female) Palmer 2, Leah Porter, Jose Hernandez Ramirez, William Rivera, Hector Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Jayden

Welch, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, and Sonja Worthy (hereinafter referred to collectively as "these fifty-three (53) Plaintiffs") personal information and/or highly restricted personal information from their motor vehicle records to third parties.

897. On January 7, 2021 Defendant Roy did not have the express consent of any of these fifty-three (53) Plaintiffs to obtain, disclose, or use their personal information and/or highly restricted information from their motor vehicle records to any third parties.

898. On January 7, 2021 Defendant Roy with willful or reckless disregard for the law obtained, disclosed, or used these fifty-three (53) Plaintiffs" personal information and/or highly restricted personal information from their motor vehicle records to multiple third parties without their express consent.

899. On January 7, 2021 Defendant Roy did not have a permissible purpose for disclosing these fifty-three (53) Plaintiffs") personal information and/or highly restricted personal information from their motor vehicle records to third parties.

900. After January 7, 2021 Defendant Roy did not have a permissible purpose for disclosing these fifty-three (53) Plaintiffs") personal information and/or highly restricted personal information from their motor vehicle records to third parties.

901. After January 7, 2021 Defendant Roy did not have the express consent of these fifty-three (53) Plaintiffs to obtain, disclose, or use their personal information and/or highly restricted information from their motor vehicle records to any third parties.

902. After January 7, 2021 Defendant Roy with willful or reckless disregard for the law obtained, disclosed, or used these fifty-three (53) Plaintiffs") personal information and/or highly restricted personal information from their motor vehicle records to multiple third parties without their express consent.

103

903. On January 7, 2021 Defendant Roy did not have the express consent of these fifty-three (53) Plaintiffs to obtain, disclose, or use their personal information and/or highly restricted information from their motor vehicle records to any third parties.

## XII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### 42 U.S.C. § 1983. - FIRST AMENDMENT VIOLATION (CURFEW ORDER)

**As Alleged by Plaintiffs** Jacqueline Bogenberger, Raine Cich, Tahudah Cole, Taleavia Cole, Tracy Cole, Ann Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Destiney Jones, Kathryn Knowlton, Sonora Larson, Holly Lavora, Dana McCormick, Molly Neilson, Carmen Palmer, Palmer Doe 1, Palmer Doe 2, Leah Porter, Jose Ramirez, Hector Rodriguez, Nathan Sabel, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriela Vitucci, Susan Wells, Kathleen Wojnar, and Sonja Worthy, and The People's Revolution.

**Against Defendants** City of Wauwatosa and Dennis McBride

904. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

905. The First Amendment provides that all citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 24 (1971).

906. Organized political protest is a form of "classically political speech*." Boos v. Barry*, 485 U.S. 312, 318 (1988).

907. "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014).

908. The U.S. Supreme Court has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder because of "a profound national commitment to the principle

104

that debate on public issues should be uninhibited, robust, and wide-open[.]" *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014).

909. Indeed, "it has long been clearly established that the First Amendment bars retaliation for protected speech and association." *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998).

910. Defendant McBride, as Mayor and chief executive for the city of Wauwatosa, is the final policymaker.

911. As a final policymaker, Defendant McBride proclaimed a curfew on October 7, 2020, with the express intent to restrict the political protests of Plaintiffs.

912. At the time Defendant McBride proclaimed the curfew, no condition existed which would lead him to believe that violence or property destruction was imminent.

913. The proclaimed curfew discriminated on the basis of viewpoint as Defendant McBride enacted it with the specific intent to quiet those who protest police violence.

914. The proclaimed curfew covered all public protest spaces in the City of Wauwatosa leaving no reasonable alternative channels for expression.

915. The curfew was proclaimed without significant government interest.

916. In fact, the City of Wauwatosa, Defendant McBride, and the Wauwatosa Police Department possessed no credible threat which would allow them to declare the act of protesting in the City of Wauwatosa a criminal act.

917. The curfew was not narrowly tailored to any government interest.

918. The curfew covered the entire city and provided no alternative channels for political protest.

919.     Defendant McBride anticipated protests which would only occur if the decision was to not charge Mensah with murder.

920.     The timing of such protest is important and denying Plaintiffs the right to protest violated their rights to speech, assembly, and governmental redress.

921.     The curfew was instead proclaimed with the intent to curtail the expressive activities of Plaintiffs.

922.     The curfew, as city law, was the policy of the City of Wauwatosa.

923.     Pursuant to this proclaimed curfew Plaintiffs Jacqueline Bogenberger, Raine Cich, Tahudah Cole, Taleavia Cole, Tracy Cole Ann Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Destiney Jones, Kathryn Knowlton, Sonora Larson, Holly Lavora, Dana McCormick, Molly Neilson, Carmen Palmer, Palmer Doe 1, Palmer Doe 2, Leah Porter, Jose Ramirez, Hector Rodriguez, Nathan Sabel, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriela Vitucci, Susan Wells, Kathleen Wojnar, and Sonja Worthy were arrested and issued citations for violations of this curfew.

924.     The arrest and citation of Plaintiffs is a content-based or viewpoint-based restriction on speech, or both.

925.     Plaintiffs' arrests were a denial of their right to free speech guaranteed by the First Amendment to the Constitution of the United States.

926.     By arresting Plaintiffs, Defendants prevented Plaintiffs from speaking out on a matter of public concern.

927.     By charging, investigating, and prosecuting Plaintiffs for their constitutionally-protected expressive activity, Defendants have chilled Plaintiffs from exercising their First Amendment rights.

106

928.   The actions of Defendants occurred while each was acting under color of State law.

929.   Defendants' actions caused, directly and proximately, Plaintiff to suffer damages.

**SECOND  CLAIM FOR RELIEF**
**VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT.**
**(18 U.S.C. § 2721, et seq.)**

**As Alleged by** Plaintiffs Andrew Aaron, Robert Agnew, Kamila Ahmed, Isiah Baldwin, Jacqueline Bogenberger, Lavita Booker, Rebecca Burrell, Raine Cich, Khalil Coleman, Tahudah Cole, Taleavia Cole, Tracy Cole, Steven Conklin, Lauren Cross, Erik Fanning, Jessica Fenner, Breon Foster, Christine Groppi, Gaige Grosskreutz, Joseph Hayes, Percy Hayes, Adante Jordan, Mary Kachelski, Sean Kafer, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Vaun Mayes, Molly Nilssen, Shawn Page, Carmen Palmer, Juvenile (male) Palmer, Juvenile (female) Palmer, Oscar Concepcion Rodriguez, Rosalind Rogers, Madeline Schiweitzer, Mariah Smith, Peter Sparks, Tiffany Stark, Angel Vega, Gabriella Vitucci, Tristiana Walls, Oscar Walton, Jayden Welch, Britta Welch, Brandon Wilborn, Trisha Wilson, and Kathelyn Wojnar,

**Against Defendant** Dominick Ratkowski and John Doe Officers
**(PROTESTOR TARGET LIST)**

930.   All paragraphs of this Complaint are realleged by all these forty-nine (49)

individual Plaintiff Andrew Aaron, Robert Agnew, Kamila Ahmed, Isiah Baldwin, Jacqueline

Bogenberger, Lavita Booker, Rebecca Burrell, Raine Cich, Khalil Coleman, Tahudah Cole,

Taleavia Cole, Tracy Cole, Steven Conklin, Lauren Cross, Erik Fanning, Jessica Fenner, Breon

Foster, Christine Groppi, Gaige Grosskreutz, Joseph Hayes, Percy Hayes, Adante Jordan, Mary

Kachelski, Sean Kafer, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Vaun Mayes,

Molly Nilssen, Shawn Page, Carmen Palmer, Juvenile (male) Palmer, Juvenile (female) Palmer,

Oscar Concepcion Rodriguez, Rosalind Rogers, Madeline Schiweitzer, Mariah Smith, Peter

Sparks, Tiffany Stark, Angel Vega, Gabriella Vitucci, Tristiana Walls, Oscar Walton, Jayden

Welch, Britta Welch, Brandon Wilborn, Trisha Wilson, Kathelyn Wojnar, hereinafter for the

purposes of this claim referred to as forty-nine (49) "Target List Plaintiffs" as named above and

incorporated as though fully set forth.

