**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

Kathryn KNOWLTON et. al.,

     Plaintiffs,

     v.                    Case No. 20 CV 01660

CITY OF WAUWATOSA et. al,

     Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.    <u>INTRODUCTION</u>

The Driver's Privacy Protection Act ("DPPA"), codified in 18 USC § 2821, was originally enacted in reaction to a series of abuses meant to protect the privacy of personal information assembled by State Department of Motor Vehicles (DMVs). Understanding the need to protect the privacy of personal information compiled and maintained by DMVs, Congress created the DPPA. Congress understood that certain mechanisms were necessary to protect information found in the motor vehicle records of individuals, while also understanding that, in certain instances, the government should be able to obtain information for a limited purposes.

Here, Defendants Ratkowski and Roy violated the DPPA, when they obtained and/or disclosed Plaintiffs' personal information and/or highly restricted personal information without a permissible purpose. Defendant Roy, on January 7, 2021, disclosed over 500 pages of unredacted police reports, citations, confidential informant videos, and interrogation videos which he knew contained the personal information obtained from the motor vehicle records of 49 Plaintiffs. (*See* Plaintiffs' Statement of Proposed Facts ("PSPF") #24 : Exhibit 3 Plaintiffs Citations Disclosed by

1

Joseph Roy on 1/7/21 and Exhibit 4 – Plaintiffs Police Reports Disclosed by Joseph Roy, 1/7/21).

The documents Roy disclosed contained personal information obtained from motor vehicle records

such as names, driver identification numbers, addresses, dates of birth, telephone numbers, weight,

race, sex, height, eye color, and hair color. Defendant Roy disclosed this information on January

7, 2021 no fewer than sixteen times to members of the public. (PSPF #25: Exhibit 8, 1/7/2021

Joseph Roy Email) The disclosure of Plaintiffs' information served no permissible purpose and

was accordingly in violation of the DPPA.

Additionally, Defendant Dominick Ratkowski testified that on or around June 5, 2020 he

began compiling a list of individuals who were present at protests in Wauwatosa during the

spring/summer of 2020 which he referred to as the TPR Target List (the "Target List"). (PSPF #1:

Exhibit 5, 10/6/20 Email Ratkowski to Christian Berges). The Target List, included personal

information and highly restricted personal information as defined by the DPPA obtained from the

motor vehicle records of 48 Plaintiffs,[1] ("hereinafter the "Target List Plaintiffs"). (PSPF #3:

Exhibit 1 Target List) Specifically, the list as created by Ratkowski was comprised of information

he obtained from Plaintiffs' motor vehicle records such as their names, driver license photographs,

addresses, dates of birth, race, and sex. (PPSF #2) (*See* Exhibit 1 - Target List redacted)

Ratkowski also disclosed this Target List from June 5, 2020 until around October 7, 2022,

to *at least* 54 people, included but not limited to 18 Wauwatosa Police Department ("WPD")

employees and at least 34 persons who did not work for Wauwatosa, for no permissible purpose

under the DPPA. (PSPF 12: Exhibit 17 072621 Defendant Ratkowski Response to Interrogatory

No. 1).

---

[1] Appendix ___ lists the "Target List Plaintiffs," whose personal information was obtained and disclosed on the Target List.

2

As discussed further, *infra*, no dispute of material fact exists as to Ratkowski and Roy's disclosures and/or Ratkowski obtaining, using, and disclosing Plaintiffs' personal and highly restricted personal information. The DPPA specifically prohibits the actions of Roy and Ratkowski and creates a private right of action for any individual whose personal information is unlawfully disclosed. *See New Richmond News v. City of New Richmond*, 2016 WI App 43. 18 U.S.C.S. § 2724(a). Available remedies for violations of the DPPA are (1) actual damages, but not less than liquidated damages of $2,500; (2) punitive damages for willful or reckless violations; (3) attorney fees and costs; and (4) such other preliminary and equitable relief as the court determines to be appropriate. *See New Richmond News v. City of New Richmond*, 2016 WI App 43. ¶¶ 34-36, 370 Wis. 2d 75, 881 N.W.2d 339; 18 U.S.C. § 2724(b).

Summary judgment as to these two defendants' liability under the Act, therefore, is appropriate. Likewise, because no dispute of material fact exists regarding these two defendants deliberate violations of the DPPA, summary judgment as to the statutory penalties for these violations is also appropriate.

## II. APPLICABLE LAW

### A. The Driver's Privacy Protection Act Strictly Limits Law Enforcement Obtainment, Use, and Disclosures of Information From Motor Vehicle Records

The Driver's Privacy Protection Act, 18 U.S.C. § 2621 *et seq* (the "Act"), makes it unlawful "for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. §2722(a). The Act also provides a civil cause of action for those whose personal information is improperly obtained, used, or disclosed. 18 U.S.C. § 2724. To establish a DPPA violation, [a plaintiff] must prove that a person knowingly obtains, discloses, or uses personal and/or highly restricted personal

3

information, from a motor vehicle record, for a purpose not permitted. *See New Richmond News,* 2016 WI App 43, ¶¶ 34-36 (citing Wis. Stat. §346.70(4)(f)). *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015), cert. denied sub nom. *McDonough v. Anoka Cty.*, Minn., 136 S. Ct. 2388 (2016). Congress created the DPPA to address privacy concerns regarding the personal information held by state departments of motor vehicles. See *Maracich v. Spears*, 133 S. Ct. 2191, 2198 (2013). "Personal information" under the DPPA includes "an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . . ." 18 U.S.C. § 2725(3). Among that information, an individual's photograph or image, social security number, and medical and disability information is considered "highly restricted personal information." *Id*. at § 2725(4).

The statute lists fourteen "permissible uses" when a driver's personal information may be obtained and disclosed. *See* 18 U.S.C. § 2721(b)(1)–(14). Relevant here, such information may be obtained or disclosed "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). "Persons" whose conduct is subject to the DPPA specifically includes individuals, organizations, and entities. *Id*. at § 2725(2). The State and its agencies, however, are excluded from the definition of "persons" under the DPPA.

DPPA allows law enforcement to obtain, use, and disclose information, in "carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). This section, however, is not a broad authorization for law enforcement to access, use, or disclose personal information. In *Senne v. Vill. of Palatine, Ill.*, the defendant argued that "as long as it can identify a subsection of the law under

4

which some disclosure is permitted, any disclosure of information otherwise protected by the statute is exempt, whether it serves an identified purpose or not." 695 F.3d 597, 605 (7th Cir. 2012). The Seventh Circuit rejected that position, finding that 18 U.S.C. § 2721(b)(1) requires specificity and covers:

> [T]he actual information disclosed—i.e., the disclosure as it existed in fact--must be information that is used for the identified purpose. When a particular piece of disclosed information is not used to effectuate that purpose in any way, the exception provides no protection for the disclosing party. In short, an authorized recipient, faced with a general prohibition against further disclosure, can disclose the information only in a manner that does not exceed the scope of the authorized statutory exception. The disclosure actually made under the exception must be compatible with the purpose of the exception. Otherwise, the statute's purpose of safeguarding information for security and safety reasons, contained in the general prohibition against disclosure, is frustrated. *Id*. at 606.

