IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

KATHRYN KNOWLTON, *et al.*,

        Plaintiffs,

v.                                                                        Case No. 20 CV 01660

CITY OF WAUWATOSA, *et al.*,

        Defendants.

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Defendants City of Wauwatosa, Dennis McBride, Jeffrey Farina, Dominick Ratkowski, and Joseph Roy by their attorneys, Wirth + Baynard, submit this Reply Brief in Support of their Motion for Summary Judgment seeking dismissal of all claims.

**I.    PLAINTIFFS' FIRST AMENDMENT CLAIM MUST FAIL.**

Plaintiffs assert "[t]his case presents a unique and unanswered question to this court: under what circumstances may a city enact a curfew to specifically curtail protest before such protests have begun." Contrary to Plaintiffs' assertion, as discussed in Defendants' moving brief (ECF No. 267, p. 2) the question is far from unique or unanswered considering Judge Adelman concluded this curfew was a valid time, place, and manner restriction. *Radke v. City of Wauwatosa*, 21-CV-0247, ECF. No. 44 (August 21, 2022).

Plaintiffs suggest that because the City contemplated and took steps to prepare for a future emergency [Chisholm's announcement] they are not entitled to broad discretion for adopting the temporary emergency measures [curfew]. (ECF No. 286, p. 6) Plaintiffs do not cite to a single case in support of this contention. Plaintiffs also fail to distinguish the cases cited in Defendants'

1

moving brief or explain how the curfew was not "a temporary emergency measure." (ECF No. 267, p. 4) Regardless, the curfew was a reasonable time, place, and manner restriction.

First, the curfew is content neutral on its face: it applied to all expression that might take place on a city street during the designated times. The Plaintiffs, however, contend that the curfew was not content neutral because it was enacted "in anticipation of an anti-police brutality protest." (ECF No. 286, p. 6) However, a regulation is content neutral "so long as it is *justified* without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791 (emphasis in original). Here, the actual justification for the emergency declaration as stated in the proclamation, was that, given recent experience, it was "anticipated that an emergency will exist in the City of Wauwatosa due to conditions which will arise following [the announcement of the charging decision], including civil unrest throughout Wauwatosa which creates concerns for the safety of persons and property and will impair transportation, health, and police protection and other critical systems in Wauwatosa." (ECF No. 261-1, p. 1) This justification for the curfew does not reference the content of any speech. Instead, it focuses on the safety concerns that could have arisen if conditions like those that had been experienced in municipalities such as Kenosha materialized in Wauwatosa. The stated justification for the curfew was public safety rather than anything related to the subject matter of the protests. *Radtke,* ECF No. 44 at 6-7. Accordingly, the curfew was content neutral. *Ward*, 491 U.S. at 791 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.").

Plaintiffs' reliance on statements made by Barry Weber (ECF No. 286, p. 6) who is not a defendant regarding "declaring protests an unlawful assembly" are misplaced and futile. Foremost because Plaintiffs' First Amendment claim involves the curfew not unlawful assembly decisions discussed by Weber. Further, it is the language of the ordinance, not an official's characterization

2

of it, that determines whether the ordinance is content neutral. *See Rodriguez v. City of Green Bay*, No. 20-C-1819, 2022 WL 823948, at *4 (E.D. Wis. Mar. 18, 2022) Moreover, Weber's testimony was that he played no role in declaring unlawful assemblies. (Weber Depo. at p.p. 129:15-130:7) Likewise, Plaintiffs' attempt to rely on Weber's testimony regarding who was subject to the curfew which he qualified with "I will just be speculating" is a non-starter. (Weber Depo. at p. 177:10-13) Weber was clear arrest decisions were made by officers on scene and not pursuant to any order from him. *Id.* at 177:25-178:8. Likewise, Plaintiffs attempt to suggest McBride retaliated against Plaintiff Groppi by requesting she be issued a citation is a nonstarter as 1) Plaintiff Groppi does not have a First Amendment claim (*See* ECF No. 155, First Claim for Relief); 2) there is no evidence to support she was issued a citation; and 3) there are no selective enforcement—equal protection claims alleged.