931.   The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to

107

obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

932. The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains.

933. The DPPA, 18 U.S.C. § 2725(1) defines "motor vehicle record" to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."

934. The DPPA, 18 U.S.C. § 2725(3) defines "personal information" to mean information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."

935. Defendant Ratkowski obtained, since at least May 25, 2020, and continuing to present, personal information from the Wisconsin Department of Transportation to complete citations as well as compile lists, including those involving these forty-nine (49) Target List Plaintiffs "personal information from a motor vehicle record" within the meaning of 18 U.S.C. §§ 2722 & 2725(1), (3) and without their express consent and for no lawful purpose. By obtaining such information and reports, Defendants obtained the Personal Information, within the meaning of 18 U.S.C. § 2725(3) of Plaintiffs.

936. With knowledge of the provenance of the personal information contained in the Target List, Defendants John Doe Officers then used and distributed the Target List, and with it, Plaintiffs' personal information.

937. Defendants Ratkowski and John Doe Officers unlawfully accessed, obtained and

disclosed information for the express purpose of compiling, using and/or disclosing Target List Plaintiffs personal information to third parties for no lawful purpose, but rather as a pretext for surveillance, which is not a "permissible use" of seeking or disclosing personal information under the DPPA, 18 U.S.C. § 2721(b).

938.    Defendant Ratkowski obtained the personal information  and/or highly restricted personal information of these forty-nine (49) Target List Plaintiffs knowing that he was obtaining their personal information from a motor vehicle record and knew that he had no permissible use under the DPPA.

939.    Defendants Ratkowski and/or John Doe officers unlawfully disclosed Plaintiffs' information without their express consent and for no lawful purpose.

940.    As a result of Defendants' conduct, these forty-nine (49) Target List Plaintiffs who were put on the Target List have suffered harm, and are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under 18 U.S.C. §2724(b) of the DPPA.

### **THIRD CLAIM FOR RELIEF**
### **42 U.S.C. § 1983 VIOLATION OF FOURTEENTH AMENDMENT – DENIAL OF DUE PROCESS**

**As Alleged by Plaintiffs** Andrew Aaron, Robert Agnew, Kamila Ahmed, Isiah Baldwin, Jacqueline Bogenberger, Lavita Booker, Rebecca Burrell, Raine Cich, Khalil Coleman, Tahudah Cole, Taleavia Cole, Tracy Cole, Oscar Rodriguez, Steven Conklin, Lauren Cross, Erik Fanning, Jessica Fenner, Breon Foster, Christine Groppi, Gaige Grosskreutz, Joseph Hayes, Percy Hayes, Adante Jordan, Mary Kachelski, Sean Kafer, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Vaun Mayes, Molly Nilssen, Shawn Page, Carmen Palmer, Juvenile (male) Palmer, Juvenile (female) Palmer, Rosalind Rogers, Madeline Schiweitzer, Mariah Smith, Peter Sparks, Tiffany Stark, Angel Vega, Gabriella Vitucci, Tristiana Walls, Oscar Walton, Jayden Welch, Britta Welch, Brandon Wilborn, Trisha Wilson, Kathelyn Wojnar, and members of the People's Revolution an unincorporated entity.

### **Against Defendant** CITY OF WAUWATOSA
### **MONELL**

941.    All paragraphs of this Complaint are realleged by all these forty-nine (49)

109

individual Plaintiff Andrew Aaron, Robert Agnew, Kamila Ahmed, Isiah Baldwin, Jacqueline Bogenberger, Lavita Booker, Rebecca Burrell, Raine Cich, Khalil Coleman, Tahudah Cole, Taleavia Cole, Tracy Cole, Steven Conklin, Lauren Cross, Erik Fanning, Jessica Fenner, Breon Foster, Christine Groppi, Gaige Grosskreutz, Joseph Hayes, Percy Hayes, Adante Jordan, Mary Kachelski, Sean Kafer, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Vaun Mayes, Molly Nilssen, Shawn Page, Carmen Palmer, Juvenile (male) Palmer, Juvenile (female) Palmer, Oscar Concepcion Rodriguez, Rosalind Rogers, Madeline Schiweitzer, Mariah Smith, Peter Sparks, Tiffany Stark, Angel Vega, Gabriella Vitucci, Tristiana Walls, Oscar Walton, Jayden Welch, Britta Welch, Brandon Wilborn, Trisha Wilson, Kathelyn Wojnar, hereinafter for the purposes of this claim referred to as forty-nine (49) "Target List Plaintiffs" as well as the People's Revolution an unincorporated entity Plaintiff as named above and incorporated as though fully set forth.

942. The City of Wauwatosa through its Police Department ("WPD") condoned, ratified and adopted de facto policies, practices, and customs which include, inter alia;

a.  maintaining a Target List consisting of photos, names, and identifying personal Information and/or highly personal information of individuals whom the Defendant's believe are affiliated with the People's Revolution;

b.  arbitrarily including individuals on the Target List and labeling them as protestors affiliated with the People's Revolution;

c.  failing to inform individuals when their information was put on the Target List;

d.  failing to have a process by which individuals can challenge their inclusion on the Target List;

e.   failing to any sort of process by which information contained in the Target List is analyzed for accuracy;

f.   sharing information contained in the Target List with third parties, including but not limited to federal and local government agencies, prosecutors, other police department, university police departments, and sheriff offices without the express consent of Plaintiffs;

g.   failing to train and supervise WPD officers and Wauwatosa employees on how to use the Target List in a manner that does not violate individuals' constitutional rights under the Fourth and Fourteenth Amendments;

943.   The polices, practices, and customs alleged above are or should be well-known within the WPD.

944.   The WPD knows that labeling someone as a person affiliated with the People's Revolution is stigmatizing particularly to other law enforcement officers and harmful to their reputation.  The City has implemented, enforced, encouraged, and sanctioned WPD's policy, practice, and custom of using and maintaining a Target List in a manner that violates the due process rights of the Plaintiffs in violation of the Fourteenth Amendment.

945.   The actions of the City through its police department of making, using, and/or distributing the TPR Target List had a discriminatory effect and purpose against Plaintiffs.

946.   The WPD is aware of the harms suffered by Plaintiffs as a result of their inclusion on the Target List including deprivations of employment, Defendants' actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which

111

Plaintiffs have suffered injury, including but not limited to pain, suffering, mental distress, anguish, humiliation, fear of retaliation, and legal expenses.