### B. Wisconsin Open Records Does Not Satisfy the Requirement as a "Permissible Purpose" for Release of Otherwise Protected Information.

The DPPA does not permit the disclosure of personal information on the basis of a public records request. In *New Richmond News v. City of New Richmond*, the Wisconsin Court of Appeals ruled that the "state law exception" permits authorities to release traffic accident reports unredacted, because Wisconsin law specifically mandates that authorities provide the public with access to accident reports. *See New Richmond News v. City of New Richmond*, 2016 WI App 43, ¶¶ 34-36, 370 Wis. 2d 75, 881 N.W.2d 339 (citing Wis. Stat. §346.70(4)(f)). The court further ruled that responding to public records requests was not an "agency function" for purposes of the DPPA, such that authorities may *not* release unredacted incident reports containing personal information unless a different DPPA exception applies.[2]

Wisconsin Stat. 19.36(6) specifies the open records law, explicitly establishing guardrails pertaining to the release of personal information:

---

[2] *Id*.

5

"If a record contains information that is subject to disclosure under s. 19.35(1)(a) or (am) and information that is not subject to such disclosure, the authority having custody of the record shall provide the information that is subject to disclosure and *delete the information that is not subject to disclosure from the record before release*." *Id*., emphasis added.

In *Maracich v. Spears*, attorneys submitted FOIA requests and received thousands of persons personal information including their addresses and phone numbers without their consent from the South Carolina DMV in order to solicit clients for a lawsuit, which the court held was not a permissible purpose within the meaning of the DPPA. *Maracich v. Spears,* 570 U.S. 48 (2013).

On January 7, 2021, WPD Lieutenant Joseph Roy was oversaw the Open Records Division for the WPD, which included supervising other staff members. (ECF #263 Jt. Stipulation Findings of Fact #3) (See Exhibit 2, 7/27/21 Deposition of Joseph Roy p. 20). Roy testified that in order to get access to a person's DMV records, the accessor had to be "trained and certified." (*Id.* at 27). He stated that the training is sponsored by the Wisconsin Department of Justice and everyone is required to take it and pass a test in order to get the unique username and password to have access and run DMV records of people. (*Id*. at 28). This training is ongoing and a person has to go through this training every two years. (See Exhibit 9, 7/26/21 Deposition of Dominick Ratkowski, pg. 42) Despite completing numerous trainings regarding the DPPA and open records for years, taking tests, being certified, and knowing that Plaintiffs' personal information was amongst the hundreds of documents released, Defendant Roy disclosed their information publicly, and without redaction. This disclosure was made to no fewer than sixteen people, including at least ten people who did not ask for *any* of Plaintiffs' information. (See Exhibit 13, Defendants Table of Open Records Disclosures)(Exhibit 12, Open Records Requests)  As in *Maracich,* the disclosure of persons' personal and highly restricted information to members of the public who would not otherwise have

had access to such information from the DMV is precisely what the DPPA meant to protect against. *See Maracich*, 133 S. Ct. at 2198.

### III. RELEVANT FACTS

**A.    Dominick Ratkowski Creates the TPR TARGET LIST**

Protests erupted around the country, after the murder of George Floyd on May 25, 2020. The protests were not a single, mass demonstration, but occurred throughout the spring and summer of 2020.

In response to these mass exercises of the right to peaceably assemble, the Wauwatosa Police Department began monitoring and identifying the protestors participating in protests. (Exhibit 9 – 7/26/21 Deposition of Dominick, p. 57-59)  As part of this, Dominick Ratkowski, an employee and civilian crime analyst for the City of Wauwatosa, created what he labeled in his email to Christian Berges on October 6, 2020 as the "TPR Target List" (hereinafter "Target List"). ( Exhibit 1, Target List).

| From: | Dominick Ratkowski |
|---|---|
| To: | Christin Berges |
| Subject: | TPR target list |
| Date: | Tuesday, October 6, 2020 4:27:20 PM |
| Attachments: | Protesters invovled-Working copy.pdf |

(PSPF #1: Exhibit 5 – 10/6/20 Dominick Ratkowski email to Christin Berges)

Ratkowski labeled persons whom he put on the list as members of The People's Revolution "TPR." (Exhibit 6 – 6/23/21 Deposition of Dominick, p. 82)(Exhibit 7, 11/10/20 Email from Ratkowski to Jodi Borchardt and Rachel Seils) (Exhibit 11, 11/10/20 Email from Ratkowski to Andrew Willis and Susan Conley). The Target List contained personal information and/or highly restricted personal information of over two hundred people, including adults, juveniles, and some

7

elected officials [though only members of Democratic Party]. (Exhibit 1) The information obtained from motor vehicle records included names, drivers' license photos, home addresses, date of birth, race, and gender. (*Id.)*

**B.** **Dominick Ratkowski Knowingly <u>Obtained</u> 48 Plaintiffs' Information from their Wisconsin DMV Driver's License Records**

Dominick Ratkowski, created the Target List, which consists of persons' who he identified and/or were identified to him, as protesting in Wauwatosa. None of the Plaintiffs gave Ratkowski their written consent to obtain or disclose their personal information. (PPSF #6) (Exhibit 9, p. 101).

Defendant Ratkowski did not attend any of the protests and had no first-hand knowledge of any legitimate basis for obtaining Plaintiffs' personal information and putting this on the Target List. Rather, Ratkowski testified that people put on the list were:

> Observed and being tagged in a photo at a protest. Posting a picture of themselves at a protest. Essentially, anyone that was identified being at a protest either self-identification, which was probably most of these people being self-identified as being involved in a protest.

(*See* Exhibit 6, 6/23/21 Deposition of Dominick Ratkowski, pg. 83)

This lack of personal knowledge confirms that in addition to the photographs and addresses, the other biographical information incorporated into the Target List was also obtained from the motor vehicle records.(Exhibit 1) Ratkowski confirms that he solely worked off of social media in determining who he decided to put on the list, stating:

> I work with the detectives to look through social media to see who is being tagged in the posts. And then this list was created off of that who we were able to – who I was able to working with them identify based off of social media posts."

(*Id.* at 85).[3]

---

[3] See Declaration of Kimberley Motley, showing a chart depicting the 48 Target List Plaintiffs' information as obtained and used by Ratkowski in creating the Target List. (Exhibit 1).