Second, the curfew was narrowly tailored to serve a significant governmental interest. Contrary to Plaintiffs argument that Defendants are unable to "substantiate any factual basis for the necessity of the curfew" (ECF No. 286, p. 10) it is clear from the record that the factual basis for the curfew was safety concerns that could have arisen if conditions like those that had been experienced in municipalities such as Kenosha materialized in Wauwatosa. (DPFF ##1, 3, 7-11, 18; ECF No. 262-1) Plaintiffs do not dispute that maintaining public order is a governmental interest. (ECF No. 286, p. 13) Plaintiffs instead suggest that the curfew does not actually serve this interest because it was not enacted in response to civil unrest several days into protests. (*Id.* at 11) However, Plaintiffs fail to develop a legal argument along those lines. Plaintiffs do not cite a case holding that a municipality must wait for a riot or disaster to materialize before taking action to protect public safety. Nor do they argue that, even though no such case exists, the law should be extended to prohibit emergency curfews except when declared in response to an ongoing riot. Nor

do Plaintiffs argue that a municipality may not rely on the experience of other municipalities when deciding whether an emergency curfew is needed to protect public safety, which is what Wauwatosa did when it acted based on the recent experience of cities such as Kenosha.

Every case cited by Plaintiffs is distinguishable. *Hodgkins,* cited by Plaintiffs involved the arrest of a juvenile who stopped to eat with friends after a school soccer game in violation of an Indiana juvenile curfew law. *Id.* at 1051. The governmental interest at stake in *Hodgkins* pales in comparison to the interest at stake here and the curfew here was limited to four days. Plaintiffs briefing also relies heavily on a Northern District of California, *NAACP v. City of San Jose,* which was decided on a motion to dismiss not on summary judgment. (ECF No. 286, p. 11) Critically, the decision noted it had no evidentiary record before it to inform the court's analysis. *NAACP* at 400-401. Plaintiffs also rely on *Brandenburg v. Ohio*, which dealt with Ohio's Criminal Syndicalism Act which the court held "purports to punish mere advocacy and to forbid, on pain of criminal punishment, assembly with others merely to advocate the described type of action." *Id.* at 1830. Finally, Plaintiffs rely on *Terminiello v. City of Chicago*, evaluating a violation of the city's disorderly conduct ordinance which the Court held "permitted conviction of petitioner if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest." *Id.* at 896. None of these cases are similar.

Thus, given the absence of any meaningful argument by Plaintiffs on these points, this Court should conclude, as did Judge Adelman that Wauwatosa's emergency curfew served a significant government interest.

As for narrow tailoring, that requirement is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (*quoting United States v. Albertini*, 472 U.S. 675, 689 (1985)). Plaintiffs

4

argue "Defendants engaged in no efforts to narrowly tailor this curfew because the point of the curfew was to limit protest - not to achieve any purpose and certainly not to achieve an identifiable goal." (ECF No. 286, p. 14) Nonetheless, Plaintiffs concede the curfew had "limited tailoring as to the time element" (*Id.*) and clearly the curfew did not prohibit any protests anywhere in the city during daytime hours.[1]

Plaintiffs then argue without factual support "the curfew stopped all protests in the entire town of Wauwatosa during the hours in which individuals were not at work." *Id.* First, the curfew did not restrict any form of protest on private property at any time. Second, Plaintiffs do not explain why protesting during the day on the weekend would not have been an adequate alternative for those who worked "normal work hours." *Id.* Additionally, assuming "normal work hours" are 8-hour days, individuals would still have time outside of the curfew to protest. Plaintiffs fail to explain why daytime protests would not have been adequate alternatives to protests at night, when criminal activity is harder to prevent. Plaintiffs also fail to identify any alternative to the curfew that would have allowed Wauwatosa to achieve with equal effectiveness its interest in preventing demonstrations from turning into riots that threaten public safety.

In short, "there has been no showing that the remaining avenues of communication [were] inadequate," *Ward*, 491 U.S. at 802, and therefore this Court should conclude, like Judge Adelman that the final requirement for a valid time, place, and manner restriction is met and that defendants are entitled to summary judgment on Plaintiffs' First Amendment challenge to the emergency curfew.

---

[1] The curfew began at 7:00 p.m. and ended at 6:00 a.m. In *Radtke*, Judge Adelman, took judicial notice that, during early October in Milwaukee County, the sun sets at about 6:30 p.m. and rises at about 7:00 a.m. *Radtke*, ECF No. 44, FN 4.