947.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally with malice and knowing disregard for Plaintiffs constitutional rights.

948.    That the Defendant's conduct constituted a violation of the Fourteenth Amendment and/or Plaintiffs' equal protection rights guaranteed by that same Amendment.

949.    While acting under color of law, Defendant deprived Plaintiffs of their Fourteenth Amendment rights for which Plaintiffs are entitled to damages proximately caused thereby.

950.    Unless restrained by this Court, a real and immediate threat exists that the Fourteenth Amendment rights of the Plaintiffs' will be violated by WPD officers in the future and that Defendants will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to Plaintiffs.

### FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983. - First Amendment and Fourteenth Amendment (Protester List)

**As Alleged by Plaintiffs** Andrew Aaron, Robert Agnew, Kamila Ahmed, Isiah Baldwin, Jacqueline Bogenberger, Lavita Booker, Rebecca Burrell, Raine Cich, Khalil Coleman, Tahudah Cole, Taleavia Cole, Tracy Cole, Steven Conklin, Lauren Cross, Erik Fanning, Jessica Fenner, Breon Foster, Christine Groppi, Gaige Grosskreutz, Joseph Hayes, Percy Hayes, Adante Jordan, Mary Kachelski, Sean Kafer, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Vaun Mayes, Molly Nilssen, Shawn Page, Carmen Palmer, Juvenile (male) Palmer, Juvenile (female) Palmer, Oscar Concepcion Rodriguez, Rosalind Rogers, Madeline Schiweitzer, Mariah Smith, Peter Sparks, Tiffany Stark, Angel Vega, Gabriella Vitucci, Tristiana Walls, Oscar Walton, Jayden Welch, Britta Welch, Brandon Wilborn, Trisha Wilson, and Kathelyn Wojnar

**Against** Defendant Dominick Ratkowski

951.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

952.    Defendant Ratkowski's surveillance program and the creation, maintenance, and

distribution of the Target List infringed and interfered with Plaintiffs' ability to enjoy and exercise fully and freely their rights to freedom of speech, freedom of the press, freedom of assembly, freedom of association, and freedom to petition their government for redress of grievances, as well as their rights to privacy, due process, and the equal protection of the laws, as protected by the First and Fourteenth Amendments to the United States Constitution.

953.    The actions of Defendant Ratkowski occurred while he was acting under color of State law.

954.    Defendant's conduct violated clearly established rights belonging to Plaintiffs of which a reasonable person in Defendant's position knew or should have known.

955.    Defendant's actions caused, directly and proximately, Plaintiff to suffer damages.

## FIFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983. - First Amendment Retaliation

**As Alleged by Plaintiffs** Andrew Aaron, Kamila Ahmad, Isiah Baldwin, Jacqueline Bogenberger Raine Cich, Khalil Coleman, Tahudah Cole, Taleavia Cole, Tracy Cole, Anne Delessio-Parson, Rachel Dulay, Erik Fanning, Breon Foster, Joanna Geisler, Joseph Hayes, Destiny Jones, Sean Kafer, Kathryn Knowlton, Sonora Larson, Holly Lavora, Dana McCormick, Molly Nilssen, Carmen Palmer, Palmer Juvenile Female 1, Palmer Juvenile Male 2, Leah Porter, Jose Ramirez, Hector Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, Sonja Worthy and the People's Revolution

**Against Defendants** Jeffrey Farina, Luke Vetter, George Opelt, Timothy Warren, Robert Piehl, Daniel Mitchell, Russell Richardson, Joseph Lewandowski, and John Does 1-100

956.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

957.    Plaintiffs were engaged in political speech protected by the First Amendment.

958.    Plaintiff Mariah Smith was slammed to the ground by Defendant Vetter, Farina Opelt, and John Does used force. These actions were taken to in retaliation for her speech protesting police violence on September 5, 2020.

113

959.    Plaintiff Tracy Cole was violently pulled out of her car by her hair by Defendants Mitchell and Piehl, and thrown to the ground and tased by Defendant Mitchell and John Does and punched in the face by John Does. These actions were taken in retaliation for her speech protesting police violence on October 8, 2020.

960.    Plaintiff Taleavia Cole was violently pulled out of her car by Defendants Richardson and John Does, thrown to the ground and had a gun pointed at her by John Doe Defendant. These actions were taken to in retaliation for her speech protesting police violence on October 8, 2020.

961.    Plaintiffs Destiney Jones, Palmer Juvenile Female 1, Palmer Juvenile Male 2, Sonora, Erik Fanning, and Sonora Larson had guns pointed at them by John Doe Officers. These actions were taken to in retaliation for their speech protesting police violence on October 8, 2020.

962.    Plaintiffs Rachel Dulay and Jose Ramirez were violently pulled out of their car and had a gun pointed at them by Defendant Lewandowski. These actions were taken to in retaliation for their speech protesting police violence on October 8, 2020.

963.    Plaintiff Sonora Larson was shot with rubber bullets while expressing her beliefs. These actions were taken to in retaliation for her speech protesting police violence on October 8, 2020.

964.    Plaintiff Peter Sparks was beaten and kicked for expressing his beliefs by Defendant Kelly Zielinski. These actions were taken to in retaliation for his speech protesting police violence.

965.    Plaintiffs Taleavia Cole, Tracy Cole, Sonora Larson, Jose Ramirez, Mariah Smith, Destiney Jones, Rachel Dulay, Jose Ramirez, and Peter Sparks were subjected to excessive force by Defendant WPD Officers and John Doe Officers on the basis of their political expression.

966. Plaintiffs were in a traditional public forum engaging in classic political speech at the time that Defendant officers used such excessive force.

967. Plaintiffs were not engaged in any violent, destructive, criminal, or other behavior which would warrant the use of such force.

967. Such force was instead used for the specific purpose of denying Plaintiffs the opportunity to engage in political protest.

969. Use of force would chill a person of ordinary firmness from engaging in future expressive activity.

970. The content of Plaintiffs' speech and protest was the motivating factor for individual Defendant officers' decision to retaliate by use of force.

971. Plaintiffs Andrew Aaron, Isiah Baldwin, Khalil Coleman, Joseph Hayes, Sean Kafer, Rosalind Rogers, Mariah Smith Gabriella Vitucci, and Brandon Wilborn were engaged in political protest activity in Wauwatosa in a traditional public forum during protests on August 13 & 14, 2020 and September 5, 2020.

972. Defendant Timothy Warren issued tickets to Andrew Aaron, Khalil Coleman, Mariah Smith, and Gabriella Vitucci for their participation in a political protest. Their protest was the motivating factor for Defendant Warren's decision to retaliate against these four Plaintiffs.

973. Defendant Farina issued citations Isiah Baldwin, Khalil Coleman, Joseph Hayes, Sean Kafer, Rosalind Rogers, Gabriella Vitucci, and Brandon Wilborn for their participation in a political protest. Their protest was the motivating factor for Defendant Farina's decision to retaliate against these seven Plaintiffs.

974. Being subjected to a criminal citation would chill a person of ordinary firmness from engaging in future expressive activity.

975.     The content of Plaintiffs' speech and protest was the motivating factor for individual Defendant officers' decision to retaliate by issuing citations.