8

On July 27, 2021, Defendant Ratkowski described how he obtained and used Plaintiffs'
highly restricted driver's license photographs from DMV records through the Department of
Transportation ("DOT") to include this on the Target List:

> Q.  Now, let's talk about the picture to the left that came from – that you got from the
> department of transportation. How did you get that picture from the department of
> transportation put in this document?
>
> A.  I searched her name in the DOT.
>
> Q.  Okay. And then what?
>
> A.  And I click the button that says, "run DOT records."
>
> Q.  Okay. And then what?
>
> A.  And then the photo comes up
>
> Q.  Okay.
>
> A  And I copy and paste.
>
> Q  So you copied from the DOT record?
>
> A  Correct.
>
> Q  Pasted it on your desktop?
>
> A  Correct.
>
> Q  And then put in this document? ("the Target List")
>
> A  I didn't put it on the desktop. I copied it from the DOT and pasted it into here.
> Q  Okay. And so that's how you did it for all the DOT pictures that are on here. You
> copied it from the DOT website or the internal database and then pasted it and
> then you put it on, you know, in this protest -- in this list?
>
> A:  Correct

(PSPF #5: Exhibit 9, pg. 50 & 51)

When Ratkowski was asked how he obtained the information from the DOT, he stated that
he used his username and password to access the internal DOT website. (*Id.* at 46 & 47). Once in

the DOT system, he obtained Plaintiffs' personal and highly restricted information by typing in their names. (*Id.* at 47):

> Q. Now, you mentioned before that you used the DOT computers to get people's driver's DMV records, correct?
>
> A. Correct.
>
> Q. Okay. And within that system is that how you g(o)t people's addresses?
>
> A. Correct. (*Id at* 47)

The following chart shows the 48 Target List Plaintiffs' information Ratkowski put on the Target List. (Exhibit 1) *(See* Declaration of Kimberley Motley)

## 2nd CLAIM FOR RELIEF - VIOLATION OF DPPA - 48 Plaintiffs
## DOMINICK RATKOWSKI- DOT Obtainments on TARGET LIST

| No. | LAST | NAME | DL/STATE ID - PHOTO | ADDRESS | DOB | SEX | RACE |
|---|---|---|---|---|---|---|---|
| 1 | Aaron | Andrew | X | X | X | X | X |
| 2 | Agnew | Robert | X | X | X | X | X |
| 3 | Ahmed | Kamila | X | X | X | X | X |
| 4 | Baldwin | Isiah | X | | X | | |
| 5 | Bogenberger | Jacqueline | X | X | X | | |
| 6 | Booker | Lavita | X | X | X | X | X |
| 7 | Burrell | Rebecca | X | X | X | X | X |
| 8 | Cich | Raine | X | X | X | X | X |
| 9 | Coleman | Khalil | | X | | X | X |
| 10 | Cole | Tayhudah | X | X | X | X | X |
| 11 | Cole | Talevia | X | X | X | X | X |
| 12 | Cole | Tracy | X | X | X | X | X |
| 13 | Conklin | Steven | X | X | X | X | X |
| 14 | Cross | Lauren | X | X | X | | |
| 15 | Fanning | Erik | X | X | X | X | X |
| 16 | Fenner | Jessica | X | X | X | X | X |
| 17 | Foster | Breon | X | X | X | | |
| 18 | Groppi | Christine | X | X | X | | |
| 19 | Grosskreutz | Gaige | X | X | | X | X |
| 20 | Hayes | Joseph | | | X | X | X |
| 21 | Jordan | Adante | X | X | X | X | X |
| 22 | Kachelski | Mary | X | X | X | | |
| 23 | Kafer | Sean | X | X | X | X | X |
| 24 | Koepp | Joseph | X | X | X | X | X |
| 25 | Larry | John | X | X | X | X | X |
| 26 | Larson | Alex | X | X | X | X | X |
| 27 | Larson | Sonora | X | X | X | | |
| 28 | Mayes | Vaun | X | X | X | X | X |
| 29 | Nilssen | Molly | X | X | X | X | X |
| 30 | Page | Shawn | X | X | X | | |
| 31 | Palmer | Carmen | X | X | X | X | X |
| 32 | P. | C. | | X | X | X | X |
| 33 | P. | D. | | X | X | X | X |
| 34 | Rodriguez | Oscar | X | X | X | X | X |
| 35 | Rogers | Rosalind | X | X | X | | |
| 36 | Schiweitzer | Madeline | X | X | X | X | X |
| 37 | Smith | Mariah | X | X | X | X | X |
| 38 | Sparks | Pete | X | X | X | X | X |
| 39 | Stark | Tiffany | X | X | X | X | X |
| 40 | Vega | Angel | X | X | X | | |
| 41 | Vitucci | Gabriella | X | X | X | X | X |
| 42 | Walls | Tristiana | X | X | X | X | X |
| 43 | Walton | Oscar | X | X | X | X | X |
| 44 | Welch | Jayden | X | X | X | X | X |
| 45 | Welch | Britta | X | X | X | X | X |
| 46 | Wilborn | Brandon | X | X | X | X | X |
| 47 | Wilson | Trisha | X | X | X | X | X |
| 48 | Wojnar | Kathelyn | X | X | X | X | X |

### C. The Uncontroverted Record Shows that Defendant Ratkowski Disclosed Plaintiffs' Information from their Wisconsin DOT Driver's License Records to *at least* 54 Persons

Defendant Ratkowski disclosed the information he collected on Plaintiffs from their motor vehicle records beginning on approximately June 5, 2020 and continuing until October 7, 2022, - the date this Court issued a protective order. (ECF #213)[4] This protected information was disclosed -- often unsolicited -- for over two years to at least one hundred people that are known, including City of Wauwatosa employees and various other third parties outside of the WPD. (ECF 213 10/7/20). Ratkowski specifically, made disclosures to at least fifty-four people including to eighteen (18) persons who work for the City of Wauwatosa and to at least thirty-four (34) various other third parties who do not work for Wauwatosa. (PSPF #12: Exhibit 17 Interrogatory #1 Response 7/26/21) Ratkowski created the Target List and put people on it who were exercising their constitutional right to protest in the United States of America. Ratkowski then used this list to monitor their activity primarily on social media. (Exhibit 6, pg. 73, 74, & 85).

Ratkowski asserted in his deposition that "it's appropriate for the government to keep lists of people that attend protests" – despite no allegation of illegal conduct. (PSPF #7: Exhibit 6 at 83 & 85) He also agreed that he "does not think it's an infringement of their rights" to put them on such lists. (*Id* at 85). Though a City of Wauwatosa employee, as a civilian crime analyst for the Wauwatosa Police Department, Ratkowski created the Target List on his own and no one stopped him from disclosing and disseminating it. (*Id* at 82) (ECF 263 Joint Stipulated Facts #4) Being put on the Target list "did not require (a person) to have been violent" nor did it require that they had potentially "committed a crime." (PSPF #7: *Id.* at 83) Defendant Ratkowski's Target List, was

---

[4] The Protective Order in relation to the Target List created and disclosed by Defendant Dominick Ratkowski and the Dropbox link created and disclosed by Defendant Roy was granted on October 7, 2022 and amended on October 31, 2022. See ECF #233.

based on "mere affiliation with a protest" and Plaintiffs were put on it "simply based on affiliation." (PSPF #8: Exhibit 6 at 83).