5

Regarding Mayor McBride's entitlement to qualified immunity, Plaintiffs bear the burden of overcoming Mayor McBride's qualified immunity defense. Plaintiffs argue only "for the reasons provided in Plaintiffs' First Amendment section, supra, Defendant McBride's argument fails." (ECF No. 286, p. 30) In order to defeat a properly raised qualified immunity defense, Plaintiffs must establish the constitutional right at issue was "clearly established" with the requisite level of specificity at the time of the defendant's alleged misconduct." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014). As discussed above, none of the cases cited by Plaintiffs demonstrate that Mayor McBride violated a clearly established right and Plaintiffs make no attempt to distinguish this curfew from other curfews imposed during emergencies and upheld by courts, much less address Judge Adelman's decision in *Radtke* upholding this very curfew.

## II. WILLIAM RIVERA'S TITLE VI CLAIM MUST FAIL.

The Seventh Circuit has identified summary judgment as "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.,* 175 F.3d 497, 504 (7th Cir.1999). Mr. Rivera offers no evidence from which it may be inferred that the offending officer was a City of Wauwatosa employee or that Plaintiff was the intended beneficiary of, an applicant for, or a participant in a federally funded program. Therefore, summary judgment on this claim is proper.

Plaintiff argues "Defendants offer no evidence or any argument in this record that the officer who arrested Mr. Rivera is not a City of Wauwatosa employee. On October 9, 2020, Mr. Rivera was told that he was being arrested "because he was black" from a person whom he believed to be a Wauwatosa Police officer. PPFOF #27. This alone creates a dispute of fact and defeats Defendants' motion for summary judgment." (ECF No. 286, at 17) This argument fails because

6

on a motion for summary judgment, it is the plaintiff's burden to present evidence on each element of his claim; it is not the defendant's burden to disprove it. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013).

The party moving for summary judgment bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy its initial burden simply by pointing out that there is an absence of evidence to support the non-moving party's case. *Id*. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 322-23. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989). Mr. Rivera has not met his burden here.

While it is true that courts should generally not make credibility determinations at the summary judgment stage, *McCottrell v. White*, 933 F.3d 651, 657 (7th Cir. 2019) (citation omitted), a nonmoving party at the summary judgment stage cannot rest "upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence." *Weaver v. Champion Petfoods USA Inc.,* 3 F.4th 927, 934 (7th Cir. 2021) (citation omitted). Unsupported speculation also will not defeat a summary judgment motion; and an affidavit that includes general opinions and *beliefs* does not create a genuine issue of material fact sufficient to defeat summary judgment. *Cleveland v. Porca Co*., 38 F.3d 289, 295 (7th Cir.1994). This Court should disregard portions of Mr. Rivera's declaration (ECF No. 296-63, ¶ 5, 7) because it is based on his general belief that the offending officer was "believed" to be a "Wauwatosa Officer." *Id.*

7

Mr. Rivera is clearly attempting to manufacture a factual dispute despite the dearth of evidence. Defendants Proposed Findings of Fact demonstrate that the officer who allegedly told William Rivera "at this point it doesn't matter because you are black" and who William Rivera thought was Wauwatosa Police Officer Michael McDermott, could not have been: Officer McDermott did not work during the time period William Rivera was arrested (DPFOF ¶ 24); the photograph does not depict Officer McDermott (DPFOF ¶ 23); and Wauwatosa Police Department officers do not have uniforms consistent with the uniform worn by the identified officer (DPFOF ¶ 25). Additionally, during his deposition, Mr. Rivera unequivocally stated 1) he did not know who the officer was; and 2) he did not know who the officer was employed by. (ECF No. 293-3, p. 23:17-21)