976.     Plaintiffs Jacqueline Bogenberger, Raine Cich, Tahudah Cole, Taleavia Cole, Ann Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Destiney Jones, Kathryn Knowlton, Sonora Larson, Holly Lavora, Dana McCormick, Molly Neilson, Carmen Palmer, Palmer Doe 1, Palmer Doe 2, Leah Porter, Jose Ramirez, Hector Rodriguez, Nathan Sabel, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriela Vitucci, Susan Wells, Kathleen Wojnar, and Sonja Worthy were arrested and issued citations for violations of the curfew from October 7 – 12, 2020.

977.     Plaintiffs William Schroeder and Joanna Geisler were issued citations for failure to follow a lawful order while they were protesting in Wauwatosa on October 9, 2020.

978.     Defendant officers Farina and Warren issued Plaintiffs citations for their participation in a political protest.

979.     The content of Plaintiffs' speech and protest was the motivating factor for individual Defendant officers' decision to retaliate by issuing citations.

980.     Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

981.     At all times relevant to this Complaint, Defendants were acting under color of state law.

982.     Defendants' actions caused Plaintiffs to suffer damages.

### SIXTH CLAIM FOR RELIEF
### 42 U.S.C. 1983 - Deliberate Indifference

**As Alleged by Plaintiffs** Sonora Larson, Peter Sparks, Lazarito Matheu, Aidali Rivera, William Rivera, and Hector Rodriguez

116

**Against Defendant** Barry Weber

983.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

984.   By the morning of October 9, 2020, Defendant Weber had knowledge that the officers of the WPD were engaged in an effort to silence the voices of those who protested police violence.

985.   On October 8, 2020, Tracy Cole was subjected to excessive force, which was covered extensively in the news media and Defendant Weber knew she and others had been harmed by officers.

986.   As Defendant Weber was aware, officers of the WPD, for whom he was the supervisor, were using tear gas, rubber bullets, pepper spray, and physical violence against those they perceived as politically opposed to the interests of the WPD.

987.   As Defendant Weber was aware, WPD officers were using excessive force and were retaliating against protesters on the basis of their viewpoints or their perceived viewpoints.

988.   On October 9, 2020 Plaintiff Sonora Larson was shot with multiple rubber bullets by John Doe officers while she was lying on the ground.

989.   On October 10, 2020 Plaintiffs Matheu Lazarito, William Rivera, Aidali Rivera, and Hector Rodriguez were all subjected to objectively unreasonable excessive force by John Doe officers when their car was rammed and they had a gun pointed at them while they were in Wauwatosa.

990.   On October 10, 2020 Defendant Kelly Zielinski and Defendant John Doe officers subjected Plaintiff Peter Sparks to objectively unreasonable excessive force when he was dragged into a cemetery where he was beaten and kicked by Defendants.

991.   In addition to real time knowledge and access to police actions during the curfew, Defendant Weber also received multiple daily briefings and was aware of all of the constitutional violations and police actions against these Plaintiffs.

117

992.    As chief of police, Defendant Weber had an obligation to address these constitutional violations in anticipation of future political protests and he did not address.

993.    Plaintiffs and other protesters continued to call for police practices which would not deny them their constitutional rights to be free from excessive force and to exercise their first amendment rights.

994.    Defendant Weber was deliberately indifferent to the needs of Plaintiff and the actions of Defendant occurred while acting under color of State law.

995.    Defendant's actions caused, directly and proximately, Plaintiffs to suffer damages.

## SEVENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983. - FIRST AMENDMENT VIOLATION (EXCESSIVE FORCE & ARREST)

AS ALLEGED BY PLAINTIFFS ISIAH BALDWIN, JACQUELINE BOGENBERGER, RAINE CICH, TAHUDAH COLE, TALEAVIA COLE, TRACY COLE, ANNE DELESSIO-PARSON, RACHEL DULAY, ERIK FANNING, JILL FERGUSON, BREON FOSTER, JOANNA GEISLER, JOSEPH HAYES, DESTINEY JONES, SEAN KAFER, KATHRYN KNOWLTON, SONORA LARSON, HOLLY LAVORA, DANA MCCORMICK, MOLLY NILSSEN, CARMEN PALMER, PALMER JUVENILE FEMALE 1, PALMER JUVENILE MALE 2, LEAH PORTER, JOSE RAMIREZ, HECTOR RODRIGUEZ, ROSALIND ROGERS, NATHAN SABEL, WILLIAM SCHROEDER, MARIAH SMITH, PETER SPARKS, ANGEL VEGA, CHRISTINA VITOLO-HADDAD, GABRIELLA VITUCCI, SUSAN WELLS, BRANDON WILBORN, KATELYN WOJNAR, SONJA WORTHY, AND THE PEOPLES REVOLUTION

AGAINST DEFENDANTS CITY OF WAUWATOSA, JEFFREY FARINA, JOSEPH LEWANADOWSKI, DENNIS MCBRIDE, DANIEL MITCHELL, ROBERT PIEHL, GEORGE OPELT, LUKE VETTER, BARRY WEBER TIMOTHY WARREN, RUSSELL RICHARDSON AND JOHN DOES 1-100

996.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

997.    Plaintiffs were engaged in political speech protected by the First Amendment.

998.    Plaintiff Mariah Smith was slammed to the ground by Defendant Vetter, Farina, Opelt and John Does used force. These actions were taken to stop her from protesting police violence.

999. Plaintiff Tracy Cole was violently pulled out of her car by Defendants Mitchell and Piehl, and thrown to the ground and tased by Defendant Mitchell and John Does and punched in the face by John Does. These actions were taken to stop her from protesting police violence.

1000. Plaintiff Taleavia Cole was violently pulled out of her car by Defendants Richardson and John Does, and thrown to the ground and had a gun pointed at her head by John Doe Defendant. These actions were taken to stop her from protesting police violence.

1001. Plaintiff Sonora Larson was shot with rubber bullets while expressing her beliefs. These actions were taken to stop her from protesting police violence.

Plaintiff Peter Sparks was beaten and kicked for expressing his beliefs. These actions were taken to stop him from protesting police violence.

1002. Jill Ferguson was stopped from filming police conduct while at a protest. These actions were taken to stop her from filming police violence.

1003. Plaintiffs Jose Ramirez, Rachel Dulay, and Peter Smith were subjected to excessive force by Defendants Joseph Lewandowski and John Doe Defendants on the basis of their political expression.

1004. Plaintiffs Peter Smith was subjected to excessive force by Defendants Joseph Lewandowski and John Doe Defendants on the basis of their political expression.

1005. Plaintiff's Destiney Jones, Carmen Palmer, (juvenile male) Palmer 1, (juvenile female) Palmer 2, were subjected to excessive force when John Doe Defendants pointed guns at their heads for protesting police killings in Wauwatosa.

1006. Plaintiffs were in a traditional public forum engaging in classic political speech at the time that John Doe Defendants used such excessive force.

1007. Plaintiffs were not engaged in any violent, destructive, criminal, or other behavior which would warrant the use of such force.

1008. Such force was instead used for the specific purpose of denying Plaintiffs the opportunity to engage in political protest.