Once Ratkowski obtained Plaintiffs' DOT information and created the Target List, he shared it with other Wauwatosa Police Officers including his supervisors, Shane Wrucke and former Chief Barry Weber. No one, including Ratkowski's supervisors employees stopped him from disclosing the list, and not one person thought the list was inappropriate. In fact, they liked it and even gave him information to add to it. (*Id* at 105)(Exhibit 9, pg. 15)   There were no parameters on who Ratkowski decided to put on the list and he was the only one who could add people and never deleted anyone off of the list. (PSPF #13: Exhibit 6, pg. 101-102)  Expansion was inevitable, as in his deposition, Ratkowski describes various Wauwatosa officers contacting him with license plates of vehicles parked near protests who he would look up and add their personal information to the Target List:

> A.    While the protest were going on officers may have observed a vehicle, so they would tell me about that.
>
> Q.    Okay. Well, they told you in some detail here. They would just give you the make, model and license plate; is that right? And then you found out who it was registered to, I assume?
>
> A    Correct. Or they would run it themselves. I don't know what their process was to get me that information. (*Id*. at 127)

Ratkowski widely distributed the Target List, and sent out at least twenty-one emails, often unsolicited and to people whom he didn't even know, while repeatedly disregarding Plaintiffs required protections pursuant to the DPPA. (Exhibit 17, 7/26/21 Dominick Ratkowski Response to PL 1st set of Interrogatories, Interrogatory #2 Response).

Often when Ratkowski shared the list he labeled the persons on it as "known People's Revolution Members," whom he had no reason to believe were engaged in anything other than

13

peaceful protests after the murder of George Floyd. (PSPF #16: Exhibit 7 – 11/10/20 and Dominick Ratkowski Email to Jodi Borchardt and Rachel Seils; PSPF #17: Exhibit 11 – 11/10/20 Dominick Ratkowski Email to Andrew Willis and Susan Conley).

The "Target List" contained "personal information" and "highly personal information" as defined by the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §2721 et. seq., with no regard to 48 Target List Plaintiffs' -- including two juveniles -- privacy rights. (Exhibit 1) The list had no designations on it regarding confidentiality, and Ratkowski often sent the list out unsolicited, encouraging people to widely share Plaintiffs' sensitive information. (*Id*).

On July 27, 2021, Ratkowski testified that he shared the Target List with, "I believe 10 to 12 different agencies." (PSPF #11: Exhibit 9 at 28 & 29). He further testified it was shared with:

A.    "MPD, the Milwaukee County Sheriff, Marquette University, Oak Creek, Racine Police Department, I believe, Racine Sheriff's, Greenfield Police Department, Brookfield. I might be missing one or two. I'm not sure."

(PSPF #11: Exhibit 9, pg. 28 & 29)

Shortly thereafter, Ratkowski admitted to also sharing the Target List with the Burlington Police Department and the Milwaukee County District Attorney's Office. (PSPF #11: *Id.* at 29) To this day, Ratkowski does not know all the people to whom he disclosed the Target List nor where the list went to after he distributed it with the encouragement to "pass this along." (PSPF #15: Exhibit 10, 9/24/20 Dominick Ratkowski email to Brian Conte)

When the City of Wauwatosa was asked "how many people total from May 25, 2020 to present has the protestor list been disclosed to?" No specific answer was provided. (Exhibit 17 : DF Response to PL 6th set of Discovery Interrogatory #2). The fact of the matter is, neither Defendant Ratkowski nor the City of Wauwatosa has any idea as to all the persons and entities who have the list as a direct result of Ratkowski's conduct. It is reasonable to infer that at a

minimum every single person who works for the City of Wauwatosa, as well as, every single person who works at the at least twelve other agencies where Ratkowski admits disclosure, has access to Plaintiffs' personal information. It is chilling to accept the inevitable, that due to this disclosure, both in scope and method, it is impossible to assess and redress the extent of the actual damage.

### D. Ratkowski Lacked A Permissible Purpose When he Knowingly Obtained and Used Plaintiffs' Personal Information

Ratkowski did not have a permissible purpose to obtain the Plaintiffs' personal and highly restricted information from their motor vehicle records. Every time Ratkowski obtained Plaintiffs' information and then used that information to put on the Target List, the DPPA required him to have a permissible purpose to justify obtaining, using, and disclosing Plaintiffs' personal information. On October 7, 2022 Plaintiffs specifically asked Ratkowski why he obtained each individual Plaintiffs' information. He responded with a conclusory non-answer:

> Interrogatory 9c.    for all of the dates that you obtained Plaintiffs' personal information and/or highly personal information from the Department of Transportation please identify why you obtained such information.

> Ratkowski Response: Objection. This Interrogatory is vague as to what information is being referenced. Subject to and without waiving the foregoing objection, any information obtained from the Department of Transportation for any person on the Active Protestors List was always obtained for law enforcement purposes. See also Dominick Ratkowski's deposition testimony of July 27, 2021 (pg. 82-85, 101, 105, 113, and 125)
> (Exhibit 14 -Def Response to PL 4th Set of Discovery, Interrogatory 9c - 11/4/22)

This answer provides no factual basis upon which the Court can rely in making a determination as to whether there was a permissible purpose. Instead, Defendant offers only a legal conclusion. However, legal conclusion are just that: conclusions. They are not facts and as such, cannot create a dispute of fact. From this refusal to provide a specific basis for obtaining each

Case 2:20-cv-01660-NJ   Filed 12/19/22   Page 15 of 31   Document 269

Plaintiff's information, the Court must conclude that Ratkowski had no legitimate basis or permissible purpose for his conduct.

### E. Ratkowski's Intent Behind Knowingly Disclosing Plaintiffs' Personal Information

Ratkowski disclosed the Target List – and all of the information it contained -- to no fewer than 54 people, including to at least 34 people, who did not work for Wauwatosa. (PSPF 12: Exhibit 17, 072621 Defendant Ratkowski Response to Interrogatory No. 1).