Finally, Plaintiff does not dispute Defendants' argument that in order "to bring a private action under Title VI the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program." (ECF No. p.p. 8-9) Plaintiff argues "[i]n 2020, the City of Wauwatosa, through its police department, recipient of the Department of Transportation Speed Grant, Alcohol Traffic Enforcement Grant "ATEG", and the DOT Click or Ticket Grant. Mr. Rivera, therefore, is a beneficiary of the intended grants for the City of Wauwatosa." (ECF No. 286, p. 17) The citation is to "DF Ex. 28, p. 50" which in no way supports any assertion that Mr. Rivera "is a beneficiary of the intended grants." Moreover, the underlying exhibit regarding City of Wauwatosa is an unauthenticated record. *Steffek v. Client Servs., Inc.,* 948 F.3d 761, 769 (7th Cir. 2020) (citation omitted) ("Documents must be authenticated by an affidavit that lays a proper foundation for their admissibility, even at the summary judgment stage."); *United States v. Reese*, 666 F.3d 1007, 1017 (7th Cir. 2012) (citation omitted) ("A qualified witness need not be the author

of the document [admitted under the business records exception] but must have personal knowledge of the procedure used to create and maintain the document.").

For all these reasons, summary judgment should be granted as to this claim.

## III. PLAINTIFFS' STATE LAW MALICIOUS PROSECUTION CLAIMS MUST FAIL.

Plaintiffs Isiah Baldwin and Rosalind Rogers allege Officer Farina arrested them for an ordinance violation of special permit required with no probable cause on September 5, 2020. It remains undisputed that Officer Farina gave them citations for blocking off the road, almost like a block party without a permit. (DPFF # 27) Moreover, neither Isiah Baldwin nor Rosalind Rogers allege they were not blocking off the road at the time of their arrest (*See* ECF Nos. 296-53 and 296-40) nor do they dispute being among 40-50 vehicles impeding traffic. (DPFF # 33, 34)

Despite alleging in the Fourth Amended Complaint that "Plaintiffs Baldwin and Rogers were placed under arrest by WPD Officers including Matthew Martell (ECF No. 155, ¶ 227), Plaintiffs suddenly dispute being arrested by Officer Martell. While Plaintiffs dispute who arrested them that dispute does not preclude summary judgment. There is no evidence in this case that a permit was not required for the activity on September 5, 2020. (DPFF # 28) The ordinance they were arrested under provides the city administrator the "exclusive authority to determine whether or not a permit is required for any particular event" *Id.* and being among 40-50 vehicles impeding traffic establishes at least arguable probable cause.

Aidali Rivera argues she was exempt from the curfew "because she was in Wauwatosa taking her son, a Wauwatosa resident, home from work." (ECF No. 286, p.p. 20-21) This argument fails because individuals taking other persons home from work were not exempted from the curfew. (ECF No. 262-1, p. 1: "except for persons who are going to or from work") Ms. Rivera was neither going to or from work. Ms. Rivera does not need to stipulate to violating the curfew

9

because she admits to being on the street, in Wauwatosa, after 7:00 PM on a night the curfew was in effect, without an exception. Ms. Rivera's attempt to manufacture an exemption based on deposition testimony from Barry Weber on May 13, 2021, which he qualified with "I will just be speculating" and which in no way created an exemption for Ms. Rivera, much less a retroactive exemption is frivolous. (ECF No. 286, p. 21)

Moreover, as discussed above, Ms. Rivera may not rest upon conclusory statements in declarations (*Weaver* at 934). Specifically, Ms. Rivera engaged in pure conjecture stating, "I was arrested by a person whom I believe to be Wauwatosa officer Jeffrey Farina." (ECF No. 296-51, ¶¶ 2, 5, 6) Ms. Rivera's Declaration provides no factual support for her belief the officer was Jeffrey Farina—for example prior contacts with him, seeing the officer's name badge, or otherwise.

Finally, Plaintiffs' meager argument regarding Farina's entitlement to qualified immunity is simply that it is inapplicable to Plaintiffs' state law claims. (ECF No. 286, p. 30) Plaintiffs are aware based on this Court's prior Order (ECF No. 190, p. 22) that the Wisconsin Court of Appeals saw no reason to analyze state malicious prosecution claims differently from federal claims:

> In *Yarney v. State, Dep't of Health & Soc. Servs.*, the Wisconsin Court of Appeals noted that it saw no reason to analyze a defendant's state malicious prosecution claim differently from his federal claims under 42 U.S.C. §§ 1981 & 1983. The *Yarney* court found that under federal law, a nonjudicial officer, such as an investigator for the district attorney's office, who undertakes ministerial actions intimately related to the judicial process at the express direction and control of the prosecutor, enjoys absolute immunity. If, however, the investigator initiates actions on his own, or carries out the investigatory functions of the prosecutor, he loses his absolute immunity and is entitled only to qualified immunity.