1009. Use of force would chill a person of ordinary firmness from engaging in future expressive activity.

1010. Plaintiffs Andrew Aaron, Isiah Baldwin, Khalil Coleman, Joseph Hayes, Sean Kafer, Rosalind Rogers, Mariah Smith, Gabriella Vitucci, and Brandon Wilborn were engaged in political protest activity in a traditional public forum during protests in Wauwatosa on August 13 & 14, 2020 and September 5, 2020.

1011. Defendant Timothy Warren issued tickets to Andrew Aaron, Khalil Coleman, Mariah Smith, and Gabriella Vitucci for their participation in a political protest.

1012. Defendant Farina issued citations Andrew Aaron, Isiah Baldwin, Joseph Hayes, Sean Kafer, Rosalind Rogers, and Brandon Wilborn for their participation in a political protest.

1013. Being subjected to a court proceedings and a citation would chill a person of ordinary firmness from engaging in future expressive activity.

1014. Defendant McBride, as Mayor and chief executive for the city of Wauwatosa, is the final policymaker.

1015. As a final policymaker, Defendant McBride proclaimed a curfew on October 7, 2020, with the express intent to restrict the political protests of Plaintiffs.

1016. Defendant Weber is the chief policy maker for the Wauwatosa Police Department.

1017. The proclaimed curfew discriminated on the basis of viewpoint as Defendant McBride enacted it with the specific intent to quiet those who protest police violence.

120

1018.   The proclaimed curfew covered all public protest spaces in the City of Wauwatosa, leaving no reasonable alternative channels for expression.

1019.   The curfew was proclaimed without significant government interest.

1020.   In fact, the City of Wauwatosa, Defendant McBride, and the Wauwatosa Police Department possessed no credible threat which would allow them to declare the act of protesting in the City of Wauwatosa a criminal act.

1021.   The curfew was not narrowly tailored to any government interest.

1022.   The curfew was instead proclaimed with the intent to curtail the expressive activities of Plaintiffs.

1023.   The curfew, as city law, was the policy of the City of Wauwatosa.

1024.   Defendants Mayor McBride and Chief Weber's policy of dispersing persons, including Plaintiffs, who are engaged in peaceful, constitutionally protected acts of speech and expressive conduct violates Plaintiffs' rights under the First Amendment as applied to Plaintiffs' peaceful demonstrations.

1025.   Pursuant to this proclaimed curfew Plaintiffs Jacqueline Bogenberger, Raine Cich, Tahudah Cole, Taleavia Cole, Ann Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Destiney Jones, Kathryn Knowlton, Sonora Larson, Holly Lavora, Dana McCormick, Molly Neilson, Carmen Palmer, Palmer Doe 1, Palmer Doe 2, Leah Porter, Jose Ramirez, Nathan Sabel, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriela Vitucci, Susan Wells, Kathleen Wojnar, and Sonja Worthy were arrested and issued citations for violations of this curfew.

1026.   The arrest and citation of Plaintiffs is a content-based or viewpoint-based restriction on speech, or both.

1027.   Plaintiffs' arrests were a denial of their right to free speech guaranteed by the First Amendment to the Constitution of the United States.

1028.   By arresting Plaintiffs, Defendants prevented Plaintiffs from speaking out on a matter of public concern.

1029.   By charging, investigating, and prosecuting Plaintiffs for their constitutionally protected expressive activity, Defendants have chilled Plaintiffs from exercising their First Amendment rights.

1030.   The actions of Defendants occurred while each was acting under color of State law.

1031.   Defendants' actions caused, directly and proximately, Plaintiff to suffer damages.

## EIGHTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - Excessive Force

### (September 5, 2020, October 8 – 10, 2020)

**As to Plaintiffs** Taleavia Cole, Tracy Cole, Rachel Dulay, Erik Fanning, Destiney Jones, Sonora Larson, Carmen Palmer, Palmer Juvenile Female 1, Palmer Juvenile Female 2, Lazarito Matheu, Peter Sparks, Jose Ramirez, Aidali Rivera, William Rivera, Hector Rodriguez, and Mariah Smith

**Against Defendant** Officers Jeffrey Farina, Joseph Lewandowski, Daniel Mitchell, George Opelt, Robert Piehl, Russell Richardson James Short, Luke Vetter, Kelly Zielinski, and John Doe Officers

1.

1032.   Plaintiffs Taleavia Cole, Tracy Cole, Rachel Dulay, Erik Fanning, Destiney Jones, Sonora Larson, Carmen Palmer, Palmer Juvenile Female 1, Palmer Juvenile Female 2, Lazarito Matheu, Peter Sparks, Jose Ramirez, Aidali Rivera, William Rivera, Hector Rodriguez, and Mariah Smith realleges and incorporate here all paragraphs of this Complaint as though fully set forth.

1033.   At all relevant times herein, the above-named Defendants Officers Jeffrey Farina, Joseph Lewandowski, Daniel Mitchell, George Opelt, Robert Piehl, Russell Richardson James Short, Luke Vetter, Kelly Zielinski, and John Doe Officers were "persons" for purposes of 42 U.S.C. §

122

1983 and acted under color of state law to deprive Plaintiffs of their constitutional rights.

1034.  On September 5, 2020 Defendant Officers Jeffrey Farina, George Opelt, Luke Vetter, and John Doe Officers used unnecessary excessive force, that was unjustified and objectively unreasonable in light of the facts and circumstances confronting them against Plaintiff Mariah Smith who never resisted detention nor attempted to flee and who was arrested for a noncriminal disorderly conduct ordinance.

1035.  Plaintiff Mariah Smith did not pose an immediate threat to the safety any of the officers or others.

1036.  Defendants Luke Vetter, Jeffrey Farina, George Opelt and other John Doe officers used objectively unreasonable excessive force against Mariah Smith on September 5, 2020  and she was ultimately arrested for a noncriminal disorderly conduct ticket.

1037.  Defendants Vetter and Farina's actions of slamming Plaintiff Mariah Smith to the ground and Defendant Opelt and John Doe Officers actions of putting a knee to her ribs and jaws was excessive and objectively unreasonable.

1038.  On October 8, 2020 at all times material hereto, the Defendant Officers Daniel Mitchell, Robert Piehl, and John Doe Officers used unnecessary, excessive force, that was objectively unreasonable in light of the facts and circumstances confronting them against Plaintiff Tracy Cole.

1039.  Defendants Daniel Mitchell, Robert Piehl, and John Doe Officers the actions of Defendant Piehl's actions of forcefully pulling Plaintiff Tracy Cole's hair and kneeing her in her thigh while Defendant Mitchells actions of tasing her and slamming her to the ground, and the actions of John Doe officers of punching her several times was unlawful and objectively unreasonable in light of the circumstances confronting the officers.

123

1040.  Plaintiff Tracy Cole did not pose an immediate threat to the safety of any of the officers or others and she was not trying to resist detention or attempting to flee.

1041.  On October 8, 2020 at all times material hereto, the Defendant Officers Russell Richardson and John Doe Officers used unnecessary, excessive force, without legal cause that was unjustified and objectively unreasonable in light of the facts and circumstances confronting them against Plaintiff Taleavia Cole.

1042.  Specifically, Defendants Russell Richardson actions of slamming Plaintiff Taleavia Cole to the ground, pointing a gun at her, and putting a knee on her back with other John Doe Officers and Defendant Richardson and John Doe officers pointing a gun to her head was excessive and objectively unreasonable.