Ratkowski often encouraged recipients to pass the Target List along to others, ignoring Plaintiffs' privacy rights pursuant to the DPPA. (PSPF # 15: Exhibit 10). Every time Ratkowski shared the list he was required to provide a permissible purpose to justify the individual disclosure of Plaintiffs' information. On October 7, 2022 Plaintiffs specifically asked Ratkowski why he disclosed each individual Plaintiffs' information. He responded with a non-answer:

> Interrogatory 9e : for all of the dates that you disclosed Plaintiffs' personal information and/or highly personal information from the Department of Transportation please identify for each person and the date that you disclosed such information why you disclosed it.
>
> Ratkowski Response :Objection. This Interrogatory is vague as to what information is being referenced. Subject to and without waiving the foregoing objection, information on the Active Protestors List was always disclosed by me for law enforcement purposes. See also Dominick Ratkowski's deposition testimony of July 27, 2021 (pg. 82-85, 101, 105, 113, 118, and 125)
>
> (Exhibit 14 -Def Response to PL 4th Set of Discovery, Interrogatory 9e - 11/4/22)

As discussed above, a legal conclusion cannot create a dispute of fact. Defendant's refusal to provide any factual basis to support a permissible purpose behind his disclosures of Plaintiffs' personal information protected by the DPPA operates as an admission that he possessed no permissible purpose for his conduct.

### 1. On September 24, 2020 Defendant Ratkowski disclosed Plaintiffs' information to Brian Conte.

On September 24, 2020 Ratkowski sent an email to Brian Conte, a Milwaukee County employee, with the subject line "The People's Revolution" and told him to, "*Feel free to pass this*

16

*(Target List) along to who you think would find it useful."* (PSPF#15: Exhibit 10). There were no communications from Mr. Conte requesting this information and no explanation from Defendant Ratkowski regarding the sensitivity of the information. The disclosure of this information on September 24, 2020 did not serve a legitimate law enforcement function. (PSPF #15: Exhibit 10)

> **2.      *On November 10, 2020 Defendant Ratkowski disclosed Plaintiffs' information to Jodi Borchardt, Rachel Seils, Andrew Willis, and Susan Conley***

On November 10, 2020, at 7:28a.m., again unsolicited, Defendant Ratkowski affirmatively and voluntarily emailed the Target List to Jodi Borchardt and Rachel Seils, who presumably works for the City of Burlington, Ratkowski wrote in an email in relevant part,

> *"I saw that Burlington had a disruptive protest at the school board meeting last night. I attached a list of known Peoples Revolution members."* (PSPF Para. 16: Exhibit 7)

Less than an hour after Ratkowski sent the Target List by email to the two persons in City of Burlington, -- again unsolicited – he sent an email with the Target List attached to two *additional* persons, Andrew Willis and Susan Conley, presumably who work for Racine County. (PSPF #17: Exhibit 11 – Dominick Ratkowski Email re: Burlington Meeting 11/10/20)

There were no communications from Jodi Borchardt, Rachel Seils, Andrew Willis, and Susan Conley requesting this information and no explanation from Defendant Ratkowski regarding the sensitivity of the information. *(*PSPF #16: Exhibit 7 – 11/10/20 Ratkowski email to Borchardt and Seils;  PSPF #17: Exhibit 11 – 11/10/20 Ratkowski email to Willis and Conley*)*  The disclosure of this information to the four persons on November 10, 2020 did not serve a legitimate law enforcement function..

> **3.      *On July 13, 2020 Defendant Ratkowski disclosed Plaintiffs' information to Adam Behnke***

On July 13, 2020, unsolicited, Defendant Ratkowski voluntarily emailed the Target List to Adam Behnke who presumably works for the City of Brookfield, Ratkowski wrote in his email:

> "I am thinking you guys might want this as well. I am compiling a list of people who are consistently involved in the protests. If you guys have names please let me know." (PSPF # 14: Exhibit 15, 7/13/20 Ratkowski Email to Adam Behnke)

Adam Behnke did not request this information and Ratkowski provided no guardrails to protect the sensitivity of the information that he was providing. The dissemination of this information on July 13, 2020 did not serve a legitimate law enforcement function. (Id.)

### F. Defendant Roy's Multiple Disclosures of Plaintiffs' Protected Information.

On January 7, 2021, Joseph Roy shared a drop box link that contained unredacted documents which included over 500 pages of police reports; 66 citations; and hours of videos, including that of confidential informants. (PSPF #22: Exhibit 8 – January 7, 2021 Joseph Roy Open Records Email) Amongst that mountain of information, Roy disclosed were 49 Plaintiffs' personal information found on the hundreds of pages of police reports and in the 66 pages of WPD citations for Plaintiffs which contained information from their motor vehicle records in violation of the DPPA. (Exhibit 3 Plaintiffs Citations Disclosed) (Exhibits 4 Plaintiffs Police Records)The personally identifying information was obtained from their motor vehicle records for a use not permitted within in the DPPA and without the express consent of Plaintiffs. (PSPF #28: Exhibit 2, pg. 127).

The email address list of disclosures by Roy on January 7, 2021 is reproduced in this image.

18

**Open Records Request Response**

"Joseph Roy" [jroy@wauwatosa.net]

Sent: 1/7/2021 5:24 PM

To: "'tony.aria@tmj4.com'" <tony.aria@tmj4.com>, "'blodestone@gmail.com'" <blodestone@gmail.com>,
"'Lezlie.Johnson@tmj4.com'" <Lezlie.Johnson@tmj4.com>, "'colleenmariehenry@hotmail.com'"
<colleenmariehenry@hotmail.com>, "'hmintz@wisn.com'" <hmintz@wisn.com>, "'eschneider@nexushelps.com'"
<eschneider@nexushelps.com>, "'peteasparks@gmail.com'" <peteasparks@gmail.com>, "'isiah@wisconsinexaminer.com'"
<isiah@wisconsinexaminer.com>, "'bryan.polcyn@FOX.com'" <bryan.polcyn@FOX.com>, "'mcollins@aclu-wi.org'"
<mcollins@aclu-wi.org>, "'swaleslaw@gmail.com'" <swaleslaw@gmail.com>, "'mthomsen@gtwlawyers.com'"
<mthomsen@gtwlawyers.com>, "'isiah@wisconsinexaminer.com'" <isiah@wisconsinexaminer.com>,
"'isiah@wisconsinexaminer.com'" <isiah@wisconsinexaminer.com>, "'dmorganadams@gmail.com'"
<dmorganadams@gmail.com>, "'dmorganadams@gmail.com'" <dmorganadams@gmail.com>,
"'bgutenschwager@gmail.com'" <bgutenschwager@gmail.com>, "'kmotley@motleylegal.com'" <kmotley@motleylegal.com>,
"'jfg@hallingcayo.com'" <jfg@hallingcayo.com>

(PSPF #24: Joseph Roy Email Disclosures on 1/7/21 Exhibit #8)

Defendant Roy knew that the information contained on citations and the police reports
came from the DOT. Roy acknowledged that for citations that persons were given which contain
their addresses and driver's license numbers that these are "two pieces of information (that) are
retrieved through a person's driver's license record." (PSPF # 29: Exhibit 2, pg. 104 & 105) Roy
testified how citations are created at the WPD and that he knew that personal information such as
a person's address, and driver's license identification numbers come from the Wisconsin DOT. In
trying to get an understanding on how personal information is put on citations undersigned counsel
used Plaintiff Bogenberger as an exemplar of Plaintiffs who received a citation that was publicly
released in questioning Roy at his deposition.