*Id.* Moreover, Plaintiffs themselves previously analyzed this claim in accord with the Court's Order. (See ECF No. 187, p. 28) Finally, Plaintiffs failed entirely to respond to Defendants' argument that Farina is entitled to governmental immunity under Wisconsin law. (ECF No. 267, p.p. 12-13) Because Plaintiffs fail to adequately address the issues of state law immunity and

qualified immunity, this Court should find that Farina is immune from liability with respect to Plaintiffs' state law malicious prosecution claims.

## IV. PLAINTIFFS' DPPA CLAIMS MUST FAIL.

Plaintiffs argue "the record shows that Defendant Ratkowski acted out of retaliation, discrimination, the purpose of harassment, to assist WPD officers in targeting Plaintiffs' for selective enforcement of laws, to gather intelligence on a political movement for which the WPD unfortunately saw as political opponents, and out of a general animus for individuals protesting police brutality." (ECF No. 286, p.p. 22-23) Plaintiffs provide no citation to the record to support their argument. *Id.* Plaintiffs cite only to an email from Dominick Ratkowski to members of the Wauwatosa Police Department stating "just in case some one asks for proof that they are in the People's Revolution, I attached their Facebook information as members in the group." (ECF No. 292-5) First, the only Plaintiff involved is John Larry and Plaintiffs provide no evidence the information allegedly obtained from Plaintiff Larry's DOT records was obtained for the purpose of this email. *Id.* Each plaintiff must satisfy the burden of designating specific facts to prevail on this claim against Ratkowski. At best, Plaintiff Larry has created a dispute of fact regarding Rutkowski's July 30, 2020, disclosure. However, the email does not create a genuine dispute of fact as to any other Plaintiff.

Furthermore, Plaintiffs provide no evidence that Ratkowski was "surveilling individuals" (ECF No. 286, p. 5) and Plaintiffs offer nothing more than a stream of consciousness that it is not a legitimate law enforcement function to maintain a list of protestors to aid in future investigations of possible crimes. (ECF No. 286, p. 25) Plaintiffs do not cite a single case in support of their argument. Thus, given the absence of any meaningful argument by the Plaintiffs on these points, this Court should grant Defendant Ratkowski summary judgment on this claim.

11

Plaintiffs argue Roy "plainly stated that Plaintiffs' personal information contained in the released arrest records came from DOT records." (ECF No. 286, p. 27) In support, Plaintiffs cite "Ex. 36, p. 104" which is in reference to the municipal citation of Ms. Bogenberger, not an arrest record and certainly not the arrest records of all Plaintiffs. Alternatively, Plaintiffs attempt to establish Roy "knowingly" disclosed their personal information obtained from motor vehicle records by declaring that Plaintiffs did not voluntarily disclose the information. (ECF No. 286, p. 27) Plaintiffs argument here wholly misses the mark, they must do more than create a dispute of fact as to where the information came from—they must designate specific facts that Roy knew the personal information was taken directly from motor vehicle records. Thus, Plaintiffs have not created a genuine question of material fact as to if Roy knowingly disclosed the information.

As discussed above, a nonmoving party at the summary judgment stage cannot rest "upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence." *Weaver* at 934. Plaintiffs must designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Celotex Corp.* at 322-23. Here, Plaintiffs have offered no documentary evidence that Roy knowingly disclosed personal information obtained directly from motor vehicle records. Thus, this Court should grant Defendant Roy summary judgment on this claim.

## CONCLUSION

For the reasons stated above, Defendants respectfully request the Court dismiss all of Plaintiffs' claims against them, with prejudice and with such costs and disbursements as the Court deems equitable.

12

Case 2:20-cv-01660-NJ    Filed 02/15/23    Page 12 of 13    Document 318

Dated this 15th day of February 2023.

          **WIRTH + BAYNARD**
          Attorneys for Defendants

BY:   */s/ Kiley B. Zellner*
       Kiley B. Zellner, WI Bar No. 1056806
       9898 W. Bluemound Road, Suite 2
       Wauwatosa, Wisconsin 53226
       T: (414) 291-7979 / F: (414) 291-7960
       Email: kbz@wbattys.com