1043.  Plaintiff Taleavia Cole did not pose an immediate threat to the safety of any of the officers or others and she was not trying to resist detention or attempting to flee.

1044.  On October 8, 2020 at all times material hereto, Defendant James Short by pointing his gun at Plaintiffs Sonora Larson and Erik Fanning used unnecessary, excessive force, without legal cause that was unjustified and objectively unreasonable in light of the facts and circumstances confronting him and others against Plaintiffs who never resisted detention nor did they ever attempt to flee from Defendant Short or any John Doe Officers at any time.

1045.  Plaintiffs Erik Fanning and Sonora Larson were not a threat to Defendant Short nor any of the John Doe officers at any time during their detention and subsequent arrests.

1046.  Plaintiffs Fanning and Larson were being stopped for a noncriminal nonviolent curfew violation and were subsequently ticketed and released from custody hours later.

1047.  On October 8, 2020 at all times material hereto, Defendant Joseph Lewandowski by pointing his gun at Plaintiffs Rachel Dulay and Jose Ramirez  used unnecessary, excessive force, without legal cause that was unjustified and objectively unreasonable in light of the facts

and circumstances confronting him and others against Plaintiffs who never resisted detention nor did they ever attempt to flee from Defendant Lewandowski or any John Doe Officers at any time..

1048.   Plaintiffs Rachel Dulay and Jose Ramirez were not a threat to Defendant Lewandowski nor any of the John Doe officers at any time during their detention and subsequent arrests.

1049.   Plaintiffs Dulay and Ramirez were being stopped for a noncriminal nonviolent curfew violation and were subsequently ticketed and released from custody hours later.

1050.   On October 8, 2020 at all times material hereto, John Doe Officers by pointing their guns at Plaintiffs Destiney Jones, Carmen Palmer, Palmer Juvenile Female 1, and Palmer Juvenile Male 2, used unnecessary, excessive force, without legal cause that was objectively unreasonable in light of the facts and circumstances confronting them against these Plaintiffs who all never resisted detention nor did they ever attempt to flee from any John Doe Officers.

1051.   Plaintiffs Destiney Jones, Carmen Palmer, Palmer Juvenile Female 1, and Palmer Juvenile Male 2  were not a threat to any of the John Doe officers at any time during their detention and subsequent arrests.

1052   Plaintiff Destiney Jones, Carmen Palmer, Palmer Juvenile Female 1, and Palmer Juvenile Male 2   was being stopped for a noncriminal nonviolent curfew violation and were subsequently ticketed and released from custody hours later.

1053.   On October 9, 2020 at all times material hereto, John Doe Officers used unnecessary, excessive force, without legal cause that was unjustified and objectively unreasonable in light of the facts and circumstances confronting them against Plaintiff Sonora Larson.

1054.   John Doe Officers use of excessive force against Sonora Larson which included her being shot by multiple rubber bullets many of which occurred while she was on the ground on

October 9, 2020 was excessive force, objectively unreasonable, and it caused her great bodily harm.

1055   On October 9, 2020 at all times material hereto, John Doe Officers by pointing their guns at Plaintiffs Lazarito Matheu, Aidali Rivera, William Rivera, and Hector Rodriguez and by intentionally hitting the vehicle that Plaintiffs were in.  John Doe Officers used unnecessary, excessive force, without legal cause that was objectively unreasonable in light of the facts and circumstances confronting them against these Plaintiffs who all never resisted detention nor did they ever attempt to flee from any officers.

1056.  Plaintiffs Lazarito Matheu, Aidali Rivera, William Rivera, and Hector Rodriguez were not a threat to any of the John Doe officers at any time during their detention and subsequent arrests.

1057   Plaintiffs Lazarito Matheu, Aidali Rivera, William Rivera, and Hector Rodriguez were being stopped for a noncriminal nonviolent curfew violation and were subsequently ticketed and released from custody later.

1058.  On October 10, 2020 at all times material hereto, the Defendant Officer Kelly Zielinski and other John Doe Officers used unnecessary, excessive force, without legal cause that was unjustified and objectively unreasonable in light of the facts and circumstances confronting them against Plaintiff Peter Sparks.

1059.  Defendants Kelly Zielinski and John Doe Officers used excessive force against Peter Sparks when they dragged him into a cemetery and kicked and punched him repeatedly on October 10, 2020 which was unlawful and objectively unreasonable.

1060.  Defendants' Officers Daniel Mitchell, George Opelt, Jeffrey Farina, Robert Piehl, Russell Richardson, Luke Vetter, Kelly Zielinski, and John Doe officer's actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which

126

Plaintiffs Taleavia Cole, Tracy Cole, Sonora Larson, Peter Sparks, and Mariah Smith have suffered injury.

1061. While acting under color of state law, law enforcement deprived Plaintiffs of their Fourth Amendment rights for which Plaintiffs are entitled to damages proximately caused thereby.

1062. Unless restrained by this Court, Defendants will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to the people of Wauwatosa.

## NINTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983. – UNLAWFUL ARREST

**AS ALLEGED BY PLAINTIFFS** OSCAR CONCEPCION, HOLLY LAVORA, NATHAN SABEL, WILLIAM RIVERA, AIDALI RIVERA, HECTOR RODRIGUEZ, LAZARITO MATHEU, Jackie Bogenberger, Raine Cich, Angel Vega, Gabriella Vitucci, Katelyn Wojnar, Anne Delessio-Parson, Kathryn Knowlton, Dana McCormick, Molly Nilssen, Leah Porter, Christina Vitolo Haddad, Isiah Baldwin, Jill Ferguson and Sonja Worthy

### AGAINST DEFENDANTS FARINA AND JOHN DOES 1-100

1063. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

1064. John Doe Defendants had no probable cause to believe that Plaintiffs Holly Lavora and Nathan Sabel had violated any Emergency Curfew when they seized and arrested them for violating such curfew before the curfew was in effect.

1065. John Doe Defendants had no probable cause when they arrested William Rivera, Aidali Rivera, Hector Rodriguez, and Lazarito Matheu when they had knowledge that these individuals were not in violation of the curfew.

1066. John Doe Defendants had no probable cause when they arrested Leah Porter, Sonya Worthy, and Christina Vitolo-Haddad when they had knowledge that these individuals were not in violation of the curfew.

127

1067.   John Doe Defendants knew that had no probable cause when they Kathryn Knowlton, Dana McCormick were not violating the law when they were arrested.

1068.   Defendants Farina and John Does had no probable cause to believe that Plaintiff Concepcion had violated the curfew as he was driving an Uber at the time he was arrested and ticketed.

1069.   John Does Defendants restricted the movements of Jackie Bogenberger, Raine Cich, Angel Vega, Gabriella Vitucci, Katelyn Wojnar, Anne Delessio-Parson, Kathryn Knowlton, Dana McCormick, Molly Nilssen, Leah Porter, Christina Vitolo Haddad, Isiah Baldwin, Jill Ferguson and Sonja Worthy after they were released from custody, even though Plaintiffs had committed no crime and Defendant possessed no probable cause that a new crime had been committed.