Q.      Okay. And with regards to this ticket Exhibit No. 4, there is Ms. Bogenberger's
        home address, right?

A.      Mm-hmm.

Q.      There's her –

A.      Yes. Sorry.

Q.      There's her driver's license identification card number?

A.      Yes.

Q.      Those two pieces of information are retrieved through a person's driver's license
        record, correct?

A.     Correct.

Q.     Okay. And that's typically, something that the person at the station does after a person is arrested.

A.     "This system will auto fill the information from the DOT record. The two systems --- the two computer systems talk to each other." He continued in his testimony. "When they run and run, that means put them through the system. That system we just went through that DOT system, when they run them that's – that software captures that information and imports it into this software. So it's up to the officer to verify that the information is correct, but it is auto-filled, if you will from the DOT." (*See* Exhibit 2, pg. 105)

When asked specifically whether Attorney Knowlton's home address, which was amongst the personal information released by Joseph Roy on January 7, 2021 should go to the public he stated:

A.     Generally, a home address. Again, to the public we would not expect it to go to the public. (PSPF # 32:Exhibit 2, pg. 95)

Defendant Roy knew, therefore, that he was required to redact Plaintiffs' home addresses before publicly releasing such information obtained from motor vehicle records but despite that knowledge he disclosed it anyway. (Id.)  Roy also confirmed that he knows that biographical information found on citations in particular comes from the DOT:

Q     What are some acceptable reasons why someone should be looking at people's DMV records?

A     Well, I can't provide them all, but I can provide some that we routinely use people's DMV records to – for investigative purposes. Identifying somebody, finding an address, a height and weight, perhaps a date of birth. All of those normal pieces of biographical information contained in a DOT record. We do it primarily for investigations. It would have to be investigatory in some fashion. (*See* Exhibit 2, pg. 95)

The 66 pages of citations that were disclosed by Roy contain Plaintiffs' personal information from their motor vehicle records such as their names, addresses, phone numbers, drivers identification numbers, height, weight, sex, race, eye color and hair color. (PSPF #25:

Exhibit 3 - 1/7/21 Citations Disclosed by Joseph Roy) (Exhibit 4 - 1/7/21 Police Reports Disclosed by Joseph Roy)

### G. Defendant Roy's Intent Behind Knowingly Disclosing Plaintiffs' Drivers Information on January 7, 2021

In his January 7, 2021 email, Defendant Roy specifically stated that, "The documents and videos are being provided to you unredacted." (*See* Exhibit 8, Joseph Roy Email 1/7/21) Sharing Plaintiffs' personal information based on an open records request is not only a violation of the DPPA, but is also a violation of Wisconsin Statute19.36(6). Wisconsin Stat. 19.36(6) provides,

> "If a record contains information that is subject to disclosure under s. 19.35(1)(a) or (am) and information that is not subject to such disclosure, the authority having custody of the record shall provide the information that is subject to disclosure and *delete* the information that is not subject to disclosure from the record before release."

Defendant Roy also did not have consent to release any of the Plaintiffs' personal information. (PPSF #28: Exhibit 2 –7/26/21 Deposition of Joseph Roy– p. 127).

At his July 26, 2021 deposition, Defendant Roy testified:

> Q: Is there anyone that you sent this open records request response to that you do know?
>
> A K. Motley.
>
> Q That's it?
>
> A Yes, Ma'am. Those e-mail addresses come from the records requests. When those individuals request records, that's where I get those e-mail addresses from. (PSPF #33: Exhibit 2, pg. 118)

Plaintiffs received the open records requests of fifteen of the sixteen persons whom Defendant Roy claimed requested information.[5] (Exhibit 12 Open Records Disclosure) (Exhibit 13, DF Table of Open Records Disclosures from 7/2/20 – 1/7/21). Of the sixteen persons

---

[5] It should be noted that Joseph Roy also emailed Attorney Motley in the January 7, 2021 disclosure, even though Motley also did not request the information disclosed, Plaintiffs are not seeking damages for this disclosure .

Defendant Roy emailed, at least **ten** people did not request **any** of Plaintiffs' information, including one person who did not request any information at all. Not one of the sixteen people requested all the information that was given to them by Defendant Roy. (PSPF #39 – 52: Exhibit 12 Open Records Disclosure ; Exhibit 13, DF Table of Open Records Disclosures from 7/2/20 – 1/7/21).

Even if anyone specifically asked for all of Plaintiffs' personal information that was given, pursuant to Wisconsin Open Records Law that information should not have been provided to them.

Providing the ten people who did not request *any* of Plaintiffs' information in their open records requests is a clear violation of the DPPA. Bottomline is that if Plaintiffs' information were not requested then it's not an open records request. Below is an abridged table illustrative of what was requested and not requested, but sent to fifteen persons by Defendant Roy on 1/7/21. (Decl. Kimberley Motley) Exhibit 12 Open Records Disclosure ; Exhibit 13, DF Table of Open Records Disclosures from 7/2/20 – 1/7/21.

| WHO REQUESTED | INFO REQ. | INFO GIVEN & NOT REQUESTED | EXHIBIT |
|---|---|---|---|
| 1. blodestone@gmail.com | No Requests | ***Disclosures given & not requested*** *incl. – forty-eight (48) Citations regarding PL and hundreds of pages of Police Reports containing Plaintiffs DOT info such as:*<br><br>*Names, addresses, phone numbers, DOB, height, weight, sex, drivers identification numbers, eye color, hair color, & race* | NONE |
| 2. dmorganadams@gmail.com<br>3. bgutenschwager@gmail.com<br>4. jfg@hallingcayo.com<br>5. hmintz@wisn.com<br>6. colleenmariehenry@hotmail.com<br>7. eschneider@nexushelps.com<br>8. swaleslaw@gmail.com<br>9. tony.aria@tmj4.com<br>10. mcollins@aclu-wi.org | Did Not request ANY of 49 Plaintiffs info Disclosed | ***Disclosures given & not requested*** *incl. – forty-eight (48) Citations regarding PL and hundreds of pages of Police Reports containing Plaintiffs DOT info such as:*<br><br>*PL names, addresses, phone numbers, DOB, height, weight, sex, drivers identification numbers, eye color, hair color, & race* | Exhibit 12<br><br>pgs. 1, 6-8, 22, 25-28, 31 35, 36, & 37 |
| 11. mthomsen@gtwlawyers.com | Info related to Mariah Smith for 9/30/20 | *Same as above (Req. 1-10) – re; all citations & other Police Reports. Only 6 pages of Police Reports given regarding Smith were relevant to request* | Exhibit 12 Pg. 39 & 40 |
| 12. peteasparks@gmail.com | Info related to his arrest on 10/8/20 in Wauwatosa | *Same as above (Req. 1-10) re; all citations & other Police Reports. Only 4 pages total incl, 1 citation and 3 pages of police reports given were relevant to request* | Exhibit 12, pg. 41 |
| 13. Lezlie.Johnson@tmj4.com | Info pertaining incidents in Wauwatosa on 10/7/20 - 10/8/20 | ***Disclosures Given & not requested Incl.*** *– thirty-eight (38) Citations regarding PL and hundreds of pages of Police Reports containing Plaintiffs DOT info* | Exhibit 12, pg. 43, 44, 46, & 47 |
| 14. bryan.polcyn@FOX.com | Info pertaining incidents in | ***Disclosures Given & not requested Incl.*** *– twenty-eight (28) Citations regarding PL and hundreds of pages of Police Reports containing Plaintiffs DOT info* | Exhibit 12, pg. 52-56 |