1070.   At all times relevant to this Complaint, Defendants were acting under color of state law.

1071.   Defendants' actions caused Plaintiffs to suffer damages.

**TENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983. – Unlawful Search and Seizure (Cars, Phones)**

**As Alleged by Plaintiffs**, Jacqueline Bogenberger, Tahudah Cole, Taleavia Cole, Jill Ferguson, Destiney Jones, Holly Lavora, Carmen Palmer, Palmer Juvenile Female 1, Palmer Juvenile Male 2, Lazarito Matheu, Aidali Rivera, William Rivera, Hector Rodriguez, and Gabriella Vitucci

**Against Defendants** Joseph Lewandowski, Shane Wrucke, Brian Skornia, Maria Arbiter, Timothy Warren and John Doe Officers

1072.   Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

128

1073.   Defendants Shane Wrucke, James Skornia, Timothy Warren, Maria Albiter, and John Does had no warrant, consent or other probable cause when they conducted a search of and seized the phone of Taleavia Cole.

1074.   John Doe Defendants had no warrant, consent or other probable cause when they conducted a search of and seized the vehicles of Tahudah Cole, Taleavia Cole, Oscar Concepcion, Destiney Jones, Rachel Dulay, Suzanne Wells, Carmen Palmer, Aidali Rivera, and Jill Ferguson.

1075.   John Doe Defendants had no warrant, consent or other probable cause when they conducted a search of the phones of Rachel Dulay, Suzanne Wells, Carmen Palmer, (Juvenile Male) Palmer, and (Juvenile Female) Palmer, Bogenberger, Angel Vega, Leah Porter, Christina Vitolo Haddad, Jill Ferguson, and Sonja Worthy

1076.   At all times relevant to this Complaint, Defendants were acting under color of state law.

1077.   Defendants' actions caused Plaintiffs to suffer damages.

### ELEVENTH CLAIM FOR RELIEF
**Violation of Title VI**

**As Alleged by Plaintiff** William Rivera

**Against Defendant** City of Wauwatosa

1078.   Plaintiff William Rivera realleges and incorporates here all paragraphs of this Complaint as though fully set forth.

1079.   Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

1080.   Defendant City of Wauwatosa receives federal financial assistance for its programs and activities that are subject to the requirements of Title VI and its implementing regulations.

129

1081.   Wauwatosa has received federal funds and has been awarded the Emergency Preparedness Grant as well as over $20 million in funds from the American Rescue Plan from the federal government.

1082.   Plaintiff Rivera was unlawfully arrested while trying to go to his home in Wauwatosa by a Defendant John Doe Officer on October 9, 2020.

1083.   When Plaintiff Rivera tried to explain that he was trying to go home from work and lived a few blocks from where he was arrested to several John Doe officers, he was explicitly told by an arresting John Doe Officer that, "at this point it (arresting him) doesn't matter because you are black."

1084.   Wauwatosa's discriminatory law enforcement practices violates Title VI.

**TWELVTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983. – Equal Protection**

**As Alleged by Plaintiff** William Rivera

**Against Defendant** John Does 1-100

1085.   Plaintiffs incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

1086.   Defendant John Doe told William Rivera that they were arresting him because he is Black.

1087.   Defendants' actions were taken on account of Mr. Rivera's race.

1088.   At all times relevant to this Complaint, Defendants were acting under color of state law.

1089.   Defendants' actions caused Plaintiff to suffer damages.

**THIRTEENTH CLAIM FOR RELIEF – STATE LAW CLAIM**
**MALICIOUS PROSECUTION (Wisconsin State Law)**

130

**As Alleged by Plaintiffs** Isiah Baldwin, Aidali Rivera, and Rosalind Rogers

**Against Defendants** Jeffrey Farina, ~~George Schimmel,~~ and John Doe Officers

1090.   These Plaintiffs reallege and incorporate by reference all the allegations in the preceding paragraphs.

1091.   Pursuant to 28 U.S.C. 1367 Supplemental jurisdiction is proper in that this court may exercise supplemental jurisdiction over state-law claims as this claim is part of the same case over which this court has original jurisdiction.

1092.   Defendant John Doe officers unlawfully arrested Plaintiff Aidali Rivera and detained her for hours claiming a violation of an emergency order with no probable cause knowing that she was exempt from the curfew.

1093.   ~~Defendant George Schimmel maliciously prosecuted Plaintiff Aidali Rivera without probable cause for an ordinance violation of an emergency order Defendant Farina stated took place on October 9, 2020 on the citation.~~

1094.   Defendant Jeffrey Farina ~~and Defendant George Schimmel~~ caused Plaintiff Aidali Rivera to be improperly subjected to judicial proceedings to which there was no probable cause. These proceedings were instituted and continued maliciously, resulting in damages to Aidali Rivera.

1095.   The proceeding was terminated in favor of Plaintiff Aidali Rivera.

1096.   Defendants Jeffrey Farina and other officers unlawfully arrested Plaintiffs Isiah Baldwin and Rosalind Rogers and detained them for hours for an ordinance violation of special permit required with no  probable cause.

1097.   ~~Defendant George Schimmel maliciously tried to prosecute Plaintiffs Isiah Baldwin~~

131

~~and Rosalind Rogers without probable cause for ordinance violations of special permit required~~ ~~tickets which Defendant Farina stated took place on September 5, 2020.~~

1098.   Defendant Jeffrey Farina ~~and Defendant George Schimmel~~ caused Plaintiffs to be improperly subjected to judicial proceedings to which there was no probable cause.   These proceedings were instituted and continued maliciously, resulting in damages to them.

1099.   The proceeding was terminated in favor of Plaintiffs Isiah Baldwin and Rosalind Rogers.

1100.   The misconduct by Defendants Farina~~, Schimmel,~~ and other John Doe Officers in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to Plaintiffs Aidali Rivera, Rosalind Rogers, and Isiah Baldwin's rights.

1101.   In February 2021, the prosecutions were terminated in Plaintiff Rivera's, Baldwin, and Rogers favor and in a manner indicative of innocence.

1102.   As a direct and proximate result of Defendants ~~Schimmel,~~ Farina~~,~~ and John Doe Officers misconduct, Plaintiffs Baldwin, Rivera, and Rogers, were all unlawfully arrested and sustained injury or damage as a result of the proceeding.

### FOURTEENTH CLAIM FOR RELIEF
### VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT.
### (18 U.S.C. § 2721, et seq.)

**As Alleged by Plaintiffs** Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Rebecca Burrell, Raine Cich, Khalil Coleman, Taleavia Cole, Steven Conklin, Anne Delessio-Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Percy Hayes, Destiney Jones, Adante Jordan, Mary Kachelski, Sean Kafer, Kathelyn Knowlton, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Holly Lavora, Lazarito Mathieu, Vaun Mayes, Dana McCormick, Molly Nilssen, Carmen Palmer, (juvenile male) Palmer 1, (juvenile female) Palmer 2, Leah Porter, Jose Hernandez Ramirez, William Rivera, Hector Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Jayden Welch, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, and Sonja Worthy

**Against Defendant** Joseph Roy

1103. These Plaintiffs reallege and incorporate by reference all the allegations in the preceding paragraphs.

1104. The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

1105. The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains.

1106. The DPPA, 18 U.S.C. § 2725(1) defines "motor vehicle record" to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."

1107. The DPPA, 18 U.S.C. § 2725(3) defines "personal information" to mean information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."