## V.    ARGUMENT

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See *Anderson*, 477 U.S. at 248.

The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric*

23

*Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services*, Inc., 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc*., 330 F.3d 991, 994 (7th Cir. 2003)).

Here, no dispute of material fact exists that Defendant Ratkowski used and obtained protected driver's license information of the 49 Plaintiffs for no permissible purpose. The record also contains no dispute of material fact Defendants Ratkowski and Roy disclosed the Plaintiffs' driver's license information for no permissible purpose. Therefore, summary judgment on their liability and the applicable statutory damages for these DPPA violations is proper.

### A.     The Record Supports Summary Judgment on Defendant Ratkowski's Liability Under the DPPA.

"The DPPA creates a private right of action for any individual whose personal information is unlawfully disclosed. See id., § 2724(a) ("A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains". *See New Richmond News v. City of New Richmond*, 2016 WI App 43, 86, 370 Wis. 2d 75, 881 N.W.2d 339 (citing Wis. Stat. §346.70(4)(f)). *McDonough v. Anoka Cty*., 799 F.3d 931, 945 (8th Cir. 2015), cert. denied sub nom. *McDonough v. Anoka Cty.*, Minn., 136 S. Ct. 2388 (2016).

24

Ratkowski clearly established that he obtained Plaintiffs' information based on their participation in protests after the murder of George Floyd. He testified that he specifically obtained their DOT photos on the left of the Target List and their addresses from Plaintiffs' DOT records and provided a step-by-step guide in how he obtained this information. (PSPF #5: Exhibit 9 - Deposition of Dominick Ratkowski 7/27/21 pg. 47, 50, & 51).

No dispute of material facts exists regarding Ratkowski's lack of justification for obtaining these records. Ratkowski accessed and used Plaintiffs' DOT information simply because they had participated in the peaceful exercise of their First Amendment rights.

Defendant Ratkowski disclosed Plaintiffs' information at least six times on July 13, 2020, September 24, 2020, and on November 10, 2020 for a use not permitted pursuant to the DPPA. Ratkowski was given the opportunity, as to each Plaintiff, to explain why he disclosed their information. Instead of specifically answering the question for each Plaintiff when asked, Ratkowski responded with a general answer of, "information on the Active Protestors List was always disclosed by me for law enforcement purposes." (Exhibit 14 : PL 3rd Request for Interrogatories to Defendant Ratkowski). This circular non-answer establishes his lack of a specific purpose for each disclosure.

Ratkowski's actions and his answers are the same explanations that flew in the face of *Senne*, in which the Seventh Circuit expressly rejected in *Senne, supra*. 695 F.3d at 605. The court further noted that in the Congressional records, Senator Harkin qualified that the exception for law enforcement use "'is *not a gaping loophole in this law*.'" *Id. at 608*. (quoting 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen. Harkin)). Rather, the exception "'provides law enforcement agencies with latitude in receiving and disseminating this personal information,' when it is done 'for the purpose of deterring or preventing crime or other legitimate law

enforcement functions.'" *Id*. at 608 (quoting 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen. Harkin)) (emphasis in original). Thus, "[g]iven the concern of Congress for these safety and security issues, the disclosed information actually must be used for the purpose stated in the exception." *Id*. at 609.

Defendant Ratkowski's response that his permissible law enforcement purpose was based on a "permissible law enforcement purpose" is precisely the "gaping loophole" that the Seventh Circuit has rejected.

Defendant Ratkowski obtained and disclosed from June 5, 2020 to October 7, 2022, Plaintiffs' "highly restricted personal information," in the form of their highly restricted driver's license photos and, as Ratkowski testified, photos that he "copied [from the DOT] and pasted into here (the Target List)." (PSPF # 5:Exhibit 9, pg. 50 & 51). The DPPA "provides even greater protection to a special class of data referred to as "highly restricted personal information" 18 U.S.C. § 2721(a)(2)." *Senne* 695 F.3d at 606. As the Seventh Circuit stated in *Senne*,

> Clearly, this section recognizes the government's legitimate need for broader access to personal information than the statute otherwise provides. Nevertheless, it does not provide unlimited authority for law enforcement to access or disseminate the information. Instead, the statute merely allows that certain entities, including law enforcement, may both need and use more *kinds of* information than other authorized users, *within the limitations of the existing exceptions*. The fact that the statute maintains for highly restricted personal information the existing exceptions for use and dissemination provides further support for the view that the exceptions must be read narrowly. If, instead, we were to read the exceptions as broadly as the Village asserts, the effect of the "highly restricted personal information" section would be that the officer could have printed Mr. Senne's photograph and social security number on the citation and left it open to public view. We decline to read this statute, with a chief aim of privacy protection, to allow such a dangerous result. *See City of Chicago v. United States Dep't of the Treasury, Bureau of Alcohol, Tobacco & Firearms*, 423 F.3d 777, 781 (7th Cir. 2005) [**23] (noting that we will not read a statute to thwart Congress's manifest intent).

Defendant Ratkowski had no legitimate purpose to disclose Plaintiffs' highly restricted personal information on September 24, 2020 to Brian Conte, when he unsolicited sent the Target

List to him and encouraged him to, "*Feel free to pass this (Target List) along to who you think would find it useful.* "Exhibit 10. And on July 13, 2020 when he shared the Target List unsolicited with Adam Behnke. Exhibit 15.

Similarly on November 10, 2020 -- again unsolicited -- Ratkowski voluntarily shared the 48 Target List Plaintiffs' personal information to presumably two persons who work for the City of Burlington and presumably two people who worked for Racine County, simply because he, *"saw that Burlington had a disruptive protest at the school board meeting last night."* (*See* Exhibits 7 & 11). Every disclosure of every single Plaintiff must be justified in order to satisfy the permissible purpose element to satisfy the obtainment and the disclosure of Plaintiffs' information pursuant to the DPPA. See *Maracich*, 133 S. Ct. at 2198.Defendant has failed to identify a single fact in support of any permissible purpose. Legal conclusions are not facts and without any fact to support this contention, Plaintiffs' must prevail as the evidence contains no genuine dispute of material fact.