1108. Pursuant to 18 U.S.C. § 2725(4) highly restricted personal information is defined as "an individual's photograph or image, social security number, medical or disability information;"

1109. Pursuant to 18 U.S.C. § 2725(5) defines express consent as consent in writing.

1110. Defendant City of Wauwatosa through its law enforcement officers obtained Plaintiffs Andrew Aaron, Kamila Ahmed, Robert Agnew, Isiah Baldwin, Jacqueline Bogenberger, Rebecca Burrell, Raine Cich, Khalil Coleman, Taleavia Cole, Steven Conklin, Anne Delessio-

133

Parson, Rachel Dulay, Erik Fanning, Jill Ferguson, Breon Foster, Joanna Geisler, Joseph Hayes, Percy Hayes, Destiney Jones, Adante Jordan, Mary Kachelski, Sean Kafer, Kathelyn Knowlton, Joseph Koepp, John Larry, Alex Larson, Sonora Larson, Holly Lavora, Lazarito Mathieu, Vaun Mayes, Dana McCormick, Molly Nilssen, Carmen Palmer, (juvenile male) Palmer 1, (juvenile female) Palmer 2, Leah Porter, Jose Hernandez Ramirez, William Rivera, Hector Rodriguez, Rosalind Rogers, Nathan Sabel, William Schroeder, Mariah Smith, Peter Sparks, Angel Vega, Christina Vitolo-Haddad, Gabriella Vitucci, Jayden Welch, Suzanne Wells, Brandon Wilborn, Katelyn Wojnar, and Sonja Worthy hereinafter referred to collectively as "these fifty-three (53) Plaintiff" personal information and highly restricted personal information from their motor vehicle records.

1111.   Defendant Joseph Roy on January 7, 2021 publicly disclosed these fifty-three (53) Plaintiffs personal information and/or highly restricted personal information without their express consent and for a purpose not permitted by the DPPA.

1112.   Defendant Joseph Roy after January 7, 2021 continued to publicly disclose these fifty-three (53) Plaintiffs personal information and/or highly restricted personal information without their express consent and for a purpose not permitted by the DPPA.

1113.   Defendant Joseph Roy had no permissible purpose, within the meaning of 18 U.S.C. § 2722(a) or §2721(b), to publicly disclose the personal information and/or highly restricted personal information of these fifty-three (53) Plaintiffs.

1114.   As a result of Defendant Roy's conduct, the aforementioned Plaintiffs have suffered harm, and are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under 18 U.S.C. §2724(b) of the DPPA.

WHEREFORE, Plaintiffs respectfully pray that judgment be entered against Defendants, jointly and severally, and request that the Court award the following relief:

154

1. An order finding the City of Wauwatosa's curfew of October 7 - 12, 2021 was unlawful and illegally enacted;

2. An order finding the City of Wauwatosa's October 7 – 12, 2020 curfew unconstitutional;

3. A declaration that Defendants' conduct violated the First, Fourth, and Fourteenth Amendments of the United States Constitution;

4. An order requiring immediate cessation of law enforcement surveillance and monitoring of peaceful protest activity, including a prohibition of law enforcement  maintaining files on the views and expressive activities;

5. An injunction prohibiting the Wauwatosa Police Department from sharing its existing files with any other law enforcement or non-law enforcement agencies or municipalities;

6. A preservation order that the files on activists and peaceful protests be preserved as they are potential evidence in future litigation;

7. Damages compensating Plaintiffs for their injuries, including but not limited to compensatory, pecuniary, punitive and medical expense damages;

8. An award of prejudgment interest;

9. An order enjoining Defendants from enforcing a policy ordering dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those through law enforcement;

10. An order that Defendants and other law enforcement agencies whom the Defendants engaged, permanently delete any fabricated arrest records, booking photos, arrest information, fingerprint cards, and any and all data that they have regarding Plaintiffs;

11. Order the Wauwatosa Police Department to make a public accounting of the scope and nature of files subject of this lawsuit, such that Defendants fully, accurately and completely identify:

    a)    Number of groups and organizations has the Wauwatosa Police Department been surveilling, monitoring and recording;

    b)    Descriptors used by the WPD (such as "criminal," "extremists," and/or "domestic terrorists");

    c)    Criteria for listing and/or placing an individual and/or organization on the target list;

    d)    Number of individuals with files created by the Wauwatosa Police Department on since the death of George Floyd on May 25, 2020 to present as it relates to protests;

135

e) To whom (all individuals and organizations) the WPD, and including any employees of the City, has the information from the files (including the files themselves) been given, whether by access or providing copies;

12. An order requiring notification to individuals listed on any files, lists, or other monitoring/intelligence document, including on the TPR Target List, of the existence and opportunity to that individual to review the information;

13. An order requiring the Wauwatosa Police Department to destroy the Target List and any protestor monitoring files and all of its contents with written confirmation after all subjects have been notified and provided an opportunity to review;

14. Order the Wauwatosa Police Department to contact any third-party entities who received the Target List and any protestor monitoring files to destroy it and all of

15. An injunction prohibiting the Defendants from sharing with third parties any of Plaintiffs personal information and highly restricted personal information retrieved from their motor vehicle records and without their consent that is not for a permissible lawful purpose.

16. Declare that Defendants' practice of obtaining personal information through the DOT without probable cause or reasonable suspicion as arbitrary and as such violated the DPPA;

17. Enter a preliminary and permanent injunction preventing and restraining Defendants (and any of their attorneys, employees, agents, representatives or anyone acting on their behalf) from disclosing or using the personal information about Plaintiffs, and requiring Defendants to destroy all personal information about Plaintiff that Defendants have in the possession, custody or control.

18. Require Defendants to identify under penalty of perjury all manners how the personal information of Plaintiffs has been used or disclosed and confirming that all personal information about Plaintiffs has been destroyed.

19. Award monetary damages, the exact amount to be determined at trial, in an amount not less than the statutory-provided liquidated damages, for each Plaintiff and each member of the Class, of not less than $2500 for each separate violation of DPPA by Defendant under 18 U.S.C. §2724(b)(1);

20. Award punitive damages, the exact amount to be determined at trial, for Defendants' willful and reckless disregard of the DPPA and to deter such future violations, pursuant to 18 U.S.C. §2724(b)(2);

136

21. Require Defendants to pay pre-judgment interest and post judgment interest;

22. Award reasonable and actual attorney's fees and other litigation costs pursuant to 18 U.S.C. §2724(b)(3);

23. Grant any other relief that this Court determines is appropriate pursuant to 18 U.S.C. § 2724(4) and grant any other relief to which Plaintiff is entitled pursuant to Rule 54(c) of the Federal Rules of Civil Procedure;

24. An award of attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

25. All other relief the Court deems just.

Respectfully submitted this 15th day of February 2022.

PLAINTIFFS HEREBY DEMANDS A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.

s/ Kimberley Cy. Motley
MOTLEY LEGAL SERVICES
State Bar No.: 1047193
2206 Bonnie Butler Way
Charlotte, North Carolina 28270
Email : kmotley@motleylegal.com
Telephone : (704) 763-5413

Kathryn Knowlton
KNOWLTON LAW GROUP
State Bar No: 1032814
7219 West Center Street
Wauwatosa, WI 53210
Email: kate@knowltonlawgroup.com
Telephone: 414-202-2444

E. Milo Schwab
State Bar No.:
3000 Lawrence Street
Denver, CO 80205

**ATTORNEYS FOR PLAINTIFFS**

137