### B. The Record Supports Summary Judgment on Joseph Roy's Liability Under the DPPA.

Defendant Roy testified as to how a person's address and driver's license identification card number "are retrieved through a person's driver's license record." (*See* Exhibit 2, pg. 105) All 48 citations disclosed by Roy contain Plaintiff's address and almost every citation disclosed, with the exception of two citations for Plaintiff Isiah Baldwin, have Plaintiffs' driver's license identification number. (*See* Exhibit 3, Plaintiffs Citations). Similarly, the hundreds of pages of police reports and citations Roy shared with sixteen (16) people contained Plaintiffs' information from their drivers records such as their names, dates of births, addresses, phone numbers, eye color, weight, height, sex, race and should also not have been disclosed. (PSPF #24: Exhibit 8 – January 7, 2021 Joseph Roy Open Records Email) (Exhibit 2 – Deposition of Joseph Roy on 7/26/21 – p.

27

118)  Defendant Roy's testimony shows that he knew that releasing these documents publicly was a violation of the DPPA and of Wisconsin Open Records laws.

Here, in addition to violating the DPPA numerous times, Defendant Roy also violated Wisconsin open records laws. Pursuant to Wis. Stat. 19.36(6), Roy was required to "***delete the information that is not subject to disclosure from the record before release***." On January 7, 2021, Defendant Roy disclosed unredacted information to sixteen people, all of whom, with the exception of Attorney Motley, he did not know. (PSPF # 33: Exhibit 2 - Joseph Roy 7/27/21 Depo pg. 118; PSPF #24: Exhibit 8; Exhibit 3, Citations Disclosed by Joseph Roy redacted; Exhibit 4 – Police Reports Disclosed by Joseph Roy redacted) Roy's behavior was even more reckless in that he released Plaintiffs' personal information to at least ten people who did not request any of the information that was disclosed. Like *Maracich,* this scenario—the disclosure of a person's driver's personal information to members of the public who would not otherwise have had access to such information—is precisely what the DPPA meant to protect against. See *Maracich*, 133 S. Ct. at 2198.

### C.    The Record Supports Summary Judgment on Statutory Damages for Defendants Ratkowski and Roy.

Available remedies for violations of the DPPA are (1) actual damages, but not less than liquidated damages of $2,500; (2) punitive damages for willful or reckless violations; (3) attorney fees and costs; and (4) such other preliminary and equitable relief as the court determines to be appropriate. *See New Richmond News v. City of New Richmond*, 2016 WI App 43. ¶¶ 34-36, 370 Wis. 2d 75, 881 N.W.2d 339 18 U.S.C. § 2724(b).

As set forth above in detail, it is undisputed that Defendants Ratkowski and Roy repeatedly violated the DPPA in obtaining, using, and disclosing the Plaintiffs' protected information. As such, this Court can determine, as a matter of law, not only that Defendants Roy and Ratkowski

28

violated the DPPA, but also that statutory liquidated damages should apply to each violation. In *Rollins v. City of Albert Lea*, the District Court in Minnesota found:–

> The DPPA provides a limited private right of action, authorizing suit against "a person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under" the statute. 18 U.S.C. § 2724(a). According to *Nelson*, *Mallak*, and *Kampschroer* seeking or viewing information is sufficient for "obtaining" it under the DPPA. See Nelson, 2013WL 5888235, at *2; *Mallak*, 2014 WL 1285807, at *7; *Kampschroer*, 2014 WL 4988405 at *9. Therefore, every time an official employed by Defendants viewed and accessed Rollins' private data, her information was "obtained."

*Rollins v. City of Albert Lea*, Case No. 14-cv-299 (SRN/HB), 48-49 (D. Minn. Dec. 8, 2014)

The uncontroverted record before the Court demonstrates the following DPPA violations by Defendants Roy and Ratkowski for each individual Plaintiff who are the subject of this motion. This chart shows the number of times Defendants Ratkowski and Roy either obtained or disclosed this protected information, along with the number of Plaintiffs each violation affected:

|  | Improper Obtainments | Improper Uses | Improper Disclosures | Number of Plaintiffs |
|---|---|---|---|---|
|  |  |  |  |  |
| Ratkowski | 1 | 1 | 52 | 48 |
|  |  |  |  |  |
| Roy | - | - | 15 | 49 |

The math, then comes out to the following for liquidated damages pursuant to 18 U.S.C.§ 2724(b)(1) which the court can award "actual damages, but not less than liquidated damages of $2,500."

1. Ratkowski  1 improper obtainment x 48 PL  = 48 Damages x $2500 liquidated damages

= $120,000.00 total liquidated damages

2. Ratkowski    1 improper use x 48 PL = 48 Damages X $2500 liquidated damages

= $120,000.00 total liquidated damages

3. Ratkowski  52 improper disclosures x 48 PL = 2,496 Damages x $2500 liquidated damages

= $6,240,000.00 total liquidated damages

29

4. Roy        15 improper disclosures x 49 PL = 735 Damages x $2500 liquidated damages

= $1,837,500 total liquidated damages

## VI. CONCLUSION

Based on the foregoing, Plaintiffs request that this Court enter partial summary judgment in Plaintiffs' favor for claims 2 and 14, finding (i) Defendant Dominick Ratkowski liable for unlawfully obtaining Plaintiffs' personal and highly restricted information from their motor vehicle records; (ii) Defendant Dominick Ratkowski liable for unlawfully using Plaintiffs' personal and highly restricted information from their motor vehicle records; (iii) Defendant Dominick Ratkowski liable for unlawfully disclosing Plaintiffs' personal and highly restricted information from their motor vehicle records; and (iv) Defendant Joseph Roy liable for unlawfully disclosing Plaintiffs' personal and highly restricted information from their motor vehicle records. Plaintiffs respectfully request a hearing on damages.

Respectfully submitted this 19th day of December, 2022.

/s/ Attorney Kimberley Cy. Motley
MOTLEY LEGAL SERVICES
State Bar No.: 1047193
2206 Bonnie Butler Way
Charlotte, North Carolina 28270
Email : kmotley@motleylegal.com
Telephone : (704) 763-5413

/s/ Attorney Kathryn Knowlton
KNOWLTON LAW GROUP
7219 West Center Street
Wauwatosa, WI 53210
Email: kate@knowltonlawgroup.com

Attorney E. Milo Schwab
Ascend Counsel
2401 S Downing Street
Denver, CO 80210

30

ATTORNEYS FOR PLAINTIFFS